**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**
**CIVIL ACTION NO. 1:20-cv-47-GNS**

**ROBERT YELL**                                                                                   **PLAINTIFF**

**v.**

**THE CITY OF RUSSELLVILLE, ET AL.**                                               **DEFENDANTS**

---

### MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

---

Come Defendants Scott County, Kentucky, and Buster Cannon, in his individual capacity as a former Scott County Deputy Sheriff (collectively the "Scott County Defendants"), by counsel, and for their Memorandum in Support of their Motion pursuant to Fed. R. Civ. P. 56 for Summary Judgment and dismissal with prejudice of all claims asserted against them herein by the Plaintiff, Robert Yell, respectfully state as follows:

### **INTRODUCTION**

In September 2004, like many first responders, Carmel R. "Buster" Cannon held two jobs: he was a firefighter with the Georgetown Fire Department and a deputy sheriff with the Scott County Sheriff's Department.  Pursuant to a contract between the Georgetown Fire Department and the Bureau of Alcohol, Tobacco and Firearms and in his capacity as a firefighter, Cannon, along with his accelerant detection canine, PJ, assisted with fire investigations throughout Kentucky.  And it was solely in that role—as a Georgetown Fire Department firefighter certified through the Bureau of Alcohol, Tobacco and Firearms' accelerant canine detection program—that Cannon participated in the fire investigation and subsequent prosecution of the Plaintiff, Robert Yell, that form the basis for this case.  Nonetheless, because Cannon wore his SCSD uniform to

Yell's criminal trial to accommodate his demanding work schedule, Yell seeks to hold him liable through both the Georgetown Fire Department and the Scott County Sheriff's Department and has forced him for more than five years to defend this lawsuit on both fronts. Yell's tactic is utterly unsupported by the evidence, and the Court should enter summary judgment on behalf of Cannon in his capacity as a Scott County deputy sheriff and Scott County.

## **BACKGROUND**[1]

This case arises from a trailer fire that occurred on September 11, 2004, in Russellville, Kentucky. *See generally* Complaint, D.E. 1. Tragically, Robert Yell's two-year-old son died in the fire, and his 11-month-old daughter suffered third-degree burns over 50% of her body. *Id.* at Page ID# 2, ¶¶ 1-2. Yell was eventually prosecuted for and in February 2006 was convicted of first-degree arson, second-degree manslaughter, first-degree assault, disorderly conduct, and fourth-degree assault related to the fire. *Id.* at Page ID## 18-19, ¶ 79. The trial court subsequently granted him a new trial, and on March 18, 2019, the court dismissed the charges based on a motion by the prosecutor. *Id.* at Page ID## 19-20, ¶¶ 85-86.

On March 13, 2020, Yell initiated this lawsuit asserting numerous claims against the fire and law enforcement personnel who participated in the investigation of the fire and Yell's prosecution, including Carmel R. "Buster" Cannon. *See generally id.* At the time of the fire, Cannon was employed by both the City of Georgetown as a member of the Georgetown Fire Department ("GFD") and the Scott County Sheriff's Department ("SCSD") as a deputy sheriff. Cannon Answers to Interrogatories dated June 4, 2021, pp. 7-8, attached as **Exhibit 1**. In addition to Cannon individually, Yell named the City of Georgetown and Scott County as defendants in

---

[1] For purposes of this Motion only, the facts are set forth in a light most favorable to the Plaintiff. However, the Scott County Defendants do not waive and expressly reserve their right to dispute these facts in future proceedings if their Motion is denied.

this case. However, Cannon did not do anything with respect to Yell's prosecution in his capacity as a SCSD deputy sheriff, nor did the SCSD oversee any of his activities in the Yell investigation.

Pursuant to a Memorandum of Agreement with the Bureau of Alcohol, Tobacco and Firearms ("ATF") (the "MOA"), GFD participated in the ATF's Accelerant Detection Canine Program ("ADCP"). Cover letter and Memorandum of Agreement dated June 6, 2002, attached collectively as **Exhibit 2**. The MOA required GFD to designate a canine handler to be trained by the ATF and participate in the ADCP. *Id.* at Section III(a). In return, the ATF agreed to train and certify the handler and his assigned accelerant detection canine. *Id.* at Section III(b). GFD remained responsible for handler's salary and employment benefits and insurance as well as the canine's food, medication, and veterinary care. *Id.* at Section IV(b)(1), (5).

When the MOA was executed, Cannon had already completed the ADCP training course with a canine named "PJ." *See* Certificates of Training dated Mar. 20, 2022, attached as **Exhibit 3**. Cannon and PJ were recertified by the ATF on April 7, 2003, and again on April 5, 2004. *See* Certificates of Training Dated Apr. 7, 2003, and Apr. 5, 2004, attached as **Exhibit 4**. Consistent with the MOA between the ATF and GFD, Cannon investigated potential arsons "as a member of the Georgetown Fire Department," ***not*** in his capacity as a Scott County Sheriff's Deputy. Deposition of Buster Cannon, pp. 41-42, relevant pages attached as **Exhibit 5**; *see also id.* at pp. 42-43 (testifying he does not recall ever participating in a fire investigation in his capacity as a deputy sheriff while also employed by GFD). And the GFD, not Scott County, paid Cannon for work performed while dispatched with PJ. *Id.* at pp. 178-79. Indeed, "the sheriff's department [had] nothing to do with PJ" and did not supervise or oversee Cannon in the context of fire investigations. *Id.* at pp. 56, 123-125.

Prior to Yell's jury trial in 2006, the court conducted a *Daubert* hearing regarding Cannon's

qualifications. *See generally* Cannon Daubert Hearing Transcript, Exhibit 1 to Cannon Depo., attached as **Exhibit 6**. He testified that he worked for both the GFD and SCSD and had an "accelerants trained canine" "during that time I was at the fire service." *Id.* at pp. 4-5. He explained he had been under contract with the ATF since 2002 and both he and PJ were certified annually by the ATF. *Id.* at pp. 5-11.

At Yell's trial in February 2006, Cannon, who was wearing his SCSD uniform, told the jury he was employed as a deputy sheriff and as a firefighter with the GFD. Cannon Trial Testimony, Exhibit 3 to Cannon Depo., p. 91, relevant pages attached as **Exhibit 7**. He briefly touched on his law enforcement training and more thoroughly described his qualifications as a fire investigator, including attending the National Fire Academy, his certification through a national organization, and his affiliation with the ATF and work with an accelerant detection canine. *Id.* at pp. 92-93. Cannon explained that PJ was assigned to him pursuant to a contract between the fire chief and the ATF, and both Cannon and PJ were certified annually through the ATF. *Id.* at pp. 94-96. Cannon said that part of the ATF agreement required the pair to assist with fire investigations throughout Kentucky if needed and that he and PJ participated in the investigation of the Yell fire at the State Fire Marshal's request. *Id.* at pp. 97-98.

Pertinent to the Scott County Defendants' Motion, Yell is critical of how Cannon used PJ in investigating the fire and the investigators' reliance on her "hits" on ignitable liquids. *See* Complaint, D.E. 1, Page ID# 12-14, 19-20, ¶¶ 55-61, 85. Accordingly, Yell accuses the Scott County Defendants of constitutional violations under 42 U.S.C. § 1983 for malicious prosecution (Count I), deprivation of Due Process under the Fourteenth Amendment (Count II), fabrication of false evidence in violation of the Fourth and Fourteenth Amendments (Count III), failure to intervene (Count V), and conspiracy to violate civil rights (Count VI). Yell also asserts claims

under Kentucky law against Cannon for malicious prosecution (Count IX), intentional and negligent infliction of emotional distress (Count XI and Count XII), and negligence (Count XIII) and against Scott County for negligent supervision (Count X) and respondeat superior (Count XIV).

## ARGUMENT

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In the face of a properly supported motion for summary judgment, a plaintiff cannot rest on his allegations "to get to a jury without 'any significant probative evidence tending to support the complaint.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253. 290 (1968)). "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id*. Summary judgment is appropriate where the plaintiff's evidence is merely colorable or not significantly probative. *Id*. Thus, a plaintiff attempting to avoid summary judgment must come forward with specific facts showing there is a genuine issue for trial. *Id*. at 250. Hearsay, conclusory allegations, and subjective beliefs are not sufficient to avoid summary judgment. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584-85 (6th Cir. 1992). A party also "may not avoid summary judgment by resorting to 'speculation, conjecture, or fantasy.'" *K.V.G. Props., Inc. v. Westfield Ins. Co.*, 900 F.3d 818, 823 (6th Cir. 2018) (quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).

Only one fact offers ***any*** connection between Cannon's employment as a SCSD deputy sheriff and Yell's prosecution: Cannon wore his SCSD uniform to Yell's jury trial. But his testimony both at the trial and in his deposition make abundantly clear that he participated in the

fire investigation *solely* through the GFD.[2]  In fact, the only reason Cannon wore his SCSD uniform to the trial is that he had either just gotten off duty prior to attending the trial or was going to start a shift immediately after.  Affidavit of Buster Cannon, copy attached as **Exhibit 8**.  In any event, even assuming a jury could find that by simply wearing his SCSD uniform at trial, Cannon testified as a SCSD deputy, each of Yell's claims against Cannon *in his capacity as a SCSD deputy sheriff* turns on whether he can be liable based solely on his trial testimony.  As set forth below, he cannot, and Cannon and Scott County are entitled to summary judgment on all claims against them.

**I.     Cannon, in his capacity as a SCSD deputy sheriff, is entitled to summary judgment on Yell's § 1983 claims against him because Cannon is afforded absolute immunity for testifying at trial—the only activity in which he was arguably involved as a deputy sheriff.**

Under federal law, "a trial witness has absolute immunity with respect to *any* claim based on the witness' testimony." *Rehberg v. Paulk*, 566 U.S. 356, 367 (2012).  This immunity extends even to law enforcement officers who present false testimony.  *Briscoe v. LaHue*, 460 U.S. 325, 341-47 (1983).  Because the only basis in the record on which a jury could find Cannon participated in Yell's prosecution is that he wore his SCSD uniform during his trial testimony, even if the record supported the conclusion Cannon offered false or fabricated evidence, as a matter of law, he cannot be held liable and is entitled to summary judgment.

A. Malicious Prosecution (Count I)

Yell's claim against Cannon for malicious prosecution is premised on his allegations that the defendants falsified and manipulated evidence and withheld exculpatory and impeachment

---

[2] In Cannon's deposition, Yell's counsel questioned him about a Special Deputation Appointment form dated June 16, 2004, by which Cannon was appointed to be a Special Deputy U.S. Marshal.  Cannon Depo., Ex. 5, pp. 117-119.  The form listed the sponsoring agency as the ATF and Cannon's employer as the SCSD.  *See* Special Deputation Appointment, attached as **Exhibit 9**.  However, there is no suggestion, much less affirmative evidence, that Cannon investigated the Yell fire on behalf of the U.S. Marshal's office.  On the contrary, Cannon's authority as a Special Deputy U.S. Marshal was limited to "seek[ing] and execut[ing] arrest and search warrants supporting a federal task force."  *Id.*  The Special Deputation therefore also does not supply the missing link.

evidence. A claim for malicious prosecution arises from the Fourth Amendment and consists of four elements: (1) a criminal prosecution was initiated against the plaintiff, and the defendant made, influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause; (3) as a result of a legal proceeding, the plaintiff suffered a deprivation of liberty (apart from the initial seizure); and (4) the criminal proceeding has been resolved in the plaintiff's favor. *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010).

To satisfy the first element, the plaintiff must prove the defendant acted with the requisite degree of blameworthiness or culpability. *See Johnson v. Moseley*, 790 F.3d 649, 654 (6th Cir. 2015). While malice is not required, something more than "negligence or innocent mistake" is necessary. *Id.* at 655. Passive or neutral participation in the prosecutor's decision to prosecute is not actionable; instead, a plaintiff must demonstrate deliberate or reckless conduct by the defendant, usually by proving that the defendant officer made false statements, flagrant misrepresentations, or fabricated evidence to support the prosecution. *Id.* A plaintiff must also prove the defendant's conduct materially influenced the decision to prosecute. *Sykes*, 625 F.3d at 316; *see also Gregory v. City of Louisville,* 444 F.3d 725, 759-60 (6th Cir. 2006) (no constitutional violation absent evidence that fabricated police notes led to decision to proceed to trial); *see also Robertson v. Lucas*, 753 F.3d 606, 616-17 (6th Cir. 2014) (the alleged misrepresentation must pertain to the plaintiff; false testimony about another person is not actionable).

The record is devoid of evidence that Cannon, ***acting in his capacity as a SCSD deputy sheriff,*** did anything prior to trial that materially influenced the prosecutor's decision to pursue charges against Yell. And even if Cannon wearing his SCSD uniform at trial—the only thing connecting his employment as a deputy sheriff to the Yell fire—could be construed as participation in Yell's prosecution ***in his capacity as a SCSD deputy***, he is entitled to absolute immunity for

that conduct and, consequently, summary judgment on Yell's § 1983 malicious prosecution claim. *Rehberg*, 566 U.S. 367.

### B. Due Process (Count II) and Fabrication of False Evidence (Count III)

Yell alleges his Fourth and Fourteenth Amendment rights were violated based on the defendants' reckless investigation, withholding of exculpatory evidence, and fabrication of false reports, testimony, and other evidence. A reckless investigation, as alleged by Yell, does not give rise to a due process claim under the Fourteenth Amendment. *Turner v. Long*, No. 3:20-CV-P813-CHB, 2021 WL 2096714, *4 (W.D. Ky. May 24, 2021). The Sixth Circuit has recognized, however, that due process may be violated by suppressing materially exculpatory evidence or presenting knowingly fabricated evidence so long as "a reasonable likelihood exists that the false evidence would have affected the decision of the jury." *Jackson v. City of Cleveland*, 925 F.3d 793, 813-17 (6th Cir. 2019) (quoting *Gregory*, 444 F.3d at 737). Similar to Yell's malicious prosecution claim, there is no evidence Cannon, ***in his capacity as a SCSD deputy sheriff***, withheld evidence or presented false evidence prior to trial. And even if wearing his SCSD uniform at trial were sufficient to allow a jury to find Cannon testified in his capacity as a deputy sheriff, any claim based on his testimony is barred by absolute immunity. *Rehberg*, 566 U.S. at 367. The Court should therefore grant summary judgment in Cannon's favor on Yell's § 1983 claims against him in his capacity as a SCSD deputy sheriff for due process violations and fabrication of false evidence.

### C. Failure to Intervene (Count V)

"[A] police officer can be liable under § 1983 when he or she fails to intervene and prevent constitutional violations" if the plaintiff proves he "'(1) observed or had reason to know that [constitutional harm] would be or was [taking place], and (2) had both the opportunity and the

means to prevent the harm from occurring.'" *Virgil v. City of Newport*, No. CV 16-224-DLB-CJS, 2018 WL 344986, at *12 (E.D. Ky. Jan. 9, 2018) (quoting *Sheffey v. City of Covington*, 564 Fed. App. 783, 793 (6th Cir. 2014), *aff'd* 745 Fed. App. 618 (6th Cir. 2018). But liability cannot attach if the officer did not have 'a realistic opportunity to intervene and prevent harm.'" *Id.* (quoting *Wells v. City of Dearborn Heights*, 538 Fed. App. 631, 640 (6th Cir. 2013)).

There is no basis for finding Cannon, ***in his capacity as a SCSD deputy sheriff***, took part in the pretrial investigation, the decision to prosecute, or any post-conviction proceedings pertaining to Yell. Rather, if Cannon was involved at all in Yell's prosecution ***in his capacity as a SCSD deputy sheriff***, his participation was limited to testifying at trial while wearing his SCSD uniform. As a trial witness, Cannon did not decide what other witnesses to call or what questions to ask them, so even assuming those witnesses violated Yell's constitutional rights through their testimony, there is no evidence Cannon, ***in his capacity as a SCSD deputy sheriff***, had any reason to know of the violations or an opportunity and the means to prevent them from occurring. Accordingly, Cannon, in his capacity as a SCSD deputy sheriff, is entitled to summary judgment on Yell's § 1983 failure-to-intervene claim.

### D. Civil Conspiracy (Count VI)

Yell alleges the defendants conspired to violate his constitutional rights in an attempt to frame him for the deadly fire. To establish a civil conspiracy under § 1983, a plaintiff "must show that (1) a 'single plan' existed, (2) [the defendant officer] "shared in the general conspiratorial objective" to deprive [the plaintiff] of his constitutional (or federal statutory) rights, and (3) 'an overt act was committed in furtherance of the conspiracy that caused injury' to [the plaintiff]." *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (quoting *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985)). Where there is no evidence a particular defendant shared the

conspiratorial objective at issue, he is entitled to summary judgment. *Id.* at 602-03. Like Yell's other federal claims, his § 1983 conspiracy claim against Cannon ***in his capacity as a SCSD deputy sheriff*** fails as a matter of law because the only thing Cannon did arguably ***in his capacity as a SCSD deputy sheriff*** was testify at trial, and there is no evidence he shared in any objective to procure Yell's conviction via unconstitutional means. Cannon is therefore entitled to summary judgment on Yell's civil conspiracy claim against him in his capacity as a SCSD deputy sheriff.

**II.     Scott County is entitled to summary judgment on Yell's § 1983 claims against it because there is no evidence Yell's constitutional rights were violated pursuant to a policy or custom of Scott County.**

Although he did not assert a separate claim against Scott County for municipal liability, Yell alleged in each § 1983 claim that his rights were violated pursuant to the municipal defendants' policies and practices. A county is responsible for a constitutional violation under § 1983 only when "execution of a government's policy or custom … inflicts the injury." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). And "local governments are responsible only for their *own* illegal acts. They are not vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (emphasis in original) (internal quotation and citations omitted).

There are four methods of proving the existence of the requisite policy or custom: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citation omitted). Notwithstanding the various paths to *Monell* liability, "[a] *Monell* claim that survives summary

judgment is exceedingly rare, and rightly so." *Hanson v. Madison Cnty. Det. Ctr.*, 736 Fed. App. 521, 542 (6th Cir. 2018).

Yell's *Monell* claim against Scott County is not among the rare successful ones. As Cannon testified in his deposition, the SCSD had nothing to do with PJ, Cannon never investigated fires as a deputy sheriff, and the SCSD did not have any authority or responsibility to supervise or train Cannon or PJ with regard to fire investigations. Additionally, no official policies of the SCSD or Scott County address Cannon's work with accelerant detection canines specifically or fire investigations generally. Rather, PJ was assigned to Cannon by the ATF pursuant to a contract between the ATF and GFD. The ATF trained and certified Cannon and PJ to participate in the ADCP, and the GFD paid Cannon and was financially responsible for PJ. Thus, even if there were evidence of past constitutional violations arising from Cannon's fire investigations, there is no basis to conclude Scott County had any reason to be aware of them, much less to believe they arose from Cannon's work as a deputy sheriff such that any acquiescence could form an official policy or custom of Scott County. Scott County is therefore entitled to summary judgment on Yell's § 1983 claims against it.

**III. Cannon, in his capacity as a SCSD deputy sheriff, is entitled to summary judgment on Yell's state-law claims against him for malicious prosecution (Count IX), intentional infliction of emotional distress (Count XI), negligent infliction of emotional distress (Count XII), and negligence (Count XIII) because Cannon is afforded absolute immunity for testifying at trial—the only activity in which he was arguably involved as a deputy sheriff.**

Like federal law, the rule is well established under Kentucky law "that the testimony of a witness given in the course of a judicial proceeding is privileged and will not support a cause of action against him." *McClarty v. Bickel*, 159 S.W. 783, 784 (Ky. 1913). Since the only thing Cannon did that could conceivably be construed as participating in Yell's prosecution *in his capacity as a SCSD deputy sheriff* was testifying at the criminal trial in his SCSD uniform, any

claim against him is barred by the absolute testimonial privilege, and he is entitled to summary judgment.

As an initial matter, Yell's stand-alone claims for emotional distress should be dismissed because those damages are recoverable for his other tort claims. "[R]ecovery for emotional distress, when it can be claimed under a traditional tort, can only be had under that tort." *Childers v. Geile*, 367 S.W.3d 576, 582 (Ky. 2012). A plaintiff cannot concurrently maintain actions for negligence and intentional infliction of emotional distress based on the same facts. *Id.* at 580-81; *see also Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 298-99 (Ky. App. 1993) ("where an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed, and the conduct was not intended solely to cause extreme emotional distress in the victim, the tort of outrage will not lie"). The same reasoning applies to claims for negligent infliction of emotional distress. *See Woosley v. City of Paris*, 591 F. Supp. 2d 913, 923 (E.D. Ky. 2008), *as amended* (Dec. 4, 2008); *Horn v. City of Covington*, Civil Action No. 14-73-DLB-CJS, 2015 WL 4042154, at *12 (E.D. Ky. July 1, 2015). Yell's Complaint contains claims against Cannon for negligence and malicious prosecution, and he can recover emotional distress damages if he prevails on those claims. *See Howell v. Sanders*, 755 F. Supp. 2d 789, 800 (E.D. Ky. 2010) ("Damages for emotional harm being available in an action for malicious prosecution, plaintiff may not maintain a separate cause of action for intentional infliction of emotional distress."). Yell's intentional and negligent infliction of emotional distress claims should therefore be dismissed.

In any event, Yell's claims against Cannon ***in his capacity as a SCSD deputy sheriff*** for malicious prosecution, emotional distress, and negligence are barred for the same reason his federal claims fail as a matter of law. Each of Yell's claims requires some action or inaction by

the defendant—initiation, continuation, or procurement of criminal proceedings for malicious prosecution; outrageous or intolerable and intentional or reckless conduct for intentional infliction of emotional distress; and breach of a duty for negligence—that caused the plaintiff emotional distress. *See Martin v. O'Daniel*, 507 S.W.3d 1, 11-12 (Ky. 2016) (malicious prosecution); *McDonald's Corp. v. Ogborn*, 309 S.W.3d 274, 293-94 (Ky. App. 2009) (intentional infliction of emotional distress); *Osborne v. Keeney*, 399 S.W.3d 1, 17 (Ky. 2012) (negligent infliction of emotional distress); *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88 (Ky. 2003) (negligence). And the only conduct in which Cannon engaged even arguably in his capacity as a SCSD deputy sheriff was testifying at Yell's trial, for which he is absolutely immune. *See McClarty*, 159 S.W. at 784. Cannon is therefore entitled to summary judgment on each of Yell's state-law claims against him in his capacity as a SCSD deputy sheriff.

### IV. Yell's claims against Scott County for negligent training, supervision, and discipline (Count X) and respondeat superior (Count XIV) are barred by sovereign immunity.

Yell asserts a claim against Scott County for negligent training, supervision, and discipline. Yell also seeks to impose liability against Scott County based on the doctrine of respondeat superior. However, any state-law claim against Scott County for its own negligence is barred by sovereign immunity. *Schwindel v. Meade County*, 113 S.W.3d 159, 163 (Ky. 2003); *City of Paintsville v. Haney*, 2023-SC-0361-DG, 2025 WL 2388206, at *19 (Ky. Aug. 14, 2025) (not final). Sovereign immunity also bars vicarious liability. *Schwindel*, 113 S.W.3d at 163. Accordingly, Scott County is entitled to summary judgment on Counts X and XIV of Yell's Complaint.

**V.  In the alternative, Cannon adopts all arguments made in his capacity as a firefighter with the GFD.**

There is no evidence Cannon, in his capacity as a SCSD sheriff, participated in the fire investigation or Yell's prosecution either before or after testifying at the criminal trial. However, if the Court believes a jury could find he did undertake non-testimonial activities in his capacity as a SCSD deputy sheriff or that his testimony is not shielded by absolute immunity, Cannon adopts and incorporates as if set forth fully herein all arguments made on his behalf in his capacity as a firefighter with the GFD, including but not limited to all absolute and qualified immunity defenses.

## CONCLUSION

For the foregoing reasons, Defendants Buster Cannon, in his capacity as a former Scott County Deputy Sheriff, and Scott County, Kentucky, request the Court grant their Motion, enter summary judgment in their favor, and dismiss with prejudice all claims asserted against them herein.

Respectfully submitted,

/s/ D. Barry Stilz
D. Barry Stilz
Lynn Sowards Zellen
KINKEAD & STILZ, PLLC
301 East Main Street, Suite 900
Lexington, Kentucky 40507
Phone: (859) 296-2300
Facsimile: (859) 296-2566
bstilz@ksattorneys.com
lzellen@ksattorneys.com
*Counsel for Defendants Scott County, Kentucky, and Buster Cannon, in his individual capacity as a former Scott County Deputy Sheriff*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on October 3, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing, if applicable, to all counsel of record.

      /s/ D. Barry Stilz
*Counsel for Defendants Scott County, Kentucky, and Buster Cannon, in his individual capacity as a former Scott County Deputy Sheriff*