

LOUISVILLE   LEXINGTON   LONDON   FLORENCE   CINCINNATI   INDIANAPOLIS   ORLANDO   JACKSONVILLE   TAMPA

# CASE NO. 1:20-CV-0047-GNS

# ROBERT YELL

# V.

# CITY OF RUSSELVILLE, KY, ET AL.

## DEPONENT:

## BUSTER CANNON

## DATE:

## November 08, 2022



a courtroom
**powerhouse**

✉ schedule@kentuckianareporters.com

☎ 877.808.5856 | 502.589.2273

Exhibit 5

1       UNITED STATES DISTRICT COURT

2       WESTERN DISTRICT OF KENTUCKY

3          AT BOWLING GREEN

4        CASE NO. 1:20-CV-0047-GNS

5

6            ROBERT YELL

7             Plaintiff,

8

9               v.

10

11       THE CITY OF RUSSELLVILLE, KY, ET AL.,

12             Defendants

13

14

15

16

17

18

19

20

21

22

23   DEPONENT:   BUSTER CANNON

24   DATE:      NOVEMBER 8, 2022

25   REPORTER:   SANDRA VENTURA

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CANNON, taken on November 08, 2022

```
 1                      APPEARANCES

 2

 3   ON BEHALF OF THE PLAINTIFF, ROBERT YELL:

 4   Elliot Slosar, Esquire

 5   Amy Robinson Staples, Esquire (VIDEOCONFERENCE)

 6   Molly Campbell, Esquire (VIDEOCONFERENCE)

 7   Loevy & Loevy

 8   311 North Aberdeen Street

 9   Third Floor

10   Chicago, Illinois 60607

11   Telephone No.: (312) 243-5900

12   E-mail: amy@loevy.com

13            elliot@loevy.com

14            jon@loevy.com

15

16   ON BEHALF OF THE DEFENDANTS, JOHN HIGGINS, CHAD

17   EGGLESTON, JIM PENDERGRAF, KENNETH EDMONDS, RONALD MILLS

18   AND THE CITY OF RUSSELLVILLE:

19   Jennifer L. Langen, Esquire

20   Adams Law PLLC

21   40 West Pike Street

22   Covington, Kentucky 41011

23   Telephone No.: (859) 495-3798

24   E-mail: jlangen@adamsattorneys.com

25   (APPEARED VIA VIDEOCONFERENCE)
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1                    APPEARANCES (CONTINUED)

 2

 3    ON BEHALF OF THE KENTUCKY STATE POLICE DEFENDANTS, DAVID

 4    WEST, JAMAN CHILDERS AND WILLIAM SMITH:

 5    Alea A. Arnett, Esquire

 6    Kentucky State Police Legal Office

 7    919 Versailles Road

 8    Frankfort, Kentucky 40601

 9    Telephone No.: (502) 782-1800

10    E-mail: alea.arnett@ky.gov

11    (APPEARED VIA VIDEOCONFERENCE)

12

13    ON BEHALF OF THE LOGAN COUNTY DEFENDANTS:

14    J.A. Sowell, Esquire

15    ELPO Law

16    1101 College Street

17    Bowling Green, Kentucky 42101

18    Telephone No.: (270) 781-6500

19    E-mail: jasowell@elpolaw.com

20    (APPEARED VIA VIDEOCONFERENCE)

21

22

23

24

25
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 5 of 396 PageID
#: 1510
The Deposition of BUSTER CANNON, taken on November 08, 2022
4

```
 1              APPEARANCES (CONTINUED)

 2

 3   ON BEHALF OF THE DEFENDANTS, SCOTT COUNTY SHERIFF'S

 4   DEPARTMENT AND SCOTT COUNTY DEPUTY SHERIFF BUSTER

 5   CANNON:

 6   D. Barry Stilz, Esquire

 7   Kinkead & Stilz, PLLC

 8   301 East Main Street

 9   Suite 800

10   Lexington, Kentucky 40507

11   Telephone No.: (859) 296-2300

12   E-mail: bstilz@ksattorneys.com

13

14   ON BEHALF OF THE DEFENDANTS, CITY OF GEORGETOWN AND

15   BUSTER CANNON:

16   Charles D. Cole, Esquire

17   Sturgill, Turner, Barker & Moloney, PLLC

18   333 West Vine Street

19   Suite 1500

20   Lexington, Kentucky 40507

21   Telephone No.: (859) 255-8581

22   E-mail: ccole@sturgillturner.com

23

24

25
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 6 of 396 PageID
The Deposition of BUSTER CANNON, taken on November 08, 2022
#: 1511
5

```
 1                   APPEARANCES (CONTINUED)

 2

 3   ON BEHALF OF THE DEFENDANT, ALAN GREGORY:

 4   Chris J. Gadansky, Esquire

 5   McBrayer, PLLC

 6   500 West Jefferson Street

 7   Suite 2400

 8   Louisville, Kentucky 40507

 9   Telephone No.: (502) 327-5400

10   E-mail: cgadansky@mcbrayerfirm.com

11   (APPEARED VIA VIDEOCONFERENCE)

12

13   Also present: Amanda DeMent, Videographer

14

15

16

17

18

19

20

21

22

23

24

25
```



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 7 of 396 PageID
#: 1512
The Deposition of BUSTER CANNON, taken on November 08, 2022
6

| 1  | INDEX | |
|----|-------|--|
| 2  | | Page |

3  PROCEEDINGS                                      9
4  DIRECT EXAMINATION BY MR. SLOSAR                 12
5
6                        EXHIBITS
7  Exhibit                                        Page
8  1 - Daubert Hearing                             69
9  3 - Trial Testimony                            243
10 5 - Kentucky Court of Justice Schulte v.
11     Bobby Hammons, et al                        85
12 6 - Kentucky Court of Justice Wittenbarger,
13     et al v. City of Georgetown                 88
14 7 - Kentucky Court of Justice Wittenbarger,
15     et al v. City of Georgetown                 90
16 8 - Kentucky Court of Justice Jeff Brooks,
17     et al v City of Georgetown                  91
18 9 - Kentucky court of Justice, David Raisor,
19     et al v. City of Georgetown                 91
20 10 - Georgetown Fire Department Personnel
21      File                                       92
22 11 - Scott County Personnel File               92
23 13 - Training Records/Certificates            165
24 14 - Responses to requests for production     212
25 16 - Laboratory Form                          300



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

The Deposition of BUSTER CANNON, taken on November 08, 2022

7

| 1 | EXHIBITS (CONTINUED) | |
| 2 | Exhibit | Page |
| 3 | 18 - 1992 NFPA 921s | 163 |
| 4 | 19 - 2001 NFPA 921s | 163 |
| 5 | 20 - Request to Response for Production | 213 |
| 6 | 21 - Appraisal | 144 |
| 7 | 22 - ATF Guidelines | 179 |
| 8 | 23 - ATF Document | 202 |
| 9 | 24 - Records from ATF | 37 |
| 10 | 25 - AT Operational Activity Report Form | 324 |
| 11 | 26 - PowerPoint Presentation | 334 |
| 12 | 27 - Photograph | 106 |
| 13 | 28 - January 1st, 2004 Investigation | 335 |
| 14 | 30 - Arson Report | 345 |
| 15 | 31 - Arson Report | 349 |
| 16 | 32 - Arson Report | 351 |

17

18

19

20

21

22

23

24

25



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 9 of 396 PageID
#: 1514
The Deposition of BUSTER CANNON, taken on November 08, 2022
8

1                        STIPULATION

2

3   The video deposition of BUSTER CANNON was taken at

4   Kentucky Court Reporters, 175 East Main Street, Suite

5   105, Lexington, Kentucky 40507, on Tuesday, the 8th day

6   of November, 2022 at 10:35 a.m. (ET); said video

7   deposition was taken pursuant to the Federal Rules of

8   Civil Procedure.

9

10  It is agreed that Sandra Ventura, being a Notary Public

11  and Court Reporter for the State of Kentucky, may swear

12  the witness and that the reading and signing of the

13  transcript is not waived.

14

15

16

17

18

19

20

21

22

23

24

25

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

| | |
|---|---|
| 1 | PROCEEDINGS |
| 2 | VIDEOGRAPHER:  Okay.  We are now on the record. |
| 3 | My name is Amanda DeMent.  I am the videographer |
| 4 | today and Sandra Ventura is the court reporter. |
| 5 | Today is the 8th day of November 2022.  The time is |
| 6 | 10:35 a.m.  We are at the offices of Kentucky Court |
| 7 | Reporters to take the deposition of Buster Cannon in |
| 8 | the matter of Robert Yell versus City of |
| 9 | Russellville, et al., pending in the United States |
| 10 | District Court, Western District of Kentucky at |
| 11 | Bowling Green, case number 120-CV-0047-GNS. |
| 12 | Will counsel please identify themselves for the |
| 13 | record? |
| 14 | MR. COLE:  This is Charles Cole.  I'm here for |
| 15 | Buster Cannon and the City of Georgetown.  I'm |
| 16 | wondering, before we go around, is there a way to |
| 17 | zoom that camera in solely on Mr. Cannon, and I not |
| 18 | be on the picture? |
| 19 | VIDEOGRAPHER:  It is being recorded on this |
| 20 | camera right here, so he is just the main focus. |
| 21 | MR. COLE:  Okay. |
| 22 | MR. STILZ:  Barry Stilz on behalf of Buster |
| 23 | Cannon and Scott County Sheriff's Department and |
| 24 | Scott County, Kentucky. |
| 25 | MS. LANGEN:  Jennifer Langen appearing via Zoom |

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 11 of 396
PageID #: 1516
The Deposition of BUSTER CANNON taken November 08, 2022
10

1  from Cincinnati, Ohio for the City of Russellville

2  and the Russellville defendants in their individual

3  capacities.

4      MR. SOWELL:  J.A. Sowell appearing remotely

5  from English, Lucas, Priest & Owsley of Bowling

6  Green, Kentucky on behalf of Logan County Detention

7  Center, Jailer Bill Jenkins and Logan County.

8      MR. GADANSKY:  Chris Gadansky, appearing for

9  Alan Gregory remotely.

10     MS. ARNETT:  Amber Arnett, appearing remotely

11  from Frankfort, Kentucky on behalf of Kentucky State

12  Police defendants David West, Jaman Childers and

13  Tommy Smith.

14     MR. SLOSAR:  Good morning, Mr. Cannon.  My name

15  is Elliot Slosar I represent the plaintiff Robert

16  Yell, and --

17     COURT REPORTER:  I'm sorry?

18     MR. SLOSAR:  -- currently taking this

19  deposition.

20     MR. COLE:  Elliot, you're really breaking up.

21     MR. SLOSAR:  I'm breaking up?

22     MR. COLE:  Yeah.

23     MR. SLOSAR:  I'll -- (audio cuts out) --

24  louder.  This is -- (audio cuts out) -- on behalf of

25  the plaintiffs.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 12 of 396
PageID #: 1517
The Deposition of BUSTER CANNON, taken November 08, 2022
11

```
1        COURT REPORTER:  I'm sorry, sir.  I can't hear
2   you.
3        MR. COLE:  Is there a way so we can see Elliot
4   as opposed to the whole group?
5        VIDEOGRAPHER:  Do you want to go off the record
6   real quick or...
7        MR. STILZ:  Elliot, you're freezing and you're
8   really kind of choppy.
9        MR. SLOSAR:  Oh, no.  That is not good.  I'm
10  sorry about that.
11       MR. STILZ:  Now he's good.
12       MR. SLOSAR:  Let me see if -- you know what,
13  maybe I'll call in.  Let me see if I can just call
14  in. That should fix the sound.
15       VIDEOGRAPHER:  I'll take us off the record for
16  the time being.  We're off the record at 10:37.
17       (OFF THE RECORD)
18       VIDEOGRAPHER:  We are back on the record for
19  the deposition of Buster Cannon.  Today is November
20  8th, 2022, and the time is 10:39.
21       MR. SLOSAR:  All right.  So, this is Elliot
22  Slosar appearing on behalf of the plaintiff.  Also -
23  - (audio distorts) --
24       MR. STILZ:  Can't hear you.
25       COURT REPORTER:  I'm sorry, sir.  I can't hear
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

 1      you.

 2              MR. COLE:  Can't hear you, Elliot.

 3              MR. SLOSAR:  Again?  All right.  I -- I might

 4      just need to speak louder.

 5              Molly, could you introduce yourself, please?

 6              MS. CAMPBELL:  Molly Campbell appearing

 7      remotely for the plaintiff, Robert Yell.

 8              MS. STAPLES:  Amy Robinson-Staples appearing

 9      remotely for the plaintiff, Robert Yell.

10              VIDEOGRAPHER:  Okay.  And now --

11              MR. SLOSAR:  All right.  I think that we can

12      finally get the witness under oath.

13              COURT REPORTER:  Please raise your right hand.

14              THE WITNESS:  (Raises hand).

15              COURT REPORTER:  Do you solemnly swear or

16      affirm the testimony you're about to give in this

17      case will be the truth, the whole truth, nothing but

18      the truth so help you God?

19              THE WITNESS:  I do.

20              COURT REPORTER:  Thank you.

21                   DIRECT EXAMINATION

22    BY MR. SLOSAR:

23      Q.    Mr. Cannon, my name is Elliot Slosar.  I'm

24    going to see you momentarily in person.

25              Can you hear me okay right now?

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 14 of 396
The Deposition of BUSTER CANNON, taken on November 08, 2022
PageID #: 1519
13

 1         A.    Yeah.  Can you slow down just a little bit?

 2         Q.    I will do my best to do that.  I'm sorry about

 3    that.  Sir, have you given a deposition before?

 4         A.    I believe I have, yes.

 5         Q.    When's the last time you gave a deposition?

 6         A.    It's been probably ten years or more.

 7         Q.    Do you remember what case that was in?

 8         A.    It was a small case at the Scott County

 9    Sheriff's Office where Barry Stilz represented me.

10         Q.    Were you a plaintiff or a defendant in that

11    lawsuit?

12         A.    I'm sorry.  I didn't -- I didn't catch that.

13         Q.    Were you a plaintiff -- were you being sued or

14    were you the person -- (audio cuts out.)

15              THE WITNESS:  He's breaking up.  I can't --

16              MR. STILZ:  Were you the plaintiff or the

17         defendant?  You were the defendant on one of them.

18              THE WITNESS:  Yeah, I was the defendant on one

19         of them.  Yes.

20    BY MR. SLOSAR:

21         Q.    Okay.  Mr. Cannon, today is going to be a

22    longer day, and if at any point you need to take a

23    break, get something to eat, use the washroom, speak to

24    your lawyers, will you just please let me know?

25         A.    Okay.


Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 15 of 396
PageID #: 1520
The Deposition of BUSTER CANNON taken on November 08, 2022
14

1    Q.   The only thing that I would ask is that if

2    there's a question pending that you answer the question

3    first before we take a break; is that fair?

4    A.   I'm sorry.  I didn't understand.

5    Q.   Sure.

6         I asked you, if there's a question pending to

7    you, I would just ask you answer the question before we

8    take a break, okay?

9    A.   Okay.

10   Q.   You're going to hear -- you've got a number of

11   lawyers present with you.  There are a number of lawyers

12   on the virtual computer participating, and they have a

13   right to make objections.  There is no judge here to

14   determine the validity of those objections today, so

15   unless your attorney instructs you not to answer a

16   question, even though you hear an objection, you're

17   still going to answer, okay?

18   A.   Okay.

19   Q.   I tend to not ask questions perfectly.  You'll

20   hear me much better when I'm in person with you in about

21   ten minutes.  But if there's a question that I ask you,

22   and you don't understand it, please just let me know and

23   I'll do my best to ask it a better way, okay?

24   A.   Okay.

25   Q.   Mr. Cannon, would you agree that the wrongful

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 16 of 396
The Deposition of BUSTER CANNON taken November 08, 2022
PageID #: 1521
15

1  conviction of an innocent person would be a travesty of

2  justice?

3       A.   Yes.

4       Q.   And would you also agree that as a law

5  enforcement officer part of your job was to investigate

6  so that you can find the truth?

7       A.   That's not correct.

8            MR. STILZ:  I'm going to object as to form, but

9       if he knows, he can answer.

10           Go ahead, Buster.

11  BY MR. SLOSAR:

12      Q.   You can answer.

13      A.   That's not correct.  I didn't investigate it.

14      Q.   Oh, I'm not asking you about this particular

15  case.  You were a law enforcement officer for the Scott

16  County Sheriff's Department for a very long time,

17  correct?

18      A.   That's correct.

19      Q.   And as a law enforcement officer, one of your

20  primary responsibilities was to find the truth, correct?

21      A.   Yes.

22      Q.   And would you agree as a law enforcement

23  officer that you would have known by 2004 that it was

24  critical for you to not have tunnel vision when

25  investigating a crime or a potential crime?



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CARROLL taken November 08, 2022

16

```
 1        A.    I'm not sure I understand that.  Can you
 2   rephrase it?
 3        Q.    Sure.  Have you ever heard of the phrase
 4   tunnel vision?
 5        A.    Yes.
 6        Q.    Would you agree as a law enforcement officer
 7   that by 2004, that it would have been critical for you
 8   to not have tunnel vision as you were conducting or
 9   participating in an investigation?
10        A.    Yes.
11        Q.    And would you agree that as a canine handler,
12   you would have known by 2004 that it would be critical
13   for you to not have tunnel vision when you were
14   participating in fire investigations with PJ?
15        A.    Yes.
16        Q.    And, sir, it's been a long time but would you
17   agree that if you could go back to September of 2004,
18   you would have done things differently in reference to
19   the fire investigation that we're about to talk about?
20        A.    No.
21        Q.    You would not have done a single thing
22   differently during the fire investigation that led to
23   criminal charges against Robert Yell; is that your
24   testimony?
25        A.    I didn't investigate that fire, but I wouldn't
```



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 18 of 396
The Deposition of BUSTER CANTRELL, taken on November 08, 2022
PageID #: 1523
17

1   change what I did.

2        Q.   You wouldn't change a single thing that you

3   did during this particular fire investigation, correct?

4        A.   Correct.

5        Q.   And -- and, specifically, you would not change

6   a single thing that you did with PJ when you were at the

7   scene of the fire on September 12th, 2004, correct?

8        A.   I'm sorry.  I didn't understand that question.

9        Q.   Sure.  You recall going to the fire scene in

10  this particular case on September 12th, 2004, correct?

11       A.   Yes.

12       Q.   That was down in Russellville, Kentucky; is

13  that right?

14       A.   Correct.

15       Q.   And at the time, you had a dog with you named

16  PJ who you loved very much, correct?

17       A.   Yes.

18       Q.   And by 2004 you would have had PJ as a dog for

19  approximately two years; is that right?

20       A.   I'm sorry.  Can you repeat that?

21       Q.   Sure.  By 2004 you would have had PJ as your

22  dog for approximately two years by that time, correct?

23       A.   Correct.

24       Q.   And you have reviewed your prior testimony in

25  preparing for this deposition, correct?



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 19 of 396
The Deposition of BUSTER CAMPBELL taken November 08, 2022
PageID #: 1524
18

```
 1              THE WITNESS:  I'm really having trouble
 2      understanding him.
 3              Can you repeat that?
 4      Q.    Sure.  Have you reviewed your prior testimony
 5 in this case before testifying here today?
 6      A.    Yes.
 7      Q.    And you testified between 2004 and today
 8 approximately on four separate occasions in reference to
 9 this case; is that fair?
10      A.    I'm going to have to ask you to repeat that
11 again.  I'm sorry.  It's just...
12      Q.    Over -- no, no.  It's not your fault.  This is
13 a travel issue for me.
14              Over the past 18 years you've testified on
15 approximately four occasions, correct?
16      A.    Yes.
17      Q.    And you've reviewed that testimony before this
18 deposition as part of your preparation process, correct?
19      A.    Correct.
20      Q.    And having reviewed your prior testimony, it's
21 your testimony today that you would not have changed a
22 single thing that you did in reference to this
23 particular fire investigation, correct?
24      A.    Correct.
25              MR. COLE:  I'm going to object to the form.
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

 1      Q.   If you had to go back and do things over

 2  again, you would do it the same exact way, right,

 3  Mr. Cannon?

 4      A.   Yes.

 5      Q.   And, sir, you certainly recall that when you

 6  took PJ through the house, the first time on September

 7  12th, 2004, PJ did not make any alert, correct?

 8      A.   When I first took her in; is that your

 9  question?

10      Q.   Yes, sir.

11      A.   When I first took her in, I took her in on a

12  long leash.

13      Q.   Sir, my question to you didn't reference a

14  leash.  I -- I understand you had her on a leash.  The

15  first time you went to the -- into the home on

16  September 12th, 2004 you walked PJ around throughout

17  that home, she did not make any alerts, correct?

18      A.   Correct.

19      Q.   You never documented that in a report, did

20  you?

21      A.   No.

22      Q.   Never put that in any notes, did you?

23      A.   No.

24      Q.   And, in fact, to this day, you have never

25  created any type of report relating to this case,



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    correct?

2        A.    Correct.

3        Q.    Now -- and the fact that you didn't create a

4    report in relation to your activities in this case, that

5    was an outlier as to what your practice was in 2004,

6    correct?

7        A.    Can you repeat that?

8        Q.    Sure.  By 2004, you had a contract --

9        A.    The screen froze.

10       Q.    By 2004 you had a contract with the ATF, did

11   you not?

12       A.    I'm not -- can you rephrase that?  I'm not

13   understanding your question, please.

14       Q.    By 2004 you had a contract with the ATF

15   correct?

16       A.    Yes.

17       Q.    And as part of that contract you were required

18   to document fire investigation where you used PJ,

19   correct?

20       A.    I was -- I was required to fill out a form to

21   sent to the ATF.

22       Q.    But you didn't do that in this case, did you?

23       A.    Yes, I did.

24       Q.    Sir, is it your testimony that in this

25   particular case you created a form that you sent off to

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 22 of 396
The Deposition of BUSTER CANON, taken November 08, 2022    PageID #: 1527

21

1    the ATF?

2        A.    Correct.

3        Q.    If you had testified differently before under

4    oath that you did not create that form, would you have

5    been testifying truthfully?

6            MR. COLE:  Object to the form.

7        Q.    You can answer.

8        A.    Can you repeat it?

9        Q.    If you had testified previously that you never

10    created a form in this case that was sent to the ATF,

11    would you have been lying?

12            MR. COLE:  Object to the form.

13        A.    No.

14        Q.    Your recollection would have been better at

15    that time than it was here today, fair?

16        A.    Fair.  Yes.

17        Q.    Have you seen -- in preparation for this

18    deposition, have you seen any form that you sent to the

19    ATF about the fire investigation that you participated

20    in on September 12th, 2004 in Russellville, Kentucky?

21        A.    I seen one small form, yes.

22        Q.    I'm sorry.  You're saying you did see that

23    form?

24        A.    I seen the form where I filled out that I

25    responded is to Russellville that I sent to the ATF.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CANTRELL, taken on November 08, 2022

```
 1          Q.    Now, sir, you testified a few moments ago that
 2    you wouldn't have changed a single thing that you did as
 3    part of this fire investigation.  Do you recall
 4    testifying to that effect?
 5          A.    Yes.
 6          Q.    And after PJ did not make any alert when you
 7    took her through the house on the first occasion, you
 8    decided to take her through a second time; is that
 9    right?
10          A.    Correct.
11          Q.    And that first time you took PJ through the
12    house you had her on a short leash, correct?
13          A.    No.
14          Q.    Oh, I apologize.  You're right.  Let me strike
15    that question.
16                The first time you took PJ through the house
17    you had her on a long leash; is that right?
18          A.    Correct.
19          Q.    And that was consistent with the training that
20    you had received at the training academy; is that right?
21          A.    It's consistent with the AFT training, yes.
22          Q.    And can you give me the name of that academy
23    again?
24          A.    Say again, please.
25          Q.    Sure.  What was the name of that training
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

 1   academy?  I -- can you please tell us?

 2          THE WITNESS:  I'm still not able to keep up

 3      with him.  His mouth is moving, the voice is

 4      talking.  I can't...

 5      Q.   I -- Mr. Cannon, do you recall the name of the

 6   training academy that you went to in 2002?

 7      A.   Do I recall the academy that I went to for the

 8   training?

 9      Q.   Yes, sir.  Yes, sir.

10      A.   Yes, I do.

11      Q.   Can you tell us, please?

12      A.   Yeah.  It was -- it was a standard ATF

13   training facility in Front Royal, Virginia where they

14   teach you how to handle the dog.  The dog is already

15   imprinted when we get them, so we have nothing to do

16   with training the canine.  They train us to handle the

17   dog.  They work on a food reward system.

18      Q.   That's right.  And part of training -- and

19   during your training, didn't the academy teach you that

20   it was appropriate to walk a dog through a fire

21   investigation on a long leash?

22      A.   Yes, they did.

23      Q.   And -- and when -- and when you walked through

24   PJ on September 12th, 2004 through the mobile home that

25   caught fire, you walked her through every room of that

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 25 of 396
The Deposition of BUSTER CARTER taken on November 08, 2022
PageID #: 1530

24

1    mobile home, correct?

2         A.    Not on the long leash, no.  If I may

3    elaborate?  When I first took her in --

4         Q.    Sure.  Tell us what you did.

5         A.    When I first took her in on a long leash, we

6    started toward the rear of the house, the back of the

7    trailer.  And when we got to the room where the toddler

8    was found deceased on the bed, she climbed up on the bed

9    and sniffed around, and she just kind of went into a

10   mood to where she wasn't wanting to work anymore. That's

11   when I took her back outside and let her have her little

12   break, and I recalibrated her and I brought her back in

13   on a short leash so that she wouldn't go back in that

14   room.  And with that short leash, we done a systematic,

15   direct approach to the whole house.

16        Q.    Okay.  And just going back to the first time -

17   - the first time you took her through there -- isn't it

18   true that you took her on a walk through to see if she

19   would alert to anything on her own?

20        A.    That was the purpose of the long leash.

21   Unfortunately, we didn't get to complete that long

22   leash, because she got into a different mood --

23        Q.    Prior -- oh, sorry.  What were you -- what

24   were you saying?  She got into a different mood?

25        A.    She got into a different mood after she smelt

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 26 of 396
The Deposition of BUSTER CANNON, taken on November 08, 2022
PageID #: 1531
25

1    the body that had been on that bed and I had to take her

2    back out.

3              MR. SLOSAR:  Let's -- let's pause the

4        deposition.  I'm pulling up.  So, if we could take a

5        five-minute break and go off the record.

6              VIDEOGRAPHER:  Okay.  We're off the record at

7    10:57.

8              (OFF THE RECORD)

9              VIDEOGRAPHER:  We are back on the record for

10       the deposition of Buster Cannon.  Today is November

11       8th, 2022, and the time is 11:05.

12   BY MR. SLOSAR:

13       Q.   Mr. Cannon, good to see you in person.

14       A.   Okay.

15       Q.   Sorry about that.  If you can't hear anything

16   -- or if you don't understand what I'm saying, just let

17   me know, and I'll -- I'll do better, okay?

18       A.   Okay.

19       Q.   I do speak pretty fast, so I'll do my best to

20   go slower but you just let me know if it's a problem,

21   all right?

22       A.   I'll say slow down.

23       Q.   Okay.  Yeah.  Slow down.  Less questions means

24   less answers.  I gotcha.

25              So, before we took a break, we were talking a

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 27 of 396
PageID #: 1532
The Deposition of BUSTER CARROLL taken November 08, 2022
26

1  little bit about when you first went through the house

2  with PJ, she was on a long leash, right?

3      A.   Correct.

4      Q.   And she didn't have any alerts to any

5  accelerants, correct?

6      A.   We didn't go through the whole house but

7  that's correct.

8      Q.   Uh-huh.  And you certainly did walk her

9  through portions of the home where she alerted on the

10 second trip, correct?

11     A.   I walked her through the whole house.  We

12 started in the back, again, where I had her on a long

13 leash.

14     Q.   Uh-huh.

15     A.   And, then, we done a systematic, direct

16 approach to it.  So, it wasn't like I took her to a

17 direct spot to alert on.  When she alerts, she alerts on

18 something she finds, not what I put her on.

19     Q.   Well, the second time you went through the

20 house, you had her on a short leash, right?

21     A.   Right.

22     Q.   And during that second trip, you presented

23 certain areas to the dog that you believed could have an

24 accelerant, correct?

25     A.   It wasn't certain areas that I presented.  It



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 28 of 396
The Deposition of BUSTER CAMPBELL taken on November 08, 2022
PageID #: 1533
27

1   was what she found.

2       Q.   Well, if you testified previously under oath

3   that you presented an area to the dog, would that have

4   been truthful?

5       A.   No.  I don't believe --

6       Q.   Okay.  You would not have been testifying

7   truthfully there?

8       A.   Well, I kind of misunderstood that question.

9   Can you repeat that for me?

10      Q.   Sure.  I'm --

11      A.   Or rephrase it.

12      Q.   You testified on approximately four different

13  occasions about this particular fire investigation,

14  right?

15      A.   Right.

16      Q.   And you reviewed your testimony before this

17  deposition, right?

18      A.   Right.

19      Q.   And when you were reviewing your testimony,

20  did you see anything in there where you were like, oh,

21  Buster, you know, that was -- that was inaccurate, what

22  you were telling the judge or the jury?  Did you see

23  anything in there that stood out to you as being false?

24      A.   No.

25      Q.   Okay.  Everything -- from -- from your review,



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 29 of 396
The Deposition of BUSTER CARROLL taken on November 08, 2022
PageID #: 1534
28

1    everything you testified before was true, right?

2         A.    Yes.

3         Q.    Now, if you had testified in December of 2010

4    that, quote, What I'll do is I'll present that area to

5    the dog.  I want her to get her nose down and sniff, get

6    close to the floor, the wall or the bed, wherever I want

7    her to work, end quote.  If you testified to that effect

8    in 2010, would that have been true?

9         A.    Yes.

10        Q.    Okay.  And that, in fact, is what you did with

11   PJ when you walked her through the home on the second

12   occasion, correct?

13        A.    Yes.

14        Q.    You had her on a short leash, right?

15        A.    Yes.

16        Q.    You presented areas of the home to her,

17   correct?

18        A.    Presented the whole house to her.

19        Q.    Well, you testified specifically, what I'll do

20   is I'll present that area to the dog?

21        A.    Yes.

22        Q.    Okay.  And, in fact, you would assist PJ in

23   getting her nose down into that area, wouldn't you?

24        A.    No.

25        Q.    You're saying that that never happened?



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CARROLL, taken November 08, 2022

29

```
 1        A.    I don't -- the way we do this is, once we get

 2   the dog on the short leash, we'll ask the dog to seek

 3   and we'll put our hand down as to guide her as to where

 4   we want to go, which is part of this systematic, direct

 5   approach.

 6        Q.    You put your hand down?

 7        A.    Put my hand down and lead her.

 8        Q.    Lead her to the area?

 9        A.    Lead her wherever I want her to go.

10        Q.    Uh-huh.  And in this -- based on your

11   testimony in 2010, you led her to the area where you

12   thought that accelerants may be found, correct?

13        A.    Correct.

14        Q.    And it was only then that PJ gave you any

15   alerts, correct?

16        A.    When we first started, correct.

17        Q.    Well, when you first started, you walked her

18   through --

19        A.    Right.

20        Q.    -- she gave you no alerts, right?

21        A.    I'm talking when we done the short leash.

22        Q.    On the short leash?

23        A.    Yes.

24        Q.    Okay.  The training program that you went to

25   was Front Royal, Virginia; is that right?
```



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 31 of 396
The Deposition of BUSTER CARR, taken on November 08, 2022
Page ID #: 1536
30

1    A.    Yes.

2    Q.    And, in fact, when you were conducting this

3    particular investigation in -- strike that.

4          When you were participating in the fire

5    investigation, 2004, you did not believe that it was

6    problematic to overly guide the dog to an area where you

7    thought there might be an accelerant, correct?

8    A.    I didn't overly guide her, but no.

9    Q.    You thought that was perfectly permissible,

10   right?

11   A.    Yes.

12   Q.    And, sir, isn't it true that you were trained

13   at the ATF that you should not be overly guiding dogs

14   during a fire investigation?

15   A.    True.

16   Q.    And, in fact, they told you that if you did

17   that, it was likely that overly guiding dogs could

18   result in a false alert, correct?

19   A.    I don't recall hearing that, no.

20   Q.    Well, isn't it true that one of the things

21   they told you is that if you overly guide dogs, you

22   don't know whether they're going to give you a true

23   alert or a false alert?

24   A.    I don't recall even hearing that.

25   Q.    Well, they gave you materials at that training



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

1    that you retained, correct?

2         A.    Yes.

3         Q.    And you've reviewed some of those materials, I

4    imagine, in preparation for this deposition, have you?

5         A.    No.

6         Q.    You haven't reviewed any of those training

7    materials?  Okay.  We're going to go through some of

8    that stuff later today.

9               Isn't it true that at the ATF academy, you

10   actually were given instruction that you needed to, as a

11   handler, present and move without giving PJ cues?

12        A.    True.

13        Q.    That was something that the ATF noticed you

14   had a problem doing back in 2002, correct?

15        A.    Don't recall that.

16        Q.    Well, certainly they would have told you that

17   during the training academy that you took in 2002,

18   right?

19        A.    They would have told me, yes.

20        Q.    Yeah.  And so you would have known at least in

21   2002 that as a handler you should not be giving a canine

22   cues during the course of a fire investigation, correct?

23        A.    True.

24        Q.    And you would have known in 2002 that as a

25   canine handler, that giving a canine cues during the



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 33 of 396
The Deposition of BUSTER CANTRELL taken on November 08, 2022
PageID #: 1538

32

1    course of a fire investigation could lead to an

2    unreliable alert?

3        A.    True.

4        Q.    And -- and that training that you took in

5    2002, your training didn't end there, right?

6        A.    True.

7        Q.    You -- you kept getting additional training

8    between 2002 and 2004, correct?

9        A.    Correct.

10       Q.    And, in fact, that training not only related

11   to PJ but also to you as a dog handler, right?

12       A.    Correct.

13       Q.    You were training her on a daily basis between

14   2002 and 2004, correct?

15       A.    Yes.

16       Q.    And, then, you were going to outside training

17   to get you more knowledge as to how to conduct fire

18   investigations in an accurate manner, correct?

19       A.    Yes.

20       Q.    And it's your testimony here today that even

21   though you had significant training prior to September

22   12th, 2004 that you would not have changed a single

23   thing that you did in this particular fire

24   investigation?

25       A.    That's true.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 34 of 396
The Deposition of BUSTER CABELL taken on November 08, 2022
PageID #: 1539
33

1    Q.    Knowing that Mr. Yell's conviction has been
2    reversed still would not change a thing, right?
3    A.    Right.
4         MR. COLE:   Object to the form.
5    Q.    And if you had to do this fire investigation
6    over again, you would do it the same way?
7    A.    Yes.
8    Q.    Now, fair to say that everything that you did
9    with regard to this fire investigation that you joined
10   on September 12th, 2004 that you took each step
11   intentionally?
12   A.    I took each step as the way I was trained at
13   the ATF.
14   Q.    Sure.  Everything you did was done in an
15   intentional matter, though, correct?
16   A.    I -- I did it the way ATF instructed me to do
17   it.
18   Q.    Well, you testified a few moments ago that you
19   didn't -- you wouldn't change a single thing you did,
20   right?
21   A.    Correct.
22   Q.    Didn't make any mistakes here, right?
23   A.    As far as I know, yes, no mistakes.
24   Q.    And you said if you had to do it over again
25   you'd do it the same way --

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 35 of 396
The Deposition of BUSTER CAMPBELL taken on November 08, 2022
Page ID #: 1540

34

1        A.    Yeah.

2        Q.    -- right?

3        A.    Yes.

4        Q.    And that's because when you were conducting --
5    when you were participating in this particular fire
6    investigation, every action you took was something you
7    thought about before you took it, right?

8        A.    Yes.

9        Q.    You considered the knowledge, training and
10   experience that you had before taking any action in this
11   particular fire investigation, right?

12       A.    Yes.

13       Q.    So if you deviated from training that you had
14   been given, that's something that you would have done
15   intentionally, right?

16       A.    If I deviated, yes, it would have been
17   intentional.

18       Q.    And if you deviated from practices that you
19   had in place from other fire investigations, that's also
20   something that you would have done intentionally,
21   correct?

22       A.    Correct.

23       Q.    Nothing you did here was a mistake?

24       A.    No.

25       Q.    You're not going to be coming before any jury



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 36 of 396
The Deposition of BUSTER CANNON, taken on November 08, 2022
PageID #: 1541
35

```
 1   and saying, hey, I'm Buster Cannon, and I was negligent
 2   in conducting this fire investigation?  That's what --
 3   not what you're going to tell the jury, are you?
 4           MR. COLE:  Object to the form.
 5           MR. SOWELL:  Object to the form.
 6      A.   I didn't conduct the fire investigation.
 7      Q.   But anything that you participated in during
 8   this investigation you would have done intentionally,
 9   right?
10      A.   I'm not sure I quite understand that.  Can you
11   rephrase that?
12      Q.   I'm saying that you're -- let me ask it a
13   better way.  You're not testifying here 18 years later
14   that -- that you messed up in any way during this
15   investigation, right?
16      A.   No.
17      Q.   No.  And you're not testifying here that
18   anything that you did in this fire investigation was an
19   accident or a mistake, correct?
20      A.   Correct.
21      Q.   Everything you did was done intentionally,
22   correct?
23      A.   Correct.
24      Q.   Now, Mr. Cannon, do you have -- I know you've
25   got the -- some assistance with hearing and on certain
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 37 of 396
The Deposition of BUSTER CANNON taken on November 08, 2022
PageID #: 1542
36

1    days my wife may say that I need that same assistance,

2    but outside of the hearing aids that you've got on, any

3    other health conditions that would impact your ability

4    to testify here?

5         A.    No.

6         Q.    Okay.  No medication that you're taking that

7    might impact your memory in any way?

8         A.    No.

9         Q.    Okay.  Now, I believe you testified earlier --

10   I just want to make sure I have this right that -- that

11   -- that you filled out an ATF form in this case --

12        A.    Yes.

13        Q.    -- is that what you testified to?

14        A.    Yes.

15        Q.    And that's a document that you had reviewed in

16   preparation for the deposition?

17        A.    I reviewed what I had.

18        Q.    Did you see that document, though?

19        A.    Yes.

20        MR. SLOSAR:  Okay.  Do you -- Charlie or Barry,

21        do -- do you guys have a Bates number for this,

22        because I -- I, unfortunately, have not.  I have

23        seen a lot of ATF forms, but I haven't seen an ATF

24        form.

25        MR. COLE:  I'm not prepared to pull something

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 38 of 396
The Deposition of BUSTER CANNON, taken November 08, 2022
PageID #: 1543
37

1      out right now.

2            MR. STILZ:  That would have been a fire

3      department document, I believe, and not -- not a

4      sheriff department document, so I --

5            MR. SLOSAR:  I -- Amy and Molly, will you check

6      on this, please, or just send me a text.

7            MS. STAPLES:  Yes, I'll -- I'll look for it.

8            MR. SLOSAR:  Thank you.

9   BY MR. SLOSAR:

10      Q.   And when we're talking about an ATF form,

11   Mr. Cannon, let me show you --

12            MR. COLE:  That's just a note to me.

13      Q.   I'm going to show you what I'm referring to.

14   This is -- I'll give you Exhibit 24, things don't really

15   go well when I get way out of order, but let me give you

16   -- let me give you Exhibit 24.  Okay.

17            MR. SLOSAR:  A copy for you-all, and then, you

18      know, I've got a lot of exhibits, would it be okay

19      if I just...  Try to make it easier for you.

20            (EXHIBIT 24 MARKED FOR IDENTIFICATION)

21   BY MR. SLOSAR:

22      Q.   All right.  Mr. Cannon, sorry about that.  I'm

23   going to number some of these.  This is Exhibit No. 24.

24   These are some records that we got from the ATF.  Do

25   these documents look at all familiar to you, sir?



Kentuckiana Reporters                                    502.589.2273 Phone
P.O. Box 3983                                            502.584.0119 Fax
Louisville, KY 40201                          schedule@kentuckianareporters.com
                                                www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 39 of 396
The Deposition of BUSTER CANNON, taken on November 08, 2022

PageID #: 1544

38

1      A.    Yes.

2      Q.    Okay.  Were these some of the documents you

3  reviewed in preparing for the deposition today?

4      A.    This is one of them.

5      Q.    Okay.  Now, do you see how they've got, like,

6  little numbers at the bottom in the -- in the right-hand

7  -- in the right-hand corner right here?

8      A.    Yeah.

9      Q.    So, like an RPD, and then it's got a number

10  after it 1167?

11      A.    Yeah.

12      Q.    I'm going to refer a lot to these Bates

13  numbers today.  We call them Bates numbers, so I'll just

14  say, like, 1204 or, you know, 1210.  And, then, you'll

15  want to look for that number.  But for this one, I'm

16  going to show you -- it's 1184 and these are double

17  sided.  But if you look at 1184, can -- can you describe

18  what this document is, Mr. Cannon?

19           VIDEOGRAPHER:  Elliot, do you mind to put on

20       your microphone real quick.

21           MR. SLOSAR:  Oh, yeah.  I -- sorry about that.

22           VIDEOGRAPHER:  You're good.

23           MR. SLOSAR:  I'm creating a Jenga situation

24       over here with...  All right.  Okay.  Sorry about

25       that.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 40 of 396
The Deposition of BUSTER CANNON taken on November 08, 2022
PageID #: 1545
39

1    BY MR. SLOSAR:

2        Q.    All right.  Mr. Cannon, can you tell us what

3    this document is?

4        A.    This is the form that I filled out to send to

5    the ATF.

6        Q.    Okay.  And in these forms, it appears this is

7    an operational activity report; is that right?

8        A.    Yes.

9        Q.    And so you would have had access to these

10   forms in 2004, correct?

11       A.    Correct.

12       Q.    Now, this particular form, would this have

13   been filled out on or around October 1st, 2004?

14       A.    Yes.

15       Q.    Okay.  And is that your handwriting on there,

16   Mr. Cannon?

17       A.    Yes.

18       Q.    Okay.  Now, fair to say that these activity

19   reports have, like, certain lines where you incorporate

20   information into this?

21       A.    Yes.

22       Q.    And I believe you testified earlier that one

23   of these forms -- that -- that you -- well, let me

24   strike that.

25            Is it your recollection, in reviewing the



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 41 of 396
The Deposition of BUSTER CANNON, taken November 08, 2022    Page ID #: 1546

40

1    materials for today, that you reviewed a form that looks

2    similar in nature to this, relating to the fire

3    investigation that you participated in on

4    September 12, 2004?

5        A.    Prior to today?

6        Q.    **Yeah.**

7        A.    No.

8        Q.    **Never seen a form like that, right?**

9        A.    I'm sure I did one but I haven't seen that

10   form.

11       Q.    Okay.  That's what -- I wanted to make sure we

12   were on the same page, because I've looked through a lot

13   of stuff, a thousand pages --

14       A.    Yes.

15       Q.    -- preparing for this thing, and I've never

16   seen a form like that from you.  So you -- prior to day

17   -- or at least -- let me strike that.

18             In preparing for this deposition, you did not

19   review a form that you had completed for the fire

20   investigation you participated on, on

21   September 12, 2004?

22       A.    I did not review the activity report, no.

23       Q.    **Now, pursuant to -- by 2004 you had a**

24   contractual relationship with the ATF, right?

25       A.    Yes.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 42 of 396
The Deposition of BUSTER CANNON, taken November 08, 2022

Page ID #: 1547

41

1    Q.    And when I say "you," it was really you and
2    your employer would have had a contractual relationship
3    with the ATF, right?
4    A.    Myself and the Georgetown Fire Department --
5    Q.    Okay.
6    A.    -- had the agreement with the ATF, yes.
7    Q.    And, then, you know let's get this question
8    out of the way -- when you participated in the fire
9    investigation here, would you have been employed at the
10   Georgetown fire department at the time?
11   A.    Yes.
12   Q.    Would you have always been employed at the
13   Scott County Sheriff's Department at the time?
14   A.    Yes.
15   Q.    Was the City of Russellville located within
16   Scott County, Kentucky?
17   A.    No.
18   Q.    What county was it located in?
19   A.    Russell County, I believe.
20   Q.    Russell County.  Okay.  And so, is it fair to
21   say that at the Scott County Sheriff's Department you
22   used your canine PJ on criminal investigations?
23   A.    Criminal investigations, no.
24   Q.    Well, you, look, you investigated potential
25   arsons --

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB     Document 160-6     Filed 10/03/25     Page 43 of 396
The Deposition of BUSTER CAMPBELL, taken on November 08, 2022
PageID #: 1548
42

1    A.    Yeah.

2    Q.    -- as a member of the Scott County Sheriff's

3    Department, did you not?

4    A.    I did it as a member of the Georgetown fire

5    department.

6    Q.    So you're saying that -- I just want to make

7    sure I have you -- understand you.  You're saying that

8    while you were employed as a law enforcement officer for

9    the Scott County Sheriff's Department, if there was a

10   fire investigation that involved potential arson, you

11   would never have participated in that investigation as a

12   member of the Scott County Sheriff's Department but

13   instead as a member of the Georgetown Fire Department;

14   is that right?

15   A.    As long as -- as long as I was employed

16   through the Georgetown Fire Department, yes.

17   Q.    And when were you employed the Georgetown Fire

18   Department.

19   A.    I retired December 30th, 2005 and went part

20   time April 2006.

21   Q.    When were you hired?

22   A.    October 1st, 1990.

23   Q.    So it's your testimony that never once did you

24   participate in a fire investigation as a member of the

25   Scott County Sheriff's Department during the period of

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 44 of 396
PageID #: 1549
The Deposition of BUSTER CARNEY, taken on November 08, 2022
43

1  time that you were a firefighter for -- or employed by

2  the Georgetown Fire Department.

3       A.   Not that I recall.  It's been a long time ago

4  but not that I recall.

5       Q.   Probably something that would stick out to

6  you, though, right?

7       A.   Well, as old as I'm getting maybe not.

8       Q.   And you would -- I mean, you know, certainly

9  if there was -- if you were investigating a potential

10  arson as a law enforcement officer, you could

11  conceivably be involved in interrogating suspects,

12  right?

13      A.   That was part of my role with the fire

14  department, as well, yes.

15      Q.   If you were involved as a member of the Scott

16  County Sheriff's Department in a fire investigation you

17  might send request to the Kentucky state police

18  laboratory for analysis of evidence taken from the scene

19  to see whether there were accelerants present, correct?

20      A.   I don't want to lie but I just don't recall.

21      Q.   You don't recall ever sending any laboratory

22  requests, the KSP laboratory, to see whether accelerants

23  are present?

24      A.   I'm not going to say I did or I didn't.  I

25  just don't know.  Don't remember.



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 45 of 396
                                    Page ID #: 1550
The Deposition of BUSTER CAMBRON taken November 08, 2022
                                                                    44

1    Q.   Don't remember.  Sir, isn't it true that the

2    contract with the ATF and the Georgetown Fire Department

3    required you in 2004 to complete operational activity

4    reports for any fire investigation that you participated

5    in with PJ?

6    A.   Yes.

7    Q.   And why so?

8    A.   When we finished our training and went through

9    the class up there, we were required to do 50 fires a

10   year in order to maintain the dog, keep the dog.  And

11   so, whether it was an intentional fire, accidental fire

12   or something caused by nature, I pretty much took her on

13   everything.

14   Q.   Because you wanted to hit that 50?

15   A.   Hit that 50 mark.

16   Q.   And -- and would you agree that, you know,

17   part of the reason why the ATF required activity reports

18   is to keep track of data and the number of fire

19   investigations that PJ was involved in investigating?

20        MR. COLE:  Object to the form.

21   Q.   You can answer.

22   A.   Yes.

23   Q.   And if you look at the next page, so 1185, do

24   you recognize that type of document, sir?

25   A.   I do.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1         Q.   What is this document?

 2         A.   This is the activity -- activity sheet form

 3    that's filled out that tells what the dog did.

 4         Q.   And these were forms that you had a practice

 5    of completing while you were at the Georgetown Fire

 6    Department, correct?

 7         A.   Yes.

 8         Q.   And pursuant to the ATF contract, you were

 9    required to fill out these forms relating to fire

10    investigations that PJ was involved in, correct?

11         A.   Yes.

12         Q.   And so, looking at page 1185, can you -- is

13    this your handwriting on here, sir?

14         A.   It is.

15         Q.   Okay.  And is this something that you would

16    have completed during the course of the underlying

17    investigation?

18         A.   Probably after the fact, yes.

19         Q.   Okay.  Of course, after you walk through the

20    scene, right?

21         A.   Say again.

22         Q.   You would have completed this after you walked

23    through the fire scene, correct?

24         A.   After we completed the scene.

25         Q.   Uh-huh.  And one of the -- would you agree
```



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 47 of 396
PageID #: 1552
The Deposition of BUSTER CANADA, taken November 08, 2022
46

1    that this form requires you to send it to the attention

2    of John Dolin or Berkley Pearson in Front Loyal,

3    Virginia?

4        A.   I don't recall who those are, but I'm sure if

5    I had this report, it went to Front Royal, Virginia or

6    somewhere.

7        Q.   It appears that they work for the canines

8    operations branch; is that something that you're

9    familiar with?

10       A.   No, not -- not at all, not the branch.

11       Q.   Now, isn't it true that the ATF required

12   canines to be certified on an annual basis?

13       A.   Yes.

14       Q.   And there were benchmarks that -- that you and

15   PJ had to hit in order to recertify, correct?

16       A.   Correct.

17       Q.   And part of that process was completing these

18   activity sheets and having them sent off for review,

19   correct?

20       A.   Correct.

21       Q.   Now, do you see on the sheet where it gives

22   you -- number five is the investigating agency?

23       A.   Yes.

24       Q.   And so would that be the agency that requests

25   your and PJ's assistance --

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 48 of 396
PageID #: 1553
The Deposition of BUSTER CANINE taken on November 08, 2022
47

```
 1        A.    Yes.

 2        Q.    -- in the fire investigation?

 3        A.    Yes.

 4        Q.    Okay.  And on this particular document, it

 5   would have been Georgetown Fire Department was the

 6   investigating agency; is that right?

 7        A.    Correct.

 8        Q.    Does this form also ask if there was an ATF

 9   NRT call out?

10        A.    Yes.

11        Q.    And what's an NRT call out?

12        A.    National Response Team or the ATF.

13        Q.    And what does that look like?

14        A.    Pretty much the same thing.  It's just ATF

15   call out or NRT call out, yes or no.

16        Q.    And does this form also ask for how many

17   canine samples were taken from the scene and submitted

18   to a laboratory?

19        A.    Yes.

20        Q.    And would you agree that that question is

21   designed to obtain data about the accuracy of the

22   alerts?

23        A.    Yes.

24        Q.    You would have understood that back in 2004,

25   correct?
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 49 of 396
The Deposition of BUSTER CANNON, taken November 08, 2022
PageID #: 1554
48

1       A.    Correct.

2       Q.    And do you see number ten says, "The number of

3  canine samples, laboratory confirmed positive for

4  accelerants"?

5       A.    Yes.

6       Q.    And you would agree that that question on this

7  form is designed to ascertain the accuracy of the

8  alerts, correct?

9       A.    Yes.

10      Q.    And you would have understood that in 2004,

11 too, correct?

12      A.    Correct.

13      Q.    And by 2004 assuredly in your capacity as a

14 law enforcement officer for the Scott County Sheriff's

15 Department, you would have been familiar with how the

16 Kentucky State Police laboratory functions, correct?

17      A.    No.

18      Q.    Well, as a member of the Scott County

19 Sheriff's Department, you certainly would have had

20 criminal investigations that you were involved in where

21 you made requests for laboratory analysis, correct?

22      A.    Yes, but that doesn't mean I know how it works

23 but yes.

24      Q.    That's fair.  I understand.  I'm not a

25 scientist either, but that's fair.  I see what you're

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 50 of 396
The Deposition of BUSTER CAMBRON, taken on November 08, 2022
PageID #: 1555
49

```
 1   saying.
 2            But by 2004 you would have known where to send
 3   requests to the KSP laboratory for analysis in a fire
 4   investigation, correct?
 5        A.   Yes.
 6        Q.   And in 2004, you would have also known how to
 7   request or obtain a report from the Kentucky State
 8   Police laboratory that either confirmed or denied
 9   whether the samples had an accelerant in it, correct?
10        A.   They automatically sent them to me.
11        Q.   Uh-huh.   That would have been something that
12   by 2004 you would have been well familiar with, fair?
13        A.   Yes, fair.
14        Q.   And, in fact, in fire investigations that you
15   were involved in, they would have, the Kentucky Police
16   State laboratory would have automatically sent those to
17   you, correct?
18        A.   Correct.
19        Q.   And so you would have known when the Kentucky
20   State Police laboratory sent you these reports back,
21   whether PJ's alerts were accurate or inaccurate, fair?
22        A.   Fair.
23        Q.   You would have had reports in your possession
24   that would have at least shown you whether the
25   laboratory was able to confirm the existence of any
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 51 of 396
The Deposition of BUSTER CAMPBELL taken November 08, 2022
PageID #: 1556
50

1    accelerants in a situation where PJ made an alert,

2    correct?

3        A.   True.

4        Q.   And you would have possessed those materials

5    in your capacity at the Georgetown Fire Department,

6    correct?

7        A.   Yes.

8        Q.   And you would have had access to those

9    materials by the time of Mr. Yell's 2006 criminal trial,

10   correct?

11       A.   Yes.

12       Q.   And on no occasion did you provide these prior

13   Kentucky State Police laboratory reports, these

14   laboratory reports, to the defense for Mr. Yell prior to

15   trial, correct?

16       A.   Correct.

17       Q.   And on no occasion did you provide these

18   laboratory reports to the Commonwealth prior to

19   Mr. Yell's trial, correct?

20       A.   Correct.

21       Q.   And is it fair to say -- so, in these reports,

22   would you agree, that the Kentucky State Police

23   laboratory, prior to Mr. Yell's 2006 trial, on occasion,

24   informed you that they were unable to confirm the

25   existence of accelerants in samples that PJ had alerted

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 52 of 396
The Deposition of BUSTER CAMBRON taken November 08, 2022
PageID #: 1557
51

1    on; is that fair?

2        A.   I'm not sure about that question.  Can you

3    repeat the --

4        Q.   Sure.  On -- on occasion, in these reports,

5    did the Kentucky State Police laboratory, before

6    Mr. Yell's trial, inform you that they were not able to

7    confirm the existence of accelerants on samples that

8    they tested where PJ had previously alerted on?

9        A.   I was not informed.

10       Q.   What do you mean -- well, you certainly recall

11   testifying before in this case on four separate

12   occasions, do you not?

13       A.   Yes.

14       Q.   And isn't it true that you have previously

15   testified that the laboratory did inform you on occasion

16   that PJ -- PJ's alerts were not scientifically

17   confirmed?

18            MR. COLE:  Object to the form.

19       Q.   Do you recall testifying to that effect?

20       A.   Yes.

21       Q.   And that's because you had received these

22   reports that were automatically sent to you from the

23   Kentucky State Police laboratory, correct?

24            MR. COLE:  Object to the form.

25       A.   On my investigations, yes.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 53 of 396
The Deposition of BUSTER CARROLL, taken on November 08, 2022
PageID #: 1558
52

1    Q.    Yeah.  This was -- this particular -- let me

2    strike that.  The investigation that you were a part of

3    on September 12th, 2000 -- let me strike that.  On

4    September 12th, 2004 you participated in the fire

5    investigation in Russellville, Kentucky, correct?

6    A.    Correct.

7    Q.    And you don't -- you're not denying that you

8    are a participant in this investigation, correct?

9    A.    Correct.

10    Q.    It's been your testimony through the years

11    that you were not the lead investigator on this

12    investigation, correct?

13    A.    I was not the investigator, correct.

14    Q.    And who would that have been, sir?

15    A.    I can only speculate.  It would either been

16    either David West or Alan Gregory.

17    Q.    Okay.  For investigations where you were

18    taking the lead as a fire investigator, you would have

19    automatically had reports generated for you relating to

20    the accuracy of PJ's alerts, correct?

21    A.    Yes.

22    Q.    Okay.  And those reports you would have

23    received prior to Mr. Yell's 2006 trial, correct?

24    A.    No.

25    Q.    Well, certainly PJ passed away sometime before

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

```
 1   you testified in Mr. Yell's --
 2        A.   Yes.
 3        Q.   -- 2006 trial, right?
 4             And so, whatever reports you received, you
 5   would have had to have received those before --
 6        A.   If I may explain?
 7        Q.   Sure.
 8        A.   I would have never gotten anything back
 9   because I did not investigate the fire.  Whoever
10   submitted the samples would have got the report.
11        Q.   I -- I understand what you're saying about
12   this case.  You're saying, in this case, you did not get
13   the laboratory report --
14        A.   Correct.
15        Q.   -- back to yourself?
16             Okay.  I'm -- I'm talking about all these
17   other fire investigations.  They --
18        A.   The ones I participated?
19        Q.   Sure.  Yes.  Those are -- that -- sorry.
20        A.   That were my investigations.
21        Q.   Understood.
22        A.   Yes.
23        Q.   Understood.  Okay.  And that's a totally fair
24   point by you.  I am going to try to be clear with you
25   whether I'm talking about the larger world of 50 fire
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 55 of 396
PageID #: 1560
The Deposition of BUSTER CAMPBELL taken on November 08, 2022
54

1    investigations that --

2         A.    Yes.

3         Q.    -- you're working on a year or whether I'm

4    talking about this one.

5         A.    Okay.

6         Q.    I'll do a better job with that, okay.

7               Is it fair to say that nobody from the

8    Georgetown Fire Department ever told you that you needed

9    to produce these reports that showed whether PJ was

10   inaccurate or accurate on the alerts?  Is it fair to say

11   that nobody at the Georgetown Fire Department ever said,

12   Hey, Buster, you have to turn this stuff over to the

13   Commonwealth attorney prior to a trial?  That never

14   happened, right?

15        A.    True, never happened.

16        Q.    Prior to 2006, do you ever recall there ever

17   being any written policies or procedures that would have

18   given you guidance on whether you had to disclose

19   reports like that to a Commonwealth attorney or a

20   defense attorney in a -- in a trial that you were going

21   to testify in?

22        A.    I don't recall that --

23              MR. STILZ:  Object to the form.

24        A.    -- no.

25              MR. STILZ:  Can you clarify what policies and



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        procedures you're referring to, Elliot?
 2   BY MR. SLOSAR:
 3        Q.    Any written policies or procedures that would
 4   have given you guidance on whether you needed to
 5   disclose reports that related to the accuracy of PJ's
 6   alerts?
 7        A.    Not that I'm aware of.
 8              MR. STILZ:  And I'm going to object as to form.
 9        I still think you're in two -- he wore two hats,
10        which agency are you referring to?
11   BY MR. SLOSAR:
12        Q.    Did Georgetown Fire Department ever have any
13   policies or procedures in place that would have given
14   you guidance on whether you had to disclose reports
15   relating to the accuracy of PJ's alerts prior to your
16   2006 testimony at Mr. Yell's trial?
17        A.    Not that I'm aware of.
18        Q.    What about the Scott County Sheriff's
19   Department, did they ever have any written policies or
20   procedures that would have given you guidance on whether
21   you had to disclose that type of information to the
22   Commonwealth attorney or the defense prior to your 2006
23   testimony?
24        A.    Don't recall.
25        Q.    Do you recall at the Georgetown Fire
```



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    Department, did you have any training that would have

2    given you guidance on, you know, Buster, you've got to

3    disclose reports like this that relate to the accuracy

4    of PJ's alerts?  Did anything like -- did you have any

5    training like that prior to Mr. Yell's 2006 trial?

6        A.   I'm sorry.  I just don't recall.

7        Q.   What about -- do you recall there being any

8    training in place that would have given you any guidance

9    like that prior to -- while you were at the Scott County

10   Sheriff's Department before Mr. Yell's 2006 trial?

11       A.   Other than your investigation work that you

12   turn over for maybe a trial or a pre -- prelim or

13   something like that was going on, yeah.

14       Q.   Okay.

15       A.   You'd have to do that automatically.

16       Q.   But did the Scott County Sheriff's Department

17   ever give you any training as it specifically related to

18   the accuracy of reports for PJ's alerts?

19       A.   No, the sheriff's department has got nothing

20   to do with PJ.  No.

21       Q.   Well, you did work on some criminal

22   investigations as a Scott County sheriff deputy that

23   involved PJ, did you not?

24       A.   I don't recall.  Maybe.  I don't recall.

25       Q.   I'm going to refresh your memory.  We're going

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    to go back to the old days, then.  I'm going to show you

2    some files and maybe that'll refresh your memory.

3         A.    Okay.

4         Q.    Now, fair to say that by 2006, so the year

5    that you testified at Mr. Yell's criminal trial, you

6    don't recall any policies, procedures or training in

7    place at the Georgetown Fire Department that would have

8    led you to believe that you had an obligation to

9    disclose alerts relating to PJ's accuracy to the

10   Commonwealth or the defense counsel?

11        A.    Not that I'm aware of.

12        Q.    Is it fair to say that sitting here today you

13   don't recall there being any policies, procedures or

14   training in place at the Scott County Sheriff's

15   Department that would have given you guidance on whether

16   you had to disclose reports that related to the accuracy

17   of PJ's alerts to defense counsel or the Commonwealth?

18        A.    Again, I don't recall.

19        Q.    Okay.  And you don't have any notes or

20   documents at home that would refresh your memory on any

21   of these areas, fair enough?

22        A.    No.  Fair.  No.

23        Q.    Okay.  Now, Mr. Cannon, what -- and I don't

24   want you to get into the contents of any conversations

25   you've had with your attorneys.  Those are all



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 59 of 396
The Deposition of BUSTER CARTER, taken on November 08, 2022
PageID #: 1564
58

1  privileged.  But outside of your past testimony, what do

2  you -- what documents do you recall reviewing before or

3  in preparation for the deposition here today?

4      A.   I recall going back over my testimony and then

5  the pretrial by phone.  I call going over those, and

6  that's probably about it.

7      Q.   Okay.  And would you consider Mr. Gregory to

8  be a friend of yours?

9      A.   Well, I don't know him all that well, so, no,

10  I don't guess so.

11      Q.   Do you -- outside of September 12th, 2004 when

12  you were at the scene and, you know, before that, when

13  you had breakfast, do you recall having any

14  conversations with Mr. Gregory about this case outside

15  of that day?

16      A.   Other than when I got a phone call wanting me

17  to come, my request to appear down there.

18      Q.   Okay.  So he was the one that called you in?

19      A.   I don't remember who called me.

20      Q.   Okay.

21      A.   It's a long time ago.

22      Q.   Outside of maybe having a phone call,

23  breakfast, fire scene, do you remember having any

24  communication with Mr. Gregory about this case?

25      A.   No.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 60 of 396
                              PageID #: 1565
The Deposition of BUSTER CARROLL taken November 08, 2022
                                                                 59

1        Q.    How about Mr. West?  What -- what would your

2   relationship with Mr. West have been like back in 2004?

3        A.    The only time I ever met Mr. West was at the

4   fire scene.

5        Q.    Never -- don't recall ever seeing him before

6   that, right?

7        A.    Never seen him before that.

8        Q.    Okay.  Do you recall having any conversations

9   with him after that?

10        A.    After we first met?

11        Q.    Uh-huh.

12        A.    Yeah.  I think it was the day of the trial, we

13   went back to the fire scene and went over some photos

14   and looked at the interior of the home again.

15        Q.    Whose idea was that?

16        A.    Gosh, I really don't remember.  I couldn't

17   tell you.

18        Q.    Probably wasn't your idea, right?

19        A.    No.  I doubt it.

20        Q.    Because you had testified a couple weeks

21   before that that you didn't remember the specific areas

22   where --

23        A.    Yeah.  It could have been the Commonwealth's,

24   you know, that mentioned it but I -- I couldn't sit here

25   and swear to that.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 61 of 396
The Deposition of BUSTER CANNON taken November 08, 2022
PageID #: 1566
60

1    Q.    Yeah.  But -- and you don't know how Mr. West

2    came to be involved in that meeting, like, who asked him

3    to join you?

4    A.    No.  I wouldn't have no knowledge of that.

5    Q.    You certainly would have never asked Mr. West

6    to join you, right?

7    A.    No.  I didn't know him.

8    Q.    Yeah.  What about Mr. Flowers; he's somebody

9    who you had a relationship before this case, right?

10   A.    Yes, I knew Mr. Flowers.

11   Q.    Yeah.  And would you have considered him a

12   friend by -- before September 2004?

13   A.    Well, it depends on what you -- how -- how you

14   want to abbreviate a friend, you know.

15   Q.    Okay.

16   A.    We worked maybe a fire or two together.  I

17   don't know if that resolves a friendship or not, but I

18   knew him.

19   Q.    And, you know, he is somebody who had made

20   requests for you to assist in fire investigations --

21   A.    Yeah.

22   Q.    -- before September 12th, 2004, right?

23   A.    Yeah.  Once or twice, yes.

24   Q.    Do you remember on how many of those occasions

25   you found that there was an arson present?



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 62 of 396
PageID #: 1567
The Deposition of BUSTER CAMPBELL taken November 08, 2022
61

```
 1        A.   No.

 2        Q.   Have you ever been to breakfast with

 3   Mr. Flowers before this case?

 4        A.   I don't recall.

 5        Q.   What about Mr. Higgins?  How -- how well do

 6   you know him?

 7        A.   Who is he?  I have no idea who he is.

 8        Q.   Okay.  Have you reviewed the complaint, the

 9   lawsuit here?

10        A.   Can you repeat that?

11        Q.   Have you reviewed the complaint, the lawsuit

12   that was filed in this case?  Did you ever read it?

13        A.   Yes, but it's been awhile.

14        Q.   Okay.  When you read the allegations, did any

15   of them seem surprising to you?

16        A.   Yeah, for on me, yeah.

17        Q.   Yeah.

18        A.   I can't speak for anybody else, but, yeah,

19   they were surprising to me.

20        Q.   Certainly would you agree that there is no

21   objective evidence that exists that supports the

22   allegation that an arson occurred in this case?

23             MS. ARNETT:  Object to form.

24             MR. COLE:  Same objection.

25        Q.   You can answer.
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

 1        A.    I'm not aware.

 2        Q.    There's certainly no -- no scientific testing

 3   or analysis has ever confirmed that any accelerant was

 4   used in the fire that you assisted investigating here,

 5   correct?

 6        A.    According to what I was told, correct.

 7              MS. ARNETT:  Object to form.

 8        Q.    And would you agree that because of those

 9   laboratory results, the reliability of PJ's alerts is a

10   critical issue in this case?

11              MR. COLE:  Object to the form.

12        A.    Yeah.  I just --

13              MS. ARNETT:  Object to form.

14        A.    I just asked the questions that they presented

15   to me that she did alert.  I didn't go any further with

16   it --

17        Q.    Sure.

18        A.    -- that I remember any.

19        Q.    And PJ is a puppy who you love very much,

20   right?

21        A.    I like all dogs, yes.

22        Q.    Yeah.  Do you still -- do you still have dogs?

23        A.    I've got one.

24        Q.    What's his or her name?

25        A.    It's Tera.  It's a ten-month-old Border

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 64 of 396
The Deposition of BUSTER CANNON, taken November 08, 2022
PageID #: 1569
63

1    Collie.

2        Q.   Okay.  And is Tera, is she a house dog or are

3    you training her to do more investigatory stuff?

4        A.   No.  She's just a house dog.

5        Q.   Okay.  And fair to say that by 2004 you knew

6    that PJ's sniffer was off on occasion?

7        A.   Yes.

8        Q.   Yeah.  And, in fact, I believe you testified

9    in -- in one of the prior proceedings, that PJ had

10   actually made a false alert during the second run

11   through on September 12, 2004; do you recall that?

12       A.   No.

13       Q.   Do you recall ever testifying that she made an

14   alert somewhere where you did not take a sample?

15       A.   No.

16       Q.   Okay.  We're going to go through that, then.

17       A.   Okay.

18       Q.   I'll see if it refreshes your memory.

19           MR. SLOSAR:  Can we take a short break; is that

20       okay?  Are you good to take a break?

21           THE WITNESS:  Sure.

22           VIDEOGRAPHER:  We are off the record at 11:51.

23             (OFF THE RECORD)

24           VIDEOGRAPHER:  We are back on the record for

25       the deposition of Buster Cannon.  Today is

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 65 of 396
The Deposition of BUSTER CANNON, taken on November 08, 2022
PageID #: 1570
64

 1      November 8th, 2022 and the time is 12:05.

 2   BY MR. SLOSAR:

 3      Q.   Mr. Cannon, by 2006, you were not only

 4   familiar with but also trained on the NFPA 921s,

 5   correct?

 6      A.   Correct.

 7      Q.   And you had familiarity with the 921s,

 8   predating PJ and -- and your involvement in the canine

 9   process; is that fair?

10      A.   Yes.

11      Q.   You would have had familiarity with the 921s

12   dating all the way back to the '90s?

13      A.   Yes.

14      Q.   And is it fair to say that by 2006 -- well,

15   let me strike that.  Is it fair to say that by 2004, so

16   when you were conducting -- when you participating in

17   this fire investigation, that you would have understood

18   that the -- what the 921s policy is in related -- in

19   relation to unconfirmed alerts?

20      A.   Yes.

21      Q.   And is it fair to say that a canine is just a

22   tool to be used during a fire investigation?

23      A.   Yes.

24      Q.   You would have known that in 2004, correct?

25      A.   Yes.



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

1    Q.    And is fair to say that by 2004 that the NFPA
2  921s state that a canine alert not confirmed by a
3  laboratory analysis should not be considered validated?
4    A.    Yes.
5    Q.    You would have understood that.
6          And by 2004 would you have also understood
7  that the NFPA 921s have never found that a canine has
8  greater sensitivity -- sensitivity than a laboratory
9  test?
10    A.    Yes.
11    Q.    Certainly, by 2004 was there any scientific
12  basis that would lead you to believe that a canine has
13  greater sensitivity to an accelerant than a laboratory
14  test?
15    A.    Not that I'm aware of, no.
16    Q.    None of your training ever --
17    A.    No.
18    Q.    -- instructed you on that, right?
19    A.    Right.  Just the experience that I've seen,
20  but -- but, no, nothing written.
21    Q.    You certainly spent an incredible amount of
22  time with PJ between 2002 and 2006, fair?
23    A.    True.
24    Q.    You came to love PJ --
25    A.    Oh, yeah.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1          Q.    -- very quickly, I imagine, right?

2          A.    Very much.

3          Q.    But there was no -- well, let me strike that.

4                The training that you received prior to 2004

5    informed you that a canine alert without laboratory

6    confirmation was unreliable, correct?

7          A.    Correct.

8          Q.    And by 2004, the training that you received --

9    let me strike that.

10               By 2004, can you think of a single training

11   program that you were a part of that informed you that a

12   canine had great sensitivity than a laboratory test --

13         A.    No.

14         Q.    -- to detect accelerant odors?

15         A.    No.

16         Q.    So no scientific foundation for that belief,

17   correct?

18         A.    Correct.

19         Q.    And by the time you participated in the fire

20   investigation that we're talking about here today, the

21   September 12th, 2004 fire investigation, you understood

22   that any findings that you or PJ make could be used by

23   investigators to pursue criminal charges against a

24   suspect?

25         A.    Yes.



Kentuckiana Reporters                                    502.589.2273 Phone
P.O. Box 3983                                            502.584.0119 Fax
Louisville, KY 40201                          schedule@kentuckianareporters.com
                                              www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

1      Q.   And you would have understood by September
2   12th, 2004 that any findings or opinions that you
3   conveyed to another fire investigator or to a law
4   enforcement officer could have been used to pursue
5   charges against a suspect?
6      A.   Yes.  Yes.
7      Q.   On September 12, 2004, you understood that
8   your actions with PJ could result in somebody being
9   charged with a crime, correct?
10     A.   Yes.
11     Q.   And you would have understood that any
12  information that you conveyed to another law enforcement
13  officer or fire investigator during this investigation
14  could be documented by them in an investigative letter -
15  -
16     A.   Yes.
17     Q.   -- correct?
18     A.   Yes.
19     Q.   And you understood that any information
20  documented in an investigative letter could be used to
21  pursue criminal charges against a suspect, correct?
22     A.   Yes.
23     Q.   So even though you never created any report
24  relating to your participation in this particular fire
25  investigation, you understood that any information or

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  actions that you took could still be used by others to
2  pursue charges against a suspect, correct?
3       A.   Yes.
4       Q.   And you also understood that any action that
5  you took or information that you conveyed to another
6  fire investigator or law enforcement officer in this
7  investigation could be presented to a grand jury for
8  criminal charges.
9       A.   Yes.
10      Q.   So to say it an easier way, you understood
11 that even if you weren't testifying before a grand jury,
12 the information that you were conveying to others could
13 still be used?
14      A.   Yes.
15      Q.   Do you recall testifying at -- let me strike
16 that.
17           Sitting here today, is it your belief that a
18 canine has greater sensitivity than a laboratory test to
19 detect accelerant odors?
20      A.   It is my opinion, and my opinion only, yes.
21      Q.   And there's no scientific basis for your
22 opinion, correct?
23      A.   Correct.
24      Q.   And your opinion is contrary to the training
25 that you had received prior to 2004, correct?

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1      A.    Yes.  Yes, based on pure experience with the

2  dog.

3      Q.    The recertification process required you to

4  follow the guidelines set forth by the ATF, correct?

5      A.    Yes.

6      Q.    And you also were trained by the ATF, correct?

7      A.    Yes.

8      Q.    And the training given to you by the ATF is

9  that a canine does not have greater sensitivity than a

10 laboratory test to detect accelerant odors, correct?

11     A.    I do not recall that.

12     Q.    Well, sir, is it your testimony sitting here

13 today that the ATF did not train you that a -- an

14 unconfirmed alert would be unreliable and inadmissible?

15     A.    That's what the ATF stated, yes.

16     Q.    Okay.  And you would have known that by 2004,

17 correct?

18     A.    Yes.

19          (EXHIBIT 1 MARKED FOR IDENTIFICATION)

20     Q.    I'm going to give you Exhibit No. 1, and this

21 is just -- this would have been your testimony -- and

22 I'm going to refer to it at different points today.  I

23 think what I'm going to give you, Mr. Cannon, are the

24 little tabs, too, so that you can actually see what this

25 stuff is.



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 71 of 396
The Deposition of BUSTER CANNON taken on November 08, 2022
PageID #: 1576
70

1        A.    You can just call me Buster.  I'm not employed

2    anywhere.

3        Q.    Well, I -- that's very kind of you.  So here -

4    - here is number one, and, then, let me also give you

5    the -- it's -- took out 24.

6              All right.  So do you recall testifying in a

7    hearing when you were over the phone?

8        A.    Yes.

9        Q.    Okay.  And if you go to page -- if you go to

10   page 30 on there, Mr. Cannon, I'm going to show you a

11   part of your testimony and ask you a question. Actually,

12   if you go to page 29.  I'm sorry.

13       A.    29?

14       Q.    Yeah, so just the page before.

15             Did -- on page 29, do you see -- and I'm

16   pointing you to line 14 to 15, so right here

17   (indicating.)

18       A.    Okay.

19       Q.    Did you testify in this -- in this proceeding

20   that, we've been trained to trust your dog?

21       A.    Yes.

22       Q.    Okay.  And I'm going -- I'm going to show you

23   page 38, if you go to page 38, too, sir.  Oh, I'm sorry,

24        37.  I -- my numbers are all off.  So on 37

25   lines 12 is where you get asked this question:  Now,

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1   based on your professional experience, I believe the

2   evidence in this case shows that there's six sites that

3   -- where samples were taken plus the control.  What's

4   the likelihood of your dog hitting on six different

5   sites and there being no hydrocarbons in any of those

6   six sites for it to hit on?

7           Answer:  Again, I trust my dog.  I believe

8   that there was something there.  Why we got negative

9   samples back, I just -- I -- I can't tell you that.  Of

10  course, that's a lab technician.  It may have been a

11  minute sample, as I've stated, that the instruments

12  couldn't pick it up in the lab.

13          Did you testify to that effect at the Daubert

14  hearing back before Mr. Yell's 2006 trial, sir?

15      A.   Yes.

16      Q.   Okay.  And -- and you recall testifying over

17  the phone in one of those proceedings, right?

18      A.   Yes.

19      Q.   Okay.  And you certainly did, on occasion,

20  trust PJ --

21      A.   Yes.

22      Q.   -- by the time of your testimony, fair?

23      A.   Correct.

24      Q.   You love PJ, right?

25      A.   Yes.



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1       Q.   And by 2006 you had spent an extensive period

2  of time training PJ, right?

3       A.   Yes.

4       Q.   There was a contract between you, the

5  Georgetown Fire Department and the ATF relating to your

6  training of PJ, right?

7       A.   Yes.

8       Q.   And, in fact, PJ was free as part of that

9  contract to the Georgetown Fire Department, right?

10      A.   Yes.

11      Q.   The ATF picked up all the expenses as related

12  to training for PJ, correct?

13      A.   Yes.

14      Q.   And you had a lot of travel as part of that

15  training, did you?

16      A.   Yes.

17      Q.   And is it fair to say that if PJ wasn't

18  accurate in her alerts, this it would have cast doubt on

19  the reliability of some of the fire investigations that

20  you participated in?

21      A.   Yes.

22      Q.   And certainly --

23           MR. SLOSAR:  I'm sorry?  Well, I thought I

24      heard something.  Maybe I didn't.

25           MR. COLE:  I did, too.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 74 of 396
The Deposition of BUSTER CARROLL, taken on November 08, 2022
PageID #: 1579
73

1             MS. ARNETT:  Object to form to the previous

2      question.

3             MR. SLOSAR:  Okay.

4             MS. ARNETT:  You guys are going fast.  I can't

5      get in before.

6             MR. SLOSAR:  All right.  Thanks, Amber.

7      BY MR. SLOSAR:

8        Q.   And -- and you've had discussions with a lab

9      tech -- with lab technicians from the Kentucky State

10     Police about some of the unconfirmed alerts that

11     happened prior to 2006, correct?

12       A.   Yes.

13       Q.   And in some of those conversations, is it fair

14     to say that you were asking the -- the lab technician,

15     you know, why they weren't confirming the alert?

16       A.   Uh-huh.  Yes.

17       Q.   Is it fair to say that you were frustrated by

18     the lab technician not confirming PJ's alert?

19       A.   No, not frustrated.  Curious.

20       Q.   Curious.  Okay.  And is it fair to say that as

21     a fire investigator that you were curious about why PJ's

22     alerts weren't being confirmed in light of the training

23     that she had received?

24       A.   No, not really, because none of them is going

25     to be a positive scene.  So, you know, you may do 40



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    [sic] fires and two of them may be a positive scene, and

2    48 may not be, so...

3         Q.    That's fair.  That's fair.  Now, there have

4    been occasions where PJ did not alert and you still

5    found that the fire was as a result of an arson,

6    correct?

7         A.    Correct.

8         Q.    So by the time of Mr. Yell's 2006 trial --

9         A.    Can -- can we stop?  Can you repeat that last

10   question?

11        Q.    Sure.

12              There would have been occasions where you used

13   PJ in a fire investigation and she did not form an alert

14   to an accelerant but you still found that an arson had

15   been committed, correct?

16        A.    Yes.

17        Q.    Okay.  And -- and, in fact, you, as a member

18   of the Scott County Sheriff's Department, or a member of

19   the Georgetown Fire Department, participated in the

20   interrogation of suspects in arson investigations that

21   involved PJ as a canine, correct?

22        A.    Yes.

23        Q.    And on occasion, you actually were able to

24   obtain a confession from someone to having used an

25   accelerant to start a fire where PJ did not make alerts,



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 76 of 396
The Deposition of BUSTER CABLE, taken November 08, 2022
PageID #: 1581
75

1    correct?

2         A.   I don't recall that happening, but I don't

3    remember.

4         Q.   Okay.  I'm going to show you some -- some of

5    your reports later.

6         A.   Yeah.

7         Q.   We'll see if it refreshes your memory.

8              Going back to these phone calls with the lab

9    technicians.  You said that you were curious which is

10   why you would have called the Kentucky State Police

11   laboratory technicians to talk or discuss the

12   unconfirmed alerts from PJ, correct?

13        A.   Correct.

14        Q.   And this would have happened before your 2006

15   testimony at Mr. Yell's trial, correct?

16        A.   Yes.

17        Q.   And in those -- what do you recall those

18   conversations being like?

19        A.   I really only call -- recall one conversation

20   where I contacted them, because I was really concerned

21   that this was a set fire and how could my dog have been

22   wrong.  Well, the technician relayed -- relayed the

23   message back to me via phone that he really believed

24   that there was something there but it just didn't

25   register enough on his machine to call -- make the call

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 77 of 396
The Deposition of BUSTER CALHOUN taken November 08, 2022
PageID #: 1582
76

1   positive.

2        Q.    Uh-huh.

3        A.    I said, okay.  What do I need to do to change

4   things?  And he went on to elaborate, but I don't recall

5   what all he said.

6        Q.    And when you -- when you're saying, you know,

7   what can you do to help the --

8        A.    Yeah.

9        Q.    I presume it was to help the technician come

10  to a different --

11       A.    Yes.

12       Q.    -- result, right?

13       A.    Yes.

14       Q.    You -- the purpose of that call was to get the

15  technician to -- well, let me strike that.

16             The purpose of that call was for you to learn

17  information, right?

18       A.    Yes.

19       Q.    And, then, when you learn the -- that the --

20  that the technician, you know, had said no, but thought

21  that there might be something there, you, then, wanted

22  to see what you could do to change the technician's

23  mind, right?

24       A.    No.

25       Q.    Well, you said --



Kentuckiana Reporters            502.589.2273 Phone
P.O. Box 3983                    502.584.0119 Fax
Louisville, KY 40201             schedule@kentuckianareporters.com
                                 www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 78 of 396
PageID #: 1583
The Deposition of BUSTER CARGOL, taken November 08, 2022

77

1       A.   No.  That's not what I said.  I said, what can

2    I do to make things better?  I didn't say anything about

3    --

4       Q.   **Okay.**

5       A.   -- changing his mind.

6       Q.   **Okay.**

7       A.   What can I do -- am I missing -- am I getting

8    close?  What's my dog doing --

9

10

11

12      Q.   **I see.**

13      A.   -- is what I'm after.  Is my dog missing the

14   product or just barely hitting the product?  What's she

15   doing?  Do I need to do a better detailed search or

16   what?

17      Q.   **I --**

18      A.   That's the purpose of the question.

19      Q.   **I -- I understand what you're saying now.**

20      A.   Okay.

21      Q.   **So your concern was more -- you -- in that**

22   **conversation you were developing concerns about the**

23   **reliability of PJ's alerts --**

24      A.   Yes.

25      Q.   **-- and how you can improve that going forward?**

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 79 of 396
PageID #: 1584
The Deposition of BUSTER CANTRELL taken on November 08, 2022
78

1      A.   Yes.

2           MR. COLE:  Object to the form.

3      Q.   That was the goal of -- of getting feedback

4  from the laboratory technician, right?

5      A.   Yes.

6      Q.   And this would have been prior to Mr. Yell's

7  2006 criminal trial, right?

8      A.   Yes.

9      Q.   And what do you recall the laboratory

10  technician telling you about how to improve PJ's

11  reliability?

12      A.   Well, I think the biggest thing that he was

13  concerned about was that maybe she alerted on styrene.

14  Well, the ATF supplies us liquid styrene and when a dog

15  start alerting on that, which sometimes they will, not

16  very often but sometimes they will, and we start

17  training her on the liquid styrene, and when he starts

18  to alert on that, she don't get to eat.  And she don't

19  get to eat any time she alerts on styrene until she gets

20  off of that kick.

21      Q.   But how do you know when your dog -- when PJ

22  is alerting on styrene versus something else?

23      A.   I wouldn't know that until -- unless the lab

24  had told me.

25      Q.   And sitting here today, do you recall one way

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 80 of 396
The Deposition of BUSTER CANADA taken November 08, 2022
Page ID #: 1585
79

```
 1   or the other as to whether the lab was telling you that

 2   it was styrene or not?

 3        A.   No.

 4        Q.   Okay.

 5        A.   Don't recall.

 6        Q.   Now, this feedback that you were getting from

 7   the laboratory analyst, did you, you know, document that

 8   anywhere?

 9        A.   No.

10        Q.   Did you send anything off to the ATF about PJ

11   you know, having inaccurate hits or --

12        A.   They would know from the documents I sent

13   them.

14        Q.   And those are the activity sheets?

15        A.   Yes.

16        Q.   Okay.

17        A.   Or the forms that I sent them.  They're not

18   really documents but forms is what I call them.  Yeah.

19        Q.   Yeah.  But the stuff --

20        A.   Yeah.

21        Q.   Exhibit 24, those forms we went through

22   earlier?

23        A.   Yeah.

24        Q.   Okay.  And -- and so, you would have

25   understood by -- by 2006, the time that you testified at
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 81 of 396
PageID #: 1586
The Deposition of BUSTER CANTRELL, taken on November 08, 2022
80

1    Mr. Yell's criminal trial, that the ATF wanted to know

2    how many of PJ's alerts were confirmed versus

3    unconfirmed, correct?

4          MR. COLE:  Object to the form.

5    A.    Correct.

6    Q.    And so, you -- it would have been easy for

7    you, it sounds like, to contact the Kentucky State

8    Police laboratory to obtain that information so that you

9    can accurately document it in the ATF reports, fair?

10   A.    No.  It's not true for that -- that type of

11   information.  It's personal information for me to make

12   things better for the dog.

13   Q.    Okay.  And it's also to, hopefully, PJ become

14   a more reliable sniffer, right?

15   A.    Yes.

16   Q.    Because while you wanted that information to

17   help train and handle PJ, you also needed to document

18   that information as part of the ATF reporting process,

19   correct?

20   A.    It would have been documented in the training,

21   yes.

22   Q.    Yeah.  And those are those reports that you

23   would have to do as it relates to each fire

24   investigation that PJ was a part of, fair?

25   A.    No, not necessarily.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CARROLL taken November 08, 2022

81

```
 1        Q.   Well, just -- I'm going to show you --
 2        A.   It would have been a -- been a training
 3   report.
 4        Q.   I'm going to forward you back to Exhibit 24.
 5   I'm just going to show you one of these.  It's at 1203,
 6   the Bates.  On here there is a number that requests data
 7   relating to how many of the alerts were confirmed or
 8   not, correct?
 9        A.   Yes.
10        Q.   And -- and this is a random page that I picked
11   out and it looks like it's a bad example because there
12   were no samples taken from the scene; is that right?
13        A.   Right.
14        Q.   So, of course, there were no confirmed hits.
15   Let's go to one where you actually got -- send some
16   samples off, so...
17             Okay.  RPD1145, it's another form that's in
18   your handwriting, right, sir?
19        A.   Yes.
20        Q.   And according to this form, you were involved
21   in a fire investigation with PJ on behalf of the
22   Georgetown Fire Department in July 2005; is that right?
23        A.   Yes.
24        Q.   And as part of this fire investigation, were
25   there five samples taken and submitted to the
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CAMPBELL, taken on November 08, 2022

82

```
 1   laboratory?
 2        A.   That's what it's saying, yes.
 3        Q.   And those would have been places where PJ
 4   formed alerts, correct?
 5        A.   Correct.
 6        Q.   And in here, do you see an area to fill out
 7   how many of those samples were confirmed to be an
 8   accelerant?
 9        A.   No.
10        Q.   Well, there's a spot for that, right?
11        A.   Yes.
12        Q.   And that spot is blank, right?
13        A.   Yes.
14        Q.   Does that mean that none of them were
15   confirmed to be accelerants?
16        A.   No.  This was a fire scene in Campbell County,
17   Kentucky.  The investigator of that fire would have took
18   those samples to the lab of their choice.
19        Q.   Uh-huh.
20        A.   If they get back with me, yes, I can fill that
21   circle in or whatever -- if they don't, and I can't make
22   contact with them, I have no way of knowing, but it was
23   still sent onto the ATF before I even knew what was
24   going on whether they were positive or negative.
25        Q.   Now, certainly you would have kept track of
```



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 84 of 396
The Deposition of BUSTER CARROLL taken on November 08, 2022
Page ID #: 1589

83

1    the investigations that you were involved in, fair?

2        A.    Fair.  Yes.

3        Q.    It would have been easy for you to contact --

4    to reach out to the point of contact from Campbell

5    County to see what the results of that investigation

6    were, correct?

7        A.    It would have probably filled that void, yes,

8    but is it necessary for me to reach out to them, no.  It

9    wasn't my investigation.

10        Q.    Well, that void is pretty critical; wouldn't

11    you agree?

12        A.    Well, there's no back page to this, so, you

13    know, there may have been some more writing to the back

14    page of that.  I don't know.

15        Q.    Okay.  Well, we can look at those documents,

16    again, the originals --

17        A.    Okay.

18        Q.    -- to see if there was anything there.

19            You would agree that that type of data would

20    be critical to help understand how reliable or

21    unreliable PJ's alerts were?

22        A.    Yes.

23        Q.    And obviously the ATF wanted to know this type

24    of information because they have it in their form,

25    right?

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 85 of 396
PageID #: 1590
The Deposition of BUSTER CANUP, taken November 08, 2022
84

1        A.    Yes.

2        Q.    You can -- if you only supplied one type of

3    data, the number of alerts, you know, or samples

4    submitted but never provide the results, wouldn't you

5    agree that it would prevent the ATF from judging the

6    accuracy of PJ in the field?

7        A.    Well, here's -- here's what happens in cases

8    like this right here.  These are submitted monthly.

9    Those samples could sit on a shelf for six months before

10   they got to them.  So, yes, I may or may not have found

11   out at a later date and failed to send it to them.  I

12   just don't remember.

13       Q.    And you're certainly -- okay.

14             Now, I'm going to -- we're going to take a

15   step back from arson fire investigation type questions,

16   so I'm going to give you -- you've got Exhibit 24.

17   You've got Exhibit 1.  I've got to find the little thing

18   for 24 but I'm --

19             MR. COLE:  Is 24 or 34?

20             MR. SLOSAR:  This is 24.  24.  I have terrible

21      handwriting, so...

22   BY MR. SLOSAR:

23       Q.    But I'm going to show you a few exhibits, sir.

24   I'm just going to ask you a couple of questions.  We're

25   not going to spend too much time on this area, but this

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    lawsuit wasn't the first time you were a named party in

2    a lawsuit; is that fair?

3            A.    Say again.

4            Q.    This isn't the first time that you were a

5    named party in a lawsuit, right?

6            A.    True.

7            Q.    Okay.  And it looks like in 2008 you were

8    involved in a lawsuit with James Schulte, S-C-H-U-L-T-E?

9            A.    Yes.

10                 (EXHIBIT 5 MARKED FOR IDENTIFICATION)

11           Q.    And here's Exhibit 5, sir, and I'm going to

12   give you the little tab for it, actually.  Here you go.

13   And it looks like in that case Mr. Stilz represented

14   you; is that right?

15           A.    Yes.

16           Q.    You both would have been just a tad younger

17   than you are today, but what do you recall the nature of

18   those allegations being?

19           A.    Well, I don't know -- I'm not a doctor, so I

20   can't say whether he was injured or he wasn't but --

21           Q.    Do you remember what he was accusing -- you

22   know, what he accused you of?

23           A.    Yes.

24           Q.    What was that?

25           A.    I think he accused Deputy Whitlock of hurting

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 87 of 396
The Deposition of BUSTER CARROLL taken November 08, 2022
PageID #: 1592
86

1  his shoulder when he -- when he handcuffed him.

2      Q.   Were you a part of that arrest at all?

3      A.   I was a part of that, yes.

4      Q.   Okay.  And did he make any allegations that

5  were specific to you or were you just along for the

6  ride?

7      A.   Well, I was a supervisor on -- on that date.

8      Q.   Okay.

9      A.   And we had a shooting at the rest area and the

10 vehicle description matched one that was sitting on the

11 side of the road there on the Interstate.  Low and

12 behold, Mr. Schulte, or whatever his name was, was in

13 the vehicle so I asked Deputy Whitlock to detain him

14 until I got some more information.  Well, in the process

15 of detaining him he put him in handcuffs.

16      Well, he complained that it was hurting him,

17 so I think Deputy Whitlock put him in, like, a daisy

18 chain, so he hooked two together and handcuffed him for

19 his safety and the deputies as well, because it was

20 right there on the Interstate.  And, basically, we were

21 accused of wrenching his shoulder, hurting his shoulder

22 or something, rather, but I didn't have anything to do

23 with that, but I stood behind the deputy and I told him

24 to detain him.

25      Q.   Understood.  Did he end up -- was he the

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 88 of 396
The Deposition of BUSTER CARROLL taken on November 08, 2022
PageID #: 1593
87

1  person involved in the shooting or did it end up being

2  somebody -- somebody else?

3       A.    As it turned out, no, he wasn't.

4       Q.    It was somebody else?

5       A.    Yes.

6       Q.    Did you guys find that person?

7       A.    No.

8       Q.    Did you find the identity of that person at

9  least or no?

10      A.    Still an open case, as far as I know, to this

11 today.

12      Q.    Did somebody get killed or was it...

13      A.    No.  It was like -- somebody had pulled in a

14 rest area in a camper and then somebody approached them

15 to rob them.  Well, the victim came out with a gun and

16 started shooting at the perpetrator.  And, basically,

17 they took off, headed north and never seen hide nor tail

18 of them again, but that wasn't to say that they could

19 have turn around and come back and broke down, you know,

20 checked --

21      Q.    Sure.

22      A.    -- to see if we were still there, you know,

23 for whatever reason, you know, the car matched that one

24 there, didn't see any bullet holes in the back of it,

25 so...

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CARROLL taken on November 08, 2022

88

```
 1              But as it turned out, he was -- he was free to
 2   go, and then that's -- I guess the next thing I heard
 3   Barry was calling me.
 4         Q.   And that case ended up -- resulting in a
 5   settlement; is that right?
 6         A.   I believe so, yes.
 7         Q.   Okay.  Do you know -- did you give a
 8   deposition in that case; do you know?
 9         A.   I think I did.
10         Q.   Okay.  And I'm going to hand you what we'll
11   mark as Exhibit No. 6.
12              (EXHIBIT 6 MARKED FOR IDENTIFICATION)
13         Q.   One moment.  I found the tab for 24, though.
14   I'm basically going to lose everything without moving
15   today.  It's -- it's like a magic trick.  All right,
16   sir.  I'm going to hand you Exhibit No. 6 and ask you
17   just a few limited questions about this.  In 1996, were
18   you involved in a lawsuit filed by a person by the name
19   of Robert Wittenbarger, W-I-T-T-E-N-B-A-R-G-E-R?
20         A.   Not that I'm familiar with.
21         Q.   Were you a plaintiff in that lawsuit?
22         A.   Maybe a plaintiff.
23         Q.   Against the city of Georgetown?
24         A.   When was this?  '96?
25         Q.   1996.
```



Kentuckiana Reporters                                    502.589.2273 Phone
P.O. Box 3983                                            502.584.0119 Fax
Louisville, KY 40201                          schedule@kentuckianareporters.com
                                              www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

```
 1        A.    Maybe a plaintiff, yes.
 2        Q.    Do you recall this lawsuit having anything to
 3   do with policy and procedure issues?
 4        A.    No.
 5        Q.    Do you recall whether this lawsuit had
 6   anything to do with personnel files?
 7        A.    Maybe that.
 8        Q.    But do you have any independent memory of
 9   exactly why this -- what was going on in this lawsuit?
10        A.    Yes, I do.
11        Q.    Okay.  What do you remember?
12        A.    The lawsuit, I think, was -- was -- the
13   defendant was a fire chief and what he had been doing,
14   he had been selling firefighters helmets and pocketing
15   the money, and I happened to one of them that he sold a
16   helmet to and pocketed the money.
17        Q.    Oh, wow.  What would he do when he sold the
18   helmet?
19        A.    Oh, it was just a firefighter.
20        Q.    But, I mean, like, how -- how would you go to
21   the fire without a helmet, you know, like how are you
22   going to protect yourself?
23        A.    Well, they provided us helmets, but they had
24   some new type helmets out and everybody was wanting
25   them.
```



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CARROLL, taken on November 08, 2022

90

```
 1        Q.    Yeah.

 2        A.    So the fire chief was buying them for whatever

 3   price and selling them to the firefighters and keeping

 4   the money.

 5        Q.    Oh.  So you were the -- he was just making

 6   money off you guys after the --

 7        A.    Yeah.

 8        Q.    Okay.

 9        A.    Basically.  In a nutshell, yes.

10              (EXHIBIT 7 MARKED FOR IDENTIFICATION)

11        Q.    I'm going to give you what we'll mark as

12   Exhibit No. 7.  Looks like there was another lawsuit

13   filed against the chief there in 2000.  Does that seem

14   familiar that Mr. Robert Wittenbarger sued Georgetown

15   again in 2000; do you remember being a part of that?

16        A.    Yes.

17        Q.    That's this one.

18        A.    I think that was over the clip money, that

19   they -- they were not paying us what they were supposed

20   to have been paying us.

21        Q.    Okay.

22        A.    We were working the overtime hours and not

23   getting it.  And so, this was the purpose for that

24   lawsuit, and we ended up winning that one.

25        Q.    Okay.  Note, those were firefighters, again,
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 92 of 396
The Deposition of BUSTER CARROLL taken on November 08, 2022
PageID #: 1597
91

1  suing with you?

2      A.   Yes.

3      Q.   Okay.  And, then, I'll hand you what's been

4  marked as Exhibit No. 8.

5               (EXHIBIT 8 MARKED FOR IDENTIFICATION)

6      A.   Gosh, I never even thought about those.

7      Q.   Well, it's -- these are -- these are from a

8  long time ago, so...

9           Looks like there was a lawsuit involving Jeff

10 Brooks and Burchfield and others that was filed around

11 2000, do you recall being a part of that lawsuit, sir?

12     A.   Well, it looks like the whole daggone

13 department was a part of it, so...  But I don't recall

14 what this one was about.

15     Q.   Okay.  So no -- no memory of what that's

16 about?

17     A.   No.

18     Q.   And, then, it looks like -- I'm going to hand

19 you Exhibit No. 9.  It looks like there was another big

20 lawsuit against the city of Georgetown filed in 2009.

21          MR. SLOSAR:  This is Exhibit 9.

22               (EXHIBIT 9 MARKED FOR IDENTIFICATION)

23     Q.   Do you have any recollection of the

24 allegations in that case?

25     A.   No.  I wasn't employed there in 2009, no.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CARTER, taken on November 08, 2022
92

1    Q.    And you don't recall being a part of that

2    lawsuit either?  I think your name is on it, which is

3    why it was pulled.

4    A.    I don't recall it.

5    Q.    Okay.

6    A.    I'm not going to say it didn't happen, but I

7    don't recall what it was for.  Might have been, again,

8    for some back pay.  They always had trouble with money

9    issues or something or another, but that's speculation

10   because I can't answer truthfully.

11   Q.    No, no.  That's fine.  If you don't remember,

12   you don't remember.  Nobody wants you guessing, so

13   that's -- that's fine.  I am going to -- you know, we're

14   going to go through some of your personnel files, and I

15   think we're going to start off with the Scott County

16   Sheriff's Office.  Let me hand you what we'll mark as

17   Exhibits ten and 11.

18              (EXHIBITS 10 and 11 MARKED FOR

19              IDENTIFICATION)

20   Q.    Ten is actually your -- this is your personnel

21   file with the Georgetown Fire Department.  And then

22   Exhibit 11, I believe, is going to be your personnel

23   file for Scott County.  So here is ten; that should be

24   Georgetown, and then here is 11 at Scott County, so

25   we're going to -- I'm going to ask you about each of

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 94 of 396
PageID #: 1599
The Deposition of BUSTER CANNON, taken on November 08, 2022

93

1  these.  This is 11.

2          Now, can you tell us, what years were you

3  employed at the Scott County Sheriff's Department, sir?

4      A.   I first got hired November, unknown date,

5  1987.  I was released December 31st, 1989, political

6  issues.  I didn't vote for the right guy and was rehired

7  by the same guy that fired me, I don't know, a year or

8  two later solely to a specific -- patrol one city in

9  town, Sadieville.  And then in 1994, Bobby --

10     Q.   So you got hired in '91 again?

11     A.   Somewhere around there.

12     Q.   Okay.

13     A.   '91, '92.  Somewhere around there.  And that

14  was just part time, and then Bobby Hammons won the

15  election in 1994, and I went back the work with him full

16  time.

17     Q.   And, then, when did you leave the Scott County

18  Sheriff's Department?

19     A.   June 2015.

20     Q.   So you were there roughly for almost 30 years,

21  off and on?

22     A.   Yeah, 28, somewhere around there, yeah.

23     Q.   If you can look at -- in 2000 -- September

24  2004, do you recall what position you would have held at

25  the Scott County Sheriff's Department?

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 95 of 396
PageID #: 1600
The Deposition of BUSTER CANNON, taken on November 08, 2022
94

1    A.   Say again.

2    Q.   September 2004, what position would you have

3    held at the Scott County Sheriff's Department?

4    A.   Gosh, I really don't recall what position I

5    had.  I might have been just a road deputy at that time.

6    Q.   So at the time of the fire investigation here

7    you may have been a road deputy at Scott County?

8    A.   Yes.

9    Q.   Can you -- what was your -- in 2004, you were

10   working full time at the Scott County Sheriff's

11   Department, correct?

12   A.   Yes.

13   Q.   And September 2004, you were also working full

14   time at the Georgetown Fire Department, correct?

15   A.   Yes.

16   Q.   Can you tell me what your workweek would have

17   looked like generally in 2004 with those two full-time

18   jobs?

19   A.   The fire department works a 24-hour shift,

20   then they're off for 48.  The next two days I spend ten

21   hours a day at the sheriff's office, then go back and do

22   another 24 at the fire department.  Next two days I go

23   back do two more tens with the sheriff's department and

24   that just kept it up.

25   Q.   And so when you say two tens, you were talking

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CARROLL, taken on November 08, 2022

95

```
1   about two, ten-hour days at the PD --
2        A.   That's --
3        Q.   -- and then you would go back to the fire
4   department?
5        A.   For 24, yes.
6        Q.   So you basically never had a day off?
7        A.   Basically.
8        Q.   What would happen if you were at the police
9   department, though, and you got called in to do an ATF
10  investigation?
11       A.   I'd have to go.
12       Q.   And the police department was cool with that?
13       A.   Yeah.  They -- they knew ahead that I was
14  still under contract with the ATF, so they didn't have
15  an issue with it.
16       Q.   When you were doing ten hour days at the
17  police department in 2004 do you recall, like, what
18  hours that would have been?
19       A.   Probably day shift would have been, like, 7:00
20  to 5:00 or 7:30 to 5:30, something like that.
21       Q.   Okay.  And when you -- do you recall what
22  position you would have had at the police -- at the
23  sheriff's department, then?
24       A.   No.
25       Q.   You were you think maybe a road deputy?
```



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 97 of 396
The Deposition of BUSTER CARROLL taken on November 08, 2022
PageID #: 1602
96

1    A.    Yeah.

2    Q.    As a road deputy, were you allowed to bring PJ

3 with you?

4    A.    No.  But if I needed her, I could go home and

5 get her.

6    Q.    What would -- when you were at the fire

7 department, you had 24 hours on, 48 hours off in 24 --

8 2004, where would PJ be when you were doing that?

9    A.    If I was at the fire department, she was with

10 me.

11    Q.    Okay.  So she would come to the fire

12 department?  Okay.

13    A.    If we had a fire run or something or another,

14 she was in the truck with us.

15    Q.    I recall, and we're going to keep these out.

16 Let me just show you something real quick.  I recall

17 when we were going through these logs, and -- and I've

18 tried to understand these, but they're not intuitive, so

19 going back to Exhibit 24, looking at the first page, can

20 you describe to me what this table represents on 1167?

21    A.    This is a training table.  All right.  It's

22 got wheels.  It's got fire scenes.  It's got negative

23 search.  It's got pinpoint.  It's got can line up.  It's

24 got steps.  It's got walls, cracks, clothing, open areas

25 such as parking lots and vehicles, humans and

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 98 of 396
The Deposition of BUSTER CAMPBELL taken on November 08, 2022
PageID #: 1603
97

1    miscellaneous, whatever you want to throw in there.

2            We'll pick a day, we'll say on -- I guess it

3    starts on the first, she done a wheel line up.  She also

4    done a can line up or she done the daisy wheel.  She

5    done a can line up, all right.  She had a total of 69

6    runs through those -- those two.

7        Q.    How long would it take to do a run?

8        A.    About two hours.

9        Q.    The whole thing?

10       A.    To do the whole thing, yeah.

11       Q.    Okay.  So about two hours for -- so about --

12   and was that kind of in 2005, in or around there, was

13   that standard for you to be training her approximately

14   two hours per a day?

15       A.    Yes.

16       Q.    And was that ever, like, less or more time or

17   was that pretty standardized for you?

18       A.    Pretty standard.

19       Q.    Okay.  So when you were working the ten-hour

20   day shift say 7:00 to 5:00 or 7:30 to 5:30, would you

21   have trained PJ before or after you got off work?

22       A.    When I was at the fire department, she would

23   be trained during work, because I was there for 24

24   hours.

25       Q.    Police department?

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 99 of 396
The Deposition of BUSTER CAMPBELL taken November 08, 2022
PageID #: 1604
98

```
 1        A.    She would be trained after work.
 2        Q.    So you would work -- you'd have 24 hours on --
 3        A.    Uh-huh.
 4        Q.    -- the fire department.  Next few days you're
 5   working ten-hour days --
 6        A.    Yes.
 7        Q.    -- at the police department, 7:00 to 5:00,
 8   7:30 to 5:30.  You get home and you would do two hours
 9   of training with PJ?
10        A.    Yes, sir.
11        Q.    Every day?
12        A.    Every day.
13        Q.    Where -- when you were working at the Scott
14   County Sheriff's Department, where were you living at
15   the time?
16        A.    What year?
17        Q.    Sorry.  That's fair.  You worked there for
18   almost 30 years.  That is very fair.  2004.
19        A.    Where I'm still at, where I currently live.
20        Q.    What city is that?
21        A.    Stamping Ground.
22        Q.    I'm sorry.  What is it?
23        A.    Stamping Ground.
24        Q.    Stamping Ground.
25        A.    Yeah.
```



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 100 of 396
PageID #: 1605
The Deposition of BUSTER CAMBRON taken on November 08, 2022
99

1        Q.    That sounds fun.  And how close to that -- how

2    close is Stamping Ground to the Scott County Sheriff's

3    Department?

4        A.    Ten miles.

5        Q.    Very close?

6        A.    Uh-huh.

7        Q.    Takes about?

8        A.    Ten, 15 minutes.

9        Q.    Ten to 15 minutes to get home.  2004 -- were -

10   - what did -- who else lived with you at home?

11       A.    I'm sorry?

12       Q.    Who else lived with you?

13       A.    My wife.

14       Q.    And I imagine when you got home from work from

15   the police department, you had -- the day before, you

16   had worked 24 hours, and then you put in a ten-hour

17   shift, I imagine you-all would eat dinner together?

18       A.    Quickly.

19       Q.    And was she with PJ during the day?

20       A.    No.  She worked, too.

21       Q.    She worked, too.  But, like -- but, generally,

22   she probably would have gotten home before you, right?

23       A.    Yes.

24       Q.    Working the ten-hour shifts, would she have

25   kind of taken care of PJ when you were home?

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CARICO, taken on November 08, 2022

```
 1        A.    No.   Other than let her out to go to the
 2   bathroom, no.
 3        Q.    Sure.
 4        A.    She wasn't authorized to train her.
 5        Q.    Not train her but just, you know, feed her.
 6        A.    Or feed her, train her.  That's how she gets
 7   her training in.  That's how she gets her feed.
 8        Q.    Okay.  So, like, only when she's training is
 9   she eating?
10        A.    (Witness nods head.)
11        Q.    So your wife wasn't feeding her at all?
12        A.    No.
13        Q.    Did PJ ever, you know, like, you know, get to
14   play?
15        A.    Oh, yeah.
16        Q.    Like, was your wife allowed to take her --
17        A.    She was allowed --
18        Q.    -- on walks.
19        A.    She was allowed to interact with her.  She
20   just couldn't train her.  She --
21        Q.    And she couldn't feed her?
22        A.    -- couldn't feed her.
23        Q.    So PJ, when she was at home, she wasn't
24   allowed access to bones, right?
25        A.    No.
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CANNON, taken November 08, 2022

```
 1        Q.   She wasn't given treats unless it was --

 2        A.   Unless it was from me.

 3        Q.   -- during the training?

 4        A.   Yeah.  When she finished her treat up, she got

 5   a milk bone, or when she finished her training -- I'm

 6   sorry -- I'd give her a milk bone.  That was her cue

 7   that she's done, and that was a daily thing.

 8        Q.   And it's my understanding that by 2004 PJ was

 9   on a strict diet?

10        A.   Yes.

11        Q.   How much food were you giving her during that

12   period of time?  Excluding training, how much food did

13   she have on a daily basis?

14        A.   Excluding training?

15        Q.   Yeah.

16        A.   None.

17        Q.   PJ only got fed when she was training?

18        A.   (Witness nods head.)

19        Q.   And on days where PJ was brought to fire

20   investigations --

21        A.   Yes.

22        Q.   -- PJ would have only been fed when she made

23   alerts, correct?

24        A.   Correct.

25        Q.   And on days that PJ went to the -- say that
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  she went to a fire scene, she would not have been

2  trained after going to a scene that day, right?

3        A.   It depended on how much ration I gave her,

4  and, say, if I gave her a cup that day, then she gets

5  another cup when she gets back.  She'll get another

6  training --

7        Q.   Okay.

8        A.   -- to -- to get that cup down her.

9        Q.   Okay.  But outside of when she was actively

10 being trained for those two hours a day, PJ wasn't

11 eating, correct?

12       A.   Correct.  Now, sometimes it didn't take two

13 hours.  Sometimes I could do an hour and a half,

14 depended on what I was training her on.

15       Q.   Sure.  But, like, you know, for me, I left

16 home this morning, our dog, you know, kind of grazes

17 like a cow --

18       A.   Yeah.

19       Q.   -- and just goes back and forth to the food

20 all day.

21       A.   Free eater.

22       Q.   Nothing like that with PJ, right?

23       A.   No.

24       Q.   She had no access to food unless she was

25 actively training?



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

The Deposition of BUSTER CANADA, taken on November 08, 2022

103

```
 1        A.   Yeah.  She knew no other way.
 2        Q.   And you would agree that by 2004, by only
 3   giving PJ food when she was either training or making
 4   alerts at a fire scene, that that could encourage a
 5   canine to make alerts to get food, right?
 6        A.   Well, I'm not a dog, and I can't think like a
 7   dog, so -- but knowing dogs like I do, it's very
 8   possible.
 9        Q.   Yeah.  Certainly if -- when you were a child,
10   and you didn't have control of food, you probably would
11   ask your parents when you got hungry to give you some
12   food, right?
13        A.   Yeah.
14        Q.   And that might cause you -- and sometimes when
15   you were a child, did your parents ever sort of, like,
16   reward you for doing something positive like learning
17   how to use the bathroom, you know, when you're potty
18   training or...
19        A.   I can't answer that one.  I don't remember.
20        Q.   Okay.  Okay.  That's fair.
21        A.   We didn't have nothing anyway when I was a
22   kid, so no.
23        Q.   Yeah.  Yeah.  I -- our daughter is potty
24   training which is why I've got this thing in my mind --
25        A.   Yeah.
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 105 of 396
PageID #: 1610
The Deposition of BUSTER CANNON taken on November 08, 2022
104

1      Q.    -- about rewards.  And did you ever, you know,

2    become skeptical of only feeding PJ when she was making

3    alerts during a fire investigation?

4      A.    No.  Per ATF protocol, that's what I had to

5    do, so no.

6      Q.    Did you ever feel bad about it, though?

7      A.    Oh, yeah, but, no, I didn't bend.  She had to

8    maintain a certain weight, and for me to give her treats

9    and extra stuff, she would have put on the weight, and I

10   would have had to starve her to get back off, so, no, I

11   didn't do that.

12     Q.    I mean, there were times, you know, before the

13   2006 trial that you would have seen signs that PJ was

14   hungry during a fire investigation, right?

15     A.    Yeah.

16     Q.    Sometimes she would probably whine?

17     A.    No, never whined.

18     Q.    Like the -- you know, with -- with dogs, like,

19   they want something, they start making these noises?

20     A.    Well, when I would notice things like is when

21   I'd go to get the pouch, and the pouch is what her food

22   -- what I put her food in.

23     Q.    Uh-huh.

24     A.    And she would get excited.

25     Q.    Yeah.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

The Deposition of BUSTER CARTER, taken on November 08, 2022
105

```
 1          A.    So, yeah, she was hungry.  If she wasn't
 2     hungry, she wouldn't be excited.  I get to eat, you
 3     know.
 4          Q.    Tail wagging?
 5          A.    Yeah.  She was happy.
 6          Q.    And when you would go on the fire
 7     investigations, it would have been your practice to keep
 8     the pouch on you, right?
 9          A.    Yes.
10          Q.    So that reward of getting food would have been
11     on you as you were walking through a fire investigation
12     with PJ?
13          A.    Yes.
14          Q.    What kind of dog was PJ?
15          A.    She was a yellow Labrador retriever.
16          Q.    I actually got a -- I've got a -- now, did you
17     -- did you get to pick PJ out when you went to the
18     academy?
19          A.    We didn't get the dog two or three days after
20     the fact.  We didn't know what dog we were getting or
21     anything.  We knew we were going to get a dog.  But,
22     yeah, we -- we were bunked up in a hotel room for five
23     weeks and, you know, two or three days after we got
24     there, we got the dog.
25          Q.    I got a real -- real nice picture that I
```



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

The Deposition of BUSTER CANNON taken on November 08, 2022
                                                            106

1  imagine you've got at home somewhere.

2      A.   I've got it.

3      Q.   And I'll mark this as Exhibit 27.

4           (EXHIBIT 27 MARKED FOR IDENTIFICATION)

5      Q.   And, you know, Mr. Cannon, if -- I think I

6  told you this earlier when I was in that bumpy car --

7      A.   Uh-huh.

8      Q.   -- and probably couldn't see or hear anything

9  I was saying, but, you know, if you ever want to take a

10  break today, you know, please let us know.

11      A.   Yeah.

12      Q.   And --

13      A.   We're getting close.

14      Q.   I know with -- with PJ especially.  I love,

15  you know, our dog so much, and so I don't --

16      A.   Oh, I'm over it now.  It's been --

17      Q.   Okay.

18      A.   -- since 2006.

19      Q.   Okay.  Just not -- I don't want to be breaking

20  you down any today.  So Exhibit 27, if you look at the

21  first page of that, sir, please let me know who -- who

22  we've got there.

23      A.   Please let you know what?

24      Q.   Just the first page; is that -- who is that?

25      A.   That's myself and PJ.



Kentuckiana Reporters          502.589.2273 Phone
P.O. Box 3983                  502.584.0119 Fax
Louisville, KY 40201           schedule@kentuckianareporters.com
                               www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

The Deposition of BUSTER CANNON, taken on November 08, 2022

107

1      Q.    Okay.  And would this have been out at the
2  academy?
3      A.    No.  This is at the fire department.
4      Q.    Okay.  And so, this would have been sometime
5  after you got back from Virginia --
6      A.    Yes.
7      Q.    -- and the dress attire that you're wearing,
8  is that the formal attire for the --
9      A.    No.  That's a --
10     Q.    -- fire department?
11     A.    That's a Class A uniform, dress uniform.
12     Q.    Okay.  So that's not what you would normally
13  wear when you go to the fire investigations --
14     A.    No.
15     Q.    -- but that's when you're dressing up for
16  something official?
17     A.    Right.
18     Q.    Now, on the next page, which is Cannon 3169,
19  is that a photograph of you and PJ during a fire
20  investigation?
21     A.    No.  I believe that's actually David Raisor.
22  He was a backup handler.
23     Q.    What's his name?
24     A.    David Raisor.
25     Q.    And where did David Raisor work at?

Kentuckiana Reporters          502.589.2273 Phone
P.O. Box 3983                  502.584.0119 Fax
Louisville, KY 40201           schedule@kentuckianareporters.com
                               www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 109 of 396
PageID #: 1614
The Deposition of BUSTER CANNON, taken on November 08, 2022
108

```
 1        A.    Georgetown Fire Department.  He was on my
 2   shift.
 3        Q.    He was part of the -- one of those lawsuits, I
 4   think, that we looked at, right?
 5        A.    Yeah, for the city.  Yes.
 6        Q.    Yeah.  How often did Mr. Raisor take PJ out?
 7        A.    Not very often.  I was either on vacation or
 8   had to be on vacation, and he would come in and take
 9   care of the dog while I was gone and train her, feed her
10   and do any fire investigation or take her out.  I don't
11   know about the fire investigation, but he would take her
12   out and try to see if she was going to find anything.
13        Q.    Did -- would -- did he go down to Virginia for
14   that training academy?
15        A.    Yes, he did.  He was there for the last week
16   with me.
17        Q.    Okay.  Do you know whether -- whether he's
18   still alive?
19        A.    As far as I know he is.
20        Q.    Do you know, is he still at the Georgetown
21   Fire Department?
22        A.    No.  He's retired.
23        Q.    Now, can you see the leash that's on PJ there
24   in that -- in 3169?
25        A.    What was the question?
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 110 of 396
PageID #: 1615
The Deposition of BUSTER CANNON, aka on November 08, 2022
109

```
 1        Q.    Can you see the leash there that he's holding?
 2        A.    I can.
 3        Q.    Would you consider that to be a short leash or
 4   a long leash?
 5        A.    That's a short leash.
 6        Q.    So the way he's holding it would be how you
 7   would hold a short leash?
 8        A.    Yes.
 9        Q.    Okay.  And the short leash that -- the way
10   that he's holding it, is that similar in nature to how
11   you would have held the leash during your second walk
12   through on September 12, 2004 with PJ?
13        A.    Exactly.
14        Q.    And that -- it looks like maybe a leather
15   pouch on his back left hip.
16        A.    That's a radio pouch.
17        Q.    That's a radio pouch.  Okay.  Where -- where
18   would -- where would the treat pouch be?  Can you see
19   it?
20        A.    The treat pouch, he's reaching into it with
21   his right hand.
22        Q.    On the right side?
23        A.    Yes.
24        Q.    Okay.  Okay.  And so this would be an example
25   of PJ getting fed --
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CANTRELL, taken on November 08, 2022

110

```
 1        A.   Be an example.

 2        Q.   -- after making an alert?

 3        A.   Yes.

 4        Q.   And that's -- the -- the position she's

 5   sitting right there, that's the alert position, right?

 6        A.   Yes.

 7        Q.   The -- the next page, 3172, can you tell us

 8   what this photograph depicts?

 9        A.   Too dark to tell but it looks like it's me and

10   PJ just playing.

11        Q.   Is that a training that you're putting her

12   through there?

13        A.   No.  It looks like just playtime.

14        Q.   Okay.  On 3172.  Oh, sorry.  The next one. I'm

15   sorry.

16        A.   I'm on 3170.

17        Q.   Yeah.  Sorry.  Go to 72, please.

18        A.   Okay.  This is ATF training facility.

19        Q.   This would have been down in Virginia, then?

20        A.   I'm not sure if it's Virginia or a re-cert

21   class.

22        Q.   Okay.  And you're on 3171 right now?

23        A.   This is 2003, '4, 2004 that would be a re-cert

24   class.

25        Q.   Okay.  And is that you with PJ?
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 112 of 396
The Deposition of BUSTER CAMPBELL, taken on November 08, 2022
                                                                                111

1        A.   It is.  Those are daisy wheels.  You spin

2   those wheels.  They have a pint can with holes knocked

3   through the top of them and everything in those pint

4   cans just drop down into that gallon can, but everything

5   inside that pint can is burnt with a drop of accelerant

6   on it, but only one of them will have it.  And you'll

7   spin that wheel and then walk the dog around that wheel

8   until she alerts.

9        Q.   And then after the alert is when she would get

10  fed?

11       A.   She'll sit like she's doing in the photo and

12  get fed as I'm doing so.

13       Q.   What -- if you can go back to -- I'm going to

14  show you -- sorry.  So we'll -- we'll put this exhibit

15  away for right now.  I think we're done with that, and

16  then I'll put this little tab on this, but let's go back

17  to your Exhibit 10 and 11, so we've got these two

18  personnel files here.

19       A.   Okay.

20       Q.   The one that's for Scott County, so Exhibit

21  11, if you can turn in there to -- I believe it's 12 --

22  page 1244.  I believe -- I believe that on -- in

23  November of 2006 you were appointed to the office of

24  Scott County Sheriff; is that right?

25       A.   Correct.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 113 of 396
PageID #: 1618
The Deposition of BUSTER CANNON, taken on November 08, 2022

112

1        Q.   And that would have been to actually become
2    the sheriff; is that right?
3        A.   Yes.
4        Q.   Now, prior to that, would you have you been a
5    deputy sheriff?
6        A.   Yes.
7        Q.   And so I know right now you don't remember
8    your exact title in 2004 but is it fair to say you would
9    have been some type of deputy at the sheriff's
10   department?
11       A.   Yeah.
12       Q.   Now, it looks like in 2005 there was some
13   turmoil going on at the Scott County Sheriff's
14   Department; is that right?
15       A.   No, not knowing what.
16       Q.   No?  If you go to page -- you know, maybe it's
17   a bad assumption by me but if you go to page 1232?
18       A.   1252?
19       Q.   1232.
20       A.   1232?
21       Q.   Yeah.  It looks like on October 1st, 2005 you
22   retired, and, then, you were rehired 30 days later?
23       A.   Yeah.  They called it double dipping.
24       Q.   Okay.  That's what that was.  Okay.  So you
25   retired to get a pension from the Scott County Sheriff's

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 114 of 396
The Deposition of BUSTER CARROLL, taken on November 08, 2022
Page ID #: 1619
113

1    Department --

2         A.    Yeah.

3         Q.    -- on October 1st, 2005; is that right?

4         A.    Yes.

5         Q.    And, then, you waited 30 days to get rehired?

6         A.    Get reinstated.

7         Q.    And so, at that point you would have had a

8    full-time salary plus the pension?

9         A.    Yes.

10        Q.    Okay.  Why did you retire June 30th, 2015?

11        A.    I was done.  That was permanent retirement.

12        Q.    Well, why like -- why not just retire the

13   first time instead of working for six more months?

14        A.    I was still young.

15        Q.    But what made you be done with -- oh, you know

16   what, I apologize.  I'm sorry.  I didn't realize there

17   was a decade in between, so ten years later is when you

18   retired again.

19        A.    Yeah.

20        Q.    So, for -- sorry about that.  So, for -- you

21   got the pension, then you continued working for another

22   decade --

23        A.    Yeah.

24        Q.    -- and then you finally retired?

25        A.    Yeah.  They have since then stopped all that.



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CARNES, taken on November 08, 2022

114

```
 1        Q.   And so, the time that you retired, you would
 2   have had two pensions from the Scott County Sheriff's
 3   Department plus whatever retirement benefits you had
 4   from the Georgetown Fire Department?
 5        A.   They all went into the same pool.
 6             MR. SLOSAR:  Okay.  And, then, you know, I
 7        don't know whether this has been discussed here or
 8        not, but are we going to reach an agreement to
 9        reserve punitive damages discovery until after
10        dispositive motions; is that --
11             MR. COLE:  I think we objected to it, but we
12        can revisit it after...
13             MR. SLOSAR:  Okay.  If -- if I ask punitive
14        damages discovery here, you're going to instruct him
15        not to answer, correct?
16             MR. COLE:  Yes.  We would like to reserve that
17        issue.
18             MR. SLOSAR:  Reserve the issue until later.
19        Okay.  We'd like to reserve it until later if you
20        guys are agreeable.  I just -- from your initial --
21             MR. COLE:  Well, I mean, we've objected to it -
22        -
23             MR. SLOSAR:  Well, when you said object --
24             MR. COLE:  -- so --
25             MR. SLOSAR:  Yeah.
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

```
 1          MR. COLE:  -- we can revisit the issue at a
 2     later time.
 3          MR. SLOSAR:  Okay.  Okay.
 4  BY MR. SLOSAR:
 5     Q.   At the Scott County Sheriff's Department, do
 6  you recall there being any complaints filed against you
 7  by citizens in the community?
 8     A.   Not that I recall.
 9     Q.   Were you ever disciplined in any way while at
10  the department?
11     A.   No.
12     Q.   Outside of the Scott County Sheriff's
13  Department, have you ever worked for any other law
14  enforcement agency?
15     A.   I was deputy jailer for a little while.
16     Q.   For what county?
17     A.   Scott.
18     Q.   Between -- what years were you deputy jailer?
19     A.   That, I can't remember.
20     Q.   Well, let's -- before or after you started
21  working for the Georgetown Fire Department?
22     A.   I think it was before.
23     Q.   Okay.  So there wouldn't be an occasion where
24  you were both a firefighter, police officer and a jailer
25  at the same time?
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 117 of 396
PageID #: 1622
The Deposition of BUSTER CAMBRON, taken November 08, 2022
116

```
 1        A.    No.

 2        Q.    Okay.

 3        A.    No.  That's enough.

 4        Q.    At some point, did you work as a special

 5   deputy U.S. Marshal?

 6        A.    Yes.

 7        Q.    Tell me about that.

 8        A.    ATF had that done so I'd have jurisdiction

 9   nationwide.  So when they called me out, I would be

10   covered, if they called me to another state --

11        Q.    And --

12        A.    -- but that didn't last very long.

13        Q.    And that would have been while PJ was

14   participating in fire investigations with you, correct?

15        A.    Yes.  Yes.

16        Q.    I believe the 1223, 1224, there's an oath of

17   office and an authorization for you to do that.  Does it

18   -- is it consistent with your recollection that this

19   began in September of 2004?

20        A.    Now, which is this?

21        Q.    The special deputation appointment, so 1224 I

22   think is --

23        A.    1224.

24        Q.    -- where I see you sign, yeah.

25        A.    This would be through the federal government.
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 118 of 396
The Deposition of BUSTER CANNON, taken on November 08, 2022
PageID #: 1623
117

1    Q.    Uh-huh.  And so you would have been sworn in

2    as a special deputy for the U.S. Marshal September 9th,

3    2004?

4    A.    Yes.

5    Q.    And that was three days before becoming

6    involved in the fire investigation in this case,

7    correct?

8    A.    Yeah, that's what the date says, yes.

9    Q.    And do you see that it has the appointee's

10   employer on here as the Scott County Sheriff's

11   Department.  It's -- I'm on 1224.  Sorry.  Sorry,

12   Mr. Cannon.  So you'll see it says agency employment. If

13   you -- yep.  Do you see where it says, "The appointee's

14   employer is the Scott County Kentucky Sheriff's

15   Department"?

16   A.    Yes, that's wrong.

17   Q.    You would agree that that would tend to

18   indicate that your activities on behalf of the U.S.

19   Marshall's office and the ATF was on behalf of the Scott

20   County Sheriff's Department and not the Georgetown Fire

21   Department, correct?

22         MR. STILZ:  Object as to form.

23   A.    Yeah.  And it says, "Sponsoring agency, ATF."

24   The ATF had nothing to do with the sheriff's department

25   at that time.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 119 of 396
The Deposition of BUSTER CANNON taken on November 08, 2022
Page ID #: 1624
118

1    Q.   Well, the ATF is sponsoring you as a deputy to

2    the U.S. Marshall's office, I think, is what that's

3    representing --

4    A.   That very well may be.

5    Q.   -- that they're the ones vouching for you?

6         MR. STILZ:  Object as to form.

7    A.   Very well may.

8    Q.   But you would agree on here that it does not

9    say that your employer is the Georgetown Fire Department

10   but rather the Scott County Sheriff's Department?

11   A.   Yes.

12   Q.   And if you go back a page to page 1223, do you

13   see where it says, "A subject's special deputation"?

14   It's at the top?

15   A.   Yes.

16   Q.   Below that, do you see where it says, "This is

17   your authority to deputize the following individuals as

18   special Deputy U.S. Marshal."

19   A.   Yes.

20   Q.   Do you see where it says, "Carmel Cannon"?

21   A.   Yes.

22   Q.   And do you see the phone number (502)

23   535-5950?

24   A.   Yes.

25   Q.   Is that a phone number associated with you in

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 120 of 396
PageID #: 1625
The Deposition of BUSTER CANNON, taken November 08, 2022
119

1    September 2004?

2         A.    Yes.

3         Q.    Is that a personal number or -- or a --

4         A.    Personal.

5         Q.    -- law enforcement number?

6         A.    Personal number.

7         Q.    Below do you see where it says, "Scott County

8    Sheriff's Department"?

9         A.    Yes.

10        Q.    And would you agree that according to the

11   special deputation authorization that you were deputized

12   in September 2004 as a member of the Scott County

13   Sheriff's Department?

14             MR. STILZ:  Object as to form.

15        A.    Yes.

16        Q.    Would you agree that this deputation does not

17   refer to your employment at the Georgetown Fire

18   Department whatsoever?

19        A.    Yes.

20             MR. SLOSAR:  Can we take another short break;

21      is that okay?

22             MR. COLE:  Yeah.

23             VIDEOGRAPHER:  Okay.  We off the record at

24   1:16.

25             (OFF THE RECORD)

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 121 of 396
PageID #: 1626
The Deposition of BUSTER CANNON, taken on November 08, 2022
120

```
 1              VIDEOGRAPHER:  Okay.  We are back on the record
 2      for the deposition of Buster Cannon.  Today is
 3      November 8th, 2022 and the time is 2:02.
 4  BY MR. SLOSAR:
 5      Q.   Now, Mr. Cannon, after you were hired at the
 6  Scott County Sheriff's Department, did you attend the
 7  police academy?
 8      A.   No.
 9      Q.   Have you ever attended the police academy?
10      A.   Yes.
11      Q.   When did you first attend the police academy?
12      A.   I can't remember when it was, but I was kind
13  of grandfathered in but I still had to do a 40-hour
14  course.  It included all the things that they -- they do
15  now.
16      Q.   Was that like recertification or was that like
17  learning it for the first time but for those who had
18  been grandfathered in?
19      A.   Kind of learning it for the first time for
20  those who had been grandfathered.  Then after that, it
21  was continued 40 hours in service.
22      Q.   Do you remember whether that happened before
23  or after you testified at Mr. Yell's 2006 trial?
24      A.   That was way before.
25      Q.   Way before.  Sometime in the '90s?
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 122 of 396
The Deposition of BUSTER CANNON, taken on November 08, 2022
PageID #: 1627
121

1      A.    Yeah.

2      Q.    Okay.  What do you recall learning during that

3    40-hour course?

4      A.    I'm sorry?

5      Q.    What do you recall learning during that

6    40-hour course?

7      A.    Well, we done defensive driving.  We've done

8    shooting.  We've done domesticate -- or domestic

9    relations, just things that a normal police officer goes

10   through.

11     Q.    Did --

12     A.    Or domestic situations.  I'm sorry.

13     Q.    Is it fair to say that you would have learned

14   the basics of being a police officer during that course?

15     A.    Yes.

16     Q.    Is it fair to say that you would not have

17   received training on that course on how to conduct a

18   homicide investigation?

19     A.    A homicide?

20     Q.    Yeah.

21     A.    No.

22     Q.    Fair to say you would not have received

23   training in that course on how to conduct an arson

24   investigation?

25     A.    No.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 123 of 396
The Deposition of BUSTER CANNON, taken November 08, 2022
PageID #: 1628
122

1        Q.    And when you say, "no," you're agreeing with

2    me, right?

3        A.    Yes.

4        Q.    Yeah.  I -- I figured that, but I just want to

5    make sure for the record.

6             Fair to say that you would not have received

7    training as part of that program on how to disclose

8    exculpatory evidence during a criminal investigation?

9        A.    It's possible.  I just don't recall, but it's

10   possible.

11       Q.    Okay.  No specific memory one way or the other

12   on that?

13       A.    No.

14       Q.    Fair to say that you would not have received

15   any guidance on disclosing evidence related to canine's

16   during the course of a fire investigation?

17       A.    Correct.  No.

18       Q.    Okay.  Now, have you ever been in the

19   military, sir?

20       A.    No.

21       Q.    Okay.  Now, as a Scott County Sheriff Deputy

22   in 2004, who would have been your supervisors?

23       A.    The sheriffs.

24       Q.    And was that Mr. Hammons --

25       A.    Yes.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 124 of 396
The Deposition of BUSTER CARROLL taken on November 08, 2022
PageID #: 1629
123

1      Q.    -- Bobby Hammons?  Would you have had any

2   other supervisor?

3      A.    There was a Chief Deputy Kenneth Kimble.

4      Q.    And the last name, can you spell that for me.

5      A.    K-I-M-B-L-E.

6      Q.    Okay.

7      A.    Kimble.

8      Q.    Kenny Kimble.

9      A.    Yeah.

10     Q.    Okay.

11     A.    Kenneth Kimble.

12     Q.    And he was the chief deputy?

13     A.    Yeah.

14     Q.    Okay.  So would he have been your direct --

15   your immediate supervisor?

16     A.    Yeah.  I'd say so, yeah.

17     Q.    Okay.  Did you ever discuss with him any of

18   the fire investigations that you were working on?

19     A.    No.

20     Q.    And when it -- let me be more specific, did

21   you ever talk to Mr. Kimble about any of the fire

22   investigations you were working on as a member for the

23   Scott County Sheriff's Department?

24     A.    No.

25     Q.    Did you ever discuss with Mr. Kimble any of

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 125 of 396
PageID #: 1630
The Deposition of BUSTER CARROLL, taken on November 08, 2022
124

 1    the fire investigations that you were called out on, on

 2    behalf of the ATF?

 3         A.   No.

 4         Q.   Did you ever discuss with Mr. Kimble any of

 5    the fire investigations you participated in on behalf of

 6    the Georgetown Fire Department?

 7         A.   No.

 8         Q.   Okay.  What about with Sheriff Hammons?  Did

 9    you discuss with him your involvement in fire

10    investigations?

11         A.   Yes.

12         Q.   And can you tell us about -- about what you

13    would usually communicate with Sheriff Hammons about in

14    relation to your fire investigations.

15         A.   Well, we had an extremely good relationship,

16    and if I needed to take off work to go to one of them,

17    he would be gracious enough to let me do so.

18         Q.   So, for instance, if you got called out by the

19    ATF or the Georgetown Fire Department to participate in

20    a fire investigation, that's something that you would

21    feel comfortable enough going directly to the sheriff

22    about?

23         A.   Yes.

24         Q.   Okay.  And did you ever discuss with the

25    sheriff, when you got back from that investigation, you



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 126 of 396
The Deposition of BUSTER CAMPBELL, taken November 08, 2022
PageID #: 1631
125

1    know, what had happened?

2        A.    No.

3        Q.    **Why not?**

4        A.    Well, it was a fire investigation.  He didn't

5    have anything to do with a fire investigation.

6        Q.    **Wasn't he curious about what you were up to,**

7    **though?**

8        A.    No.  I wasn't up to nothing.  I went to

9    investigate a fire.

10        Q.    **Sure.  But, you know, like, sometimes the ATF,**

11    **you're one of approximately, what, 50 or 60 dog handlers**

12    **in -- in the United States in or around 2004 who was --**

13    **who could be called anywhere in the country to conduct**

14    **an arson investigation, fair?**

15        A.    Yes.  Uh-huh.

16        Q.    **And certainly -- and on occasion you were**

17    **called out of state to help participate in fire**

18    **investigations, right?**

19        A.    Yes.

20        Q.    **And sometimes that would take, you know, more**

21    **than one day for you to be out of state, fair?**

22        A.    It wasn't very often, but, yes.

23        Q.    **And is it fair to say that while you were out**

24    **of state on these investigations, that you would need**

25    **to, you know, contact the sheriff and advise him of**



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 127 of 396
The Deposition of BUSTER CARROLL, taken on November 08, 2022
PageID #: 1632
126

1    what's going on?

2         A.    Well, now, yes.  Now, that did happen.

3         Q.    And when you got back from these fire

4    investigations, wouldn't Sheriff Hammons, you know, be

5    curious as to whether you -- PJ was able to alert --

6         A.    He was always so busy with other stuff.  I

7    mean, if the conversation come up, it might have come up

8    during a meal or something, but it would have been a

9    very brief conversation.

10        Q.    Okay.  Did you ever have, like, regularly

11   scheduled meetings with Sheriff Hammons about your

12   investigations?

13        A.    No.

14        Q.    And -- and it sounds like you didn't have any

15   regular communication with Sheriff Hammons about the

16   fire investigations unless it involved scheduling?

17        A.    Yes.

18        Q.    Is that --

19        A.    True.

20        Q.    So he never oversaw in any way --

21        A.    No.

22        Q.    -- any of your duties as a fire investigator?

23        A.    No.

24            MR. STILZ:  Object as to form.

25        Q.    Fair to say that you didn't have any direct

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 128 of 396
The Deposition of BUSTER CANNON, taken November 08, 2022
PageID #: 1633
127

```
 1    supervision at the Scott County Sheriff's Department on
 2    your fire investigations?
 3              MR. STILZ:  Object.  Object as to form.
 4         A.   That's true.
 5         Q.   You -- you and PJ were kind of allowed to
 6    assist in fire investigations without any meaningful
 7    supervision of the Scott County Sheriff's Department?
 8              MR. STILZ:  Object as to form.
 9         A.   I'd call him and let him know what was going
10    on, if I had to miss or anything like that, and he was
11    fine.
12         Q.   Well, outside of scheduling, there was no real
13    supervision there, right?
14         A.   No.
15              MR. STILZ:  Object as to form.
16         Q.   When you say, "no," you're agreeing with me?
17         A.   Yes.
18         Q.   Yeah.
19              Now, in addition to the Scott County Sheriff's
20    Department you were also employed by the Georgetown Fire
21    Department, correct?
22         A.   Correct.
23         Q.   And, you know, let me -- generally, it appears
24    that you worked on and off for the Scott County
25    Sheriff's Department from November of 1987 until June of
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 129 of 396
The Deposition of BUSTER CANTRELL taken on November 08, 2022
PageID #: 1634
128

1    2015; is that fair?

2         A.    Fair, yes.

3         Q.    Okay.  And can you tell me what the time frame

4    of your employment at the Georgetown Fire Department

5    would have been?

6         A.    October 1990 to September 30, 2015,

7    thereabouts, up close.

8         Q.    So approximately 25 years?

9         A.    Fifteen years.

10        Q.    1990 to 2015?

11        A.    Oh, sorry.  That's 2005.  I'm sorry.

12        Q.    25 years.  Yeah.  You're trying to undersell

13   yourself by a decade?

14        A.    Yeah, 2005.

15        Q.    So you generally retired from everything in

16   2015?

17        A.    Yes.

18        Q.    Okay.  And during -- between 1990 and 2015,

19   did you ever leave the Georgetown Fire Department or

20   were you constantly employed there?

21        A.    Well, we need to reiterate that.  It was from

22   October 1990 to 2005.

23        Q.    What happened in 2005?

24        A.    That's when I retired from the fire

25   department.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 130 of 396
The Deposition of BUSTER CARROLL taken on November 08, 2022
                                                                    Page ID #: 1635
                                                                    129

 1        Q.    So you didn't stay there until 2015?

 2        A.    No.

 3        Q.    Oh.

 4        A.    Sheriff's office.

 5        Q.    All right.  Now, you're -- I -- okay.  I think

 6   I see where the confusion happened.  So you retired from

 7   the Georgetown Fire Department 2005?

 8        A.    Yes.

 9        Q.    You also retired from the sheriff's department

10   in 2005, right?

11        A.    '15 -- well, yeah.

12        Q.    Yeah.

13        A.    And then went back.

14        Q.    And then you went back until '15.  Is there a

15   reason why you went back to the sheriff's department in

16   2005 after retiring but not the fire department?

17        A.    Yeah.

18        Q.    What was that reason?

19        A.    One, I was too young to retire.  The other is,

20   I could do my retirement -- draw my retirement and go

21   back to work and still make money.

22        Q.    Sure.  My -- let me ask it a better way.  Why

23   didn't you continue working both jobs between 2005 and

24   2015 like you had before?

25        A.    I was tired.



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 131 of 396
The Deposition of BUSTER CANNON, taken on November 08, 2022
PageID #: 1636
130

1      Q.    Okay.

2      A.    I was wore out.  I was never home.  Didn't get

3    to see my child grow up.

4      Q.    So by 2005, is it fair to say that the pace of

5    your life with working two full-time jobs just wasn't

6    sustainable?

7      A.    No.  I was doing anywhere between probably 96

8    to 130 hours a week.

9      Q.    For how many years were you doing that?

10     A.    Almost 15.

11     Q.    And in 2005, you said -- how many children do

12   you have?

13     A.    One.

14     Q.    Okay.  And how old would your child have been

15   in 2005?

16     A.    Let me think.  She'd probably been 30.  28,

17   30.

18     Q.    So -- so she was an adult by then?

19     A.    Yeah.

20     Q.    Do you have grandkids now?

21     A.    I do.  I got my first great granddaughter.

22     Q.    And I imagine you're making up for lost time?

23     A.    Yeah.

24     Q.    And -- so, is it fair to say that by 2005,

25   when you retired from the Georgetown Fire Department,

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1   that you were just worn down?
 2        A.   Yes.
 3        Q.   The hours had become too much?
 4        A.   Yes.
 5        Q.   And you were no longer -- is it fair to say
 6   that you had concerns that with the amount of hours that
 7   you were working on a weekly basis, that you wouldn't be
 8   in a position to do the best job that you could at both
 9   of those, with -- with that kind of hours?
10        A.   No.  The -- probably the main reason I retired
11   from the fire department was COPD.
12        Q.   And is that a breathing --
13        A.   Lung disease.
14        Q.   Okay.  And so, in -- by 2005, had you been
15   diagnosed with a lung disease?
16        A.   I wasn't diagnosed with it then but I am now
17   but I knew I wasn't right.  I got to where I couldn't
18   wear an SCBA, which is an Air-Pak, because I couldn't
19   get enough air and I wasn't going to put myself in
20   danger, let alone somebody else that needed me there.
21
22
23
24        Q.   When did you start having those health issues?
25        A.   About 47 years old, 20 years ago.
```



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

The Deposition of BUSTER CARROLL, taken on November 08, 2022

132

```
 1        Q.    About 2002?

 2        A.    Thereabouts, yeah.

 3        Q.    And that would have been -- and -- and was it

 4   difficulty with breathing, was that the first sort of

 5   system?

 6        A.    Yeah.

 7        Q.    What other systems would you have?

 8        A.    Just get tired.

 9        Q.    And did you get to see a doctor about that in

10   --

11        A.    Not at the time, no.

12        Q.    Okay.  How long did it -- how much -- for how

13   long did you tough it out before you finally were told

14   to go to a doctor?

15        A.    Probably another eight years.

16        Q.    2010?

17        A.    Yeah.

18        Q.    After you retired?

19        A.    Yeah.

20        Q.    So you kind of thought when you took the foot

21   off the gas in 2005 --

22        A.    It would slow down.

23        Q.    -- that it might help out?

24        A.    Yeah.

25        Q.    But it didn't --
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CARTER, taken on November 08, 2022

```
 1        A.   It did for a while.  That's why I'm chewing
 2   the gum.
 3        Q.   I don't know what -- does that help with --
 4        A.   Yeah, it's Nicorette.
 5        Q.   Oh, okay.  Okay.  Do you have a smoking --
 6   were you smoking a lot growing up, too?
 7        A.   Oh, yeah.
 8        Q.   Okay.
 9        A.   Because I smoked for 50 years.
10        Q.   Okay.  So, by 2004 is it fair to say that you
11   would have been, you know, pretty tired by that point in
12   your career, as well?
13        A.   Well, by the time 2004 rolled around, I was
14   still good enough to do my job sufficiently, but -- but
15   I knew it was getting close, yes.
16        Q.   And the hours were wearing on you?
17        A.   Yeah.
18        Q.   And I think in this particular case,
19   Russellville, that's, what, about a three-hour drive?
20        A.   Yeah.
21        Q.   It's a long, long haul.  And at the time you
22   participated in -- in this fire investigation, you would
23   have been working multiple time jobs, correct?
24        A.   Yes.
25        Q.   And I think you estimated earlier somewhere
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 135 of 396
PageID #: 1640
The Deposition of BUSTER CARROLL, taken on November 08, 2022
134

 1    from 90 to 130 hours a week?

 2        A.   Yeah.

 3        Q.   And that would be -- that would have been true

 4    in September 2004, somewhere in that range, right?

 5        A.   Yes, sir.

 6        Q.   And how often did you take time off?

 7        A.   Usually when I took time off it was vacation

 8    time.  And if I needed to take, say, like a day for

 9    Christmas or something like that, we'd switch out with

10    somebody who didn't have a family, and then I'd make it

11    up to them down the road.  But sometimes I'd end up

12    pulling 48 straight.

13        Q.   48 hours?

14        A.   (Witness nods head.)

15        Q.   And then you would do the two days at the

16    sheriff's department of the ten-hour shifts?

17        A.    I would do one, because I had already used

18    another 24 at the fire department.

19        Q.   All right.  So you would -- you would

20    basically work, like, 58 hours out of 72?

21        A.   Yeah.

22        Q.   And that's -- that was the type of work ethic

23    that you had even during the course of this fire

24    investigation?

25        A.   Yes.



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 136 of 396
The Deposition of BUSTER CANNON, taken on November 08, 2022
PageID #: 1641
135

1    Q.    What -- what drove you to work those type of

2    hours?

3    A.    I just tried to do good.

4    Q.    Yeah.  Fair to say that, like, you know, your

5    careers, you know, either as a law enforcement officer

6    or a fire investigator, they were dedicated to helping

7    others, right?

8    A.    Yeah.

9    Q.    And you wanted to do whatever you could to

10   help people, fair?

11   A.    That's fair.

12   Q.    And fair to say that you probably can count on

13   one hand how many times somebody asked you to do

14   something as a canine handler and you said no?

15   A.    Probably.

16   Q.    Whatever as a -- you know, when you had PJ

17   and, you know, PJ was -- after PJ went through training

18   in 2002, if a request was made of you to do something in

19   a fire investigation you almost always did that, right?

20   A.    Not only fire investigation.  It was -- you

21   know, if it wasn't my investigation, it was just taking

22   her down there, you know, letting her do her thing and

23   then coming back home.  It just depended on where I had

24   to go.

25   Q.    Sure.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1          A.    You know, could have been a two-hour trip,

2    could have been a one-hour or 15-minute trip.  I don't

3    know.

4          Q.    Well, here it was a three-hour trip each way,

5    right?

6          A.    Yeah.

7          Q.    And when you got the call from Mr. Flowers,

8    from Mr. Gregory, you said yes?

9          A.    Yes.

10         Q.    And -- and you would have done anything to

11   assist them in their investigation, correct?

12         A.    Only what was right.

13         Q.    Of course.  But certainly whatever they asked

14   of you, you would have done, right?

15         A.    No, not necessarily.  It had to be ethical and

16   legal, you know.

17         Q.    It -- you know, my recollection of your

18   testimony is that -- that there's a -- like, that

19   there's some gray area in fire investigations; would you

20   agree with that?

21         A.    Yeah, I would.

22         Q.    You know, for instance, here, can you think of

23   a single other fire investigation that you worked on

24   where you went to breakfast with the, you know,

25   investigators before going to the scene?



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CANTRELL, taken on November 08, 2022

137

1      A.    I can't name any place in particular off the

2  top of my head, but I'm -- you know, as a practice, we

3  always -- I always met with somebody, usually the person

4  who called me to get a briefing as to what the fire

5  scene was like.  You know, all of these safety

6  precautions for myself and my dog.

7      Q.    Sure.

8      A.    Any broken glass, any holes through the floor,

9  any soft spots, hot spots any type of ignitable liquids

10 inside the house that need to be removed or what have

11 you, and that was just routine per ATF guidance.

12     Q.    Now, you know, you've reviewed your -- strike

13 that.

14           You've reviewed your prior testimony before

15 testifying today, right?

16     A.    Yes.

17     Q.    And you know from reviewing your prior

18 testimony that you had a much more substantive

19 conversation during the breakfast than what you would

20 normally have with other investigators and fire

21 investigations, fair?

22     A.    Fair.  Just a bit more.

23     Q.    You were given a lot more details here than

24 you were in other fire investigations before you went to

25 the scene?


Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

The Deposition of BUSTER CARROLL, taken November 08, 2022

138

1          A.   I wouldn't say a lot more.  I knew that it was

2    -- I knew there had been a domestic involved, and I knew

3    about the -- I think I remember something about the baby

4    in there.  But other than that, there wasn't a whole lot

5    discussed about it.

6          Q.   Well, we're -- we're going to go through it.

7    I'll show you your other testimony, you know --

8          A.   Sure.

9          Q.   -- we'll go through it.  And that breakfast,

10   was that your idea or was that the -- the -- did other

11   people ask you to come?

12         A.   Other people asked me to come.  It was -- it

13   was raining that morning and kind of waiting for the

14   rain to settle down before we went back -- went to the

15   scene and so forth.  I was hungry.  I got up early to

16   get there.

17         Q.   Yeah.

18         A.   And I don't usually like to miss breakfast.

19         Q.   Is that your favorite meal of the day?

20         A.   It is.

21         Q.   Okay.  You know, going back to -- I think you

22   testified earlier that there was some requirement that

23   PJ participate in approximately 50 fire investigations

24   annually; is that -- did I have that right?

25         A.   Annually a year, yes.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 140 of 396
PageID #: 1645
The Deposition of BUSTER CANNON, taken November 08, 2022
139

1    Q.   Yeah.  And so, as, you know, a handler of PJ,

2    fair to say you felt obligated to agree to use her in

3    different fire investigations to meet that quota?

4    A.   Yes.

5    Q.   And that quota was part of the recertification

6    process; is that right?

7    A.   It wasn't part of the recertification process.

8    It was just an agreement that I would do 50 fires a year

9    --

10    Q.   Okay.

11    A.   -- with the ATF.

12    Q.   So it's part of the contract?

13    A.   Yes.

14    Q.   Okay.  And is it fair to say if you didn't do

15    50 fire investigations a year with PJ, that it could

16    impact the continuation of that contract?

17    A.   I don't think that it would, per se, if I got

18    40 this year and done 60 the next.  They're fine with

19    that.

20    Q.   Sure.  But if -- if other agencies had stopped

21    requesting the use of PJ, that could have impacted the

22    contract that you had with the ATF; is that fair?

23    A.   Not as long as I got 50 fires a year.

24    Q.   I'm saying if -- if other -- you know, say you

25    only got 20 fires a year, that could have impacted the



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 141 of 396
PageID #: 1646
The Deposition of BUSTER CARNES taken November 08, 2022
140

1  contract with the ATF, right?

2      A.   I don't think so.  Like I said, I could have

3  done more fires next year.

4      Q.   You could have done 90 the next year and made

5  up for it?

6      A.   Yeah.

7      Q.   Okay.  What were your primary responsibilities

8  as an employee of the Georgetown Fire Department?

9      A.   I was a captain on an engine company, so my

10 responsibility there was to take control of the scene

11 until the battalion chief arrived and direct

12 firefighters as what to do.

13     Q.   And the battalion chief, would that have been

14 a member of the Georgetown Fire Department?

15     A.   Yes.

16     Q.   Okay.  And in your capacity, would you have --

17 what role would you have had in examining the underlying

18 origin of a fire?

19     A.   Well, when I was at the fire department, I

20 can't remember exactly what year, but my -- my role was

21 after a fire was extinguished would be to go in and

22 investigate the cause and origin.

23     Q.   Okay.  So one of your responsibility for the

24 Georgetown Fire Department was to investigate the origin

25 of the fire --



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 142 of 396
The Deposition of BUSTER CARROLL, taken on November 08, 2022
PageID #: 1647
141

1        A.    Yes.

2        Q.    -- is that fair?  And that would have been the

3   case in 2004, correct?

4        A.    I'm sorry?

5        Q.    In 2004, that would have been the case as

6   well?

7        A.    Yes.

8        Q.    While you were employed for 15 years at the

9   Georgetown Fire Department, were you ever disciplined in

10  any way?

11       A.    Not that I recall.

12       Q.    Do you recall whether there are ever any

13  complaints against you?

14       A.    No.

15       Q.    No.  Have you ever worked for any other fire

16  department outside of Georgetown?

17       A.    Yeah, Stamping Ground Fire Department.

18       Q.    That's the community that you live in today?

19       A.    That's the one I live in, yes.

20       Q.    When did you work for them?

21       A.    Oh, I'd say around 1980 to '85.

22       Q.    And what caused you to leave Stamping Ground?

23       A.    Sheriff's department.

24       Q.    Why didn't you go back --

25       A.    Well, no, not -- let me correct that.  I got

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 143 of 396
PageID #: 1648
The Deposition of BUSTER CARNES, taken on November 08, 2022
142

1  hired on at Stamping Ground as a police officer, and I

2  was there for two years before I went to the sheriff's

3  office.

4      Q.   So you never worked at the fire department

5  there?

6      A.   Yeah.

7      Q.   You did both?

8      A.   You mean --

9      Q.   At Stamping Ground.

10     A.   Explain.  When -- what time?

11     Q.   Sorry.  Yeah.  Sorry.  So, like, when did you

12  work for the Stamping Ground Police Department?

13     A.   From '85 to '87.

14     Q.   And, then, when did you work for Stamping

15  Ground Fire Department?

16     A.   1980 to '84.

17     Q.   So it was before?  Okay.

18     A.   Yes.

19     Q.   Did you ever apply to be a firefighter at any

20  other agency outside of Stamping Ground in Georgetown?

21     A.   Lexington, I think.

22     Q.   When did -- when did you do that?

23     A.   Same time I filled one out for Georgetown.

24     Q.   And how far did you get in the interview

25  process in Lexington?

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 144 of 396
The Deposition of BUSTER CAMBRON, taken on November 08, 2022
PageID #: 1649
143

1      A.    I never did go.  I got hired at Georgetown

2   first.

3      Q.    **Did you fill out the application?**

4      A.    I can't recall.

5      Q.    **Okay.**

6      A.    It seems like I did.

7      Q.    **In 2004, would you have you been a captain of**

8   **the Georgetown Fire Department?**

9      A.    Yes.

10     Q.    **And who would have been your immediate**

11  **supervisor?**

12     A.    Probably would have been Richard Duncan.  He

13  would have been the battalion chief.

14     Q.    **Did you discuss the cases you were**

15  **investigating with Mr. Duncan or any over supervisor?**

16     A.    No, if I discussed anything with the cases

17  with them, I would be impinging on, you know, getting

18  the word out to something else that I might be

19  investigating and I didn't want to tell anybody

20  anything.

21     Q.    **So is it fair to say while -- while you were**

22  **at the Georgetown Fire Department let's say between 2003**

23  **and 2006, you didn't have any direct supervisor on the**

24  **fire investigations that you were participating in?**

25

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 145 of 396
The Deposition of BUSTER CARROLL aka Melton November 08, 2022
PageID #: 1650
144

```
1        A.    I was pretty much on my own.
2        Q.    There were no regularly scheduled meetings
3   with supervisors there?
4        A.    Yeah.  We -- we met monthly and battalion
5   chief and the fire chief would want to know what was
6   going on with some of the cases I might have been
7   working, but that would have been about it.
8        Q.    Outside of a monthly meeting, was there any
9   direct supervision of your fire investigations?
10       A.    I usually just reported anything that I did to
11  the fire chief.
12       Q.    And do you know how often you did that?
13       A.    Probably once a month.
14       Q.    Did you ever meet with the mayor of Georgetown
15  about your fire investigations?
16       A.    No.
17       Q.    Is it fair to say that you were really proud
18  of your role on the arson team?
19       A.    Yes.
20       Q.    And that's something you're still proud of to
21  this day; is that fair?
22       A.    Yes.
23       Q.    I'm going to show you what we'll mark as
24  Exhibit 21.
25              (EXHIBIT 21 MARKED FOR IDENTIFICATION)
```



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CANNON taken November 08, 2022

```
 1           MR. SLOSAR:  That's for you.  That's 21.
 2   BY MR. SLOSAR:
 3       Q.   Now, during your employment for the Georgetown
 4   Fire Department there was a review process in place; is
 5   that fair?
 6       A.   Yes.
 7       Q.   Sometimes you would get appraisals; is that
 8   right?
 9       A.   Yes.
10       Q.   And (yawns), excuse me, if you look to Cannon
11   88, I think it's the fourth page of this exhibit.  I
12   want to talk to you about an appraisal that you got in
13   May of 2000?
14       A.   88?
15       Q.   Uh-huh.
16       A.   Okay.
17       Q.   Can you please read the supervisor employee
18   additional items just to yourself and then when you're
19   done, I'll...
20       A.   Yeah.  "Buster and I discussed line number
21   two, job knowledge.  He thought he should have had a
22   higher rating although I think Buster is one of our
23   higher -- or one of our best lieutenants, my personal
24   feeling with the overall aspect of our job, I gave no
25   one individual a higher than a three or a two."
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 147 of 396
PageID #: 1652
The Deposition of BUSTER CANNON, taken November 08, 2022
146

1    Q.    Now, and do you recognize the signature on the

2  bottom of this page?

3    A.    No.

4    Q.    Is it fair to say that in 2000 you had a

5  discussion with your supervisor about your job knowledge

6  at the Georgetown police -- or, sorry, the Georgetown

7  Fire Department?

8    A.    Yes.

9    Q.    And you weren't happy with the score that was

10  given to you; is that fair?

11    A.    Fair.

12    Q.    And if you can actually go -- this is the last

13  appraisal.  So if you go to the last four pages of this

14  exhibit, I'm going to show you an appraisal from 2003.

15  So I'm looking at -- the very last page of the exhibit

16  is Cannon 30 in the bottom right.

17    A.    What is it?

18    Q.    It's the last page Cannon 30, so it should be

19  the last page of this.  Yep.  That's the one.

20    A.    Okay.

21    Q.    There you go.  And do you see in the

22  reviewer's comments where it says, "Buster does an

23  outstanding job.  He is in charge of our arson team and

24  is the handler of our arson dog PJ.  He has solved many

25  arson cases thus far.  Buster is a great asset to our

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 148 of 396
PageID #: 1653
The Deposition of BUSTER CARNELL TAYLOR on November 08, 2022
147

1  department.  Thanks for all the hard work and

2  dedication."

3          Do you see that?

4      A.   I do.

5      Q.   And the supervisor who signed that, how did

6  you say his name?

7      A.   It's Assistant Chief Bryan Sageser.

8      Q.   Okay.  And so, in 2003, the assistant chief

9  would have told -- would have advised you that you do a

10  -- you're a great asset to the department and you've

11  solved many arson cases thus far; is that fair?

12      A.   I don't know how many you want to call many

13  but several.

14      Q.   But being the person responsible for PJ and

15  investigating arson cases specifically, that's something

16  that you took great pride in at that time, fair?

17      A.   Fair.

18      Q.   And is it fair to say one of the most valuable

19  things that you brought to the Georgetown Fire

20  Department was your ability to solve arson cases?

21      A.   Well, that wasn't the only thing that I

22  brought, but, yeah.

23      Q.   That was part of it, right?

24      A.   Part of it.

25      Q.   So much part of it that your -- your

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 149 of 396
The Deposition of BUSTER CANNON taken on November 08, 2022
PageID #: 1654
148

1    supervisor remarked upon this ability to solve arson

2    cases in your annual review, correct?

3         A.    Correct.

4         Q.    Did any supervisor at the Georgetown Fire

5    Department ever ask you for data about the reliability

6    of PJ's alerts in fire investigations?

7         A.    No.

8         Q.    Did every -- did anyone at the Georgetown Fire

9    Department by 2004 ever request from you information

10   about the reliability of PJ's alertness?

11        A.    No.

12        Q.    Were you ever given any direct supervision at

13   the Georgetown Fire Department regarding the reliability

14   or accuracy of PJ's alerts?

15        A.    No.  The only people I had to answer to was

16   the ATF.

17        Q.    So is it fair to say that with regard to the

18   use of PJ and fire investigations that you did, the

19   Georgetown Fire Department played no supervisory role in

20   that?

21        A.    That's true.

22        Q.    You didn't have to answer to anyone at the

23   Georgetown Fire Department for any action you or PJ took

24   in a fire investigation?

25        A.    No.



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 150 of 396
Page ID #: 1655
The Deposition of BUSTER CAMPBELL, taken on November 08, 2022
149

1      Q.    When you say, "no," you're agreeing with me?

2      A.    Yes.

3      Q.    I know what you mean.

4            By 2004, had the Georgetown Fire Department

5      provided you with training regarding fire

6      investigations?

7      A.    Yes, they did.

8      Q.    And, for instance, did -- did the Georgetown

9      Fire Department provide you with training regarding fire

10     pattern analysis?

11     A.    Yes, they did.

12     Q.    And is it fair to say that you had extensive

13     training on fire pattern analysis by 2004?

14     A.    Excessive is a big word.  I had quite a bit,

15     but I don't know...

16     Q.    More than a decade worth of training, correct?

17     A.    Correct.

18     Q.    Because you had started at the Georgetown,

19     what, 1990?

20     A.    Yes.  I'd say close, close to 10 years, right

21     at 10.

22     Q.    By 2004, had the Georgetown Fire Department

23     provided you with training -- well, let me actually

24     strike that.  What training do you recall getting at the

25     Georgetown Fire Department regarding buyer pattern

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  analysis, can you tell us?

2      A.   I was sent to Emmitsburg, Maryland National

3  Fire Academy.

4      Q.   And do you remember when was that?

5      A.   I can't give you a precise date, no.

6      Q.   Okay.

7      A.   But I was sent up there for a couple weeks.

8  Then I was sent to several different seminars, and I

9  think I done some training at Eastern Kentucky

10 University.

11     Q.   Would all of that have been before 2004?

12     A.   Yes.

13     Q.   Bear with me one moment.  Were you provided

14 with training by 2004 regarding the concept of

15 flashover?

16     A.   Yes.

17     Q.   And was that training that would have been

18 provided to you either at the Georgetown Police

19 Department or externally at --

20     A.   Both.

21     Q.   And sitting here today, do you recall what

22 flashover is?

23     A.   I do.

24     Q.   And what is it?

25     A.   It's when everything in an adjacent room or

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 152 of 396
PageID #: 1657
The Deposition of BUSTER CARROLL, taken November 08, 2022
                                                              151

1  the entire building reaches an ignition temperature and

2  the whole -- whole building lights up.

3       Q.   And when you say, "the whole building lights

4  up," do you have an understanding of flashover as to

5  whether at some point it begins to go not only bottom up

6  but --

7       A.   Yeah.  It'll --

8       Q.   -- up to bottom?

9       A.   It'll generally roll up to the top, and after

10  it gets so hot, starts banking down.  And once

11  everything around the floor area reaches an ignition

12  temperature, it just all engulfs in flames.  It could

13  blow out windows.  It could, you know, cause a lot of

14  issues.  It's deadly.

15      Q.   And you would have had an understanding of

16  flashover -- you would have -- let me strike that.

17           By 2004, would you have had training on what

18  flashover was?

19      A.   Yes.

20      Q.   And what you just described to us here is that

21  consistent with what you have known by 2004?

22      A.   Yes.

23      Q.   All right.  Can you tell us, by 2004 would you

24  have had training on what full room involvement was?

25      A.   Yes.



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 153 of 396
The Deposition of BUSTER CARROLL taken on November 08, 2022
PageID #: 1658
152

1    Q.   And can you tell us what full -- what -- your
2    understanding of full room involvement?
3    A.   My understanding of a full room involvement is
4    pretty much like a flashover but the rest of the
5    structure doesn't reach the same heat potential as one
6    room does and it'll ignite.
7    Q.   Do you know what temperature flashover occurs
8    at?
9    A.   I can't recall.  I could tell you, but I can't
10   anymore.
11   Q.   What is rollover?  Can you explain that for
12   us?
13   A.   Rollover?  Basically the fire stays towards
14   the top, it just rolls out over the ceilings, like down
15   a hallway and comes out of a room, down a hallway and
16   things of that nature.  You can actually see the smoke
17   roll, come up.
18   Q.   Now, is it fair to say that you can't have
19   full room involvement without flashover?
20   MS. ARNETT:  Object to the form.
21   A.   I would have to be the investigator and go
22   through all of that before I could answer that.
23   Q.   So you don't know one way or the other as to
24   whether, based on your training, whether there has to be
25   flashover to have full room involvement?

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CAMPBELL, taken November 08, 2022
153

1        A.   I don't think necessarily, unless it's -- you
2   know, if it starts in a single room, stays in that
3   single room, it's -- it's literally going to reach an
4   ignition point at one time.  So, yeah, I think it would
5   probably flash.
6        Q.   I guess my question is a little bit different,
7   though, which is that, wouldn't -- don't you have to
8   have flashover to have full room involvement?
9        A.   I would think you would, yes.
10       Q.   And you would have got that based on your
11  training, knowledge and experience back in 2004, to be
12  fair?
13       A.   Yes.
14       Q.   Now, is it fair to say that you would have
15  also had training by 2004 regarding fire analysis in
16  post-flashover fire scene?
17       A.   Yes.
18       Q.   And is it fair to say that it's important to
19  have training on analysis of a fire in a post-flashover
20  scene because flashover has a significant impact on what
21  the scene looks like during the fire investigation?
22       A.   Yes.
23       Q.   And can you tell us how flashover impacts the
24  fire scene from your knowledge and experience?
25       A.   A good example would be curtains, furniture,

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CAMPBELL, taken November 08, 2022

154

1  carpet, anything in the room just simultaneously ignites

2  which could cause several different fire patterns.  You

3  know, curtain drop down, a couch by a window where it's

4  going to get air.  Especially if the window goes out,

5  you're going to have more burn where you got more air.

6  You're going to have more burn where you got more fire,

7  a heavier fire load, you'll have more burn.

8      Q.   And you would have known that in 2004 because

9  on your knowledge, training and experience at the time,

10  correct?

11     A.   I did notice some different things, yes.

12     Q.   By 2004, did the Georgetown Fire Department

13  provide you with any training fire investigations

14  involving local homes or trailers?

15     A.   I got that training through Emmitsburg,

16  Maryland, and come to think of it, we did have some

17  classes on it at that Georgetown Fire Department.

18     Q.   Do you recall whether that was before or after

19  this?

20     A.   Before.

21     Q.   So you would have had that knowledge and

22  training before this case?

23     A.   Yes.

24     Q.   Would you agree that based upon that training,

25  you would have known in 2004 that older model mobile



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  homes filled with metal exteriors and interiors of wood

2  paneling may experience fires of greater intensity and

3  rapidity than fires that have single-family structure?

4       A.   Yes.

5       Q.   Is it fair to say that you would have known

6  that, in part, from the knowledge and training you had

7  by 2004 with the NFPA 91s.

8       A.   Yes.  Yes.

9       Q.   And would you agree that by 2004, you would

10  have known, based on your knowledge, training and

11  experience, that fires in older mobile homes may quickly

12  result in flash -- flashover and full room involvement?

13       A.   Yes.

14       Q.   And that would, in part, be due to the metal

15  exteriors and the interiors of wood paneling that was

16  used in older mobile homes, fair?

17       A.   Fair to say, yes.

18       Q.   Is it fair to say that you would know, have

19  known in 2004 that fires in older mobile homes can burn

20  holes through the walls and floors?

21       A.   Can you repeat that?

22       Q.   Sure.  So we're talking about fires and older

23  mobile homes --

24       A.   Uh-huh.

25       Q.   -- that may quickly result in flashover and

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    full room involvement, would you have known by 2004 that

2    those types of fires could burn holes through the walls

3    and floors?

4        A.    Yes.

5        Q.    And would you have known by 2004 that fires in

6    these older mobile homes, so, you know, metal exteriors,

7    interior wood paneling, but those type of fires were

8    known to quickly move from one room to another?

9        A.    Yes.

10       Q.    And you would have known all that based on

11   your knowledge, training and experience by 2004, fair?

12       A.    Yes.

13       Q.    Now, I haven't seen this particular document.

14   By 2004 do you know if the Georgetown Fire Department

15   had any written policies or procedures that gave you

16   guidance in fire investigations?

17       A.    Other than the NFPA 921, no.

18       Q.    Okay.  So your -- is it fair to say that the

19   NFPA 921 is something that was given to you as an

20   employee of the Georgetown Fire Department?

21       A.    I had access, yes.

22       Q.    Is it fair to say that outside of the written

23   NFPA 921s, there were no formal written policies or

24   procedures in place at the Georgetown Fire Department?

25       A.    I don't recall, to be truthful.  I just don't



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 158 of 396
The Deposition of BUSTER CARTER, taken November 08, 2022
PageID #: 1663
157

1    remember.

2        Q.    But the NFPA 921s, fair to say is that

3    something that you had reviewed prior to 2004?

4        A.    Yes.

5        Q.    And prior to 2004, is it fair to say that you

6    would have actually read the NFPA 921?

7        A.    It's very possible but remembering it would be

8    another thing.

9        Q.    Fair enough.  Would you be -- would you agree

10   that by 2004 you would have expected a fire investigator

11   to have read through the NFPA 921s before coming to a

12   determination at the origin of a fire?

13       A.    I can't speak for the investigators that were

14   there.

15       Q.    I'm not asking you to.  I'm saying, generally

16   speaking, when you have expected a fire investigator by

17   2004, who's going to make an opinion on the origin of a

18   fire, to have read through the NFPA 921?

19       A.    Yes.  At some time or another, yes.

20       Q.    Would it be shocking to you if a fire

21   investigator was coming to a conclusion regarding the

22   origin of the fire by 2004 without having read through

23   the NFPA 921?

24       A.    Yes, it would.

25       Q.    Would you agree that if an investigator by



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 159 of 396
The Deposition of BUSTER CAMPBELL taken on November 08, 2022
                                                    158

1  2004 would have not read through the NFPA 921s before

2  coming to a determination as to the origin of a fire,

3  that that would be reckless behavior?

4       A.   I think every investigator should have read

5  921.

6       Q.   And if they didn't, and they were making a --

7       A.   I can't --

8       Q.   -- determination --

9       A.   -- make that call.

10      Q.   Well, you -- you not only read the NFPA 921s,

11  you were reading the revisions of those 921s regularly,

12  weren't you?

13      A.   Not regularly, no.

14      Q.   Well, they -- they weren't annual revisions.

15      A.   No.

16      Q.   This is something -- the NFPA 921s were

17  revised every few years; is that fair?

18      A.   Yes.

19      Q.   And when a revision would happen, the

20  Georgetown Fire Department would inform you that there

21  is a new set of policies, right?

22      A.   Yes.

23      Q.   And on your time working 90 to 130 hours a

24  week, you would find a way to review the 921s, so that

25  you were up to date on fire investigation analysis,

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 160 of 396
The Deposition of BUSTER CAMPBELL taken November 08, 2022
Page ID #: 1665
159

1    correct?

2        A.    Yes.

3        Q.    Because that was the responsible thing to do

4    for -- for a fire investigator by 2004, fair?

5        A.    Yes.

6            COURT REPORTER:  Mr. Slosar, your microphone.

7            MR. SLOSAR:  Oh, okay.  Oh, yeah.  Sorry. That

8        -- that was probably -- you guys probably were mad

9        for, like, 15 minutes.  I think I took that off

10       awhile ago.  Sorry.

11   BY MR. SLOSAR:

12       Q.    And in your review of the NFPA 921s, of that

13   manual, would have been responsible for you given your

14   role in fire investigations, fair?

15       A.    Fair.

16       Q.    Now, in the September 12th, 2004 investigation

17   that we're talking about, you were not the lead

18   investigator, right?

19       A.    Right.

20       Q.    This is something you were just insisting on

21   from a canine perspective?

22       A.    I just brought the dog down to run the dog

23   through.  That was it.  My only role.

24       Q.    Would you agree that it would have been

25   critical for an investigator determining the cause or



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 161 of 396
The Deposition of BUSTER CAMPBELL taken on November 08, 2022
PageID #: 1666

160

1  origin of that particular fighter -- fire to have

2  reviewed the NFPA 921s before doing so?

3      A.   I'd say -- I'd say it was probably already

4  reviewed.  I don't know that to be a fact, but --

5      Q.   And I'm not asking you to -- let me ask a

6  better way.  I'm not asking you to say whether somebody

7  reviewed it or whether somebody didn't review it.

8      A.   Yeah.

9      Q.   Okay.  That's -- that's their job to testify

10 to that.  What I'm saying is if an investigator in this

11 case said, I didn't review the NFPA 921s before

12 determining an origin of the fire, would you agree that

13 that would have been an irresponsible thing to do?

14     A.   Yes.

15     Q.   Would you agree that that would have been

16 reckless to -- to have not read through the NFPA 921s

17 before determining the origin of this fire?

18         MR. GADANSKY:  Object to the form.

19     A.   NFPA 921s should have been read at one point

20 or another.  I'm not saying just before that fire.

21     Q.   Well, that -- the investigator determining the

22 origin of the fire, this particular fire, should have

23 reviewed the NFPA 921s in place by the time of this

24 investigation before determining the origin of the fire,

25 correct?

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 162 of 396
PageID #: 1667
The Deposition of BUSTER CANNON taken on November 08, 2022
161

```
 1        A.    Can you rephrase that for me?

 2        Q.    Yes.

 3        A.    You're --

 4        Q.    Yes.

 5        A.    Go ahead.  Try to rephrase it for me.

 6        Q.    Mr. Cannon, in 2004 you had two full-time jobs

 7   and you were deputized on behalf of the U.S. Marshals

 8   correct?

 9        A.    Correct.

10        Q.    You had a family and you were working between

11   90 and 130 hours per a week, correct?

12        A.    Correct.

13        Q.    On top of that, every single day you were

14   finding a couple of hours to train PJ so that you can

15   keep up with the --

16        A.    Yes.

17        Q.    -- recertification process, right?

18        A.    Right.

19        Q.    And by 2004 you had read through the NFPA 921

20   manual, correct?

21        A.    Yes.

22        Q.    And, in fact, you not only had read through

23   the manual once in your career, you had actually

24   reviewed revisions of that manual as they came about,

25   correct?
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 163 of 396
                                    PageID #: 1668
The Deposition of BUSTER CARTER, taken on November 08, 2022
                                                                    162

     1        A.    Correct.

     2        Q.    And that's because you believed that it was

     3   critical for you to have an understanding of fire

     4   science before conducting fire investigation analysis,

     5   correct?

     6        A.    Correct.

     7        Q.    And would you agree that by 2004, it would

     8   have been reckless for a fire investigator to be

     9   conducting fire investigation analysis without reviewing

    10   the NFPA 921s in place at that time?

    11        A.    I don't think he had to review it as long as

    12   he --

    13             MR. GADANSKY:  Object to the form.

    14        A.    -- read it.

    15             MR. GADANSKY:  Object to the form.  He's

    16      already answered this question.

    17        A.    But, yes, had he never read it, yes, I agree

    18   with you.

    19        Q.    You would agree that if the investigator had

    20   not read the NFPA 921 manual front to back, that it

    21   would have been reckless for that person to form an

    22   opinion as to an origin of a fire, correct?

    23        A.    Yes.

    24             MR. GADANSKY:  Object to the form.

    25             MR. SLOSAR:  Can we just take a couple minute

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 164 of 396
PageID #: 1669
The Deposition of BUSTER CANNON, taken November 08, 2022
163

 1        break; is that okay?

 2              THE WITNESS:  Yeah.

 3              MR. SLOSAR:  Okay.

 4              VIDEOGRAPHER:  Okay.  We are off the record at

 5        2:56.

 6                  (OFF THE RECORD)

 7              VIDEOGRAPHER:  We are back on the record for

 8        Buster Cannon.  Today is November 8th, 2022 and the

 9        time is 3:06.

10   BY MR. SLOSAR:

11        Q.   Now, by 2004, Mr. Cannon, you would have been

12   operating in a fire investigation following the guidance

13   of the NFPA 921s in place at that time; is that fair?

14        A.   For that year, yes.

15        Q.   Those would have been the policies that you

16   would have followed by 2004, correct?

17        A.   Correct.

18        (EXHIBIT 18 AND 19 MARKED FOR IDENTIFICATION)

19        Q.   And I'm going to show you -- I might as well

20   show you these now.  Give you what's marked as Exhibits

21   18 and 19.  This one is -- is going to be 18, Charlie.

22   It's the 1992 NFPA 921s, 18.  And then, Mr. Cannon, I'm

23   going to give you exhibit 19, which are the 2001

24   addition of the NFPA 921s.  And just starting with

25   Exhibit 18, do you recognize that -- that document,

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 165 of 396
The Deposition of BUSTER CANNON, taken on November 08, 2022
PageID #: 1670
164

1    Mr. Cannon?

2         A.    Yes.

3         Q.    And that's an older version of the NFPA 921s

4    that -- that you're familiar with from your career in

5    fire investigation, fair?

6         A.    Yes.

7         Q.    And you would have reviewed that NFPA 921

8    manual at some point during the 1990s, after it came

9    into effect; is that fair?

10        A.    Yes.

11        Q.    Now, Exhibit 19, I think I also gave you those

12   are the 2001 addition of the NFPA 921s; do you see that,

13   too, sir?

14        A.    Yes.

15        Q.    Okay.  And after the 2001 edition came into

16   effect, fair to say you would have reviewed that manual?

17        A.    Yes.

18        Q.    And fair to say that you would have followed

19   the guidance that that manual gave you during the course

20   of fire -- or fie investigations?

21        A.    As best I could, yes.

22        Q.    Okay.  And in my -- later on we're going to go

23   through it, but for now, that's all -- that's all I'm

24   going to ask you about those.  This one we're going to

25   go through later on, Exhibit No. 19.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CANNON, taken on November 08, 2022

165

```
 1              Now, in 2002, you became an accelerant

 2   detention canine handler; is that right?

 3       A.   Yes.

 4       Q.   I'm going to show you what we'll mark as

 5   Exhibit No. 13.  These are some training records.

 6            MR. SLOSAR:  Here you go.  This is 13.

 7            (EXHIBIT 13 MARKED FOR IDENTIFICATION)

 8   BY MR. SLOSAR:

 9       Q.   And, Mr. Cannon, do you -- do you see the

10   first page of this has a certificate from 2003; do you

11   see that?

12       A.   Yes.

13       Q.   That would have been a seminar that you went

14   to in the greater Cincinnati area; is that fair?

15       A.   Yes.

16       Q.   Appears that that was a two-day seminar in

17   fire investigation techniques; is that right?

18       A.   I don't recall.  Could have been.

19       Q.   Now, is it fair to say at the -- by 2004, the

20   seminars that you were going to on fire investigation,

21   that those seminars were mostly based off of the NFPA

22   921s in place by that time?

23       A.   I would say so, yes.

24       Q.   Okay.  Is it fair to say that by 2004, any

25   outside training you had would have been consistent with
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CAMPBELL, taken on November 08, 2022

166

1  the guidance from the current NFPA 921s?

2      A.   Yes.

3      Q.   Okay.  And, you know, by 2004, do you recall

4  going to any training where they advised you that the

5  NFPA 921s were not the gold standard for fire

6  investigation analysis?

7      A.   Well, they said it wasn't the bible.  They

8  said it was a guideline.

9      Q.   Okay.  But by 2004, you certainly would have

10  understood that the NFPA 921s were the guidelines for

11  fire investigations?

12     A.   Yes.

13     Q.   And you would have applied -- well, strike

14  that.

15          You would have complied with those guidelines

16  during the course of your investigations by 2004, fair?

17     A.   Best of my knowledge, yes.

18     Q.   Sitting here today, there's no reason that you

19  can think of why you would have deviated from the NFPA

20  921 guidelines during the course of the September 12th,

21  2004 fire investigation that you participated in,

22  correct?

23     A.   That's correct.

24     Q.   Now --

25          MS. ARNETT:  Object to form.  Object to form of

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 168 of 396
                                        PageID #: 1673
The Deposition of BUSTER CANNON taken on November 08, 2022
                                                                        167

1      the previous question.
2          Q.    Now, if you go to page -- this one is a little
3      bit different than the one we had earlier but it's got a
4      Logan Circuit Court number 11, and it's a department of
5      treasury certificate; do you see that, Mr. Cannon?
6      Should be horizontal.  It goes --
7          A.    What page is it on?
8          Q.    I think it's 11, says 11.
9          A.    Okay.  Yes.
10         Q.    Yeah.  Okay.  Do you recognize that
11     certificate there, sir?
12         A.    Yes.
13         Q.    What is that?
14         A.    That's a certificate of training where I
15     completed the ATF canine program.
16         Q.    And from looking at the certificate, it
17     appears you completed that program March of 2002; is
18     that right?
19         A.    That's right.
20         Q.    Okay.  And if you go to the next page, Logan
21     Circuit 12, it appears that you began that program
22     February 18th, 2002; is that consistent with your
23     memory, sir?
24         A.    Yes.
25         Q.    Now, an accelerant detection canine is trained

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 169 of 396
The Deposition of BUSTER CAMPBELL taken on November 08, 2022
PageID #: 1674
168

1   to detect and locate trace amounts of ignitable liquids;
2   is that fair?
3       A.   It's true.
4       Q.   And those liquids would include lighter
5   fluids, lamp oils, gasoline and kerosene; is that right?
6       A.   That's right.
7       Q.   And would you agree that these liquids
8   sometimes could come out of an aerosol can?
9       A.   Yes.
10      Q.   Okay.  Certainly you have participated in
11  arson investigations where somebody used an aerosol can;
12  is that fair?
13      A.   Yes.
14      Q.   Okay.  And -- and if -- if ignitable liquids
15  come out of an aerosol can, that is something that the
16  canine should be able to detect through an alert; is
17  that fair?
18      A.   I can't answer that honestly.  It depends on
19  the makeup of the chemical, which I'm not a chemist, so
20  it depends on the makeup of the aerosol can.
21      Q.   Okay.  Certainly you would be -- as part of
22  the fire investigation, it would be your hope that PJ
23  would alert to ignitable liquids that derive from an
24  aerosol can; is that fair?
25      A.   I don't think I would want her to, no.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 170 of 396
                                PageID #: 1675
The Deposition of BUSTER CANNON, taken November 08, 2022
                                                                      169

1    Q.   Well, I think that you've testified before

2    that a canine could alert to something as small as a

3    microliter --

4    A.   Yes.

5    Q.   -- is that right?

6    A.   (Witness nods head.)

7    Q.   And you would agree that the chemical coming

8    out of an aerosol can would be depositing in excess of a

9    microliter, correct?

10   A.   I can't argue that.  But, again, it's the

11   makeup of the aerosol can, what's in the aerosol can.  I

12   can't answer that truthfully.

13   Q.   Okay.  Now, a canine, like PJ, when he or she

14   recognizes the odor of an ignitable liquid, the canine

15   is trained to alert to that odor; is that right?

16   A.   That's right.

17   Q.   So I just want to make sure I'm understanding

18   this right.  It's -- the liquid doesn't necessary have

19   to exist because presumably it was caught on fire, but

20   the odor that came from that ignitable liquid should

21   still allow for a canine to make an alert; is that --

22   A.   I would agree with that.

23   Q.   Okay.  So with the aerosol can, it doesn't

24   necessarily matter whether -- you know, what sort of,

25   you know, where the aerosol was sprayed necessarily, it

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 171 of 396
The Deposition of BUSTER CANADA taken on November 08, 2022
PageID #: 1676
170

1  would be the odor from that ignitable liquid that came

2  out of it that should potentially remain for an alert to

3  be made; is that --

4      A.   Yes.

5      Q.   -- is that right?

6      A.   Sounds fair, yes.

7      Q.   Okay.  Now, tell us about how a canine would

8  be trained to do an alert based on your -- based on the

9  academy that you went to?

10     A.   Based on the training I had --

11     Q.   Uh-huh.

12     A.   -- at Front Royal, the ATF, the canine would

13  alert when she smelt an ignitable liquid by a sitting

14  position.  Once she'd done that, I would treat her, then

15  I would ask her to show me.  And, again, I put my hand

16  down, sweep the area, show me.  And by that, I'm wanting

17  her to pinpoint the area.  I want her to tell me it's in

18  an area that big around, and then she'll take her nose

19  and touch it.  And then I treat her again and tell her

20  what a good girl she is.  Then I'll mark it and move on.

21     Q.   And when you say "treat her" --

22     A.   Feed her.

23     Q.   You would feed her?

24     A.   Yes.

25     Q.   Okay.  And you testified previously before



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CANNON, taken on November 08, 2022

171

```
 1   that, you know, on a day where a fire investigation is
 2   taking place, that PJ would not receive food outside of
 3   the alerts?
 4       A.   It depended on when that fire investigation
 5   came in or that the fire call came in.
 6       Q.   Fair.
 7       A.   You know, if I've already fed her --
 8       Q.   Could --
 9       A.   -- you know, when I was at the fire
10   department, I would feed her in the morning, then I'd
11   feed her in the evening.  But when I was at home, she
12   would just eat in the evening.  And so, if I got a fire
13   call come in at 3:00, she's already had her first
14   ration.  If I finish her second ration on that fire
15   call, she gets no more.
16       Q.   Why would you feed her differently at the fire
17   department than you would at home?
18       A.   Because I have time.
19       Q.   I see.  Just because you weren't home -- well,
20   you know, before you were going to the police department
21   at 7:30, couldn't you have fed her before you left?
22       A.   I went straight from the -- or straight from
23   the fire department to the sheriff's office.
24       Q.   So you wouldn't come home?
25       A.   I'd take a change of clothes with me, change
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CANTRELL, taken on November 08, 2022

172

1  at the fire department and go.

2      Q.    But I think you testified earlier that PJ

3  would be with you at the fire department, so you would

4  have to bring her home?

5      A.    Well, now, you're correct.  I did have to take

6  her home when I left there and then go straight --

7  straight to the SO because I couldn't keep her in the

8  car.

9      Q.    Uh-huh.  So couldn't you feed her when you

10  dropped her off at home?

11      A.    I could have, but I didn't want to be late for

12  work either.  And I'm sure that there were probably

13  occasions where I may have but I just don't recall.

14      Q.    Okay.  So after PJ would alert, that's when

15  she would be given a reward of food by you, correct?

16      A.    Correct.

17      Q.    And you would agree that food is a high

18  priority for any dog?

19      A.    Correct.

20      Q.    And you would agree that by 2004 food was a

21  high priority for PJ?

22      A.    Correct.

23      Q.    And fair to say that in addition to providing

24  a treat to PJ, you also would praise her after she made

25  an alert?

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CANTRELL, taken November 08, 2022

173

1    A.    Yes.

2    Q.    And what types of praises would you give to

3    PJ?

4    A.    I would just tell her what a good girl she was

5    or, you know, things of that nature.

6    Q.    And, then, did the training also provide you

7    guidance on asking the dog to show you what she's

8    alerting to?

9    A.    She would point what she was showing to or

10   what -- what she had smelt.  When I asked her to show

11   me, that's when she would take her nose and touch that

12   spot.  And if she didn't go all the way to the floor,

13   I'd ask her again, show me again, and she'd go to the

14   floor.

15   Q.    What is -- would you then praise PJ again?

16   A.    Yes.

17   Q.    Would you give her another treat?

18   A.    No.

19   Q.    Would you give her food?

20   A.    When I asked her -- if she didn't go all the

21   way to the floor, she didn't get nothing.  When I said -

22   - when I asked her to show me again, if she went to the

23   floor, then she got food.  Then she got praised.

24   Q.    How come she wouldn't get anything if she

25   didn't go all the way to the floor?



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

The Deposition of BUSTER CARNES, taken on November 08, 2022
174

1      A.    Because that's not what she's trained to do.

2      Q.    So if she didn't go all the way to the floor,

3    is it fair to say it doesn't count as a -- an alert?

4      A.    Well, it could be an area that big around, too

5    (indicating), and she didn't feel like she needed to go.

6    I want it that big around (indicating).

7      Q.    Okay.  So unless she -- unless PJ touched her

8    nose to the floor in a specific spot, she would not be

9    getting a treat as part of the alert process?

10     A.    Again, it goes back to ATF protocol.  That's

11   the way she was trained.  That's the way I need to keep

12   her doing it.

13     Q.    And that's the way they trained you, right?

14     A.    Yes.

15     Q.    They didn't train you to, like, you know, to -

16   - to guide PJ's nose or head to a certain spot, right?

17     A.    No.

18     Q.    They didn't -- the ATF didn't train you to

19   guide PJ to specific areas in the house that you were

20   told could have accelerants, right?

21     A.    True.

22     Q.    The ATF didn't -- didn't the ATF provide you

23   with training regarding keeping an open mind?

24     A.    I don't recall that.  Possible, but I don't

25   remember it.



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 176 of 396
The Deposition of BUSTER CANNON, taken November 08, 2022
PageID #: 1681
175

1    Q.   Okay.  Now, according to the training from the

2    ATF, after the dog alerts, you know, with their nose,

3    and -- can you tell us about how the sample is -- is

4    collected?

5    A.   I usually lay a marker down.  If it's my fire,

6    my investigation, I'll lay a marker down and come back

7    to it.  Then I'll pull that sample up from the floor or

8    from the wall, whatever it might be.  It might be a

9    piece of wood.  It might be a doll baby.  I don't know.

10   It just depends on what it is.  I will take that, and

11   I'll put it in a container, which is an unlined paint

12   can.  Then I'll seal the top of it.  Change my gloves

13   and move on to the next spot.

14   Q.   And -- and are those canisters ultimately sent

15   to a laboratory so the samples can be analyzed?

16   A.   They are.

17   Q.   And does that analysis deal with the --

18   whether there's a presence of ignitable liquid?

19   A.   It does.

20   Q.   Can you tell us a little bit about, you know,

21   you were a firefighter for a long time before 2002, what

22   prompted the participation in the training academy that

23   you went to out in Virginia?

24   A.   In Virginia?  We had hired a new fire chief,

25   Bob Hendricks.  He was a retired firefighter here in

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 177 of 396
The Deposition of BUSTER CANTRELL, taken November 08, 2022
PageID #: 1682
176

1    Lexington.  He had a buddy named Steve Weddington, who

2    was a canine handler here in Lexington through the ATF

3    as well, and I got to know him.

4          Q.    Steve Weddington?

5          A.    Steve Weddington.  And I got to know him

6    through Bob Hendricks, and -- and that's when I found

7    out about the ATF program, and I also found out about

8    the State Farm dog program.  I filled out an application

9    for both, and I got picked for the ATF first, so that's

10   the one I went to.  Actually, I got picked for both of

11   them, and I went with the ATF because I felt they had

12   more credibility.  I knew how they work through

13   Weddington.

14         Q.    State Farm would have been doing

15   investigations for the insurance company?

16         A.    Yeah --

17         Q.    Yeah.

18         A.    -- basically.

19         Q.    I assumed -- I assumed that that's what --

20         A.    They trained their dogs up in Maine somewhere.

21         Q.    Okay.  Steve Weddington, was he at the

22   Lexington Fire Department?

23         A.    Yes, he was.

24         Q.    And did he have a dog that was trained to

25   participate in fire investigations in or around 2002?

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 178 of 396
The Deposition of BUSTER CARROLL taken November 08, 2022
                                                          Page ID #: 1683
                                                                 177

1        A.    No.  He had already retired.

2        Q.    Do you know when he retired?

3        A.    No.

4        Q.    Is he still alive; do you know?

5        A.    I couldn't tell you that either.  I haven't

6    seen a lot of these people since 2005.

7        Q.    Yeah.  When you retired?

8        A.    Yeah.

9        Q.    What about your conversation with the former

10   fire chief or Steve Weddington made you want to get into

11   canine handling?

12       A.    Well, it was something that I thought was

13   interesting, and I thought it would help our community

14   plus others, as well.  And so I went to Chief Hendricks

15   and asked him about it, and he said, we'll see what we

16   can do, and we filled out the application through the

17   ATF and through the State Farm.  And, like I said, I was

18   lucky enough to get picked for both but I chose the ATF.

19   And it -- it just all really came about as general

20   conversation when it started.

21       Q.    And it appears, just from looking at exhibit

22   13, that the re-certification process was an annual

23   40-hour commitment; is that right?

24       A.    It was an annual 40-hour class, yes.

25       Q.    Was that out in Virginia again or...

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 179 of 396
PageID #: 1684
The Deposition of BUSTER CANNON, taken November 08, 2022
178

1    A.    No.   Actually cities had to put in a bid to
2    host it.   You know, it could have been in Murfreesboro,
3    Tennessee, which one was.   It could have been in a
4    College Park, Maryland, which one was.   It could have
5    been in Las Vegas, which one was, and those are the last
6    three that I remember going to before she got killed.
7    **Q.    Did you get any compensation out of this work**
8    **that was above what you were making for the Scott County**
9    **Sheriff's Department or Georgetown Fire Department?**
10    A.    What do you mean?
11    **Q.    Did the ATF, like, pay you at all for being a**
12    **canine handler?**
13    A.    No, no, no.   The agreement was, is that if
14    they give me the dog, they would put me on the NRT,
15    which is National Response Team.   And any time they
16    called, I'd have to go, and -- and, again, to supply --
17    supply I guess the need for surrounding communities.
18    **Q.    Sure.   I guess what I'm wondering is, like,**
19    **was there any monetary benefit at all, either at the**
20    **Georgetown Fire Department, Scott County Sheriff's**
21    **Department or even the ATF for you to --**
22    A.    The fire department paid me if I went out.
23    **Q.    Okay.   How much would you get for a fire**
24    **investigation?**
25    A.    I would just get my annual salary.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 180 of 396
The Deposition of BUSTER CARROLL on November 08, 2022
PageID #: 1685
179

1      Q.   Well, what would they pay you -- so when
2   you're saying that they'd pay you when you went out, are
3   you referring to an ATF investigation?
4      A.   No.  I didn't make any money there?
5      Q.   What did you make money on?
6      A.   I made money, for example, if they called me
7   in my community, then I would get paid my hourly wage,
8   whatever I was making, or if I went to the next county,
9   they would pay me my hourly wage.
10     Q.   So, for instance, in this particular
11  investigation in Russellville, the Georgetown Fire
12  Department would have paid you your hourly wage for any
13  investigation that you did in that fire?
14     A.   Yes.  They didn't actually have to but they
15  did.
16     Q.   Okay.
17     A.   As long as I was on the clock now, mind you.
18     Q.   Sure.  Sure.  I'm going to show you what's
19  been marked as Exhibit 22.
20          MR. COLE:  Here, I've got two.
21          MR. SLOSAR:  Oh, thanks.
22          MR. COLE:  Here you go.  22?
23          MR. SLOSAR:  Yeah, 22.  Thanks so much.
24          Here, you can --
25          MR. STILZ:  That's okay.  I got it.



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CANTRELL, taken on November 08, 2022

```
 1              MR. SLOSAR:  Oh, no, no, no.  I got -- Charlie

 2        that was super nice.  Yeah.  No, no, no.  I'm just

 3        going to keep it with me.  I got so much paper I got

 4        to keep it with a binder or I'm going to be a mess

 5        over here, worse mess.

 6              (EXHIBIT 22 MARKED FOR IDENTIFICATION)

 7   BY MR. SLOSAR:

 8        Q.    Okay.  Sir, do you see Exhibit 22?

 9        A.    I'm sorry?

10        Q.    Do you see this document?

11        A.    Yes.

12        Q.    And -- and you're certainly familiar with this

13   document, right, the ATF guidelines?

14        A.    I don't remember seeing it before, but maybe I

15   have.  I don't know.  I just don't remember it.

16        Q.    I believe that you were actually questioned

17   about this document in one of your prior testimonies.

18   You see the top where it says, "Basic guidelines for

19   establishing an accelerant detector canine program"?

20        A.    Yes.

21        Q.    Okay.  And, number one, do you see where it

22   says, "It is strongly recommended that the handler

23   selected has received a basic patrol or detector dog

24   course either from a police department or the U.S.

25              military"?
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CANNON, taken on November 08, 2022
181

```
 1        A.    I see it.
 2        Q.    Is that consistent with your understanding of
 3   the ATF guidelines in place by 2004?
 4        A.    No.
 5        Q.    And why not?
 6        A.    I don't remember seeing this.
 7        Q.    All right.  All right.  You recall testifying
 8   back in 2006 over the phone, right, sir?
 9        A.    Okay.
10        Q.    Okay.  I'm going to show you Exhibit No. 1.  I
11   don't want to mess up everything over here for you.
12             MR. COLE:  Let's set that one to the side.
13             MR. SLOSAR:  Oh, yeah.  You're going to want
14        to.  You'll -- thank you, Charlie.  You're going to
15        want to keep that close.  We'll make sure that these
16        don't get messed up, because they say 11.  11, 24.
17        Okay.  So I'm going to put these ones here.  I'm
18        going to put these over here.
19   BY MR. SLOSAR:
20        Q.    Okay.  So this is Exhibit No. 1, and I'm going
21   to turn your attention to page 33, okay, and I'm going
22   to read for you lines 3 through 18.  I'm going to read
23   this to you and you just follow along, and then I'm
24   going to ask you some questions.
25        A.    Okay.
```



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 183 of 396
PageID #: 1688
The Deposition of BUSTER CANINE, taken November 08, 2022
182

1      Q.    And you should keep this.  Have it right next

2    to you.  Page 33 line 3 through 18 of Exhibit 1.

3            Question:  Okay.  And are you familiar with

4    the manual accelerant detection canine -- well, I think

5    you probably provided that manual to Mr. Orange.  It's a

6    manual that I assume accompanies the dog and it was

7    produced by the ATF, and it's called Accelerant

8    Detention Canines.  Are you familiar with that manual?

9    Yeah.

10           Answer:  Yes, I am.

11           Now, I'm going to stop at line 9.  Sir, would

12   you agree that the name of this document that I have

13   given you as Exhibit 22 is basic guidelines for

14   establishing an accelerant detection canine program?

15     A.    Yes.

16     Q.    And it's from the department of treasury?

17     A.    Yes.

18     Q.    The ATF under that?

19     A.    Yes.

20     Q.    Okay.  Now, I'm going to keep reading the

21   questions from Exhibit 1, lines 10 through 20.

22           Question:  All right.  And you also are

23   familiar that -- with that manual to the point where it

24   states, that, "Confirmation of the canine alert must

25   occur.  Any alert given by the canine that is not

Kentuckiana Reporters                                              502.589.2273 Phone
P.O. Box 3983                                                      502.584.0119 Fax
Louisville, KY 40201                                              schedule@kentuckianareporters.com
                                                                  www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 184 of 396
PageID #: 1689
The Deposition of BUSTER CANNON taken on November 08, 2022
183

1    confirmed by laboratory analysis should be considered an

2    unconfirmed indication of the presence of an ignitable

3    liquid for the purposes of origin and cause

4    determination"?

5              Answer:  Yes, I'm familiar with that.

6              And question:  And that's part of your

7    training, as well?

8              Answer:  Yes, it is.

9              Were you asked those questions and did you

10   give those answers back at the 2006 hearing, sir?

11   A.    Obviously.  Yes.

12   Q.    Okay.  And if you look at Exhibit No. 22,

13   you'll see that paragraph 4 where it's highlighted,

14   about halfway through, it says:  The use of a canine's

15   indication of the presence of accelerants is only one of

16   the factors used in a fire investigator's origin and

17   cause determination and can never be the sole basis for

18   that determination.

19              Do you see that, sir?

20   A.    I do.

21              MR. COLE:  Where is that?

22              THE WITNESS:  It's right here (indicating.)

23              MR. SLOSAR:  Paragraph 4.  Second half of

24        paragraph 4.

25              MR. COLE:  That reads different than the trial

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 185 of 396
PageID #: 1690
The Deposition of BUSTER CANNON, taken on November 08, 2022
184

1    testimony quote.

2           MR. SLOSAR:  Yeah.  I don't -- I don't know --

3           MR. COLE:  So I'm going to enter an objection

4    on that.

5           MR. SLOSAR:  Sure.  Sure.

6    BY MR. SLOSAR:

7       Q.   Is that -- now, the paragraph -- the part of

8    the paragraph that you just read, is that consistent

9    with your understanding of the ATF's training in place

10   by 2004?

11      A.   Yes.

12      Q.   And certainly by 2004, and I believe you

13   testified to this earlier, you would have understood

14   that the ATF guideline was that the canine's role was to

15   assist the fire investigator in the selection of samples

16   for subsequent laboratory analysis for the presence of

17   accelerants; is that right?

18      A.   Yes.

19      Q.   And by 2004 you would have also understood

20   that the ATF guideline stated that, Recognition that any

21   canine will produce false positive indications as to the

22   presence of an accelerant and that laboratory of all

23   positives is necessary, correct?

24      A.   Yes.

25           MR. COLE:  Same objection.  It doesn't match up

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 186 of 396
The Deposition of BUSTER CANADA, taken on November 08, 2022
PageID #: 1691
185

1          to the reference trial testimony.

2                    MR. SLOSAR:  Sure.

3      BY MR. SLOSAR:

4          Q.    And certainly, the training that you received

5      at the ATF was your consistent -- with your

6      understanding of the NFPA 921s that were in place by

7      2004, correct?

8          A.    Yes.

9          Q.    Okay.

10         A.    Yeah.  I've never disputed that.

11         Q.    Sure.  Sure.  I -- I think -- I -- yeah, I

12     think you're right.  I think your testimony generally

13     has been that, you know, your training at -- either at

14     the ATF or in outside academies has been that an

15     unconfirmed alert is unreliable and inadmissible,

16     correct?

17         A.    Correct.

18         Q.    But that in your view, you had such a trust of

19     PJ that you trusted your relationship with her more than

20     the training and knowledge that you learned from the ATF

21     and outside training academies, fair?

22                    MR. COLE:  Object -- object to the form.

23         A.    No.  I don't think that's correct.  The

24     analysis of that.  You know, she alerted, and I

25     testified to that, and that's as far as I went with it.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 187 of 396
The Deposition of BUSTER CANNON, taken November 08, 2022
PageID #: 1692
                                                                    186

1    You know, and I -- I answered questions that were asked

2    me and other than that, that -- you know, I was sworn

3    under oath to do that, and I did that --

4        Q.   Yeah.

5        A.   -- to the best of my ability.

6        Q.   Now, when you say she alerted, you know, I

7    just want to make sure the record is clear.  The first

8    time you took her through --

9        A.   No.

10       Q.   -- no alerts?

11       A.   Correct.

12       Q.   Okay.  It wasn't until a more suggestive

13   process happened on the second go around that she made

14   alerts?

15       A.   A systematic --

16            MR. COLE:  Object to form.

17            MR. STILZ:  Object to form.

18       A.   A systematic approach to it and she run across

19   it.

20       Q.   Sure.

21       A.   I didn't direct her to any particular spot.

22   You know, are -- well, you can see how David Raisor was

23   holding the leash, about two feet.

24       Q.   Uh-huh.

25       A.   And that's usually what you do, keep it two



Kentuckiana Reporters                    502.589.2273 Phone
P.O. Box 3983                            502.584.0119 Fax
Louisville, KY 40201         schedule@kentuckianareporters.com
                                www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 188 of 396
The Deposition of BUSTER CAMBRON taken on November 08, 2022
PageID #: 1693
187

1  feet away from her and just seek and let her do her own

2  thing, seek, keep moving, seek.  When a dog stops,

3  that's when she alert.  I don't tell the dog when to

4  stop or when to start.  Well, I tell her when to start,

5  but I don't tell her when to stop.

6      Q.   Okay.  And we're going to go -- we're going to

7  -- we're going to get -- we're going to get into this in

8  a moment but certainly by 2004 you understood that --

9  that canines will produce false positives, correct?

10     A.   Correct.

11     Q.   And by 2004, you understood that laboratory

12  analysis was critical to determine whether the canine

13  made a false alert?

14     A.   Correct.

15     Q.   I'm going to show you a letter from -- before

16  we get there, sorry did -- did you handle any other

17  canines outside of PJ --

18     A.   No.

19     Q.   -- in a professional capacity?  Obviously,

20  you've had pets.

21     A.   Not in a professional capacity, no.

22     Q.   Okay.  And did the city of Georgetown or the

23  Georgetown Fire Department ever provide you with any

24  formal internal training regarding the accelerant-

25  detecting canine?



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 189 of 396
The Deposition of BUSTER CARROLL, taken November 08, 2022
PageID #: 1694
188

1    A.    In formal?

2    Q.    Like was there any internal training regarding

3  PJ and her --

4    A.    No.

5    Q.    -- use in fire investigations?

6    A.    No.

7    Q.    All of that would have been either --

8    A.    ATF.

9    Q.    -- through the ATF or outside organizations?

10   A.    Yes.

11   Q.    And I believe you testified about this

12 earlier, but you're -- you would train PJ on a daily

13 basis as best you could, right?

14   A.    Correct.

15   Q.    And when you saw the log earlier, I think you

16 gave an estimate of approximately two hours, give or

17 take a day?

18   A.    Yes.

19   Q.    And outside of the training, PJ would only be

20 fed after, if she had not met her quota for food of that

21 day, correct?

22   A.    Correct.

23   Q.    So prior to training, she would not have eaten

24 on a daily basis, correct?

25   A.    Correct.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 190 of 396
PageID #: 1695
The Deposition of BUSTER CANNON, taken November 08, 2022
189

1    Q.   And during the training, PJ would only have

2  been rewarded with food when she alerted, correct?

3    A.   Correct.

4    Q.   And you were -- you would have been the

5  handler and owner of PJ for approximately four years; is

6  that right?

7    A.   Yes.   Approximately, yes.

8    Q.   Okay.   And I believe you gave an estimate

9  earlier that PJ worked on approximately 50 fire

10 investigations a year; is that right?

11   A.   Yes.

12   Q.   And were those investigations predominantly in

13 Kentucky?

14   A.   Yes.

15   Q.   At times, did you take PJ out of state, as

16 well, for -- you know, at the request of the ATF or

17 another agency?

18   A.   There was a few times.   Not many but a few.

19   Q.   When you had to travel for fire investigations

20 in what -- with PJ, in what capacity did you do so?

21   A.   The fire department.

22   Q.   And what arrangement did you have with the

23 Scott County's Sheriff's Department to allow for you to

24 leave for extended periods of time to conduct fire --

25   A.   Well, as I stated earlier that the sheriff and

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1   I were -- were pretty close.  And I explained to him

2   before I even got this dog and he was in agreement that

3   if I had to go, that it would be okay.  Now, I may have

4   to bring somebody in to cover my shift but, yes.

5       Q.   I believe you -- you testified at the 2006

6   hearing, so in Exhibit No. 1 that you gave an estimate

7   that you had taken PJ on approximately 200 fire scenes

8   by September 4; does that sound accurate?

9       A.   In those four years, yes.

10      Q.   And that would have been about -- oh, I see.

11  Well, hold on.  Yeah, in those four years, between 2002

12  and 2006.

13      A.   Uh-huh.

14      Q.   Okay.  And I believe that you provided some

15  kind of training summary report to the Commonwealth

16  attorney regarding PJ; do you recall doing that?

17      A.   Unless it was the --

18      Q.   I'm -- I think it's -- do you have --

19      A.   I would say it was probably something similar

20  to this.

21      Q.   It's exhibit -- I have it as Exhibit 13.  I'm

22  going to pull that up.  That's -- I think it's in here.

23  If you look in there and you go to number page 13, so it

24  should say Logan 13.  I think that's -- that's what I

25  have as the Bates stamp.  I think you want to go back a

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 192 of 396
The Deposition of BUSTER CANINE, taken on November 08, 2022
PageID #: 1697
191

1    little bit.

2        A.    Too far?

3        Q.    Yeah.  I think it's got a -- here it is.

4        A.    Okay.

5        Q.    This is what I have -- does that -- does that

6    look like a training summary that --

7        A.    Yes.

8        Q.    -- you would have provided?

9        A.    Yes.

10        Q.    And this would be -- the document we're

11    looking at, so Exhibit 13 at Logan Circuit 13, would

12    this have been a monthly training log?

13        A.    Yes.

14        Q.    And part of the -- your contract with the ATF,

15    was to keep these types of logs, fair?

16        A.    Yes.

17        Q.    Okay.  I think that's my question for that.

18    Sorry about that.

19        A.    That's okay.

20        Q.    It's a lot of work for minimal -- a minimal

21    question.  I'm sorry.  There you go.  Number 13 goes

22    right there.  Then, this is 22.

23            All right.  Now, by 2004 you would have, based

24    on your knowledge, training and experience, you would

25    have understood that accelerant-detecting canines are



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 193 of 396
The Deposition of BUSTER CARROLL taken on November 08, 2022
PageID #: 1698
192

1    only a tool to assist fire investigators, fair?

2        A.   I'd agree, yeah.

3        Q.   And you would agree that based on your

4    knowledge, training and experience, by 2004, that you

5    would have understood that accelerant-detecting canines

6    were a tool to assist investigators in locating samples

7    to test for trace ignitable liquids, correct?

8        A.   That would be correct.

9        Q.   And you would agree that by 2004, you would

10   have understood that a person couldn't simply rely on an

11   alert by a canine to determine the presence of an

12   ignitable liquid?

13       A.   Are you asking me should I rely without a --

14       Q.   Well, let me -- let me -- let me ask it a

15   better way.  Based on your knowledge and training by --

16   in place by 2004, you would have understood that if -- a

17   person simply was not supposed to rely on a canine's

18   alert to determine the presence of an ignitable liquid?

19       A.   Agree.

20       Q.   And you would agree that based on your

21   knowledge and training by 2004 that a person simply

22   could not rely on an alert by a canine to determine that

23   a fire was the result of an arson?

24       A.   I do not agree.

25       Q.   And you would have certainly, based on your



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 194 of 396
The Deposition of BUSTER CARDER, taken on November 08, 2022
PageID #: 1699
193

1    knowledge and training by 2004, been familiar with the

2    fact that some products can break down into multiple

3    chemical compounds that could produce a false canine

4    alert, correct?

5        A.    True.

6        Q.    And that process is known as a pyrolysis?

7        A.    Pyrolysis.

8        Q.    And can you tell me -- tell me what pyrolysis

9    is, please.

10       A.    It could be -- there's two descriptions of it,

11   and I think the one you're after is the one, say -- I

12   don't know if you know what green boards are in a

13   construction, but green boards are -- anything that's

14   close to the ground it's treated material.

15       Q.    I think I've seen them.

16       A.    They have to put them down so the insects

17   don't eat through, like, the bottom plates and things

18   like that.

19       Q.    Yeah.

20       A.    Those are called green boards and they're

21   treated boards with a chemical.

22       Q.    Uh-huh.

23       A.    Now, again, I'm not a chemist, but my guess is

24   that maybe those could put out some type of pyrolysis

25   that the dog could pick up on.  And there's other things

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 195 of 396
The Deposition of BUSTER CAMPBELL aka PageID #: 1700 November 08, 2022
194

1    that would be involved in it, such as glues to glue down

2    carpet or vinyl flooring that would produce that for the

3    dogs to give a false positive.

4        Q.    And some of these products that you just

5    talked about, you would have been trained prior to 2004

6    that a canine can confuse those products with ignitable

7    liquids?

8        A.    Yes, very possible.

9        Q.    And you would have known by 2004 that

10   pyrolysis products could be a reason why a canine would

11   give a false alert or a false positive.

12       A.    It could happen.

13       Q.    In other words, the dog may mistakenly alert

14   to the pyrolysis even though no ignitable liquid is

15   presence?

16       A.    I like that word, "mistake," yes.

17       Q.    Fair to say that even though the canines are

18   highly trained, like PJ, that they're not infallible?

19       A.    Agreeable.

20       Q.    And by 2006, you were certainly aware of

21   instances and fire investigations where you would learn

22   that the laboratory could not confirm alerts that PJ had

23   made, correct?

24       A.    Correct.

25       Q.    And you would also have received training by

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    2004 in the fact that sometimes there might be ignitable

2    liquids that are present at a fire that are there for

3    legitimate purposes, right?

4        A.    Correct.

5        Q.    For instance, you know, a charcoal starter for

6    a grill or kerosene for a heater?

7        A.    Lighter fluid, smokers, yes.

8        Q.    Now, is it fair to say that by 2004 you were

9    trained both at the ATF and elsewhere that it's

10   important for laboratory testing to determine the

11   presence of an ignitable liquid in a sample where a dog

12   like PJ alerted?

13       A.    Yes.

14       Q.    And you were trained that confirmation of the

15   canine alert by laboratory testing must occur for the

16   reasons that we just went over, fair?

17       A.    Correct.  And I stated to you earlier, too,

18   though, that's some of the reasoning for this briefing,

19   is to find out any other -- like -- like, there's any

20   household products in there, like the charcoal lighter

21   fluid, like the lamp oil, like the lighter fluid, you

22   know, the things like that.  That's one of the reasons

23   for the briefing.  If it's there, I need to get it out -

24   -

25       Q.    Totally.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 197 of 396
The Deposition of BUSTER CANTRELL, taken November 08, 2022   Page ID #: 1702
                                                                    196

```
 1        A.   -- or, you know, if I over --
 2        Q.   Because it could --
 3        A.   Or keep her away from it.
 4        Q.   Because it could contaminate --
 5        A.   It could contaminate the rest --
 6        Q.   -- the alert?
 7        A.   -- of the scene or she's going to alert on it.
 8   Now I've have to introduce it into evidence even though
 9   it might not even be.
10        Q.   Yeah.  Now, by 2004, you would have been well
11   aware of the NFPA 921 amendment that happened in 1996
12   stating that any canine alert not confirmed by lab
13   analysis should not be considered validated, correct?
14        A.   Yes.
15        Q.   And is it fair to say that having been trained
16   by the ATF by 2004, you would have been aware of the ATF
17   position that any alert not confirmed by laboratory
18   analysis must be considered a false -- a false alert or
19   false positive for purposes of origin and cause
20   determination?
21        A.   Correct.
22        MR. COLE:  Same objection.
23        Q.   You would have known that in 2004, correct?
24        A.   Yes.
25        MR. COLE:  Same objection.
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 198 of 396
The Deposition of BUSTER CADE, taken on November 08, 2022
197

1    Q.   Now, while serving as a handler, did you
2  follow statements of the canine accelerant detection
3  association?  Like, CADA, have you ever heard of that?
4    A.   Just recently.
5    Q.   Now, did you know about CADA back in 2006 or
6  2004?
7    A.   If you had asked me back in 2006 who they
8  were, I would have said, I don't have a clue.
9    Q.   When do you first remember learning about
10 CADA?
11   A.   When all this started.
12   Q.   The lawsuit or the --
13   A.   The lawsuit.
14   Q.   -- post-conviction litigation?
15   A.   The lawsuit.
16   Q.   The lawsuit.  So before CADA, you didn't have
17 --
18   A.   I didn't know it existed.
19   Q.   Now, the first time that you would have
20 learned CADA's position that no handler should ever
21 testify or encourage testimony that an ignitable liquid
22 is present without confirmation through laboratory
23 analysis would have been sometime after the filing of
24 the lawsuit?
25   A.   Oh, yeah, sure.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

The Deposition of BUSTER CANCEL taken on November 08, 2022

1    Q.   Would you agree that a finding by a handler

2  that a fire is incendiary in nature based solely on a

3  positive alert by a canine is not reliable?

4    A.   Can you rephrase that --

5    Q.   Sure.

6    A.   -- so I can --

7    Q.   Would you agree that a finding by a -- by a

8  canine handler, that a fire is incendiary in nature,

9  based solely on a positive alert by a canine, is not

10 reliable?

11   A.   It still has to be sent to the lab and get a

12 confirmation from the lab.

13   Q.   So you would agree that a canine alert without

14 scientific verification is unreliable?

15   A.   Yes.

16   Q.   And -- and you would agree that any canine

17 alert that is not confirmed through laboratory analysis

18 should not be considered validated, correct?

19   A.   Correct.

20   Q.   And you would agree that an alert can never be

21 the sole basis for an investigator's origin and cause

22 determination, correct?

23   A.   Correct.

24   Q.   And you would have known that in 2004,

25 correct?





Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

The Deposition of BUSTER CANNON, taken November 08, 2022

1      A.   Yes.

2      Q.   And you would have known in 2004 that any

3   canine alert unconfirmed by laboratory analysis should

4   not be considered validated, correct?

5      A.   Correct.

6      Q.   Did you ever communicate to Mr. Gregory or

7   Mr. Flowers your understanding of the training in NFPA

8   921s that an unconfirmed alert is not reliable for

9   purposes of coming to a conclusion as to the origin of a

10  fire?

11     A.   No.  It wasn't up to me to make them read 921.

12  If they would have read it, they would have known.

13     Q.   You would have expected that they would have

14  been familiar with that basic premise of the NFPA 921s,

15  correct?

16     A.   Yes, and I was only there a short time.  I

17  wouldn't have even told them that.

18     Q.   Sure.  And certainly you were requested to

19  come into this fire investigation.  It wasn't the other

20  way around, right?

21     A.   No.  I was requested.

22     Q.   Yeah.  But, I mean, you didn't make that

23  request of them, they made it of you?

24     A.   Yes.

25     Q.   And because they requested the use of a canine

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 201 of 396
The Deposition of BUSTER CANINE, taken November 08, 2022
PageID #: 1706
200

```
 1    accelerant detention -- let me strike that.

 2              Because they requested the use of PJ and

 3    yourself in this fire investigation, you expected that

 4    they were kept apprised of the NFPA 921 standards as it

 5    -- as it applies to canines?

 6         A.   Well, they were investigators not me.  I would

 7    assume that they did.

 8         Q.   Yeah.

 9         A.   So, yes, I guess so.

10         Q.   Yeah.  Now, is it fair to say that at the ATF

11    training academy that you received training on

12    documentation of PJ's alerts?

13         A.   Of PJ's what?

14         Q.   Alerts.

15         A.   Alerts?

16         Q.   Yeah.

17         A.   They received documents, yes.

18         Q.   Well, let me -- sorry.  Let me -- let me ask

19    the question a better way.  This area where I just -- I

20    asked a bad question.  When you were at the ATF training

21    academy, they trained you on how to document the use of

22    PJ in fire investigations, fair?

23         A.   Yes.

24         Q.   For instance you received training on how you

25    were supposed to document each and every alert that PJ
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 202 of 396
The Deposition of BUSTER CAMPBELL taken on November 08, 2022
PageID #: 1707
201

1    made during a fire investigation, right?

2        A.    Yes.

3        Q.    Now, what did they -- how did they tell you

4    you should be documenting those alerts?

5        A.    Again, it was just a short form, six or seven

6    questions.  They wanted to know who called, where I was

7    at, did I have any positive or negative alerts and how

8    many.

9        Q.    Didn't they also provide you training on, you

10   know, documenting where those alerts were actually made

11   in reference to the fire scene?

12       A.    I did that on my own on my investigations.  I

13   would turn the page over and write just a brief

14   scenario, and then if it was my fire scene, then I would

15   do a full detailed investigation, include it all.

16       Q.    Why did you do that?  In terms of the diagram

17   and document the alerts?

18       A.    Well, I didn't do any diagram.  I just

19   document where she alerted at, you know, and how many

20   alerts that she had made and things like that to cover

21   my butt.

22       Q.    Well, was one reason why you did that so you

23   could remember later on --

24       A.    Yes.

25       Q.    -- where she actually alerted?



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CANNON, taken on November 08, 2022

202

```
 1        A.    Yes.

 2        Q.    It was a helpful device for you to use to

 3   document what happened --

 4        A.    Yes.

 5        Q.    -- fair?

 6              And is it also fair to say that you also

 7   received training from the ATF on maintaining records

 8   from laboratory testing results?

 9        A.    I don't recall that.

10        Q.    Okay.  I'm going to give you what we'll mark

11   as Exhibit 23.

12              (EXHIBIT 23 MARKED FOR IDENTIFICATION)

13        Q.    Yeah.  This might be a good moment to -- to

14   get some of this stuff.  So this one -- so 22, I know,

15   is this one.

16        A.    That's 22.

17        Q.    Yeah.  I'm going to take this one real quick.

18   Then that's No. 1 for sure.  Oh, yeah, it's a little bit

19   out of whack.

20        A.    Where's number one?

21              MR. SLOSAR:  Yeah.  Can we go off the record

22        from a moment?  Sorry.  Let me get some of the...

23              VIDEOGRAPHER:  Okay.  We'll go off the record

24   4:02.

25              (OFF THE RECORD)
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 204 of 396
The Deposition of BUSTER CANNON, taken on November 08, 2022
                                                    203

```
 1              VIDEOGRAPHER:  Okay.  We are back on the record
 2         for the deposition of Buster Cannon.  Today is
 3         November 8, 2022, and the time is 4:03.
 4    BY MR. SLOSAR:
 5         Q.   And, Mr. Cannon I know that you started
 6    reviewing Exhibit 23, if you could please give that a
 7    read and let me know when you're finished, then I'm
 8    going to ask you some questions.
 9              (WITNESS REVIEWS DOCUMENT)
10         A.   Okay.
11         Q.   All right.  And I think earlier that there may
12    have been some objections to me referring to your
13    Daubert testimony in Exhibit 1 regarding an ATF
14    document, and I'm looking at the language of this, and I
15    actually think that this may have been -- I think this
16    may have been a document referred to there, too.  But
17    let me -- let me ask you some questions about this, and
18    we'll -- we'll see if we have to go back to your
19    testimony.  But in -- is it fair to say that by looking
20    at this letter, you are able to tell that it's from the
21    -- the ATF first page, top?
22         A.   Yes.
23         Q.   Okay.  And the date of this letter appears to
24    from December of 1993; do you see that?
25         A.   Yes.
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CARROLL, taken on November 08, 2022

1    Q.   And according to this later, I just want to go

2   through it paragraph by paragraph, okay, so we'll go top

3   to bottom.  The second paragraph, do you see where it

4   says, "I also wanted to emphasize our policy on the use

5   of the dog at a fire scene --"

6    A.   Yes.

7    Q.   -- and the dog's role in the examination of a

8   fire scene."

9         Do you see that?

10    A.   Yes.

11    Q.   And, then, below that, do you see some, you

12   know, guidelines that the ATF gives to the assistant

13   attorney general?

14         MR. COLE:  Object to the form.

15    A.   Yes.

16    Q.   Okay.

17         MS. ARNETT:  I object.  Foundation.

18         MR. SLOSAR:  Okay.

19    Q.   Do you see where it says, "It is our position

20   that the only person who may determine a fires origin

21   and cause is the fire investigator"?

22    A.   Yes.

23    Q.   Is that consistent with the training that you

24   had received in 2002 at the ATF training academy?

25    A.   Yes.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 206 of 396
The Deposition of BUSTER CARNELL ~~PageID #a:4711~~ November 08, 2022
205

1    Q.   The next sentence where it says, "The fire

2    investigator's conclusions are based on a variety of

3    fire indicators including his and other witnesses'

4    observations and physical evidence."

5    A.   Yes.

6    Q.   Is that consistent with the training you

7    received from the ATF at the 2002 training academy?

8    A.   Yes.

9    Q.   Is that also consistent with your

10   understanding and knowledge from the NFPA 921s by 2004?

11   A.   Yes.

12   Q.   Do you see where it says, "The presence of a

13   material which may be used as an accelerant is rarely

14   the only basis for a fire investigator's conclusion,

15   e.g., the investigator finding charcoal starter in the

16   garage at a house fire"?

17   A.   Yes.

18   Q.   Is that consistent with training that you

19   received in 2002 at the ATF academy?

20   A.   Yes.

21   Q.   Is that consistent with your knowledge of the

22   NFPA 921s by 2004?

23   A.   Yes.

24   Q.   The next sentence where it says, "A positive

25   response from an accelerant detection canine is



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 207 of 396
The Deposition of BUSTER CANTRELL, taken November 08, 2022
PageID #: 1712
206

1   insufficient evidence to conclude that an accelerant is

2   present," is that consistent with the training that you

3   received at the ATF academy in 2002?

4       A.   Yes.

5       Q.   Is that consistent with your knowledge of the

6   NFPA 921s that were in place by 2004?

7       A.   Yes.

8       Q.   The next sentence where it says, "The dog, for

9   instance, may be alerting to material which could be

10  used as an accelerant, but in a particular case is

11  present at the fire scene for legitimate reasons, e.g.,

12  kerosene and a kerosene heater."  Is that consistent

13  with the training that you received at that 2002 ATF

14  training academy?

15      A.   Yes.

16      Q.   And is that consistent with your knowledge of

17  the NFPA 921s that were in place by 2004?

18      A.   Yes.

19      Q.   Do you see where it says, "Because of this, we

20  assert that the use of a canine's indication to the

21  presence of an accelerant is only one of the many

22  factors used in a fire investigator's origin and cause

23  and can never be the sole basis for that determination."

24          Do you see that?

25      A.   Yes.



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 208 of 396
PageID #: 1713
The Deposition of BUSTER CANADA taken on November 08, 2022
207

1    Q.   Is that consistent with the training you had

2  received at the ATF academy in 2002?

3    A.   Yes.

4    Q.   And is that consistent with your knowledge and

5  understanding of the NFPA 921s that were in place by

6  2004?

7    A.   Yes.

8    Q.   Where it says, "Additionally, any alert not

9  confirmed by laboratory analysis must be considered a

10 false alert, a false positive for the purposes of origin

11 and cause determination."  Is that consistent with your

12 understanding of the training you received at the 2002

13 ATF training academy?

14   A.   Yes.

15   Q.   And is that consistent with your understanding

16 of the NFPA 921s that were in place by 2004?

17   A.   Yes.

18   Q.   Where it says, "The accelerant detention

19 canine is a tool used to assist the fire investigator in

20 the collection of suitable samples for forensic

21 laboratory analysis, if the forensic laboratory

22 examination of the sample is negative any positive

23 indication by the canine at the fire scene is

24 irrelevant," is that consistent with the training you

25 received at the 2002 ATF training academy?



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 209 of 396
The Deposition of BUSTER CANNON taken on November 08, 2022
                                                                        208

1       A.   Yes.

2       Q.   And is that consistent with your knowledge and

3    understanding of the NFPA 921s that were in place by

4    2004?

5       A.   Yes.

6       Q.   On the next page, sir, where it says, "If the

7    laboratory results," do you see that sentence?

8       A.   Yeah.

9       Q.   Okay.  "If the laboratory results frequently

10   do not agree with the canine alerts, a problem exists

11   either with the dog or the laboratory.  States with

12   quality forensic laboratories and quality accelerant

13   canine programs will frequently have corroboration rates

14   in excess of 90 percent.  The handler and the canine's

15   credibility must be built through testing and

16   documentation and can never be accepted on blind faith."

17           Is that consistent with the training you

18   received at the ATF academy in 2002?

19      A.   Yes.

20      Q.   And is that consistent with your understanding

21   of the NFPA 921s that were in place by 2004?

22      A.   Yes.

23      Q.   Now, I'm going to go back to the paragraph

24   that I didn't read.  Do you see where it says, "The

25   above statements do not contradict the fact that a



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  properly trained canine is a reliable detector of

2  accelerants"?

3      A.   Yes.  I see that.

4      Q.   The handler -- I'm going to read just a couple

5  more sentences, then I'm going to ask you some

6  questions.  "The handler of the canine must establish

7  that the canine is reliable.  We establish the

8  reliability by yearly certification testing conducted by

9  the ATF laboratory and evaluation of a canine handler's

10 training and fire scene documentation logs by the

11 Kentucky State Police instructors.  Laboratory

12 corroboration of canine-selected samples from actual

13 fire scenes is also evaluated."  Is that consistent --

14         MR. COLE:  Let me enter an objection as

15     Kentucky State Police constructors.

16         THE WITNESS:  They're Connecticut State --

17         MR. COLE:  It's not -- it reads Connecticut

18     State Police instructors.

19         MR. SLOSAR:  Yeah, yeah, yeah, because the --

20         MR. COLE:  You said "Kentucky," I believe.

21         MR. SLOSAR:  Oh, I said -- oh, let me read that

22     -- I'm sorry about that.  That -- I'm sorry.  That

23     was inadvertent.  Let me -- let me read it over, so

24     I'm not messing up.

25 BY MR. SLOSAR:



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 211 of 396
The Deposition of BUSTER CAMPBELL, aka-116 on November 08, 2022
210

1    Q.    "The above statements do not contradict the

2    fact that a properly trained canine is a reliable

3    detector of accelerants.  The handler of the canine must

4    establish if a canine is reliable.  We establish the

5    reliability by yearly certification testing conducted by

6    the ATF laboratory in evaluation of the canine handler's

7    training and fire scene documentation logs by the

8    Connecticut State Police instructors laboratory

9    corroboration of canine-selected samples from actual

10   fire scenes is also evaluated."  Is that consistent with

11   the training you received at the ATF academy in 2002?

12        A.    Yes.

13        Q.    And is that consistent with your understanding

14   of the NFPA 921s that were in place by 2004?

15        A.    Yes.

16        Q.    So you would have known by 2004 that the

17   handler of a canine must establish that the canine is

18   reliable by 2004, correct?

19        A.    Correct.

20        Q.    And you would have understand by 2004 that

21   reliability is determined, not only by your daily

22   training logs but by actual fire scene documentation

23   logs, as well?

24        A.    Yes.

25        Q.    And you would have understood that the

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    reliability of PJ's alerts were, in part, determined by

2    laboratory corroboration of selected samples from actual

3    fire scenes, correct?

4        A.    Correct.

5        Q.    And you would have known all that by 2004,

6    correct?

7        A.    Yes.

8        Q.    And that was part of the reason why you were

9    having communication with the Kentucky State Police

10   laboratory analysts about non-confirmation of PJ's

11   alerts, correct?

12       A.    Well, not necessarily non-confirmation.  The

13   statement he gave me is close, but he couldn't make the

14   call.  And I was kind of curious, why couldn't he make

15   that call?  How close was it?  You know, should I have

16   moved her over a little bit?  What do I need to do to

17   make the dog get you a better sample.

18       Q.    Sure.

19       A.    And that's what the conversation was about.

20       Q.    And I think you testified earlier your concern

21   was trying to get advice to improve the reliability of

22   PJ's alerts --

23       A.    Yeah --

24       Q.    -- right?

25       A.    -- to get a better sample, yeah.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 213 of 396
PageID #: 1718
The Deposition of BUSTER CAIN, taken on November 08, 2022
212

1        Q.    Yeah.

2        A.    What -- what do I need to do?

3        Q.    And -- and when you say you get a better

4   sample, what you're saying is, like, if PJ had a

5   reliable alert, the laboratory should be able to confirm

6   that alert, right?

7        A.    Well, he went out on a limb, I guess, by

8   telling me for the first thing that -- or for telling me

9   the first thing that something was there, but it's not

10  close enough for me to call it.  So I don't know how

11  they read their instruments or anything like that, but

12  that's what encouraged me to give him a call to find

13  out, well, if something is there, what can I do to find

14  it?

15       Q.    Sure.

16       A.    You know, is it close.  Yeah.  It's close, but

17  it ain't close enough for me to call.  Well, what do I

18  need to change or what do I need to do to get to a

19  better sample?

20       Q.    Yeah.

21       A.    You know, and that's basically what the

22  conversation was about.  I don't remember what we

23  resolved or what was resolved in that conversation, but

24  I do vaguely remember making that call to him.

25       Q.    And, you know, while we're on to training, I'm

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 214 of 396
The Deposition of BUSTER CANNON taken on November 08, 2022
                                                          213

1   going to show you what we'll mark as Exhibit 14.

2            (EXHIBIT 14 MARKED FOR IDENTIFICATION)

3        Q.   All right.  I'm going to give you Exhibit 14.

4   I'm not going to ask you a question about this right

5   now.  These are just your requests for production, I

6   think, your responses, but I -- I am going to give you

7   Exhibit 20, which I do actually have questioning about.

8   So here is -- here's --

9            MR. COLE:  We're not marking this one?

10           MR. SLOSAR:  I marked that.  That's 14.  Yeah,

11      yeah.

12           (EXHIBIT 20 MARKED FOR IDENTIFICATION)

13  BY MR. SLOSAR:

14       Q.   Do you recognized that document, Mr. Cannon?

15       A.   Yeah, vaguely.

16           MR. SLOSAR:  This is 20.  Here's 20.

17       Q.   And that that's your response to some of the

18  request, for production that we had here.

19       A.   Okay.

20       Q.   Is that something that you had reviewed at

21  some point over the last few years?

22       A.   Okay.

23       Q.   Do you remember reviewing that over the last

24  few years or no?

25       A.   No.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 215 of 396
PageID #: 1720
The Deposition of BUSTER CANNON, taken on November 08, 2022
214

1    Q.    Okay.

2    A.    This document?

3    Q.    Yeah.

4    A.    Yeah.  I think I did.

5    Q.    Okay.  Let me -- I might ask you about that

6    later, but let's -- let me give you -- I think I -- let

7    me give you Exhibit 20, sir.  I do have questions about

8    this.  I'm sorry about that.

9              And, sir, you're certainly familiar with the

10   document that you're looking at right now, right?

11   A.    Yes.

12   Q.    What is that?

13   A.    It's National Association of Fire Investigator

14   Certification membership.

15   Q.    And you would have been a member of this

16   organization in 2004, 2005; is that right?

17   A.    Yes.

18   Q.    And your membership, frankly, probably

19   predated 2004 for this association; is that right?

20   A.    Yes.

21   Q.    Let me forward you to -- these are -- so these

22   are actually documents, Mr. Cannon, that were produced

23   to us by your attorneys during the course of this

24   litigation.

25   A.    Okay.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 216 of 396
PageID #: 1721
The Deposition of BUSTER CANNON taken November 08, 2022
215

1      Q.   That's actually the last exhibit.  Exhibit No.

2    14 talks about producing these documents.  I'm actually

3    going to -- so, if you look at request number five, it

4    says, Our request is any and all documents relating to

5    the training of accelerant detention canine in the fire

6    investigation from 2000 to 2004.  That's our request,

7    sir.  A response.  There's an objection, then there's a

8    substantive response and basically our attorneys

9    produced --

10             MR. COLE:  Number five?

11             MR. SLOSAR:  For number five, yeah.

12      Q.   -- produced a number of documents, and they've

13    got a Bates range of Cannon 1 through 244, okay.  So

14    Exhibit 20 are documents that were produced by your

15    attorneys to us during the course of this litigation

16    that relate to the training of yourself and -- and PJ;

17    is that fair?

18      A.   Yes.

19      Q.   And what I'm going to refer you to in this

20    particular exhibit is page 103.  It's a 2001 National

21    Fire Arson and Explosion Training program.

22      A.   Where -- where's it at?

23      Q.   It should have a -- it's got, like, a little

24    103 thing on the side.  So this is -- you know, this is

25    kind of confusing because it's front and back.  I

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 217 of 396
The Deposition of BUSTER CANNON, taken November 08, 2022
PageID #: 1722
216

1    apologize about that.

2            MR. COLE:  103?

3            THE WITNESS:  Oh, okay.

4            MR. SLOSAR:  Yeah.  So it's going to be right -

5    - right here (indicating.)

6            MR. COLE:  Okay.

7            MR. SLOSAR:  Do you see that, Mr. Cannon?

8            THE WITNESS:  Yes.

9            MR. SLOSAR:  Okay.

10           MR. COLE:  Let me catch up.  These are out of

11    order.  103.  Okay.  I've got it.

12   BY MR. SLOSAR:

13       Q.   Okay.  And this would have been a program that

14   I think you received when you went down to Sarasota,

15   Florida in 2001; is that right?

16       A.   I didn't go there.

17       Q.   You didn't go there?  Do you know why this is

18   part of your training materials?

19       A.   Huh-uh.  Might have been something I was

20   looking at and left it in there, but --

21       Q.   Okay.

22       A.   -- I didn't go to Sarasota, Florida for no

23   seminar.

24       Q.   Well, did you receive a copy of it for some

25   reason?

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 218 of 396
The Deposition of BUSTER CANNON, taken November 08, 2022
PageID #: 1723
                                                              217

1        A.   I'm not familiar with it.  Maybe.

2        Q.   Okay.

3             Do you recognize -- if you go a couple pages

4   back, it begins -- it just -- it looks like a word

5   document. It starts at -- it says, "Fire Arson

6   Investigation," at the top.  It's kind of typed out.  It

7   should -- it has 225 at the bottom.

8             MR. SLOSAR:  You're right, Charlie.  They are

9        out of order.  That's my fault, because I -- I print

10       out, like, 4,000 pieces of paper, then pull out what

11       I wanted to have scanned in with this stuff.

12            MR. COLE:  This is it right here (indicating.)

13            MR. SLOSAR:  Yeah.

14            MR. COLE:  Okay.

15            MR. SLOSAR:  There we go.  Sorry about that.

16   BY MR. SLOSAR:

17       Q.   Do you recognize this, Mr. Cannon?

18       A.   Yeah, I've seen this before.  Uh-huh.

19       Q.   Did you type this up by chance, was this kind

20   of like a cheat sheet for you?

21       A.   Yeah.

22       Q.   Okay.  So this is something that you would

23   have typed up based on, you know, the -- either your

24   review of the NFPA 921s or other training that you had

25   received during your career; is that fair?

Kentuckiana Reporters          502.589.2273 Phone
P.O. Box 3983                  502.584.0119 Fax
Louisville, KY 40201     schedule@kentuckianareporters.com
                         www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

The Deposition of BUSTER CAMPBELL, taken November 08, 2022

218

```
 1        A.    It's probably something that I've ran across
 2   and found it to be interesting and kept it, yes.
 3        Q.    Yeah.  It looks kind of like a -- a cheat
 4   sheet maybe is not giving it enough credit, but it looks
 5   like, you know, like something that you can use as an
 6   aid during fire investigations; is that fair?
 7        A.    Yes.
 8        Q.    Okay.  Do you know, would this have been
 9   created before you testified at -- in 2006 at Mr. Yell's
10   criminal trial?
11        A.    I don't know that it was but I'd say so, yes.
12        Q.    It -- it should be, right, because you retired
13   from Georgetown in 2005?
14        A.    Right.
15        Q.    Okay.  So this is something that you would
16   have at least had in your possession --
17        A.    Yes.
18        Q.    -- by the time of your retirement?
19        A.    Yes.
20        Q.    Okay.  Now, and it's something that you would
21   have relied upon during the course of fire
22   investigations; is that fair?
23        A.    Yes.
24        Q.    Now, fair to say that you have no recollection
25   of ever disclosing this document to the Commonwealth
```



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 220 of 396
PageID #: 1725
The Deposition of BUSTER CANNON taken on November 08, 2022
219

```
 1   attorney or defense counsel in Mr. Yell's criminal
 2   prosecution?
 3        A.   I have no memory of it, no.
 4        Q.   Okay.  And nobody ever, you know, had told you
 5   by 2006 that you needed to disclose stuff like this to
 6   the Commonwealth --
 7        A.   No.
 8             MR. COLE:  Object to the form.
 9        Q.   Now, during the course of having PJ, you would
10   have regularly taken her in for -- to go see the
11   veterinarian --
12        A.   Yes.
13        Q.   -- right?
14             And you would have kept those records as -- as
15   part of your file on PJ, fair?
16        A.   Those -- those were kept and were turned over
17   to the ATF when we went to recertification class.
18        Q.   Okay.
19        A.   It doesn't necessarily mean I kept a copy of
20   them, but they were turned over to the ATF.
21        Q.   Fair enough.
22             I'm going to direct you to page 137 of this,
23   sir. I apologize.  Here it is.
24             Do you recognize that document?
25        A.   Yes.
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 221 of 396
PageID #: 1726
The Deposition of BUSTER CARROLL taken November 08, 2022
220

1      Q.   Okay.  What does this look like to you?

2      A.   It looks like that's where they got PJ from.

3      Q.   And that's the Guide Dog Foundation?

4      A.   Yes.

5      Q.   Now, according to this document, PJ was born

6   April 18, 2000; is that fair?

7      A.   Fair, yes.

8      Q.   And -- and so relatively speaking, you know,

9   how long are, you know, the projected lifespans for

10  Labradors; do you remember, generally?

11     A.   Repeat that.

12     Q.   Do you recall how long Labradors generally

13  live for?

14     A.   10, 12 years.

15     Q.   Okay.  So, is it fair to say that by 2004 PJ

16  still would have been on, like, the puppy spectrum of

17  her life?

18     A.   Yeah.

19     Q.   Yeah.  And at least according to this

20  document, did the Guide Dog Foundation note that PJ had

21  dog distraction and object shyness at the time that they

22  completed this form?

23     A.   That's what it says, yes.

24     Q.   Okay.  And at least at the time that this form

25  was created, do you see the feeding section in here?

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 222 of 396
PageID #: 1727
The Deposition of BUSTER CANNON taken November 08, 2022
221

1       A.   Yes.

2       Q.   And it -- and it appears that, at least at

3  this point in PJ's life, she was being fed two cups of

4  food in the morning and two cups of food in the evening;

5  is that right?

6       A.   That's what it says, yes.

7       Q.   And that would have been about half as much as

8  PJ was being fed after she began the ATF training

9  process, correct?

10      A.   Correct.

11      Q.   The ATF training process informed you to cap

12  PJ's food at two cups per a day, correct?

13      A.   They put her on a weight program so whatever

14  that came to is what -- you know, to keep the weight

15  off, and it was generally two cups a day to keep that

16  weight off of her.  The one bad habit Labradors have,

17  they're garbage guts.  They'll eat anything at anytime

18  and that's one reason why they use them.  You can't fill

19  them up.  They'll work any given time to get fed.

20      Q.   And the only way, at least based on your

21  training, the only way that PJ was going to get fed

22  outside of a daily ration was if she made alerts?

23      A.   Yes.

24           MR. SLOSAR:  Can we take another five minutes;

25       is that okay?


Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 223 of 396
Page ID #: 1728
The Deposition of BUSTER CANNON, taken November 08, 2022
222

1           Is that okay, another five minutes?

2           THE WITNESS:  Oh, sure.

3           VIDEOGRAPHER:  We'll go off the record at 4:29.

4             (OFF THE RECORD)

5           VIDEOGRAPHER:  We are back on the record for

6       deposition of Buster Cannon.  Today is

7       November 8th, 2022, and the time is 4:43.

8  BY MR. SLOSAR:

9       Q.   So, Mr. Cannon, if you could fast forward in

10  that -- in Exhibit No. 20, there's just one other page I

11  forgot to ask you about.  It's kind a 193 at the bottom.

12      A.   Yes.

13      Q.   Yes.  That's it.  Now, this was part of the

14  training materials that were turned over from your

15  attorneys, and -- and was there a file that you kept at

16  the -- at the Georgetown Fire Department that, you know,

17  had some of your certificates and --

18      A.   Yes.

19      Q.   -- training materials?

20      A.   Yes.

21      Q.   Okay.  And -- and it appears that throughout

22  your career at the fire department when you went to

23  trainings or the ATF, that you took some of the

24  materials that you thought were important for you to

25  retain and you maintained it as part of that file; is

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

The Deposition of BUSTER CANNON, taken on November 08, 2022

```
1    that --
2         A.    Yes.
3         Q.    Okay.  And do you recall this particular
4    document, "The Ten Common Failures in Fire Scene
5    Investigation"?
6         A.    It looks familiar, but I really can't say for
7    sure.
8         Q.    Okay.  Can you take a -- actually, you know,
9    let's just go through this one by one.
10             Do you see at the beginning where it says,
11   "Fire scenes don't readily give up the secrets buried
12   within their ash and charred debris.  Each fire conceals
13   the mystery of its origin and cause in a unique and
14   individual pattern.  Posing a new challenge to its fire
15   cause directive."
16             Do you see that, sir?
17        A.    Yes.
18        Q.    Would you generally agree with that?
19        A.    I'm sorry?
20        Q.    Wouldn't you agree with that?
21        A.    Yeah.
22        Q.    Wouldn't you agree that not all investigations
23   are successful?
24        A.    Oh, yeah.
25        Q.    And do you see in the next paragraph where it
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 225 of 396
PageID #: 1730
The Deposition of BUSTER CAMPBELL taken November 08, 2022
224

1    says, "Qualitative fire team investigation faces ten

2    common failures.  These are the trouble spots.  The most

3    common mistakes which represent the tactical pitfalls

4    for both the new and the veteran fire investigator."

5          Do you see that?

6    A.    Yes.

7    Q.    And you would agree with that, right?

8    A.    Yes.

9    Q.    And, you know, given that you retired in 2005,

10   is it fair to say that this is a document that you would

11   have reviewed and maintained as part of your file prior

12   to Mr. Yell's criminal trial?

13   A.    True.

14   Q.    It exists here today, and so it had to have

15   existed in your file by 2005 when you left, fair?

16   A.    Absolutely.

17   Q.    Okay.  And no recollection sitting here today

18   of ever turning this particular document over to the

19   Commonwealth attorney or Mr. Yell's defense counsel

20   prior to his 2006 trial, correct?

21   A.    Correct.

22   Q.    Now, we're going to go through these ten

23   common failures that are listed here, and I'm going to

24   ask you questions after each one, okay?

25   A.    Okay.



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CAMPBELL taken on November 08, 2022
225

```
1        Q.   So number one, "Dig down to the bottom of the
2   burn.  You can't see the floor from the rooftop. Uncover
3   layer by layer consciously.  Examine the objects,
4   sifting if necessary to recover small items."
5             Do you agree with -- with point number one?
6        A.   Yes.  Yes.
7        Q.   Would that have been consistent with the
8   knowledge and training that you had received by 2004?
9        A.   Yes.
10            MR. COLE:  Let -- let me enter an objection.
11       Maybe I'm reading it wrong.  It says, the most
12       common mistakes, right?
13            MR. SLOSAR:  Uh-huh.
14            MR. COLE:  Okay.
15            MR. SLOSAR:  Well, most common mistakes.  Where
16       are you at?  Sorry.  It says, "Ten common failures
17       up top," but --
18            THE WITNESS:  The third paragraph it says, the
19       most common mistakes were --
20            MR. COLE:  "These are the most common
21       mistakes."
22            MR. SLOSAR:  Okay.  Yeah.  Well, I -- I think
23       they kind of, like, identify mistakes, but also say,
24       like, what you should be doing, so it is --
25   BY MR. SLOSAR:
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 227 of 396
The Deposition of BUSTER CARROLL taken on November 08, 2022
PageID #: 1732
226

1    Q.   You would agree that you need to dig down to

2    the bottom of a burn and not just rely upon what's on

3    the top layer, fair?

4    A.   Yes.

5    Q.   I think that's what point number one is really

6    making.

7         MR. SLOSAR:  Unless you read it differently,

8    Charlie.

9    Q.   Let's go to -- to number three.  I think

10   number two, you had no involvement in cleaning the scene

11   in 2004 --

12   A.   No.

13   Q.   -- at this -- at this fire investigation,

14   correct?

15   A.   No.

16   Q.   All right.  Let's go to number three.  "Don't

17   leave questions unanswered.  An answer is demanded in

18   interrogations.  Don't make an exception with fire scene

19   evidence while conducting the physical investigation.

20   Avoid the mistake of saying quote, this appears

21   confusing.  I'll get back to it later, end quote, but

22   never do."

23        Do you agree with that, that you're not

24   supposed to leave questions unanswered in a fire

25   investigation?

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 228 of 396
The Deposition of BUSTER CARROLL taken on November 08, 2022
PageID #: 1733
227

        A.    Yeah.  But I feel like I'm being led into an

investigation part of that fire, and I had nothing to do

with that.

        Q.    I -- I understand your -- what you're going to

testify that your role was in this investigation.  I

understand that.  What I'm saying is, you know, do you

agree with the fact that in a fire investigation by 2004

questions should not be left unanswered?

        A.    I agree.

        Q.    You weren't the lead fire investigator here,

right?

        A.    I wasn't investigator period.

        Q.    You were just assisting as a canine handler,

fair?

        A.    I would agree with that.

        Q.    But you would agree that these ten common

failures in a fire scene investigation would be

important to consider about what happened here with

those who were in charge of this investigation?

        A.    I would agree.

        Q.    Now, number four, do you see where it says,

"Eliminate the non-causes.  Don't call a halt to your

work before excluding other potential fire causes,

verify and reinforce your cause conclusions.  Look at

areas removed from the origin, electric service, gas,

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CANODLE taken on November 08, 2022
228

1    heating, cooling, appliances, TV, look for more than one

2    origin, attorneys recite the importance of showing what

3    couldn't or didn't happen as well as identify what

4    actually did occur."

5          Do you agree that these principles should have

6    been applied by the person's responsible for this fire

7    investigation?

8    A.    Yes.

9    Q.    Would you agree that the fire -- the

10   individuals in control of this fire investigation should

11   not have halted their work before excluding other

12   potential fire causes?

13   A.    Well, again, I don't know whether they did or

14   didn't.

15   Q.    Sure.  But I'm saying, wouldn't you agree that

16   they should have excluded --

17   A.    Yes.

18   Q.    -- other potential fire causes before

19   determining this was an arson?

20   A.    Yes.  I would think that they did that but

21   yes.

22   Q.    Would you agree -- the next one in point five

23   says, "Take sufficient time.  Make your time count.

24   Don't waste it but don't rush it either.  Don't leave

25   the job undone or half done because you've other fires

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 230 of 396
PageID #: 1735
The Deposition of BUSTER CAMPBELL taken November 08, 2022
229

1    to check.  Can you justify the expense?  Can you

2    complete the investigation in the time set aside for it?

3    Spend time but don't squander it.  Recognize when to

4    stop but also keep going as needed.  Recognize dead ends

5    for what they are.  Start out again in a new direction.

6    Also, don't continue without a valid purpose."

7            Do you agree that those principles should have

8    been applied in the 2004 investigation that we're

9    discussing here today?

10        A.    Yes.

11        Q.    And would you agree -- okay.  Let me -- let me

12   ask you about number six, "Keep an open mind and a

13   closed mouth.  Don't jump to conclusions by early

14   revelations or findings.  Don't conject.  Anticipate

15   where you're going, not what you're going to discover or

16   find out.  Take time to use your head.  Analyze what

17   you've got, and then identify what you still need.  If

18   in doubt, back off to a known point and commence again.

19   Also, after leaving the scene, have you ever identified

20   something you forgot to check out.  Don't talk about the

21   case.  Speak no opinion, conjecture or judgment.  Don't

22   verbally evaluate facts and evidence.  Let your report

23   speak for you."

24            Do you agree that those principles should have

25   been applied during the September 2004 fire

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

1    investigation we're discussing here today?

2         A.    Yeah.

3         Q.    And would you agree that keeping an open mind

4    and not jumping to conclusions by -- through early

5    revelations or findings is critical to forming objective

6    opinions in a fire investigation?  So this is just a

7    question.  It's not -- it's not there.

8         A.    Yeah.

9         Q.    Okay.  And, Mr. Cannon, we haven't discussed

10   it yet, but you would agree in this particular fire

11   investigation that the individuals in charge were

12   sharing their theories of what happened before you ever

13   even went to the scene?

14        A.    Not with me.

15        Q.    Well, sir, when you went to the breakfast with

16   Mr. Flowers and Mr. Gregory, they shared with you

17   details about what happened, what they -- what they had

18   already believed happened at the fire scene, correct?

19        A.    I don't remember hearing that.

20        Q.    Okay.  I'm going to show you some testimony

21   later.

22        A.    Okay.

23        Q.    I'll ask you about it.  Looking at number

24   seven, "Be thorough and systematic.  Follow a routine, a

25   set procedure, don't jump around or handle each case



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 232 of 396
PageID #: 1737
The Deposition of BUSTER CAMPBELL, taken on November 08, 2022
231

1    differently because it's easier to fit the procedure to

2    the situation.  If you have to leave the scene, your

3    pattern and notes will reinforce each other to pick up

4    again from your stopping point."

5            Do you agree that those principles should have

6    applied to the September 2004 investigation we're

7    discussing today?

8        A.    Yes.

9        Q.    Do you see where it says, "Leave no avenues

10   untraveled.  If --

11       A.    I do.

12       Q.    -- if your examination opens a door, look on

13   the other side.  Take advantage of your progress.  Take

14   one step at a time.  You can climb almost any obstacle

15   if you'll only stay with it.  Step by step is not

16   plotting.  It's cautious, methodical and logical."

17           Do you agree that those principles should have

18   been applied by the investigators in charge of the --

19   this investigation?

20       A.    Yes.

21       Q.    Number eight, do you see where it says, "Don't

22   get in over your head."

23       A.    Yes.

24       Q.    "Don't wade around in deep water, you'll only

25   flounder.  Get specialists' help, i.e., electrical, lab,

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

The Deposition of BUSTER CAMP, taken on November 08, 2022

```
 1    plumbing, don't be afraid of I don't know."
 2              Would you agree that those principles should
 3    have implied by the investigators in charge of this
 4    September 2004 fire investigation?
 5         A.   I don't know that they didn't.
 6         Q.   Sure.  And I'm not saying -- I'm not asking
 7    you to say whether they were or they weren't.
 8         A.   Yeah.
 9         Q.   I'm asking you whether they should have
10    applied those principles?
11         A.   Yes.
12         Q.   Number nine, "Stay in bounds legally in your
13    actions and work product, do what's right both from
14    legally and ethically, keeping in mind the victim,
15    suspect and bystanders.  Do you have legal access?  If a
16    crime, arson or fraud is involved, is your effort within
17    policy and legal bounds being admissible in court."
18              Wouldn't you agree that those principles
19    should have been applied by those in charge of this
20    September 2004 investigation?
21         A.   Yes.
22         Q.   Where it says, "Seek only the truth, don't
23    simply try to build a case.  You can interpret logic,
24    but truth speaks for itself.  Identify what could have
25    happened by determining the options, then develop what
```



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 234 of 396
Page ID #: 1739
The Deposition of BUSTER CAMPBELL, taken on November 08, 2022
233

1    actually happened.  What was the real scenario?  Do all

2    the pieces of this jigsaw puzzle fit into place?  Can

3    the unanswered questions, missing pieces, alter your

4    conclusions?  Does anyone disagree?  Would you bet your

5    professional reputation on it?"

6             Would you agree that the investigators in

7    charge of this particular fire investigation should have

8    applied those principles?

9        A.   Yes.

10       Q.   And number ten, where it says, "Write your

11   report factually.  Do your facts speak for themselves,

12   fair, accurate, complete, timely?  Does the text justify

13   and corroborate your conclusions?  Do you have

14   supporting documentation such as fire scene evidence,

15   statements, photos, records and documents?"

16            Do you agree that those principles should have

17   been applied by the investigators in charge of this

18   investigation?

19       A.   Yes.

20       Q.   All right.  Let's get to what happened in

21   September of 2004.  Now, by September 2004 it was your

22   practice as a fire investigator and canine handler to

23   get a rundown on what was going on at the fire scene,

24   correct?

25       A.   Can you repeat that?

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 235 of 396
PageID #: 1740
The Deposition of BUSTER CANTRELL, taken November 08, 2022
234

```
1        Q.    Sure.  In September of 2004, it was your
2   practice as a fire investigator and canine handler to
3   get a rundown on what's going on at the fire scene,
4   correct?
5        A.    Correct.
6        Q.    And that was a practice that you had by that
7   time, fair?
8        A.    Yes.
9        Q.    And, in fact, it was your practice by
10  September 2004 to go in and do a walk through with other
11  individuals involved in the investigation before you
12  brought in PJ, correct?
13       A.    That's practice.  Yes.
14       Q.    And you did that because you wanted to know if
15  there are any accelerants in the house and where you can
16  expect to find them, correct?
17       A.    That's part of it and safety for myself and
18  the canine.
19       Q.    And so, when you would do this walk through,
20  it would have been a practice of yours, without PJ being
21  there, to have the other investigators point out where
22  they believe that accelerants were present, correct?
23       A.    No.
24       Q.    Well, sir, do you recall -- I'm going to have
25  -- I'm going to have you look at Exhibit No. 1.  I'm
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 236 of 396
The Deposition of BUSTER CARNES, taken on November 08, 2022
PageID #: 1741
235

1    going to -- I'm going to turn the page for you.

2            Do you recall testifying in 2006 when you were

3    over the phone?

4    A.    Yes.

5    Q.    Okay.  You've testified a number of times so

6    only once over the phone, so I'm going to try to keep

7    this one -- keep referring to it that way.  Okay. Let's

8    set aside -- it's page 14.  Sorry.  14 of Exhibit 1.

9            And if you look at page 14, Exhibit 1,

10   specifically beginning at line ten through 18, we asked

11   this question, did you give this answer?  "And can you

12   tell us about that fire scene?"

13           Answer, "Excuse me.  Well, the first thing

14   that I usually want to do is just a get a rundown on

15   what's going on at the fire scene.  Second thing I'll

16   usually do is I'll go in and do a walk through just to

17   make sure that there's nothing in there that will hurt

18   my dog or cause my dog to get, like a -- for example,

19   broken glass.  I would have to get that cleaned up

20   before I bring her in because she doesn't wear any

21   special foot padding or anything like that.  So,

22   actually, I'm going to make sure the scene is safe

23   before I'll bring the dog in.  And I want to know if

24   there's any accelerant in the house, and where I would

25   expect to find them if I was, so I'll ask a question of

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CAMERON taken November 08, 2022

236

1   that nature.  If there was, then I want to know where so

2   I could keep the dog aware from that area because

3   obviously she would be expected to find it."

4           Were you asked that question?  Did you give

5   that partial answer, sir?

6       A.   Yes.

7       Q.   Okay.  And so there would be a discussion

8   between you and somebody else about where accelerants

9   were in the house prior to PJ coming in, correct?

10      A.   Yeah, a briefing, uh-huh.

11      Q.   Okay.  And part of that was so that you can

12  learn where those accelerants might be before PJ is

13  brought in, right?

14      A.   (Witness nods head.)

15      Q.   Is that right?

16      A.   Yes.  Yes.

17      Q.   And you would also want to take a look around

18  the house to make sure that, you know, of course, PJ is

19  not going to get hurt as you walk through, fair?

20      A.   Right.

21      Q.   That would be, like, if broken glass or

22  something sharp was -- was on the floor?

23      A.   Correct.

24      Q.   Now, I believe you the testified that once you

25  brought PJ in that if there was an alert made, either

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 238 of 396
The Deposition of BUSTER CANNON taken on November 08, 2022
PageID #: 1743
237

1    you or someone else would leave some type of marker so

2    you can go back and get samples --

3         A.    Correct.

4         Q.    -- is that right?

5               And -- and that would have been the process

6    that was used in September of 2004 in reference to this

7    particular fire investigation, fair?

8         A.    And that being ATF protocol, yes.

9         Q.    Now, on September 12, 2004, you would have

10   understood that any actions you took with PJ at the

11   scene would be relied upon by investigators, correct?

12        A.    Yes.

13        Q.    And you would have understood that any methods

14   and principles you used with PJ that resulted in an

15   alert would be relied upon by investigators as part of

16   their investigation of the cause of fire, correct?

17        A.    Only if they come back positive, yes.

18        Q.    Of course.  You understood that any methods

19   and principles you used with PJ that resulted in an

20   alert would be relied upon by investigators as part of

21   their criminal investigation into the fire, correct?

22        A.    Correct.

23        Q.    And you understood that any methods and

24   principles you used with PJ that resulted in an alert

25   could be used and relied upon by law enforcement

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 239 of 396
The Deposition of BUSTER CARTER, aka D #: 1744 November 08, 2022
238

1    officers to initiate charges against someone for the

2    fire?

3         A.    Yes.

4         Q.    And, to the best of your knowledge and

5    recollection, you did nothing different in this

6    particular fire investigation with PJ than you did in

7    the 200 or so other fires that you and PJ participated

8    in investigating between 2002 and 2006, correct?

9         A.    I pretty much stick to the same routine.

10   That's correct.

11        Q.    You don't remember a single thing that was

12   different here in relation to your actions with PJ than

13   those 200 or so other investigations, correct?

14        A.    I done -- done it all the same.  Yes, sir.

15        Q.    Now, in September of 2004 -- well, strike

16   that.

17             In September of 2004 you were called to assist

18   with a fire investigation of a trailer on Bonnie Drive

19   in Russellville, Kentucky, correct?

20        A.    Correct.

21        Q.    That's what we've been talking about here

22   today for the last several hours, fair?

23        A.    I'd call it --

24             MR. COLE:  Object to the form.

25        A.    -- participate.



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1      Q.   Participate.  Yes.

2           And you recall -- were you brought in as a

3  fire investigator to determine the cause and origin?

4      A.   Absolutely not.

5      Q.   Were you brought in to determine intent?

6      A.   No.

7      Q.   Fair to say that you were brought in to have

8  PJ locate possible accelerants?

9      A.   True.

10     Q.   What agency at the time you got the call --

11  well, strike that.

12          At the time you got the call, where were you

13  at?

14     A.   I have no idea.

15     Q.   Could have been at the sheriff's department?

16     A.   Could have been home, there, or fire

17  department.  I -- I don't remember what the schedule was

18  back then.

19     Q.   Did you have any contact with the ATF about

20  this particular case at the time that you got the call?

21     A.   No.

22     Q.   Did you know Mr. Gregory before you got the

23  call?

24     A.   We'd met once, I think.

25     Q.   Do you recall where that was?

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 241 of 396
The Deposition of BUSTER CARROLL taken on November 08, 2022
PageID #: 1746
240

1    A.   I can't be positive.  It was either at a

2    training seminar or maybe another fire scene, but it was

3    a brief encounter.

4    Q.   **What do you recall Mr. Gregory telling you**

5    **during the call?**

6    A.   During the call?  I don't recall nothing, to

7    be honest with you.

8    Q.   **That's fair.  Did you take some notes about,**

9    **you know, where you were supposed to go and when you**

10   **were supposed to be there?**

11   A.   Yes.

12   Q.   **Did -- have you found those notes at any**

13   **point?**

14   A.   No.

15   Q.   **Were you called -- did you receive the call**

16   **the day you went to the trailer or was it the day**

17   **before?**

18   A.   I really don't know.

19   Q.   **I know the fire happened September 11th, 2004.**

20   **You came out the morning of the 12th, correct?**

21   A.   Correct.

22   Q.   **And you don't recall what Mr. Gregory told you**

23   **in this conversation?**

24   A.   Not on the phone call, no, nothing.

25   Q.   **Do you remember whether anybody else was a**

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 242 of 396
The Deposition of BUSTER CAMBELL taken PageID #: 1747 November 08, 2022
241

1    part of that conversation?

2         A.   No, I don't think so.

3         Q.   Now, the next morning you met Mr. Gregory for

4    breakfast, correct?

5         A.   Correct.

6         Q.   Jack Flowers was there, as well?

7         A.   Don't recall, don't remember.

8         Q.   Do you recall whether -- you know what, let me

9    -- let me show you -- I'm going to keep you on Exhibit

10   1.   I'm going to turn the page for you to 25.  Sorry.

11   Actually, sorry.   Page 25, line two.   This is of Exhibit

12   1 for folks on the Zoom.

13            Do you see where it says, "Would that be

14            Mr. Flowers, or Mr. West?"  Answer:   "I

15   believe it would be Jack Flowers."

16        A.   Yes.

17        Q.   And do you see where it says, question: "Okay.

18   Thank you.   And what discussions did the two of you have

19   prior to your undertaking investigation on the scene

20   with PJ?"

21            Answer:   "Well, again, as I stated earlier it

22   was pouring down raining when I got there and I was a

23   little bit early so we went and had breakfast and we sat

24   and talked about the case a little bit.   Myself, being

25   an investigator, I want to know a little bit about what

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CANNON taken on November 08, 2022

```
 1    I'm getting into, as to what I'm going to put my dog
 2    into. So they pretty much told me the rundown on the
 3    case."
 4            So do you see those questions and answers?
 5    A.    Yes.
 6    Q.    So, at least according to your testimony in
 7    '06, you recalled, in addition to Mr. Gregory, that
 8    Mr. Flowers was there, as well; is that correct?
 9    A.    Correct.
10    Q.    And sitting here today, outside of Mr. Gregory
11    and Mr. Flowers, do you recall anybody else joining you
12    for breakfast?
13    A.    No.
14    Q.    Okay.  Now, at that breakfast you sat down and
15    talked about the case, correct?
16            MR. SLOSAR:  Was that up there?  Oh, no.  Okay.
17       Sorry.
18            MR. COLE:  Object to the --
19            MR. SLOSAR:  Oh, sorry.
20            MR. STILZ:  That was me.
21            MR. COLE:  Object to the form.
22            MR. STILZ:  Sorry.
23            MR. SLOSAR:  No, no.
24            MR. STILZ:  I was pulling my straw out.
25            MR. SLOSAR:  No, no.  Sorry about. that.
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 244 of 396
The Deposition of BUSTER CANNON taken on November 08, 2022
PageID #: 1749
243

BY MR. SLOSAR:

1

2    Q.    Let me ask this question again.  I don't know

3  what you -- what you said, Mr. Cannon.  I'm sorry.  At

4  that breakfast, you had sat down and talked with

5  Mr. Gregory and Mr. Flowers about the case, correct?

6    A.    Correct.

7    Q.    And this wasn't just, you know, people giving

8  you information.  You wanted to know what you were

9  getting into, correct?

10    A.    Correct.

11    Q.    And you also wanted to know what you were

12  going to put your dog into, correct?

13    A.    Correct.

14    Q.    And so they provided you with a rundown on the

15  case, correct?

16    A.    Basically what I told you earlier, yes.

17    Q.    We're going to get into the details --

18    A.    Okay.

19    Q.    -- but they provided -- during this breakfast

20  conversation, they provided you with a rundown on the

21  case, correct?

22    A.    We'll say yes for now.

23    Q.    Okay.  And, in fact, Mr. Gregory gave you his

24  opinion that the fire was intentionally set, correct?

25    A.    I don't recall that.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 245 of 396
The Deposition of BUSTER CARROLL taken November 08, 2022
PageID #: 1750
244

1           (EXHIBIT 3 MARKED FOR IDENTIFICATION)

2       Q.   All right.  I'm going to show you Exhibit No.

3    3.  This is, I believe, your trial testimony. Sorry.

4    Here you go.  Let me -- let me just make sure. We've got

5    some of this -- the stuff I'm going to be asking you

6    about right now it's mostly going to be from your past

7    testimony --

8       A.   Okay.

9       Q.   -- so I'm just going to get some of this other

10   stuff out of your way.

11          Okay.  All right.  Your trial testimony, sir,

12   if you could go to -- so this is Exhibit 3 at 124.

13   Yeah. This is going to be tough for you with these

14   binder clips.  All right.  I'm going to read you a

15   question and answer from lines two to ten, okay?

16      A.   Okay.

17      Q.   Question:  Could you remember what he told

18   you? Answer:  Some, vaguely.  He explained to me that

19   we did have a structure fire or I wouldn't be there

20   obviously.  He then went into some detail about the

21   suspects had been drinking.  And one of them was found

22   in the back at another neighbor's house and so forth,

23   and that there was some speculation about what was going

24   on that night.  I think there was a domestic, and, you

25   know, just things of that nature.  Were you asked that



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 246 of 396
PageID #: 1751
The Deposition of BUSTER CANNON, taken on November 08, 2022
245

1  question and did you give that answer at Mr. Yell's 2006

2  criminal trial?

3          A.    Yes, I did.

4          Q.    And so, Mr. Gregory had given you his opinion

5  that the suspects had been drinking, correct?

6          A.    Correct.

7          Q.    And that would indicate to you that there's a

8  potential intentional fire situation, correct?

9          MR. GADANSKY:  Object to the form.

10         A.    Not necessarily.  Again, I didn't do the

11  investigation.

12         Q.    Sure.  But just based on the information he's

13  telling you, if he's saying that there had been -- the

14  suspect had been drinking.  One of them was found at a

15  neighbor's house and there was speculation about what

16  had been going on that night and a domestic, that would

17  lead you to believe that this is a situation that may

18  have been an arson, correct?

19         MR. GADANSKY:  Object to the form.  It's

20      equally volatile that it was negligent --

21      negligently set by that -- by those grounds.

22         MR. SLOSAR:  Chris, you know, please just keep

23      it to objection form.

24         MR. GADANSKY:  Well, yeah, but I'm not going to

25      let you just misrepresent the conclusion of your

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 247 of 396
PageID #: 1752
The Deposition of BUSTER CAUDILL, taken November 08, 2022
246

1       statement.

2               MR. SLOSAR:  All right.  Objection.  Objection.

3       Form.

4    BY MR. SLOSAR:

5       Q.   You can answer the question.  You may not

6    remember it, but --

7       A.   Go ahead and repeat it.

8       Q.   He gave you a lot of information and that

9    could lead you to believe that this was a potential

10   arson, correct?

11      A.   Correct.

12      Q.   And, in fact, Mr. Gregory told you that one of

13   the suspects was found in the back of another neighbor's

14   house, right?

15      A.   One of the suspects, yes.

16      Q.   He -- he informed you that there had been a

17   domestic altercation on the night in question, correct?

18      A.   Correct.

19      Q.   He provided you with details of what he

20   speculated had occurred that night, correct?

21      A.   I don't know how much you want to go into

22   detail.  I don't remember a whole lot of detail, but...

23      Q.   Well, I think you specifically testified,

24   quote, And that there was some speculation about what

25   was going on that night, end quote.  That's something

Kentuckiana Reporters          502.589.2273 Phone
P.O. Box 3983                  502.584.0119 Fax
Louisville, KY 40201           schedule@kentuckianareporters.com
                               www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 248 of 396
PageID #: 1753
The Deposition of BUSTER CAMPBELL taken November 08, 2022
247

1   that you testified to, right?

2       A.   Right.

3       Q.   And that speculation -- you didn't talk to any

4   witnesses before going to breakfast, right?

5       A.   No.

6       Q.   You're working 90 to 130 hours a week during

7   that period of time, right?

8       A.   Right.

9       Q.   You didn't go to the trailer before -- or let

10  me strike that.

11           You didn't participate in any of the fire

12  investigation prior to this practice, correct?

13      A.   Correct.

14      Q.   That's your first point of contact, correct?

15      A.   Correct.

16      Q.   All this information that Mr. Flowers and

17  Mr. Gregory, they're giving that information to you;

18  you're not providing it to them, correct?

19      A.   Correct.

20      Q.   And so whatever speculation was provided, it

21  wasn't you to them.  It was Mr. Gregory and his partner

22  to you, correct?

23           MR. GADANSKY:  Object to the form.

24      A.   Correct.

25      Q.   I mean, you didn't have anything to speculate

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 249 of 396
PageID #: 1754
The Deposition of BUSTER CANNON, taken on November 08, 2022
248

```
 1    about --
 2         A.    No.
 3         Q.    -- because you hadn't even gone to the scene?
 4         A.    No.
 5         Q.    Now, as you testified to at trial, Mr. Gregory
 6    wanted to see if you would have the same opinion he had,
 7    correct?
 8         A.    That sounds familiar, yes.
 9         Q.    Yeah.  And during this breakfast Mr. Gregory
10    told you that he wanted you to verify his findings in
11    regard to the fire, correct?
12         A.    Correct.
13              MR. GADANSKY:  Object to the form.
14         Q.    And through this conversation, Mr. Gregory
15    would have informed you that his findings so far led him
16    to believe that an arson had been committed, correct?
17              MR. GADANSKY:  Object to the form.
18         A.    I don't recall.
19         Q.    Well, that information that he -- that you
20    testified to -- you know, some of the information that
21    you're testifying about.  This is all -- none of that
22    information would be relevant to an accidental fire,
23    right?
24         A.    I agree.
25         Q.    It would only be relevant to lead somebody to
```



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 250 of 396
PageID #: 1755
The Deposition of BUSTER CARNES, taken November 08, 2022
249

```
 1   believe that a fire was intentionally set, fair?
 2          MR. GADANSKY:  Object to the form.
 3   A.    Fair.
 4          MR. GADANSKY:  Sorry.
 5   Q.    And, in fact, Mr. Gregory even told you the
 6   areas in the trailer that he had been burned during this
 7   breakfast conversation, correct?
 8   A.    I think that might have been brought up, and I
 9   may have tried to stop him right there, because I really
10   didn't want to know.  I wanted the dog to show me.
11   Q.    Sure.  And this is less about you asking for
12   information.  I'm asking you what Mr. Gregory was
13   telling you, okay?
14   A.    Right.
15   Q.    And I'm going to read for you, it's on the
16   same page, sir, 124, lines 14 through 23, and I'm going
17   to ask you some questions.
18          Okay.  And what did he tell you about the
19   premise, about the scene or about the property you were
20   getting ready to examine with PJ?
21          Answer:  He told me the areas that had been
22   burnt, and, of course, he told me about the little boy
23   that had been in there and how the mom had went in.  The
24   police officers had went in at that time and where the
25   smoke and such was at that time and basically all of --
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CARROLL, taken November 08, 2022

250

1   all the damages up toward the front part of the house.
2   That was about it.
3             Was that what you testified to at trial, sir?
4   A.   Yes, it is.
5   Q.   And that was truthful in regards to the
6   information that Mr. Gregory told you about during this
7   breakfast conversation, correct?
8   A.   Correct.
9   Q.   And, in fact, Mr. Gregory made clear to you
10  that he had found certain areas in the home that he
11  wanted you to pay particular attention to when you went
12  through it with PJ, correct?
13            MR. GADANSKY:  Objection to the form.
14  A.   I don't really recall that.
15  Q.   You don't recall that sitting here today?
16  A.   No, sir.
17  Q.   Well, certainly during that breakfast,
18  Mr. Gregory told you his preliminary findings regarding
19  the potential origin or origins of the fire, correct?
20  A.   Correct.
21  Q.   And, in fact, Mr. Gregory informed you about
22  burn patterns that he had observed, correct?
23  A.   Correct.
24  Q.   And during this breakfast, Mr. Gregory also
25  provided you with his preliminary conclusions regarding

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 252 of 396
The Deposition of BUSTER CANNON, taken on November 08, 2022
PageID #: 1757
251

1    the origin of the fire, correct?

2        A.    He may have.

3            MR. GADANSKY:  Object to the form.  Can you

4    show him the testimony where Mr. Gregory said that,

5    Elliot?

6            MR. SLOSAR:  Not Gregory.  I'm questioning him

7    about his -- his --

8            MR. GADANSKY:  Would you show -- would you show

9    him his testimony where he says that?

10            MR. SLOSAR:  Well, Chris, I don't think it's my

11    obligation to do that, but -- you know --

12            MS. ARNETT:  Well, I object, because you're

13    misrepresenting --

14            MR. GADANSKY:  Yeah.

15            MS. ARNETT:  -- the testimony that I'm reading

16    right there.

17            MR. GADANSKY:  It's being completely

18    mischaracterized.

19            MR. SLOSAR:  You know, this has -- this has

20    gone a little bit sideways.  I think you --

21    sometimes I am referring to testimony.  Sometimes

22    I'm not.  And you should just keep your ears real,

23    real open as to when that's going on.  If you want

24    to -- if you want to discuss this, I'm --

25            MS. ARNETT:  I do need to lodge my objection



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 253 of 396
The Deposition of BUSTER CANNON taken on November 08, 2022
PageID #: 1758
252

```
 1        because you said --
 2            MR. SLOSAR:  Okay.
 3            MS. ARNETT:  -- your question was just about,
 4        did you discuss burn patterns?  And the very
 5        question I'm looking at on one page 135, line 7 --
 6            MR. SLOSAR:  I'm -- I'm not even -- Amber, I'm
 7        not even on --
 8            MS. ARNETT:  The answer is no.
 9            MR. SLOSAR:  I'm not even -- you've -- the --
10        you know, the issue is, you guys have four different
11        transcripts to be real -- read on, and now I'm back
12        on the Daubert hearing in 2006.  So I'm no longer on
13        the trial hearing, but it's not -- it's not my job
14        to inform you all of this different testimony.
15        You've got the exhibits in front of you.  They're 1
16        through 4.  We've been kind enough to have this
17        trial transcribed, and, you know, we're now
18        tendering some of that to you-all.
19   BY MR. SLOSAR:
20        Q.   So, Mr. Cannon, just getting back to -- back
21   to the question I asked.  During this breakfast, isn't
22   it true that you were provided with preliminary
23   conclusions that Mr. Gregory had come to you regarding
24   the origin of the fire?
25        A.   I'm going to have to ask you to repeat that.
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CANSLER, taken on November 08, 2022

```
 1    I'm sorry.  I was reading this.
 2         Q.    Fair enough.  Fair enough.  It's -- and this
 3    is from your Daubert testimony.
 4         A.    Right.
 5         Q.    It's not from your trial testimony.
 6         A.    Okay.
 7         Q.    Isn't it true that during this breakfast
 8    Mr. Gregory informed you of the preliminary conclusions
 9    he had come to regarding the origin of the fire?
10         A.    I don't recall that.  He may have, but I don't
11    remember.
12         Q.    Okay.  I'm going to refer you to Exhibit No.
13    1, sir, and we'll put the little -- we'll just put this
14    little stack right there.  And I'm going to refer you to
15    page 25, outline 16.  It's actually on that page,
16    ironically enough.  Do you see this question where you -
17    -
18         A.    The bottom or right here?
19         Q.    Yeah.  I'm sorry.  This is 25, lines 16
20    through 23.
21         A.    Okay.
22         Q.    Question:  All right.  When you say, rundown
23    on the case, would that have included or did it include
24    details about findings they had already made, such as,
25    oh, burn patterns they had observed or any conclusions,
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 255 of 396
The Deposition of BUSTER CAMPBELL taken on November 08, 2022   Page ID #: 1760
254

1    preliminary conclusions that they had come to regarding

2    the origin of this fire or origins of this fire?

3              Answer:  I believe that they may have been the

4    discussion, yes.

5              Were you asked that question, and did you can

6    give that answer?

7         A.   Yes.

8         Q.   And your testimony back in 2006 would have

9    been more fresh than it is today, fair?

10        A.   Correct.  True.

11        Q.   That was within two years of the breakfast you

12   had with Mr. Gregory and Mr. Flowers, correct?

13        A.   Yes.

14        Q.   And is it fair to say that you would have been

15   truthful when you testified that it was your belief that

16   Mr. Gregory did provide you with preliminary conclusions

17   regarding the origin of the fire?

18        A.   He may have, yes.

19        Q.   And certainly -- and isn't it true that you

20   asked Gregory -- Mr. Gregory, if he had found ignitable

21   liquids in the home during --

22        A.   Yes.

23        Q.   -- the breakfast?  And how did he respond to

24   you?  Do you remember?

25        A.   I don't remember.



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CAMPBELL taken November 08, 2022

1    Q.    Okay.  But that was certainly something that
2  was discussed in the breakfast, right?

3    A.    I believe it was.

4    Q.    Now, how long do you remember this breakfast
5  lasting for, sir?

6    A.    45 minutes, thereabouts.

7    Q.    Sure.

8         And, then, where was PJ?

9    A.    In the car.

10   Q.    Okay.  PJ didn't come in the restaurant?

11   A.    No.

12   Q.    Okay.  And PJ wasn't getting fed scraps?

13   A.    No.  If I could have brought her in, I'd have
14  brought her, but they wouldn't allow me.

15   Q.    Yeah.

16   A.    I'm sure they wouldn't.  And, no, she wasn't
17  being fed scraps.

18   Q.    And you certainly acknowledge to receiving
19  information before stepping foot on the property of the
20  trailer in this -- in this investigation?

21   A.    Yes.

22   Q.    And you would agree that the knowledge that
23  you were provided by Mr. Gregory during this breakfast
24  would have related to his belief that this was an
25  incendiary fire, correct?

Kentuckiana Reporters          502.589.2273 Phone
P.O. Box 3983               502.584.0119 Fax
Louisville, KY 40201      schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

1       A.    His belief, maybe so, yes.

2       Q.    And is it fair to say it was not your standard

3   practice by 2004 to have that type of -- those type of

4   details provided to you before you participate in a fire

5   investigation?

6       A.    It depends on the fire investigation but not

7   normally.

8       Q.    Yeah.  I understand your testimony from

9   earlier to say that it would have been typical for you

10  to get, you know, some sort of background information

11  about the scene.  And, of course, you would want to know

12  whether there are -- anything dangerous inside that

13  could hurt you or your dog, but you would agree that the

14  information that was provided to you in the breakfast

15  was -- included details that you normally would have not

16  wanted to know so that you weren't in a position of --

17  of being persuaded one way or the other before going on

18  scene, fair?

19      A.    Yeah.

20      Q.    And you would agree with fire science in 2004

21  that some of these opinions that could be reached were

22  subjective in nature?

23      A.    Can you rephrase that?

24      Q.    You would agree by 2004 that a fire

25  investigation and the opinions reached during that could

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 258 of 396
The Deposition of BUSTER CANNON taken on November 08, 2022
PageID #: 1763
257

1    be reached in a subjective way?

2        A.    Possibly.

3        Q.    Yeah.  And would you agree -- let me strike

4    that.  I believe at trial you testified that you didn't

5    want Mr. Gregory to tell you exactly what he found and

6    he wanted you to look at; is that -- do you recall

7    testifying to that effect?

8        A.    Yes.

9        Q.    And is it fair to say that you had -- that

10   after your conversation with Mr. Gregory, you had

11   concerns that -- that the information he provided to you

12   could affect the credibility of PJ's alerts?

13           MR. COLE:  Object to the form.

14       A.    No, not on my part.

15       Q.    Well, did --

16       A.    I can only tell you what the dog did, and she

17   alerted.  I took that.  I didn't say, go over here and

18   check that.  That didn't happen.

19       Q.    Uh-huh.

20       A.    You know, so, no, I -- I was still strictly

21   bias on that.  I couldn't have formed an opinion on --

22   as what PJ found at all.

23       Q.    Did you have concerns that it might influence

24   your interpretation of your dog's behavior?

25       A.    No.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CANCEL, taken on November 08, 2022

258

1    Q.    After finishing the breakfast, you proceeded
2    to Bonnie Drive?
3    A.    Correct.
4    Q.    Did you drive over there with Mr. Gregory or
5    did he go separately?
6    A.    Went separately.
7    Q.    What about Mr. Flowers?
8    A.    I couldn't tell you.
9    Q.    After arriving at the scene, you would have
10   calibrated PJ; is that right?
11   A.    Yeah.  I let her get out of the car and let
12   her get stretched and exercised first.  And, then, we
13   calibrated the dog and went inside on a long leash.
14   Q.    Did --
15   A.    Well, I went in first, obviously, and then I
16   came back and got the dog.
17   Q.    Did PJ alert on the accelerant during the
18   calibration process?
19   A.    Yes.
20   Q.    Did you document that in any way?
21   A.    I'm sure I did.
22   Q.    There -- you haven't seen any notes or reports
23   regarding that documentation?
24   A.    No.  It would have been sent to the ATF.
25   Q.    You then conducted an exterior inspection of

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 260 of 396
The Deposition of BUSTER CANNON, taken November 08, 2022
PageID #: 1765
259

1    the perimeter of the trailer; is that right?

2        A.    Correct.

3        Q.    That was without PJ, correct?

4        A.    Correct.

5        Q.    What was the purpose of that?

6        A.    To see if there's any chemicals or accelerants

7    laying around.

8        Q.    And then you conducted an interior inspection

9    of the trailer, as well, correct?

10       A.    Correct.

11       Q.    That was without PJ, right?

12       A.    Correct.

13       Q.    That would have been with -- who would have

14   joined you on the interior inspection?

15       A.    Gosh.  I can't remember who was in there with

16   me, to be honest with you.

17           MR. SLOSAR:  You know what, I think -- why

18       don't we go off the record real quick.  We -- it

19       looks like we lost Chris.

20           VIDEOGRAPHER:  We're off the record at 5:29.

21           (OFF THE RECORD)

22           VIDEOGRAPHER:  We are back on the record for

23       the deposition of Buster Cannon.  Today is November

24       8th, 2022, and the time is 5:32.

25   BY MR. SLOSAR:



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CANTER, taken on November 08, 2022

260

1      Q.   Sir, you conducted an interior inspection
2   without PJ; is that right?
3      A.   That's correct.
4      Q.   And you would have done that with other
5   investigators, correct?
6      A.   Yes.
7      Q.   Who -- who do you recall being a part of that?
8      A.   I know there was somebody in there, but I
9   couldn't definitely say who.  It could have been -- it
10  could have been anybody from Jack Flowers to David West.
11  I -- I don't know.
12     Q.   Okay.  It looks like the purpose of the
13  interior inspection, without PJ, was to locate points of
14  accelerants that might have ignited the fire, correct?
15     A.   Yes, I'm going to look for things of interest,
16  yes, and safety purposes.
17     Q.   Sure.  And that would have also helped --
18  assisted you for when you brought PJ in to know where
19  those points of accelerants might be, correct?
20     A.   Yes.
21     Q.   Now, eventually, you brought PJ in the house;
22  is that right?
23     A.   Yes, sir.
24     Q.   And when I say, "house," I'm talking about the
25  -- the trailer?



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 262 of 396
PageID #: 1767
The Deposition of BUSTER CANNON taken November 08, 2022
261

1    A.    Yes.

2    Q.    Yeah.  And along with you would have been

3  Mr. Gregory, Mr. Flowers and Mr. West, correct?

4    A.    I don't recall, but, yeah, probably. Probably.

5    Q.    I believe you testified back in 2006.  This is

6  just page 26.  Are you on -- oh, okay.  So just the --

7  if you flip it over.  Beginning at line 8, Who

8  accompanied you -- who accompanied when you and PJ, you

9  went through the house and took under these various --

10  throughout the house, these various places?

11         Answer:  I believe it was Jack Flowers and

12  Cooper West.  Okay.  Basically --

13    A.    That would be Trooper West.

14    Q.    Oh, Trooper West.  Okay.

15         Do you remember Mr. Gregory being a part of

16  that, as well, sir?

17    A.    Possibly, I couldn't tell you.

18    Q.    Okay.  And when you were walking through the

19  house with these other investigators, you would have

20  been speaking to them as you're walking through, fair?

21    A.    Maybe.  Yeah.

22    Q.    Sitting here today do you recall what you were

23  talking about with them?

24    A.    Absolutely not.

25    Q.    And do you recall how long you were in the

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 263 of 396
PageID #: 1768
The Deposition of BUSTER CARROLL taken on November 08, 2022
262

```
 1   house during the first walk through with PJ and these
 2   other officers?
 3        A.   Without PJ.
 4        Q.   With PJ.
 5        A.   When I done the first walk through, I didn't
 6   have PJ.
 7        Q.   No, no, no.  So after the first --
 8        A.   Okay.  After the first walk through.
 9        Q.   After the first walk through.  Then you went
10   back through in -- with PJ, right?
11        A.   Right.
12        Q.   These other officers were still with you,
13   correct?
14        A.   I don't know for a fact that they were.  I
15   wouldn't -- I wouldn't think all of them would be, maybe
16   one, two, at that most.
17        Q.   Now, before you brought PJ in, when you were
18   just with the other officers, you would have had
19   discussions with them about their investigation as you
20   were walking through the trailer, correct?
21        A.   I don't remember that.
22        Q.   Okay.  I'm going to -- page 26, lines 18
23   through 25, sir.
24             Question:  I understand.  I understand.
25   You're just giving us the information as best you
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 264 of 396
                                      PageID #: 1769
The Deposition of BUSTER CANNON, aka-PJ on November 08, 2022
                                                              263

1    remember it. Do you recall whether or not you-all had

2    discussions about, again, their investigation as you

3    went from place to place throughout the building with

4    PJ?

5              Answer:  I'm sure we would have.  Like I said,

6    I want to know pretty much what's going on before I take

7    the dog in.

8              Were you asked that question?  Did you give

9    that answer?

10        A.    Apparently so.

11        Q.    And that would have been truthful based on

12   your knowledge at the time, fair?

13        A.    Yes.

14        Q.    And while inspecting the interior of the

15   trailer, you also would have been examining the burn

16   damage in the trailer, correct?

17        A.    Not necessarily.  I was concentrating on the

18   floor.

19        Q.    When you say you were concentrating on the

20   floor, were you looking at holes burned through the

21   floor?

22        A.    Some.  And I was looking for the integrity of

23   the floor, any products on the floor, glass or anything

24   like that, you know, severe damage to the floor.

25        Q.    Were you looking for burn patterns?



Kentuckiana Reporters                    502.589.2273 Phone
P.O. Box 3983                            502.584.0119 Fax
Louisville, KY 40201                     schedule@kentuckianareporters.com
                                         www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 265 of 396
The Deposition of BUSTER CARROLL taken on November 08, 2022
                                                                PageID #: 1770
                                                                          264

1       A.   Not necessarily, but I did notice some around

2    that living room window.

3       Q.   Did you ever convey to Mr. Gregory or

4    Mr. Flowers or Mr. West that you believed that the fire

5    was intentionally set?

6       A.   No.

7       Q.   Never said anything like that to them?

8       A.   No.

9       Q.   Did you ever tell them that you believe there

10   were at least three separate origins of the fire?

11      A.   I don't recall that either.

12      Q.   Did you have any conversation with these other

13   investigators where you conveyed your personal

14   conclusion about that fire being intentionally set

15   before walking PJ through the home?

16      A.   No.

17      Q.   And if any other officer testified to that

18   effect, would they be mistaken?

19      A.   Absolutely.

20      Q.   Now, when you were in the home with PJ, you

21   first put her on a loose leash, correct?

22      A.   Long leash.

23      Q.   A long leash.  Okay.  And explain to us what

24   that means.

25      A.   The long leash is where, you know, again,

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

The Deposition of BUSTER CANNON, taken on November 08, 2022

265

```
 1   through ATF protocol, you let the dog go in on a long
 2   leash and just pretty much let her do as she does and
 3   see if she's going to alert on anything.  I tried that
 4   until she got to the room where the infant was there,
 5   where the toddler was killed.  And, then, when she got
 6   on the bed and smelt the silhouette where he was laying,
 7   she just changed her mood and I had to her back out.
 8        Q.   And fair to see that when PJ was on a loose
 9   leash, she wasn't concerned about working that hard?
10        A.   Yeah.
11        Q.   Fair to say that -- well, let me strike that.
12             I believe at trial you testified that she was
13   like a little kid that day that was more interested in
14   playing; is that fair?
15        A.   I did make that statement.  The purpose for
16   that, we had a three-hour trip down there with a
17   four-year-old dog that's still basically almost a pup.
18        Q.   Yeah.
19        A.   And you know how they're going to be when you
20   let them out of the car, all they want to do is rip and
21   run and exercise and play.  Well, she did that.
22        Q.   Yeah.
23        A.   So I let her get that out of her system.  When
24   she was done, I calibrated her.  She done what she was
25   supposed to do.  It was a sign she was ready to go to
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 267 of 396
The Deposition of BUSTER CANADA, taken on November 08, 2022
PageID #: 1772
266

 1   work.

 2        Q.   Well, even after getting that exercise out,

 3   she still wasn't -- in your opinion, she wasn't

 4   concerned about working that hard even when she was

 5   inside the trailer, correct?

 6        A.   On the loose leash, I agree.  On the long

 7   leash, rather.  Now you got me saying it.

 8        Q.   Sorry.

 9        A.   Long leash.

10        Q.   And -- and you allowed PJ to walk through the

11   trailer at first on that long leash.  And when you did

12   that, she did not alert anywhere, correct?

13        A.   Correct.

14        Q.   Not a single alert?

15        A.   Correct.

16        Q.   Did you document that in any investigative

17   letter?

18        A.   No.

19        Q.   Did you write that down in any notes?

20        A.   Not that I'm aware of.

21        Q.   Did you ever -- you know, outside of your

22   testimony, did you ever put that in any written fashion

23   and give it to a Commonwealth attorney or defense

24   attorney?

25        A.   Not that I recall.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 268 of 396
                               PageID #: 1773
The Deposition of BUSTER CAMERON taken on November 08, 2022
                                                              267

1    Q.   Now, at some point before you took -- at some
2    point you took PJ out of the trailer after she did not
3    alert, correct?

4    A.   Correct.

5    Q.   And what did -- what did you do with PJ after
6    you took her out of the trailer?

7    A.   Well, when I took her out, I gave her probably
8    20, 30 minutes to deal with whatever she was dealing
9    with after sniffing that silhouette on the bed and
10   recalibrated her.  And she appeared like she was ready
11   to go back to work and I took her back in and kept her
12   on a short leash so she wouldn't go back in that room.
13   And, then, we started back in the back of the structure
14   again, worked our way to the front doing a systematic
15   detailed search.

16   Q.   Prior to today, have you ever testified
17   anywhere that you did a second calibration of PJ before
18   going back into the trailer?

19   A.   I can't be sure.

20   Q.   Was that typical for you to have to
21   recalibrate PJ multiple times at a single scene?

22   A.   No.

23   Q.   Was this the first time you had done that?

24   A.   Uh-huh.  Well, I don't know if it was the
25   first but it hadn't happened that much.



Kentuckiana Reporters                                    502.589.2273 Phone
P.O. Box 3983                                            502.584.0119 Fax
Louisville, KY 40201                           schedule@kentuckianareporters.com
                                                 www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

1      Q.    Why not?

2      A.    I think there was one incident in Franklin

3  County where the same thing happened with an adult male

4  that died in a fire over there, and I had to do the same

5  thing with her over there at that one.

6      Q.    So this as an exceptional circumstance where

7  you would have to recalibrate PJ, correct?

8      A.    I'd call it that, yes.

9      Q.    Normally, if PJ did not alert after being

10 walked through the scene, you would have ended your

11 assistance in that investigation, fair?

12     A.    She would have been calibrated when she came

13 back out, and then she would have been done.

14     Q.    In this circumstance, why did you feel the

15 need to calibrate her a second time and have her go

16 through the trailer a second time after she failed to

17 make any alerts?

18     A.    Because we didn't do the entire trailer the

19 first time.

20     Q.    Why wouldn't you just bring her through the

21 parts of the trailer that allegedly weren't done the

22 first time?

23     A.    Well, because she was goofing off the first

24 time when I took her in there until she hit that room

25 where the child was at, and she could would have missed

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CANTRELL, taken on November 08, 2022

269

```
 1    it.
 2         Q.    Well, she wasn't goofing -- you've never
 3    described her as goofing off --
 4         A.    No, I haven't.
 5         Q.    -- in the trailer.
 6         A.    But she just wasn't acting right.
 7         Q.    She didn't make any alerts, right?
 8         A.    No.
 9         Q.    You thought that -- fair to say that you
10    thought that PJ was off her game on
11    September 12th, 2012?
12         A.    It would be fair to say.
13         Q.    Yeah.  Fair to say that based on what you saw
14    and your just knowledge and experience with PJ, it
15    didn't seem like she was in a position to be acting
16    reliably during the course of that investigation?
17         A.    When it first started, I would agree.  But
18    after she calibrated twice, and she did act right both
19    times I calibrated her, I had no reason to suspect that
20    she wouldn't do her job.
21         Q.    Prior to -- well, prior to
22    September 12th, 2004, there's only one other fire
23    investigation that you recall calibrating PJ a second
24    time, correct?
25         A.    Correct.
```



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 271 of 396
                    PageID #: 1776
The Deposition of BUSTER CANTRELL taken on November 08, 2022
                                                            270

1    Q.   And the -- the ATF training academy, did they
2    ever give you any instruction that it was acceptable to
3    calibrate your dog more than once at a single fire
4    scene?
5    A.   Don't recall it ever being brought up, to be
6    honest with you.
7    Q.   They would have -- the instruction that you
8    got is that you calibrate before you bring your dog in,
9    and if no alerts are made, then your assistance is over
10   for that day, correct?
11   A.   Calibrate when you bring her out, when the
12   job's done.
13   Q.   Yeah.  And so, there have been no training
14   that you had received that gave you any guidance that
15   you should ever have your dog go in a second time to a
16   scene after they failed to alert, correct?
17   A.   Never had anything like that.
18   Q.   This is the -- and this is the only time, by
19   September 12, 2004, in your career, where you had to
20   take PJ into a scene a second time in order to see if
21   alerts could be made, correct?
22   A.   No.  She's going in twice regardless.  Once on
23   a loose leash -- long leash, once on a short leash.
24   Q.   You're saying it would have been your practice
25   to do that regardless?



Kentuckiana Reporters                          502.589.2273 Phone
P.O. Box 3983                                  502.584.0119 Fax
Louisville, KY 40201              schedule@kentuckianareporters.com
                                  www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 272 of 396
The Deposition of BUSTER CANNON, taken on November 08, 2022
PageID #: 1777
271

1    A.    Yes.

2    Q.    **But here --**

3    A.    I still did the same thing.

4    Q.    **This is the -- this is -- well, the difference**

5    **here is that you recalibrated her before bringing back -**

6    **- her back in, correct?**

7    A.    And I would have done it regardless.  Even

8    when I done -- if I had done the whole house on the long

9    leash and brought her out, any time you bring the dog

10   back out, you have to recalibrate them before you take

11   them back in, to get them back into thinking they're

12   going back to work.  When you bring them out, they think

13   they're done.  So you've got to recalibrate them to put

14   them back to work.

15   Q.    **Sure.  So you actually would have calibrated**

16   **her three times on this occasion, so you would have had**

17   **to calibrate her again after she was done on the second**

18   **walk through?**

19   A.    Absolutely, yes.

20   Q.    **Okay.  Only occasion where you've ever -- by**

21   **2004, where you've ever calibrated PJ three times at a**

22   **single fire scene, correct?**

23   A.    In 2004?

24   Q.    **By 2004 the only time you had done that --**

25   A.    No.  I done it one other time in Frankfort,



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 273 of 396
The Deposition of BUSTER CANTRELL, taken on November 08, 2022
PageID #: 1778
272

1  Frankfort.

2      Q.    Did you determine that that case was an arson?

3          MR. COLE:  Object to the form.

4      A.    I don't know.

5      Q.    Did PJ --

6      A.    Wasn't my fire scene.

7      Q.    Did PJ -- during the first walk through there,

8  did PJ make alerts?

9      A.    This fire or the other fire?

10     Q.    The other one.

11     A.    I can't remember.

12     Q.    Well, if PJ did make alerts, there would not

13  have been a reason for you to recalibrate her for her to

14  go back in a second time, fair?

15     A.    Yeah.  If I took her in on a long leash, yes,

16  which I always do.  She comes in on a long leash, comes

17  out, recalibrates, goes back in a short leash.  When

18  she's done, she's recalibrated again.  That lets her

19  know she's done.

20     Q.    Your -- I just want to make -- I think you

21  testified earlier that this -- this, and that other

22  occasion were the only two occasions by 2004 --

23     A.    That I remember.

24     Q.    -- that you remember where PJ was on a long

25  leash?

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 274 of 396
The Deposition of BUSTER CANTRELL, taken on November 08, 2022
PageID #: 1779
273

1        A.    Uh-huh.

2        Q.    In this occasion, no alerts, you take her out,

3   you calibrate her, recalibrate her, you bring her back

4   in on a short leash.

5        A.    Uh-huh.

6        Q.    Alerts, you take her out, recalibrate her,

7   right?

8        A.    Right.

9        Q.    I have that right?

10        Outside of this one other instance, even if

11   you took PJ out of a scene on a long leash and brought

12   her back in on a short leash, your practice was not to

13   calibrate again in between, correct?

14        A.    Yes.  Anytime you bring them out of a scene,

15   you've got to recalibrate them to take them back in.

16        Q.    I thought you testified a few moments ago to

17   the exact opposite, that this case and that other case

18   were the only times in your occasion --

19        A.    That I recall, yes.  I'm not sure where we're

20   going here.

21        Q.    I know.  I -- I feel like I'm confused, too.

22        A.    Yeah.

23        Q.    Because I thought what you were saying is

24   outside of this one other instance --

25        A.    Uh-huh.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

The Deposition of BUSTER CANADA, taken November 08, 2022
274

1       Q.    -- what you did here was different than what
2    you have ever had to do with PJ?
3       A.    Yes.
4       Q.    And it was, right?  This was not the normal
5    thing with PJ?
6       A.    For the few times she done it, no, it wasn't
7    normal.
8       Q.    And by 2004, you would have taken her on
9    approximately 100 different fire scenes, correct?
10      A.    At least.
11      Q.    50 a year was the benchmark.
12            Isn't it true that if you had not gone to that
13   breakfast conversation with Mr. Gregory, Mr. Flowers,
14   that you would not have recalibrated PJ after she didn't
15   alert?
16      A.    That's not true.
17      Q.    You would have recalibrated her to go -- isn't
18   it true that you would have recalibrated PJ to go home,
19   but you would not have brought her back in a second
20   time?
21      A.    I would have brought her back in.  She didn't
22   do -- she didn't finish her job.
23      Q.    Her job was to find alerts?
24      A.    The short leash.  She never was back in on a
25   short leash until I recalibrated her and took her back

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 276 of 396
PageID #: 1781
The Deposition of BUSTER CARNES, taken November 08, 2022
275

1  in.

2      Q.   So why wouldn't you just put her on a short

3  leash when you're inside the trailer after doing the

4  long leash?

5      A.   ATF protocol says, put them on a long leash

6  and see what they find first.  If they don't find

7  nothing, then put them on a short leash, recalibrate,

8  take them back.

9      Q.   My -- my question is different, why wouldn't

10  you just -- like, when you're holding a long leash,

11  you're just holding at the end of the leash, right? It's

12  not a different leash?

13      A.   Yeah, just the end of the leash, same leash.

14      Q.   Yeah.  So why wouldn't you go around the

15  trailer with her on a long leash and then shorten the

16  leash and go around the trailer with her without

17  exiting?

18      A.   As I stated three or four times before, when

19  she went into the room where the child was at, her mood

20  swing had changed.  I had to take her out.  She was not

21  going to work.

22      Q.   You thought she was distressed?

23      A.   Yes.  And I took her out.  I give her 20, 30

24  minutes.  I recalibrated her, and I brought her back in

25  on a short leash to keep her out of that room.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 277 of 396
The Deposition of BUSTER CANNON, taken November 08, 2022
PageID #: 1782
276

1      Q.    So you did not take her back through that

2   room, the second time?

3      A.    Not that room, no.

4      Q.    And so, there would be no way for PJ to have

5   made any alerts in that room the second time since you

6   did not leave her in there?

7      A.    No.  I didn't take her back in there.

8      Q.    What signs of distress did you observe PJ

9   going through when she went in the trailer the first

10  time?

11     A.    She just got mopey, just droopy acting, just

12  didn't want to work.  Kind of -- to be honest with you,

13  kind of like she was just upset.

14     Q.    Would you agree that -- and PJ, by then, would

15  have also have been hungry, right?

16     A.    Labs are always hungry.  That's why they use

17  them, so, yeah.

18     Q.    When you went back in with PJ, you had her on

19  a short leash, correct?

20     A.    Correct.

21     Q.    And you directed her to specific areas that

22  you wanted her to sniff, correct?

23     A.    No, not specific.  I done the whole -- the

24  whole trailer, and where she alerted at is where she

25  alerted at.  Yes, I have to pass those areas when I'm

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 278 of 396
PageID #: 1783
The Deposition of BUSTER CANNON taken November 08, 2022
277

taking her through there.

Q.    Well, sir, isn't it true that you bent down
and showed her areas of interest?

A.    I showed her -- the only way I can explain
this to you, I wish my dog was here.  What happens when
you run them in on a short leash, you go through the
whole systematic search.  You'll start down one wall and
you'll come back and forth.  You've got about a two-foot
leash now, instead of a long leash, so she's got room to
maneuver around.  I bend over and present the whole
house to her, and I keep doing that, seek, seek, seek,
and I'm moving as I'm doing this.

And when she stops, I stop.  And if she sits,
then she's on something.  I tell her what a good girl
she is. I give her a treat, then I'll say, show me.
That's when she takes her nose and points to the area or
touches the area.  Then I give her another treat or
another bite of Kibbles.  And then we stop there.  We
mark it, move on to the next place.  And when we've
completed the whole house, we come back and take the
samples.

We even do a comparison sample.  We took them
all out on the front porch, mixed them all up, took
comparison sample and moved it around in different
places in that can line up and not one time did she hit

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

The Deposition of BUSTER CANNON, taken on November 08, 2022

278

1    on that comparison sample, but she still alerted on all

2    those cans.  I can't explain that but that's what she.

3            did.

4       Q.   So, do you recall testifying previously that

5    you bent down and showed her areas of interest?

6       A.   Not areas of interest.  I showed her the whole

7    house.  She picked what she wanted to sit on.

8       Q.   Do you recall testifying previously that you

9    took her back through the structure and directed her to

10   specific areas you wanted her to sniff?

11           MR. COLE:  Object to the form.

12      A.   I don't remember saying it that way.  Maybe I

13   did.

14      Q.   If you testified to that, would that have been

15   truthful?

16      A.   If I -- yes, it would have been, if I

17   testified to that.

18      Q.   Didn't you direct PJ's attention to burn

19   damage that you personally observed in the house?

20      A.   We're going to run across that regardless, so

21   I don't have to take it to her and say, seek.  We're

22   going to get to it, and when we get to it, she'll do

23   what she does.

24      Q.   Mr. Cannon, you would agree that you were

25   trained to not give cues while you were -- let me strike

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 280 of 396
The Deposition of BUSTER CAMPBELL taken November 08, 2022
PageID #: 1785
279

1    that.

2                When you were at the ATF training academy --

3    A.    Yeah.

4    Q.    -- you were trained to not give cues during

5    fire investigations, correct?

6    A.    Correct.

7    Q.    I'm going to show you Exhibit 24.  Maybe I

8    already gave it to you.  Let's see.  There it is. Sorry.

9    Sorry about that.  I'll put this back.

10               MR. COLE:  What number?

11               THE WITNESS:  24.

12               MR. SLOSAR:  Here, let me -- there you go.

13        Sorry about that.

14               THE WITNESS:  Sorry I keep messing them up for

15        you.

16               MR. SLOSAR:  Oh, you're not.  It's just a lot

17        of paper, so you're doing great.

18    BY MR. SLOSAR:

19    Q.    So 24, I'm going to show you -- I'm going to

20    ask for you to turn to page -- it's got a 1234 at the

21    bottom.  And, actually, if you go to the page before,

22    sorry, 1233.

23    A.    1233?

24    Q.    Yeah.  You'll see.  Now, is this a progress

25    report that you got while you were at the training

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1   academy?

2       A.   This here?

3       Q.   **Yes, sir.**

4       A.   This right here is a form that I filled out

5   and sent to the ATF after I've left a fire scene.

6       Q.   **This is -- what -- wait.  When did you get**

7   **this?**

8       A.   What number are we on?

9       Q.   **Yeah, 1233.**

10      A.   33?

11      Q.   **Oh, yeah.  Sorry.  Right here.  Yeah.**

12      A.   Okay.  We're on 33.  Okay.

13      Q.   **Yeah.  That's the Canine Progress Report --**

14      A.   Okay.

15      Q.   **-- is that right?**

16      A.   Yes.

17      Q.   **And it's for -- it's -- this is in relation to**

18  **you and PJ for the week of March 11th, 2002 to**

19  **March 18th, 2002, correct?**

20      A.   Correct.

21      Q.   **And the training -- there are different**

22  **training objectives listed here, correct?**

23      A.   Yes.

24      Q.   **And on the next page there are different**

25  **accelerants; is that right?**

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 282 of 396
The Deposition of BUSTER CARROLL, taken November 08, 2022
PageID #: 1787
281

```
 1        A.    On the next day?

 2        Q.    On the next page.

 3        A.    The next page?

 4        Q.    Yeah.  So it's got different accelerants here,

 5   right?

 6        A.    Yes.

 7        Q.    And there are some comments at the bottom made

 8   by a trainer at the ATF; is that right?

 9        A.    Yes.

10        Q.    And the comments are that the handler needs to

11   present and move, make dog work the problem without

12   handler giving cues, team has progressed well --

13        A.    Yes.

14        Q.    -- is that right?

15        A.    That's right.

16        Q.    So by March 18th, 2002, you would have known

17   that it was inconsistent with the ATF training to give

18   cues to PJ, correct?

19        A.    Correct.

20        Q.    And you would have known that you needed to do

21   a better job presenting and moving as you were

22   conducting a fire investigation with PJ, correct?

23        A.    Correct.  And this was four years earlier.

24        Q.    Well, it was two years earlier.

25        A.    Or two years.
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CANADY, taken on November 08, 2022

1    Q.    Right?  This is March of 2000 --

2    A.    Yes, yes, two years.  I'm sorry.

3    Q.    And one of the critiques that you were given

4    is that by not presenting and moving, you were not

5    making the dog actually work, correct?

6    A.    Correct.  And --

7    Q.    And --

8    A.    Go ahead.

9    Q.    -- that could be a real problem when you're

10   conducting a fire investigation if you're cueing the dog

11   to make an alert, fair?

12   A.    Fair.

13   Q.    And that could especially be a problem in an

14   investigation like this where, when PJ was on a long

15   leash she made no alerts at all, right?

16   A.    Right.

17   Q.    And a few moments ago you testified that --

18   the fact that you took -- had to take PJ out of the

19   house, let her, sort of --

20   A.    Mellow out, yeah.

21   Q.    Mellow out for 20 minutes, then recalibrate to

22   take her back in.  This is one of the only circumstances

23   you had had with her where something like that had

24   happened, correct?

25   A.    I had one other.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        Q.   One other one?

 2        A.   Yeah.

 3        Q.   Only two that you can think of sitting here

 4   today, correct?

 5        A.   Correct.

 6        Q.   And --

 7        A.   But that's the only two bodies I ever had,

 8   too.

 9        Q.   Okay.  Well, you would agree that that type of

10   trauma for a dog could impact the reliability of any of

11   their sniffs, right?

12        A.   I agree.

13        Q.   And the body that PJ alerted on, and the --

14   well, let me strike that.

15        A.   Yeah.

16        Q.   What was it in the bedroom that appeared to

17   cause her to have anxiety?

18        A.   The silhouette of the dead baby, of the

19   toddler.  When she jumped up on the bed and sniffed

20   that, she just kind of quit.

21        Q.   Yeah.

22        A.   And, remember, I also told you a while ago

23   that when I put her on that short leash, my job was to

24   keep moving with the dog.  She's going to stop where

25   she's stops.  That's not giving cues.
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 285 of 396
                                         PageID #: 1790
The Deposition of BUSTER CANTRELL taken on November 08, 2022
                                                                              284

1       Q.   Now, this whole thing was video recorded,

2  correct?

3       A.   I was under the understand -- or understanding

4  that it was.

5       Q.   And you -- did you ever possess a copy of that

6  video recording?

7       A.   No.

8       Q.   No.  But somebody was actually filming you as

9  you were going around the trailer with PJ, right?

10      A.   Yes, I think so.  Yes.

11      Q.   And somebody -- isn't it true that somebody

12 would not have only filled -- filmed the first session

13 as you were walking through with PJ but they would have

14 also filmed the second session, as well?

15      A.   Should have, yes.

16      Q.   And the video would be the best piece of

17 evidence to help us understand whether cues were being

18 given to PJ; would you agree with that?

19      A.   Absolutely.  I agree with that.

20      Q.   And would you agree that there's, you know, no

21 legitimate reason that you could think of as to why

22 somebody would have destroyed that video recording?

23      A.   Well --

24           MR. COLE:  Object to the form.

25      A.   -- no.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 286 of 396
PageID #: 1791
The Deposition of BUSTER CANTRELL, taken November 08, 2022
285

1    Q.    Should have maintained it, right?

2    A.    Yeah.

3    Q.    Most especially in an investigation that

4    involved people dying in a fire, fair?

5    A.    Yes.

6    Q.    Now, that review that we just read was from

7    the week of March 11th through the 18th, 2002; is that

8    right?

9    A.    Yeah.  I would agree, yes.

10   Q.    Okay.  If you go to page 1247, sir, so this is

11   about 12 pages later, do you see that this is the date

12   of March 10th, 2002?

13   A.    Yes.

14   Q.    Okay.  And according to this log, the

15   supervisor wrote, "All teams working well.  Keep moving.

16   Trust dog."

17         Do you see that?

18   A.    Yes.

19   Q.    And so is it fair to say that in the ATF

20   training academy, there were concerns expressed by the

21   trainers about handlers giving cues to their dogs during

22   the course of an investigation?

23   A.    Yeah.  These were both on the same day.

24   Q.    Well, this is the day before the other one.

25   The other one was the 11th through the 18th, and this is

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 287 of 396
                                        PageID #: 1792
The Deposition of BUSTER CANCEL taken November 08, 2022
                                                                    286

1  on the 10th.

2       A.   Okay.  Yeah.

3       Q.   But would you agree that this was -- the

4  concerns that -- that -- strike that.  That during the

5  training at the ATF academy, the trainers voiced

6  concerns about giving cues to dogs during the alert

7  process?

8       A.   Agree.

9       Q.   And fair to say that on March -- I'm sorry.

10  Strike that.  Fair to say that on September 12th, 2004

11  you knew by the -- before you walked PJ in there, into

12  that trailer, that -- that there were some deaths in

13  this fire?

14      A.   No.

15      Q.   Well --

16      A.   Couldn't have known until we got the test

17  results back.

18      Q.   No, deaths.

19      A.   Oh, death?

20      Q.   In the fire.

21      A.   Yes.  I'm sorry.  Yes.

22      Q.   Yes.  And one of the things that Mr. Gregory

23  would have conveyed to you during that breakfast

24  conversation was the fact that -- that some children

25  died, correct?

Kentuckiana Reporters          KENTUCKIANA          502.589.2273 Phone
P.O. Box 3983                 COURT REPORTERS        502.584.0119 Fax
Louisville, KY 40201                          schedule@kentuckianareporters.com
                                              www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 288 of 396
PageID #: 1793
The Deposition of BUSTER CARROLL, taken on November 08, 2022

287

1       A.   Yes.

2       Q.   And that's a heartbreaking thing for any

3    investigator, fair?

4       A.   Yes.

5       Q.   And you wanted nothing more than to assist the

6    investigators who were running this investigation, fair?

7       A.   Fair.

8       Q.   You wanted nothing more than to help them come

9    to a conclusion about the origin of this fire, fair?

10      A.   It wasn't my concern, the origin.

11      Q.   Well, you understood that the entire purpose

12   of PJ coming to the scene was to help identify potential

13   origins of the fire.

14      A.   Ignitable liquids.

15      Q.   Sure.  Ignitable liquids, if they were

16   present, would be helpful to assist in identifying the

17   origin of the fire, fair?

18      A.   I loved my old dog.  She was pretty smart, but

19   she couldn't tell me where it started at.  She wouldn't

20   know what an origin is from a --

21      Q.   Fair enough.  The ignitable liquids would have

22   been used by the investigators to develop an opinion

23   about the cause of the fire, correct?

24      A.   Correct.

25      Q.   And you wanted to help them in that regard,

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 289 of 396
The Deposition of BUSTER CARNES, taken on November 08, 2022
                                                    288

1    fair?

2         A.   To help them find accelerants if it had been

3    used, yes.

4         Q.   And only after walking PJ through the trailer

5    a second time on a short leash, did she then allegedly

6    provide alerts, correct?

7         A.   Correct.

8         Q.   And after she gave you an alert that is when

9    she would be given food, correct?

10        A.   Correct.

11        Q.   Because at that time she was still on her

12   ration, right?

13        A.   Correct.

14        Q.   She was not given any food during the first

15   walk in the trailer, correct?

16        A.   Correct.

17        Q.   And since this was in the -- you had breakfast

18   in the morning but the walk through was after that, PJ,

19   by the time she exited the trailer after the first walk

20   through, she would have received no food that day to

21   that point, correct?

22        A.   Until we got home.  That's correct.

23        Q.   And the only way that she would have received

24   food that day when you got home would have been later in

25   the day when you did training with her, correct?

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 290 of 396
The Deposition of BUSTER CANNON, taken November 08, 2022
PageID #: 1795
289

1      A.    Well, as it turned out, I ended up with

2    another fire later that day when I got back home, so she

3    go to eat then.  And if she didn't finish her ration

4    then, then I would finish it up training when she got

5    home.

6      Q.    **Where was that fire?**

7      A.    I couldn't tell you.

8      Q.    **How do you remember that?**

9      A.    It's logged on my paper here, where that --

10     Q.    **Is it in these -- these logs?**

11           MR. COLE:  I'll be happy to give it to you.

12           MR. SLOSAR:  Yeah.  Yeah.  Thanks, Charlie.

13           MR. COLE:  Yours was not very clear.

14           MR. SLOSAR:  Oh, is it -- it's on those things.

15           MR. COLE:  There's one from the court record

16      and then one marked Cannon.  I'm, for the record,

17      handing documents marked Cannon 3494 and Cannon 3495

18      and Logan Circuit 0035 and 0036.

19           MR. SLOSAR:  Thank you, sir.  Thank you.  Look

20      at this, you guys have color.  Just -- this is...

21    BY MR. SLOSAR:

22     Q.    **So how can you -- sorry.  If you I --**

23     A.    Down in the left-hand column there it will say

24    "fire scenes."

25     Q.    **Oh.**

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 291 of 396
The Deposition of BUSTER CANNON taken on November 08, 2022
PageID #: 1796
290

1      A.    And if you'll follow that over to that date,
2    it'll specify two.
3      Q.    Wow.  Okay.  I -- I did not realize that
4    that's what that meant.  Okay.  Thank you, Charlie.
5    Sorry about that.  And, you know, we can -- we can
6    introduce these as -- I've got 37 exhibits here, so if
7    you want to introduce this as, like, 38, maybe; is that
8    okay?
9          MR. COLE:  Let's mark the color one Cannon 3494
10        and 3495 exhibit, is it 38?
11          MR. SLOSAR:  Yeah, 38.  So the colored one is
12        38 and the black and white is 39?
13          MR. COLE:  And the black and white, just for
14        when we read this back, is Logan Circuit 0035 and
15        0036.
16          MR. SLOSAR:  Okay.  That's great.
17    BY MR. SLOSAR:
18      Q.    Okay.  And you've got a copy of that.
19          So, anything that says "fire scene" here that
20    would indicate to you that those are each of the times
21    that you would have taken PJ out on a fire scene --
22      A.    Correct.
23      Q.    -- that month?
24      A.    Correct.
25      Q.    So in --

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CAMPBELL, taken on November 08, 2022

291

1        A.   And you'll have the total over in the
2   right-hand column.
3        Q.   How do you know that -- what month this is?
4        A.   Oh, September.
5        Q.   How do you know what year it is?
6             MR. COLE:  It says at the bottom, September
7        2004.
8             THE WITNESS:  Yeah.  It says at the bottom --
9             MR. SLOSAR:  You've got one that says '04?
10            MR. COLE:  Yeah.
11            MR. SLOSAR:  Or what does that say?
12            THE WITNESS:  At the bottom of the page.
13            MR. SLOSAR:  Oh, I see.  September.  Okay.  But
14       that's like a -- I think that's a document, right,
15       that's like the name of the document that's saved or
16       maybe not, because it's -- that's not on the other
17       one.
18            MR. COLE:  The only one reads September and
19       then written in 2004.
20            MR. SLOSAR:  Yeah.  You're right.  Yep.  I do
21       see that.  Okay.
22   BY MR. SLOSAR:
23       Q.   So you don't have a memory of where that other
24   investigation was that day, right?
25       A.   No.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 293 of 396
Page ID #: 1798
The Deposition of BUSTER CANNON taken on November 08, 2022
292

1    Q.    Okay.  And at the time in September of '04, PJ

2    was on a two-cup ration of food a day, correct?

3    A.    Correct.

4    Q.    At Mr. Yell's 2006 trial, do you recall

5    testifying about the location of the alerts?

6    A.    No.

7    Q.    You don't recall that?

8          Okay.  Exhibit No. 13 -- oop, sorry.  Has --

9    I'm sorry.  I'm sorry, Mr. Cannon.  So, this exhibit has

10   page 45, the Bates, but do you -- do you remember at the

11   trial being shown a document like that, sir?

12   A.    Yes.

13   Q.    And at trial I believe you testified to six

14   different places that the alert supposedly happened in;

15   is that right?

16   A.    Yes.

17   Q.    Now, did you draft that diagram?

18   A.    No.

19   Q.    Were debris samples taken of each of the six

20   areas where PJ alerted?

21   A.    Yes.

22   Q.    Okay.  And I believe at trial you put little

23   circles in these six spots; do you remember doing

24   anything like that?

25   A.    I don't know if that was me or somebody else,

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 294 of 396
The Deposition of BUSTER CANNON, taken on November 08, 2022
PageID #: 1799
293

    1   but, no, I don't remember doing it.

    2       Q.   Okay.  But debris samples were taken from each

    3   of the six area where the alerts happened, correct?

    4       A.   Correct.

    5       Q.   And a control sample was collected, as well?

    6       A.   Correct.

    7       Q.   And can you tell us what a control sample is?

    8       A.   It's going to be a sample that -- take from

    9   the structure where we believed there would be no

   10   accelerants detected or someplace where the dog did not

   11   alert.  And that control sample would be placed randomly

   12   through a can line up.

   13       Q.   Who -- did you watch as the samples were

   14   collected?

   15       A.   I don't recall.

   16       Q.   Okay.

   17       A.   Well, better word, I don't remember.

   18       Q.   That's -- no, that's --

   19       A.   I get tired of that recall stuff, but I just

   20   don't remember.

   21       Q.   That's just fine.

   22            Now, the samples were placed in some sort of

   23   evidence canister, right?

   24       A.   In cans, yes.

   25       Q.   And, then, you personally would have lined up

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 295 of 396
The Deposition of BUSTER CANADY, taken November 08, 2022
PageID #: 1800
294

1    those canisters outside the structure; is that right?

2         A.    I can't testify truthfully that I would --

3    that I did it or somebody else did, but they were lined

4    up out on the front porch.

5         Q.    Well, you then walked PJ past each of the

6    seven canisters to determine if she would alert again.

7         A.    Again, yes.

8         Q.    And you -- and you personally knew which

9    canister contained the sample when doing so, correct?

10        A.    I knew the sample that had the control.  I

11   knew the can that had the control sample in it, yes.  At

12   that time, those cans aren't sealed.  So, yes, you can

13   see what's in them.

14        Q.    And -- and it was your observation that PJ

15   confirmed the canisters after the samples were taken,

16   correct?

17        A.    Correct.

18        Q.    Now, what documentation did you make of the

19   alerts, so this is prior to trial.  What documentation

20   did you make of the alerts PJ made through the walk

21   through?

22        A.    As I stated earlier, everything I made, I sent

23   to the ATF, those forms that I filled out.  There were

24   no other documents that I did.

25        Q.    No notes, correct?

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 296 of 396
The Deposition of BUSTER CAMPBELL taken on November 08, 2022
PageID #: 1801
295

1        A.    Correct.

2        Q.    **No diagram or chart, correct?**

3        A.    Correct.

4        Q.    **No log, correct?**

5        A.    Correct.

6        Q.    **No report noting that PJ did not alert during**

7    **the initial walk through, correct?**

8        A.    No report, but it was on -- on the form I sent

9    to the ATF.

10       Q.    **What documentation did you make of the alerts**

11   **PJ made outside the mobile home of the samples that were**

12   **collected and placed in the canisters?**

13       A.    I didn't have to make any, the investigators

14   did.

15       Q.    **Were you -- did you receive any training that**

16   **you were required to document the alerts in notes or an**

17   **investigative letter?**

18       A.    Not on -- only on my fire scenes where I'm

19   supposed to.

20       Q.    **No policies or procedures that would have**

21   **guided you to documenting that information in this**

22   **investigation, fair?**

23       A.    None not that I recall, that I've seen.

24             MR. COLE:  We might need a break here.

25             MR. SLOSAR:  Let's take a break.  That sounds

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 297 of 396
PageID #: 1802
The Deposition of BUSTER CANNON taken on November 08, 2022
296

1      good.

2              VIDEOGRAPHER:  We're off the record at 6:14.

3                (OFF THE RECORD)

4              VIDEOGRAPHER:  We are back on the record for

5      the deposition of Buster Cannon.  Today is

6      November 8th, 2022, and the time is 6:29.

7  BY MR. SLOSAR:

8      Q.    Mr. Cannon, you testified about this already

9  but by September 12, 2004, you had been a law

10  enforcement officer for about 17 years; is that right?

11     A.    Thereabouts.

12     Q.    By September 12th, 2004 you had been a member

13  of the Georgetown Fire Department for about 14 years?

14     A.    Correct.

15     Q.    You were trained by that point at the police

16  academy, correct?

17     A.    Yes.

18     Q.    You were trained at the ATF academy, correct?

19     A.    For the canine, yes.

20     Q.    And you were trained in both of those

21  academies on the nature of -- well, let me strike that.

22  You were trained at the ATF academy on how important it

23  was to document information relating to PJ, correct?

24              MR. COLE:  Object to the form.

25     A.    Correct.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 298 of 396
The Deposition of BUSTER CANTRELL, taken on November 08, 2022
PageID #: 1803
297

1        Q.    In fact, there were ATF forms that required

2    you to submit information to the ATF relating to fire

3    investigations that PJ was a part of, correct?

4        A.    Correct.

5        Q.    And I believe you testified earlier here

6    already that part of the reasoning for that

7    documentation was to collect data to see the reliability

8    of PJ's alerts, correct?

9        A.    Correct.

10       Q.    And in this particular case, there's not a

11   single report that exists relating to -- that you wrote

12   -- relating to the fire investigation that PJ

13   participated in, correct?

14       A.    That's not right.  I told you earlier that I

15   had sent a form into them that I fill out, what she did

16   at specific fire scenes and so forth.  So, yes, there

17   was a form that was sent out and sent to the ATF.

18       Q.    You haven't seen that form in preparing for

19   this deposition, have you?

20       A.    No.

21       Q.    I'm going to provide you with a number of

22   forms that were produced during discovery in this case

23   relating to fire investigations that you were involved

24   in.

25       A.    Okay.



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 299 of 396
The Deposition of BUSTER CAMPBELL, taken November 08, 2022 PageID #: 1804
298

1    Q.   I'll represent to you that whatever form you
2    filled out here is not part of the documents that have
3    been produced to us.  Do you recall between September
4    12, 2004 and today ever having received a copy of -- or
5    maintaining a copy of the form that you claim to have
6    filled out for the ATF pertaining to this investigation?
7        A.   At one time I had it, yes.  And when I left
8    the Georgetown Fire Department, I have no idea where it
9    went.  I know I sent a copy to the ATF.  They maintain
10   their records in Milwaukee and in Front Royal, Virginia.
11   They can't find it either, but we do have these
12   documents here that we found.
13       Q.   Yeah.  I did -- we did subpoena the ATF in
14   this investigation, and that form was not produced; are
15   you aware of that?
16       A.   No.
17       Q.   Outside of this form, none of your notes were
18   ever -- relating to PJ's actions on September 12, 2004
19   were ever turned over to the Commonwealth or defense
20   attorney in this case, correct?
21       A.   Correct.
22       Q.   None -- there was no investigative letter that
23   you ever wrote relating to the fire investigation that
24   you and PJ participated in, in this case, correct?
25       A.   As far as I know, correct.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 300 of 396
The Deposition of BUSTER CANNON taken on November 08, 2022
                                                    PageID #: 1805
                                                                  299

1      Q.   And even after you learned that Mr. Yell had

2  been charged with murder, you still did not create any

3  documentation regarding the fact that PJ did not make

4  alerts during the first walk through, correct?

5      A.   Never was denied.  If I had it, they would

6  have got it.

7      Q.   Never was what?

8      A.   You said I denied giving them a report?

9      Q.   Oh, no.  Like, you never created -- you never

10  created those reports, right?

11     A.   I didn't do a report, no.

12     Q.   Yeah.

13     A.   I did the form.

14     Q.   That form did not go to the Commonwealth

15  attorney or defense, correct?

16     A.   No.

17     Q.   When you say, "no," you're agreeing with me,

18  right?

19     A.   Yes.

20     Q.   Yeah.  You've already testified that samples

21  in which the canine alerted must be confirmed by a

22  laboratory analysis, correct?

23     A.   Correct.

24     Q.   And you would agree that by 2004 you knew that

25  any alert not confirmed by laboratory analysis must be

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 301 of 396
PageID #: 1806
The Deposition of BUSTER CANNON taken on November 08, 2022
300

1   considered a false alert for purposes of origin and

2   cause determination, correct?

3          MR. COLE:  Object to the form.

4      A.   Not for origin and cause.  She was down there

5   to find accelerants, not find the origin or cause.

6      Q.   Well, any alert not confirmed by laboratory

7   analysis, you would have known by 2004 could not be

8   considered --

9      A.   I think we've gone over that a dozen times.

10  That's true.

11     Q.   I'm going to show you what I'll mark as

12  Exhibit 16, sir.

13     A.   Okay.

14          (EXHIBIT 16 MARKED FOR IDENTIFICATION)

15     Q.   Do you recognize this document?

16     A.   I recognize this form, yes.

17     Q.   And in this case, prior to trial, you became

18  aware of the fact that the laboratory testing revealed

19  there were no ignitable liquids on any of the samples on

20  which PJ alerted, correct?

21     A.   Correct.

22     Q.   How did you first find out about that?

23     A.   I think the prosecutor may have told me.

24     Q.   Okay.  And do you remember earlier when you

25  testified about you learned something -- or there was a

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 302 of 396
The Deposition of BUSTER CAMPBELL, taken on November 08, 2022
PageID #: 1807
301

1    -- not a confirmed alert, and so you called the

2    laboratory to find out more information; do you recall

3    that?

4         A.    Yeah.

5              MR. COLE:  Object to the form.

6         Q.    Sorry.  I know that here after the prosecutor

7    -- or let me strike that.  After you learned that there

8    was not a confirmed accelerant on any of the places

9    where PJ alerted, did you contact the examiner, Kenneth

10   Rider?

11        A.    No.

12        Q.    And certainly by 2000 -- September 2004, you

13   were familiar with Examiner Rider, correct?

14        A.    No.

15        Q.    Well, sir, isn't it true that Examiner Rider

16   had been at the Kentucky State Police laboratory

17   examining evidence and potential arson cases for a

18   number of years?

19        A.    I couldn't tell you that.  Never met him.

20        Q.    Well, if I showed you reports documenting that

21   you had submitted laboratory requests to him, that --

22   would that refresh your memory?

23        A.    Yeah.

24        Q.    Okay.  Do you recall testifying at the 2006

25   Daubert hearing that you've gone through, the one that

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB     Document 160-6     Filed 10/03/25     Page 303 of 396
The Deposition of BUSTER CAMPBELL, taken on November 08, 2022
PageID #: 1808
302

1    you -- actually, let me strike that.

2              Do you recall testifying during your

3    telephonic hearing, so Exhibit No. 1, that you could not

4    recall the specific number or places of alerts where PJ

5    alerted?

6         A.   Vaguely, yes.

7         Q.   And isn't it true that you testified that

8    without documentation in front of you, you couldn't

9    testify to the number of locations or the alerts --

10        A.   Yes.

11        Q.   -- do you recall that?

12             And that was truthful testimony that you gave,

13   right?

14        A.   Yes.

15        Q.   And six weeks later, at Mr. Yell's trial --

16   during Mr. Yell's trial, you met with and spoke to

17   Detective West the morning before you gave your trial

18   testimony, correct?

19        A.   Correct.

20        Q.   You didn't request to speak or meet with

21   Mr. West, correct?

22        A.   Not that I remember.

23        Q.   That was a decision that either Mr. West or

24   the Commonwealth made?

25        A.   Yes.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CANTRELL taken on November 08, 2022

```
 1        Q.    During that conversation, Mr. West showed you
 2   photographs, correct?
 3        A.    Yes.
 4        Q.    And Mr. West showed you a laboratory report
 5   indicating that the samples were collected, correct?
 6        A.    Don't remember that report.
 7        Q.    How long did you and Mr. West discuss the fire
 8   investigation before you testified?
 9        A.    Didn't discuss none of the fire investigation.
10        Q.    Well, you eventually went out to -- you were
11   shown pictures by Mr. West, right?
12        A.    Yes.
13        Q.    And you were -- eventually went out to the
14   trailer with Mr. West, too, correct?
15        A.    Yes.
16        Q.    And who arranged for all that?
17        A.    I can't recall.  I don't remember.
18        Q.    Mr. West walked through the trailer with you,
19   right?
20        A.    Best I remember.
21        Q.    And --
22        A.    I don't remember walking through the trailer,
23   the whole trailer.  I think it was just the areas the
24   dog alerted in the pictures.
25        Q.    Fair enough.  So fair to say you and Mr. West
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 305 of 396
The Deposition of BUSTER CARROLL taken on November 08, 2022
                                                              304

 1  were taking -- you had the pictures with you as you were

 2  walking through the trailer?

 3      A.    I think that's fair, yeah.

 4      Q.    Because -- fair to say that you were --

 5  Mr. West was trying to refresh your memory as to where

 6  the alerts happened?  Was that the point of that?

 7      A.    Yes.

 8      Q.    And, then, again that wasn't your idea --

 9          MS. ARNETT:  Object to the form.

10      Q.    -- that was Mr. West's, correct?

11      A.    I can't see whose it was.

12      Q.    Well, you didn't ask to meet with Mr. West,

13  did you?

14      A.    No.

15      Q.    And, in fact, about six weeks earlier you had

16  testified truthfully to the court that you didn't

17  remember how many hits that there were and you didn't

18  know where those hits were, right?

19      A.    True.

20      Q.    And you would have been fine testifying that

21  way at Mr. Yell's criminal trial, right?

22      A.    No.

23      Q.    What?  Like, you would have -- let me ask --

24      A.    Without going back to that trailer, again I

25  don't remember whose idea it was, but it was good idea,



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 306 of 396
The Deposition of BUSTER CARROLL taken on November 08, 2022
PageID #: 1811
305

1    because it refreshed my memory on where those alerts

2    took place.

3        Q.    Sure.  But it wasn't your decision to refresh

4    your memory, was it?

5        A.    I don't know.  It might have been, yeah.

6        Q.    You might have said, hey, let me call up

7    Detective West, who I've only met one other time in my

8    life, to go do a walkthrough of the trailer?

9        A.    I may have.  I don't remember.

10       Q.    You testified earlier you had only met

11   Mr. West that one time in 2004, right, before trial?

12       A.    That's true.

13       Q.    Yeah.  That would have been at the original --

14       A.    This would have been the second time.

15       Q.    Yeah.  There's no way you're calling Detective

16   West or Trooper West to initiate a walkthrough of the

17   crime scene a day before you testified?

18       A.    I didn't say I did.  That could have been the

19   Commonwealth.

20       Q.    You also met with a Commonwealth attorney,

21   Charles Orange before testifying at trial, correct?

22       A.    Correct.

23       Q.    And he also spoke with you about the

24   laboratory findings, correct?

25       A.    I believe so.



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

The Deposition of BUSTER CARROLL, taken on November 08, 2022

306

```
 1        Q.   And did -- did Mr. Orange encourage you to go
 2   to the trailer with detective -- or Trooper West?
 3        A.   Again, I don't remember.
 4        Q.   Did you give any documents to Mr. Orange
 5   regarding the reliability of PJ's alerts during the
 6   meeting -- during that meeting?
 7        A.   No.
 8        Q.   This would have just been a conversation that
 9   was initiated by the Commonwealth attorney, correct?
10        A.   Yes.
11        Q.   Do you remember how long that lasted?
12        A.   It wasn't long.
13        Q.   Do you have --
14        A.   No, I can't remember.
15        Q.   Any recollection of what he asked you about?
16        A.   No.
17        Q.   Any recollection of what you told him?
18        A.   No.  It's almost 20 years ago.  I have no
19   idea.
20        Q.   How long were you with Mr. West at the trailer
21   as you had these pictures that he gave you?
22        A.   Again, I don't remember.  I don't think it was
23   very long at all, but I don't remember.
24        Q.   Do you remember what he told you outside of
25   giving you the pictures?
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 308 of 396
The Deposition of BUSTER CANTRELL, taken on November 08, 2022
PageID #: 1813
307

1          A.    No.  I don't recall anything.

2          Q.    Who drove out there?

3          A.    I couldn't tell you that either.

4          Q.    Did PJ -- I apologize.  I -- the timing of

5    that.  I'm sorry about that.  I -- yeah, sorry about

6    that.

7          A.    That's okay.

8          Q.    These dates are all very moving targets for me

9    on what's going on.

10               I'm going to show you Exhibit No. 1.

11               MS. ARNETT:  Which number exhibit, please?

12               MR. SLOSAR:  One.  One.

13         Q.    Now, sir, I've asked you, you know, some

14   questions today about the reliability of PJ's sniffer;

15   is that fair?

16         A.    Yeah.

17         Q.    And, you know, certainly it's not the first

18   time you've been asked questions about that.  You would

19   have been questioned about the reliability of PJ's

20   alerts dating all the way back to the telephonic hearing

21   that you participated in, in 2006; is that fair?

22         A.    Fair.

23         Q.    And I'm going to direct you to a certain page

24   at that -- at that hearing, if you go to page 15 of

25   Exhibit 1.  Now, at the bottom of page 15, beginning at

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 309 of 396
The Deposition of BUSTER CANNON taken on November 08, 2022
PageID #: 1814
308

```
 1   line 18, I'm going to read you a question and answer,

 2   and then I'm going to ask you some questions, okay?

 3        A.   Okay.

 4        Q.   But just follow -- follow -- bear with me a

 5   moment.  So beginning at line 18 on page 15.

 6             Question:  And have you had any training or

 7   any -- do you have any knowledge about the ability of

 8   the dog to smell accelerants when there are negative

 9   laboratory test results of those locations?

10             Answer:  I've actually had two occasions.

11   There was a case in Beaver Dam, as well as a case in or

12   around Bowling Green, in your area, a year or two ago,

13   where, an example, we got a sample back from a chemist

14   and he says without a doubt there's something there, but

15   it's not reading on meters high enough for me to make a

16   call on it.  And so, therefore, I'm not going to make a

17   call on it.  And so, in other words, the chemist just

18   didn't have enough there to where he would go on a limb

19   and say the dog had found something.  But, yes, off the

20   record he would tell me the dog made a good alert.

21             Sir, is that testimony that you provided back

22   in 2006 about one of two instances where -- that you

23   testified to where PJ had made an alert but it wasn't

24   scientifically verified?

25        A.   Correct.
```



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 310 of 396
The Deposition of BUSTER CARROLL taken on November 08, 2022
PageID #: 1815
309

```
 1          Q.   And in this instance, you informed the court
 2    that the lab analyst told you, without a doubt there's
 3    something there, but he just wasn't going to make the
 4    call on it, fair?
 5          A.   I made that statement earlier, yes.
 6          Q.   Okay.  And so fair to say that based on your
 7    testimony, you were still trying to inform the court
 8    that PJ did actually make a good alert but that the
 9    science wasn't just sophisticated enough to -- to
10    confirm it, fair?
11               MR. COLE:  Object to the form.
12          A.   Fair.
13          Q.   And, in fact, just beginning at line 7 on page
14          16 you also testified:  And as it turned out,
15    after they got a confession from the perpetrator, there
16    was an accelerant used and it was used in the area of
17    origin that the dog did alert and the same -- oh, I'm
18    going to stop there.
19               Do you see that testimony, sir?
20          A.   I do.
21          Q.   And so, is it fair to say that you're
22    informing the court that, Well, there's this one other -
23    - you know, there's two instances where her alerts
24    weren't confirmed, and in one, the lab scientist told me
25    it really was a good alert and we got a confession from
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 311 of 396
The Deposition of BUSTER CANNON, taken November 08, 2022
                                                    310
                               PageID #: 1816

1    the perpetrator confirming it.

2            Is that fair -- a fair summary of your

3    testimony?

4        A.   Yes.

5        Q.   Okay.  So, fair to say that you were, you

6    know, telling the court and counsel that in this one

7    occasion although the laboratory didn't officially

8    verify it, it was verified unofficially by the

9    laboratory and through a confession, fair?

10       A.   Fair.

11       Q.   You were trying to inform everybody, this

12   particular occasion shouldn't be used as an example

13   against PJ's reliability, fair?

14       A.   Fair.

15       Q.   And going on, I just want to read the rest of

16   this about the second occasion that you testified about,

17   beginning at page 16, line 10 through line 16.  "And the

18   same aspect as the other fire in Beaver Dam where the

19   dog did make an alert, we got negative results back, but

20   again, the chemist couldn't verify what the dog had

21   found, but, then, we got a confession later that the dog

22   did alert, in fact, again in the area where gasoline was

23   used."

24            Is that true, sir?

25       A.   That's true.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 312 of 396
The Deposition of BUSTER CANNON, taken on November 08, 2022
PageID #: 1817
311

 1        Q.    And so in both of those occasions you told the
 2    court, So there's only two occasions I know about where
 3    the laboratory was unable to confirm the alert but in
 4    both of these occasions, we confirmed that her alerts
 5    were accurate, correct?
 6        A.    Correct.
 7        Q.    And you testified earlier, but let me ask you
 8    this question again, isn't it true that you would get
 9    laboratory tests back that would either confirm PJ's
10    alerts or advice you that the laboratory testing did not
11    confirm the use of accelerants?
12        A.    Yes.
13        Q.    And I'm going to show you Exhibit No. 24,
14    Mr. Cannon.  Have I already used this?  I've already
15    used this.  Okay.  Charlie is all over it.  I was trying
16    to figure out where it was.  Okay.  And we'll put this -
17    - we'll put this one back on top here.  There you go.
18    Here's number 24.
19            All right.  Now, I'm going to refer you to
20    specific pages in here.  Mr. Cannon, I'm just going to
21    ask you some questions about that.  In the bottom
22    right-hand corner there are these Bates numbers --
23        A.    Yes.
24        Q.    -- the RPDs, if you could first go to page
25    1186, sir.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 313 of 396
The Deposition of BUSTER CARROLL, taken on November 08, 2022
PageID #: 1818
312

```
 1              Are you there, sir?

 2      A.   I'm there.

 3      Q.   That's a form you filled out on

 4 November 28, 2005; is that right?

 5      A.   Correct.

 6      Q.   This is your handwriting on this form?

 7      A.   Correct.

 8      Q.   This is for an investigation that you did with

 9 PJ; is that right?

10      A.   Yes.

11      Q.   The investigative agency is which agency?

12      A.   Morehead.

13      Q.   Okay.

14      A.   Morehead Fire Department.

15      Q.   And then the comment section, does that have

16 your handwriting?

17      A.   Yes.

18      Q.   And what did you write there, sir?

19      A.   One sample taken near the back door.

20      Q.   And there's an address where the sample was

21 taken from, correct?

22      A.   Yeah, 321 Clearville Hill.

23      Q.   And looking at number nine, would that

24 indicate the number of canine samples taken from the

25 scene and submitted to the laboratory?
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 314 of 396
PageID #: 1819
The Deposition of BUSTER CAMPBELL taken on November 08, 2022
313

```
 1         A.    It would.
 2         Q.    Now, did you write the number of canine
 3   samples the laboratory confirmed positive for
 4   accelerants on here?
 5         A.    No.
 6         Q.    Now, you should have, right?
 7         A.    I'm sorry?
 8         Q.    This should have been filled out completely,
 9   right?
10         A.    Which part are you looking at?
11         Q.    At the number of canine samples confirmed
12   positive for accelerants; you should have filled that
13   part out, right?
14         A.    I wouldn't have.
15         Q.    Well, sir, you remember earlier we went
16   through the ATF training guidelines?
17         A.    Uh-huh.
18         Q.    And do you remember in your own manual, it's
19   actually Exhibit No. 22, one of the -- one of the ATF's
20   -- maybe it's actually 23.  Sorry.  That -- do you
21   remember looking at this ATF letter --
22         A.    Yes.
23         Q.    -- from 1993?
24         A.    Uh-huh.
25         Q.    And in that ATF letter, do you remember where
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 315 of 396
The Deposition of BUSTER CARNEY, taken on November 08, 2022
PageID #: 1820
314

1    it said that the handler of a canine must establish the

2    canine is reliable.  We establish the reliability by

3    yearly certification testing conducted by the ATF

4    laboratory and evaluation of the canine handler's

5    training and fire scene documentation logs by the

6    Kentucky State Police instructors, laboratory

7    corroboration of canine selected samples from actual

8    fire scenes is also evaluated.

9              Do you recall reading that earlier?

10             MR. COLE:  Same objections that I earlier made,

11        and it's not the Connecticut -- it's not the

12        Kentucky State Police.

13             MR. SLOSAR:  Sure.  I -- did I say Kentucky or

14        did I say Connecticut?

15             MR. COLE:  You said Kentucky.

16             MR. SLOSAR:  Again?

17             MS. ARNETT:  You said Kentucky, yes.

18             MR. SLOSAR:  Oh, man.  Sorry.  That's -- this

19        is just a long day.  I'm sorry about that.  I meant

20        Connecticut.  Sorry about messing that up again.

21    BY MR. SLOSAR:

22        Q.    But do you recall reading through that

23    earlier?

24        A.    Yes.

25        Q.    And would you agree that the instructions in

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 316 of 396
The Deposition of BUSTER CANADA, taken on November 08, 2022
PageID #: 1821
315

```
 1   here are consistent with the training that you got at
 2   the ATF academy in 2002?
 3        A.   Yes.
 4        Q.   They were -- the ATF academy was telling you
 5   and the other handlers, it is important for -- for you
 6   to gather data that would assist us in assessing the
 7   reliability of your dog's alerts, correct?
 8             MR. COLE:  Objection.
 9        A.   Correct.
10        Q.   And there was training that you were given
11   specifically that the accuracy of alerts in a regular
12   daily training session would not necessarily be the same
13   as the accuracy that your dog would have at a fire
14   scene, fair?
15        A.   Correct.
16             MR. COLE:  Object to the form.
17        A.   Can I stop you for a second?
18        Q.   Sure.
19        A.   The date on this report is 11-28 of '05.
20        Q.   Uh-huh.
21        A.   That means this report would have been
22   submitted to the ATF within the next two or three days.
23   I mentioned earlier that sometimes the shelf life on
24   these, to get to the lab, could be there three months
25   before they're even examined.  So I wouldn't have even
```



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 317 of 396
The Deposition of BUSTER CAMPBELL taken November 08, 2022
                                    PageID #: 1822
                                                    316

1  had to report back to the lab before I sent this in.

2       Q.   Okay.  Fair enough.  Fair enough.

3            Sitting here today, you don't know how many of

4  these ATF reports that are in Exhibit No. 24 that you

5  actually received information back on, correct?

6       A.   Correct.

7       Q.   It could well -- very well be that we issue a

8  subpoena to the Kentucky State Police laboratory for

9  every arson investigation file, and that there's notes

10 in there that you were informed about the results in

11 some of these investigations, fair?

12      A.   If it's mine --

13           MR. COLE:  Object to the form.

14      A.   If it's mine, they would be.

15      Q.   You're not saying that those notes don't

16 exist; you're just saying you don't -- you can't sit

17 here today and tell us specifically how much of this

18 information you learned?

19      A.   Correct.

20      Q.   I'm going to show you, according to 1186, one

21 sample was submitted from the scene to the laboratory

22 for examination, correct?

23      A.   Correct.

24      Q.   And box number ten regarding whether it was

25 confirmed positive for accelerants, that box is left



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CANNON, taken on November 08, 2022

```
 1    open, correct?

 2         A.    Correct.

 3         Q.    I'm going to point you to 1192, sir.

 4         A.    I'm sorry?

 5         Q.    I'm going to point you to 1192.

 6         A.    Okay.

 7         Q.    It's the next form where samples were taken

 8    from the scene.

 9         A.    Okay.

10         Q.    This is another form that you completed,

11    right?

12         A.    Okay.

13         Q.    It's your handwriting?  Is that your

14    handwriting, sir?

15         A.    True.

16         Q.    This is another investigation that you went on

17    with PJ, correct?

18         A.    Correct.

19         Q.    And this is a form from August 11th, 2005; is

20    that right?

21         A.    Correct.

22         Q.    And in this form, did you document the number

23    of canine samples taken from the scene and submitted to

24    the laboratory were three?

25         A.    Correct.
```



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 319 of 396
The Deposition of BUSTER CAMPBELL, taken November 08, 2022
PageID #: 1824
318

1        Q.    And, again, the number of canine samples the

2   laboratory confirmed positive for accelerants is left

3   blank, correct?

4        A.    Correct.

5        Q.    And in the comment section, did you -- what

6   did you write there?

7        A.    PJ was calibrated with lamp oil before and

8   after entry.  Samples were taken from floor near front

9   door.

10       Q.    And you would agree that by leaving box number

11  ten blank, it's impossible to determine whether PJ's

12  alerts were reliable or unreliable, correct?

13       A.    Correct.

14       Q.    Same with the last form we looked at?

15       A.    Correct.

16       Q.    Now, if you go to the next page, sir, this is

17  a form from August 7th, 2005 that you filled out; is

18  that right?

19       A.    Correct.

20       Q.    This is another investigation that you worked

21  on with PJ; is that correct?

22       A.    Correct.

23       Q.    And the investigating agency was a State Fire

24  Marshal's office; is that right?

25       A.    Correct.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 320 of 396
The Deposition of BUSTER CAMPBELL, taken November 08, 2022
PageID #: 1825
319

1    Q.   And that was the same as the investigation
2    from the day before; is that correct --

3    A.   Correct.

4    Q.   -- or the page before?  Now, in the underlying
5    investigation here with Mr. Gregory in -- in September
6    of 2004 that was another investigation being conducted
7    by the State Fire Marshal's office, correct?

8    A.   Correct.

9    Q.   Now, in this form, what did you write next to
10   the number of canine samples taken from the scene?

11   A.   Positive scene, alert from roadway to the
12   house where a trailer was...

13   Q.   Let's go up a line.  Did you write, PJ was
14   calibrated with --

15   A.   She was -- okay.  Yeah.  Lamp oil again before
16   and after entry and positive seen alert from roadway to
17   the house or trailer, was poured from road to house,
18   alerted on lumber pile and floor area, and something
19   else floor.

20   Q.   Is that garage floor?

21   A.   Could be.

22   Q.   And on box number nine did you write that the
23   number of canine samples submitted to the laboratory
24   were unknown?

25   A.   True.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 321 of 396
PageID #: 1826
The Deposition of BUSTER CANINE taken on November 08, 2022
320

1    Q.   And did you write that the number of canine

2    samples confirmed by the laboratory were also unknown?

3    A.   True.

4    Q.   Would you agree that from looking at this form

5    you would be unable to determine the reliability of PJ's

6    accuracy of alerts?

7    A.   It sounds like I had left this scene before

8    they pulled the samples, and, so, therefore, I wouldn't

9    have known how many samples they took or how many

10   samples were actually tested positive.

11   Q.   Okay.  Now, if you go to page 1195, sir.  It's

12   the next page where samples were taken from the scene.

13   A.   Okay.

14   Q.   This is another form you filled out, correct?

15   A.   Correct.

16   Q.   It's a form you filled out on July 27, 2005;

17   is that correct?

18   A.   Correct.

19   Q.   And -- and the investigating agency here was

20   the Campbell County Police Department; is that right?

21   A.   Correct.

22   Q.   There's a case number associated with this; is

23   that right?

24   A.   That's their case number, yes.

25   Q.   Yeah.  And what -- what -- can you tell us

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 322 of 396
PageID #: 1827
The Deposition of BUSTER CANNON, taken November 08, 2022
321

1    what's in your comment section here, sir?

2        A.   PJ was calibrated before and after entry with

3    lamp oil.  Canine did not alert in living room area in

4    two places.  Canine also alerted on three of five

5    samples taken from the scene.

6        Q.   And how many canine samples were taken from

7    the scene and submitted to the laboratory?

8        A.   It looks like five.

9        Q.   And what did you write in box number ten as

10   the canine samples confirmed by the laboratory?

11       A.   I didn't write nothing.

12       Q.   You would agree that the way this form is

13   filled out, it would -- someone would be unable to

14   determine the reliability of PJ's alert accuracy,

15   correct?

16       A.   Correct.  But, again, these forms are sent in

17   way before I get the results back, so I wouldn't have

18   had -- that's why they're blank.

19       Q.   Well, these forms were actually produced to us

20   by the Russellville Police Department.  They've got RPD

21   on them.  So a copy must have been maintained in a file

22   for that to happen; would you agree with that?

23       A.   I couldn't tell you.

24       Q.   Okay.  Well, let's go to page 1197, sir.  This

25   is another activity sheet of PJ that you completed,



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1   correct?

 2        A.   Correct.

 3        Q.   It's from July 13th, 2005; is that right?

 4        A.   Correct.

 5        Q.   The investigating agency is the ATF; is that

 6   right?

 7        A.   Yes.

 8        Q.   And the number of canine samples taken from

 9   the scene and submitted to the laboratory were four,

10   correct?

11        A.   That's correct.

12        Q.   Again, box number ten as to the laboratory --

13   the number of canine samples the laboratory confirmed

14   positive for accelerants is left blank, correct?

15        A.   Correct.

16        Q.   And you would agree that by leaving that

17   blank, it would be impossible to determine the

18   reliability of PJ's alerts from the scene, correct?

19        A.   Correct.

20        Q.   I'm going to ask you to go to page RPD1200,

21   sir.  This is a report that you completed on

22   June 22nd, 2005, correct?

23        A.   I'm sorry?  Say again.

24        Q.   June 22nd, 2005?

25        A.   Correct.
```



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 324 of 396
The Deposition of BUSTER CANNON taken on November 08, 2022
PageID #: 1829
323

1      Q.   This is another investigation involving PJ's

2   alerts; is that correct?

3      A.   Correct.

4      Q.   And how many samples were taken from the scene

5   and submitted to the laboratory?

6      A.   It looks like four to five.

7      Q.   And here the number of canine samples the

8   laboratory confirmed positive for accelerants you wrote

9   the word "unknown," correct?

10     A.   Correct.

11     Q.   And the other spaces you had left those blank,

12   correct, on some of the other pages we looked at?

13     A.   Yes.

14     Q.   But for this one you wrote, "unknown,"

15   correct?

16     A.   Correct.

17     Q.   But you would agree that it would be

18   impossible to determine the reliability of PJ's alerts

19   in this investigation based on the information contained

20   on this document?

21     A.   Correct.

22     Q.   And 1205 is the last one of these that I'll

23   ask you about for now.  This is another report that you

24   created; is that right, sir?

25     A.   Correct.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

 1          Q.    And it's a report you created on

 2    June 7th, 2005; is that right?

 3          A.    Correct.

 4          Q.    And according to this report, five canine

 5    samples were taken from the scene and submitted to a

 6    laboratory; is that right?

 7          A.    That's right.

 8          Q.    And, again, the number of canine samples the

 9    laboratory confirmed positive for accelerants is left

10    blank, correct?

11          A.    Correct.

12          Q.    It would be -- you would agree it would be

13    impossible, from what's written on this report, to

14    determine the reliability of her alerts?

15          A.    Correct.

16                (EXHIBIT 25 MARKED FOR IDENTIFICATION)

17          Q.    I'm going to show you what we'll mark as

18    Exhibit No. 25, sir.

19          A.    Which one?

20          Q.    I'm going to show you a new exhibit, so you

21    could --

22          A.    Okay.

23          Q.    -- you could put that one away.  Here -- here

24    is 25.  We're going to go through some new stuff.  I'm

25    actually going to move these so we don't get things

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1   mixed up.
 2           MR. SLOSAR:  Okay.  Sorry, Charlie.  Here you
 3       go.
 4           MR. COLE:  Is that one...
 5           MR. SLOSAR:  Oh, yeah, yeah, yeah.  This is
 6       yours.
 7   BY MR. SLOSAR:
 8       Q.   All right, sir.  Do you recognize this
 9   document at all?
10       A.   I do.
11       Q.   What is this?
12       A.   It's a form I filled out, sent to the AT
13   operational activity report.
14       Q.   Okay.  Now, earlier you testified that
15   sometimes you would fill things out on the back of these
16   forms; is that right?
17       A.   Yes.
18       Q.   Okay.  Now, I'm going to ask for you to turn
19   to Cannon 283 in the bottom right-hand corner, sir.
20       A.   Which one?
21       Q.   Cannon 283.
22       A.   283?
23       Q.   Yeah.
24       A.   Okay.
25       Q.   And this is a form that you filled out on or
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 327 of 396
The Deposition of BUSTER CANADA taken on November 08, 2022
PageID #: 1832
326

1    around February 23rd, 2003; is that right?

2        A.   Correct.

3        Q.   And this is another form for the ATF, correct?

4        A.   Correct.

5        Q.   And on the next page does that contain

6    information that you wrote relating to the search?

7        A.   Correct.

8        Q.   Okay.  And so, this would be an example where

9    you might write something on the back of the --

10       A.   Correct.

11       Q.   -- document; is that fair?

12            Okay.  Now, sitting here today, you certainly

13   agree that PJ by 2004 -- strike that.

14            By September 2004, you were aware that PJ at

15   times had false alerts during fire investigations,

16   correct?

17       A.   I would say close, yeah.

18       Q.   Yeah.  And -- and, in fact, this wasn't

19   anything that was necessarily new.  This is something

20   that you had even learned with PJ even when you were at

21   the 2002 training academy with her, fair?

22       A.   Fair.

23       Q.   She was a relatively young dog in 2004, fair?

24       A.   Well, plus the fact that I was a relative

25   young handler, still -- still learning the tricks of the

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 328 of 396
PageID #: 1833
The Deposition of BUSTER CANDEE taken on November 08, 2022
327

```
 1  trade.
 2       Q.   Fair enough.
 3            You both -- you and PJ both had room for
 4  improvement in creating reliable alerts to accelerants,
 5  fair?
 6       A.   Fair.
 7       Q.   Now, I -- I'm going to -- and -- and Exhibit
 8  24, I'm going to ask you to turn to page 1282, sir, and
 9  these are some of the logs --
10       A.   Where are we at?
11       Q.   1282.  It should be in -- it's in 24.  Oh,
12  this is 25.  Yep.  I'm going to point you to 1282.  The
13  handwriting is not great, but these are the training
14  logs from PJ's training academy.  This is from January
15  of 2002.
16       A.   Okay.
17       Q.   Now, do you see where it says, PJ on here, and
18  it's got a couple of names next to it?
19       A.   Where exactly where?
20       Q.   So I'm looking right here, PJ.
21       A.   Okay.  Yes.
22       Q.   Yep.  And if you go to the second line, you'll
23  say -- it says -- well, if you go to the first line, do
24  you see where it says, "Trying to guess"?
25       A.   Yes.
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CARNELL taken on November 08, 2022

328

1      Q.    "Still distracts on other dogs" --

2      A.    Yes.

3      Q.    -- "people but good sits, false a few times."

4      A.    Okay.

5      Q.    So in January of 2002, you know, PJ, at least

6  in training, was having issues with the reliability of

7  her alerts, fair?

8      A.    And, then, down at the bottom of it, it also,

9  "pretty nice work."

10     Q.    Sure.  That's --

11     A.    And she's got a hundred over here beside of

12  her score, so...

13     Q.    Well, you know, it's probably a little bit

14  concerning to you that she was getting 100 if they also

15  found that she was trying to guess and had false alerts.

16     A.    I was happy with the hundred.

17     Q.    You should probably have concerns about the

18  fact that she was trying to guess and was false a few

19  times, right?

20          MR. COLE:  Object to the form.

21          MR. STILZ:  Object to the form.

22     Q.    I mean, as a -- as a handler -- as a canine

23  handler, it would be concerning to you if PJ was trying

24  to guess during the course --

25     A.    Absolutely.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 330 of 396
The Deposition of BUSTER CAMPBELL taken on November 08, 2022
PageID #: 1835
329

1      Q.    -- of a fire investigation?

2      A.    Yes.  Yes.

3      Q.    As a canine handler, it would be concerning to

4   you if PJ was having false alerts during the course of a

5   fire investigation, correct?

6      A.    Yes.

7      Q.    Okay.  And by 2004, you would have been aware

8   that a controlled setting, like training, is actually --

9   has been determined to be much more reliable than alerts

10  that are made during a fire investigation, correct?

11     A.    I would agree with that a little bit for the

12  simple fact that not all of it is a controlled settings.

13  We've done -- we've taken her out into parking lots.

14  We've taken her out in the forest and done cars and

15  things like that.  Those aren't controlled.  So I'd say

16  you're right on some of it.

17     Q.    Okay.  Now, sir, this is -- I'm going to --

18  I'm going to move on from Exhibit 24.  Sorry.

19     A.    Sure.

20     Q.    The -- we'll -- we'll move this out of the

21  way.  At the time that you were testifying in Mr. Yell's

22  criminal proceeding --

23     A.    Okay.

24     Q.    -- so the Daubert hearing, the trial, the

25  post-conviction proceedings, you knew that your

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 331 of 396
                              PageID #: 1836
The Deposition of BUSTER CANTRELL taken on November 08, 2022
                                                            330

1    testimony was an important thing for the trier of fact
2    to consider when assessing the reliability of PJ's
3    alerts, fair?
4         A.   Can you state that again?
5         Q.   Sure.
6              MR. SLOSAR:  Actually, can -- can you read that
7         back, please, my mind is going a little bit.
8              THE WITNESS:  Or rephrase it.
9              MR. SLOSAR:  I -- they're going to read it back
10        because I don't know if I could say it as eloquently
11        as I did the first time.
12             THE WITNESS:  You're getting tired, too, huh?
13             MR. SLOSAR:  I'm getting -- you're wearing me
14        down.
15                  (REQUESTED PORTION READ BACK)
16   BY MR. SLOSAR:
17        Q.   Is that fair, though?
18        A.   Yes.
19        Q.   And you knew that -- you understood that your
20   testimony could be used to continue the charges against
21   Mr. Yell when you were testifying before the trial,
22   right?
23             MR. COLE:  Object to the form.
24             MR. STILZ:  Object to the form.
25             MR. COLE:  His trial testimony.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CANNON, taken on November 08, 2022

```
 1              MR. SLOSAR:  Well, at the -- you know, I'll
 2       withdraw the question.  That's fair.
 3   BY MR. SLOSAR:
 4       Q.   During the proceedings that you were
 5   testifying in before Mr. Yell went to trial, you
 6   understood that your testimony could be used to continue
 7   those charges against Mr. Yell, correct?
 8       A.   Yes.
 9       Q.   You understood that Mr. Yell was charged with
10   a crime by that time, correct?
11       A.   Yes.
12       Q.   You understood that he was incarcerated,
13   correct?
14       A.   Yes.
15       Q.   You understood when you testified at the 2006
16   trial that testimony was going to be, you know,
17   considered by the trier of fact to either convict or not
18   convict Mr. Yell, correct?
19       A.   Yes.
20       Q.   And you understood that he was being charged
21   with arson and murder, correct?
22       A.   Yes.
23       Q.   And whatever you testified to from the stand
24   you did so intentionally, fair?
25       A.   No.
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 333 of 396
The Deposition of BUSTER CARROLL taken on November 08, 2022
PageID #: 1838
332

1      Q.    Well, did you testify by accident to anything?

2      A.    Nothing was intention.  I just told the truth.

3      Q.    Sure.  But my -- what I'm saying is, like,

4  you've read through your transcripts before this

5  deposition, right?

6      A.    Yes.

7      Q.    You told me earlier you wouldn't take a single

8  thing back that you've done in this case, right?

9      A.    True.

10     Q.    And so whatever you were testifying to the

11  court or to the jury, you would have done so, you know,

12  intentionally, right?

13     A.    No.

14     Q.    Well, anything that you said from the stand;

15  do you recall it being a mistake?

16     A.    No, but nothing was done intentionally.  It

17  was questions that were answered.

18     Q.    Anything you want to take back from your prior

19  testimony?

20     A.    No.

21     Q.    No.  Okay.  And by the time you testified at

22  trial, you didn't have any specific training or

23  knowledge that gave you a basis to testify that a dog's

24  sniffing ability is 400 times greater than that of a

25  human being, correct?

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 334 of 396
The Deposition of BUSTER CANINE taken on November 08, 2022
PageID #: 1839
333

1    A.    No.

2    Q.    When you say, "no," are you agreeing with me?

3    A.    No.  I'm not agreeing with that.

4    Q.    You're disagreeing with me.  Okay.

5    A.    Disagreeing with you.

6    Q.    Okay.  Okay.  Sometimes when you say, "no,"

7    you're agreeing with me, so I'm --

8    A.    A canine's nose is 400 times better than a

9    human.

10   Q.    Okay.  When you testified at trial -- well,

11   let me -- let me ask you it this way:  There's no

12   scientific basis or training that you have by the time

13   you testified in 2006 that would have given you a basis

14   to testify that PJ's nose was more precise than the

15   laboratory testing of the samples, did you?

16   A.    I would have to agree because I know nothing

17   about the equipment or the scientific background behind

18   it.

19   Q.    So while you trusted your dog, you would have

20   had no scientific basis to inform the court or the trier

21   of fact that PJ's alerts and PJ's nose was more reliable

22   than the scientific results, correct?

23   A.    Correct.

24   Q.    And certainly -- I'm going to give you --

25        MR. SLOSAR:  Maybe -- maybe we could take a

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 335 of 396
The Deposition of BUSTER CANNON, taken on November 08, 2022
PageID #: 1840
334

```
 1        quick five-minute break; is that okay?  I know I've
 2        got about 20 minutes left.
 3             VIDEOGRAPHER:  Okay.
 4             MR. SLOSAR:  I just want to...
 5             VIDEOGRAPHER:  We'll go off the record at 7:18.
 6             (OFF THE RECORD)
 7             VIDEOGRAPHER:  We are back on the record for
 8        the deposition of Buster Cannon.  Today is November
 9        8th, 2022, and the time is 7:25.
10             (EXHIBIT 26 MARKED FOR IDENTIFICATION)
11   BY MR. SLOSAR:
12        Q.   All right.  Mr. Cannon, I'm handing you
13   Exhibit No. 26.  This was a document produced to us by
14   your lawyers.  I think it was in your -- some sort of
15   file that you maintained.  Do you -- do you recognize
16   this present -- this -- it was a PowerPoint presentation
17   of some sort?
18        A.   I have seen so many of these, no.
19        Q.   Okay.  If it was maintained in your file, is
20   this something that you would have reviewed prior to
21   leaving the department in 2005?
22        A.   It was probably in my file for a class that I
23   had taken at -- somewhere, probably the fire department,
24   the chemistry of fire.  Things like that.
25        Q.   That's something that you would have
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CANNON, taken November 08, 2022

335

1    familiarized yourself with by the time you left in 2005,

2    correct?

3        A.   Well, if you're going to be a firefighter, you

4    need to know this stuff, yes.

5        Q.   Sure.  All right.  That's all the questions I

6    have.

7             You didn't create that presentation, correct?

8        A.   No.

9             (EXHIBIT 28 MARKED FOR IDENTIFICATION)

10       Q.   Okay.  The next exhibit, Exhibit No. 28 is an

11   investigation that appears to have began on

12   January 1st, 2004.  Do you see the first page of that

13   document, sir?

14       A.   I do.

15       Q.   Does that say Cannon 684?

16       A.   Yes.  Right here (indicating.)

17       Q.   Okay.  Let me just see this real quick, if I

18   can, sir.  Sorry.  Yours looks different than mine.

19   Mine's got a picture this way, so I just want to make

20   sure we're looking at the same thing.

21             Is that your handwriting on that file folder,

22   sir?

23       A.   This here (indicating)?

24       Q.   Yes, sir, or on the -- the first page.

25             MR. COLE:  The very first page.



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 337 of 396
PageID #: 1842
The Deposition of BUSTER CAMPBELL taken November 08, 2022
336

```
 1          Q.   Sorry.  I'm just talking about the folder?

 2          A.   Oh, yes.  Yes.  I'm sorry.

 3          Q.   Okay.  Now, I'm going to forward you to 689.

 4    There's a report that was typed up.

 5          A.   Okay.

 6          Q.   Yeah.  And on page 690, is that your

 7    signature, sir?

 8          A.   Yes.

 9          Q.   Okay.  If you look at 689, I'm going to ask

10    you some questions that begin at the bottom, like right

11    here --

12          A.   Okay.

13          Q.   -- through here (indicating.)  So I'm going to

14    read through something with you, do you see --

15               MR. SLOSAR:  And this is about a little

16          two-thirds through the first paragraph, Charlie and

17          Barry.

18          Q.   Do you see where it says, "We then went to

19    where the fire had been discovered and found the only

20    thing in the room was a carpet pad on the floor that had

21    been burned.  I walked around and checked the rest of

22    the structure and found nothing.  I had already walked

23    around the outside, and, again, found nothing.  I did

24    notice a one-gallon plastic container in a plastic bag.

25    I took it out and looked at it.  It was RV antifreeze.  I
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CARROLL, taken November 08, 2022
337

1    then went back to the car and got PJ ready to bring in

2    to see if she would alert on anything.  I had calibrated

3    on a piece of wood outside the front door with kerosene.

4    I took in and did a primary search of the interior.  She

5    found nothing.  I then took her back into the room of

6    origin, slowed her down and had her check the carpet

7    pad.  Again, no alert.  So I had to believe the cause

8    was going to be direct flame contact from something like

9    a lighter or a match.  I then took PJ back to her

10   calibration point, then put her back in the car to head

11   to 705 East Main Street."

12           Is that something you wrote in this report,

13   sir?

14       A.   Yes.

15       Q.   And so this was a fire investigation that you

16   and PJ were investigating for a potential arson,

17   correct?

18       A.   Correct.

19       Q.   And if you go to the page before, sorry, it

20   looks like the date of this fire investigation began on

21   January 1st, 2004, correct?

22       A.   Correct.

23       Q.   This is the same exact year that you

24   investigated the September 2004 fire investigation that

25   led to Robert Yell's conviction, yes?



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CANNON, taken November 08, 2022

1    A.    Same year, yes.

2    Q.    Yes.  At the bottom of page 689, so right down

3    here, do you see where it says, "With no other reason

4    for this fire to start, I had to think someone set it."

5    Next page, so up here.  "There was a witness.  I don't

6    recall his name, but I do have the information, just not

7    here with me now.  He stated he saw a white male leave

8    the building and walk across the street.  He was wearing

9    blue jeans and a blue sweatshirt.  In his early 20s,

10   thin and possibly had a goatee.  PD had their tracking

11   canine out but lost his scent.  I then photographed or

12   had David Raisor photo the interior of the structure,

13   and after we completed our work inside, I went to the

14   car to get PJ.  I calibrated her again on lamp oil.  We

15   then went inside and did a quick primary survey but

16   found nothing.  We went into the room of origin and ran

17   in there, again, no alerts.  I took PJ back to the car

18   and left."

19         Do you see that, sir?

20   A.    Yes.

21   Q.    So this would be the second time during the

22   course of this investigation that you ran PJ through the

23   scene and no alerts were made, correct?

24   A.    Correct.

25   Q.    But you believed that there was an arson that



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 340 of 396
The Deposition of BUSTER CANNON taken on November 08, 2022
PageID #: 1845
339

```
1   was committed, correct?

2       A.   Correct.

3       Q.   You believe that PJ's lack of alerts was not

4   dispositive as to the results of your fire

5   investigation, correct?

6       A.   Say it again.

7       Q.   You believe that her lack of alerts did not

8   mean that it wasn't an arson, correct?

9       A.   Correct.

10      Q.   You thought that she could have been wrong,

11  right?

12      A.   Well, over here, I'm saying it could have been

13  direct flame contact, too.

14      Q.   Okay.

15      A.   Such as cigarette lighter or a match.

16      Q.   Okay.  Here's -- what I'm going to ask for you

17  to do is turn to Cannon 692, sir, should be a newspaper

18  article.

19      A.   Okay.

20      Q.   It's a newspaper article with you in it,

21  right?

22      A.   Say again.

23      Q.   Newspaper article with you in it, correct?  A

24  newspaper article?

25      A.   Yes.
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 341 of 396
PageID #: 1846
The Deposition of BUSTER CARTER, taken on November 08, 2022
340

1    Q.   Okay.  And this article has quotes from you in

2  it, correct --

3    A.   Correct.

4    Q.   -- the part that I just listed?

5    A.   I haven't had a chance to read it, but if you

6  say so.

7    Q.   Sure.  If you'll read this portion.  Let me

8  know when you're finished.

9         (WITNESS REVIEWS DOCUMENT)

10   Q.   Okay.  Have you had a chance to read that,

11 sir?

12   A.   Yes.

13   Q.   And according to what you told the newspaper,

14 the perpetrator's enter the front door to set the fire.

15 The fire was ignited by an aerosol spray can and a

16 lighter; is that right?

17   A.   That's what I said, yes.

18   Q.   And that certainly would constitute an arson,

19 correct?

20   A.   Correct.

21   Q.   Aerosol can would have an ignitable liquid in

22 it, correct?

23   A.   Again, we talked about it earlier.  It depends

24 on the makeup of that chemical.

25   Q.   Okay.

Kentuckiana Reporters          502.589.2273 Phone
P.O. Box 3983               502.584.0119 Fax
Louisville, KY 40201        schedule@kentuckianareports.com
                            www.kentuckianareports.com

KENTUCKIANA
COURT REPORTERS

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 342 of 396
PageID #: 1847
The Deposition of BUSTER CANNON taken on November 08, 2022
341

```
 1        A.    You know, she was only trained on 17 different

 2    types.  There must be 15,000 things that'll burn.

 3        Q.    Okay.  Well, during the course of this

 4    investigation, if you go a couple more pages, Cannon

 5    694.

 6        A.    Okay.

 7        Q.    You began questioning suspects --

 8        A.    Okay.

 9        Q.    -- in the investigation, correct?

10        A.    Correct.

11        Q.    And, in fact, you got a statement from a

12    person named Mario Garcia, right?

13        A.    Right.

14        Q.    And, if you look down here, did Mr. Garcia

15    admit to you that he pulled out his lighter and another

16    person pulled out his and he started setting the fire. I

17    set a fire to the recliner, the house caught on fire,

18    and we left?

19        A.    Okay.

20        Q.    That's one confession you got, right?

21        A.    Right.

22        Q.    And then if you go two pages further to Cannon

23    696, you took a statement on January 4, 2004 from

24    Clarence Isaacs, correct?

25        A.    Correct.
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 343 of 396
PageID #: 1848
The Deposition of BUSTER CARTER, taken on November 08, 2022
342

1      Q.    The next page 697, do you see this?

2            MR. SLOSAR:  And -- and I highlight right here.

3      It's about halfway, Charlie.

4      Q.    Do you see where it says:  Can you tell me

5  what was set on fire and what method was used to set it

6  on fire on the Main Street fire?

7            Isaacs:  Arson.  I mean it was an aerosol can

8  and a lighter on the chair.

9            Question:  What kind of chair was it?

10           Answer:  Recliner.

11           And question:  And it was in what room?

12           Answer:  The first room to your left.

13           That's a confession that you got from

14  Mr. Isaacs on January 4, 2004, correct?

15     A.    Correct.

16     Q.    And Mr. Isaacs confessed to you that he used

17  an aerosol can and a lighter to start that arson,

18  correct?

19     A.    Correct.

20     Q.    And this all -- you got those confession

21  statements in January of 2004, correct?

22     A.    Correct.

23     Q.    And you ran PJ through the scene two times,

24  correct?

25     A.    Correct.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of BUSTER CAMPBELL, taken on November 08, 2022

343

```
1        Q.   No alerts were made, correct?

2        A.   Correct.

3        Q.   And yet, you -- you not only determined it was

4   an arson, you actually got a confession from somebody

5   involved in that, correct?

6        A.   Correct.

7        Q.   And you -- prior to Mr. Yell's trial, you

8   didn't turn over this file to the Commonwealth or any

9   defense counsel, correct?

10       A.   What file?

11       Q.   This file that we're looking at right here.

12   You wouldn't have given that to the Commonwealth

13   attorney or the defense attorney in Mr. Yell's case,

14   would you?

15       A.   To this here (indicating)?

16       Q.   Yeah.

17       A.   To the -- no.  Why?

18       Q.   Of course.  You would have -- no training, by

19   that point, would have lead you to believe that you

20   needed to produce documents like this to a Commonwealth

21   attorney or defense attorney in Mr. Yell's case,

22   correct?

23            MR. COLE:  Object to the form.

24       Q.   You can answer.

25       A.   True.
```



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 345 of 396
The Deposition of BUSTER CANNON taken on November 08, 2022
PageID #: 1850
344

```
 1        Q.    Okay.  Now, if you go to the Exhibit No. 29,
 2   sir, this relates to a January 1st, 2005 fire --
 3   structure fire investigation.  The first Bates number is
 4   587; do you see that?
 5        A.    I do.
 6        Q.    Okay.  And I'm going to ask you to turn to
 7   basically the last five pages of this, so if you go to
 8   page 678, I believe is where this thing starts.
 9              Thank you, Mr. Cannon.  I know it's late.  So
10   this appears to be a report that was similar to the one
11   that we just looked at; is that right?
12        A.    Correct.
13        Q.    And sometimes you would get called at home in
14   the early morning hours to conduct fire investigations,
15   fair?
16        A.    True.
17        Q.    And if you go to -- well, there's no signature
18   on the last page, but if you go to page 682, look at the
19   last paragraph.  Do you see where it says, "It is my
20   belief, after talking with all the witnesses, that
21   Mr. William J. Pickard set that recliner on fire by
22   using direct flame contact.  The canine did not alert on
23   any accelerants in the apartment.  He had motive to set
24   the fire.  He was very upset that she went to her
25   brother's for New Year's Eve after buying tickets for
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1    the concert.  He was also so drunk that he may not even
 2    remember setting the fire."
 3              Do you see that, sir?
 4        A.    I do.
 5        Q.    And this would be another occasion where you
 6    came to form a belief that an arson was committed but
 7    the canine did not alert to accelerants, correct?
 8              MR. COLE:  Object to the form.
 9        A.    That's correct.  And you are aware that some
10    of these accelerants can be exposed of during flame or
11    during the fire.
12        Q.    Okay.  Sure.
13              And -- and, again, you would not have produced
14    this particular investigative file to -- to the
15    Commonwealth attorney in Mr. Yell's case or the defense
16    counsel prior to trial, correct?
17        A.    No.  Correct.
18              (EXHIBIT 30 MARKED FOR IDENTIFICATION)
19        Q.    All right.  Next -- next one, sir, Exhibit 30.
20              That's your handwriting on the first page of
21    this document, right?
22        A.    Yes.
23        Q.    It's another arson investigation, right?
24        A.    Yes.
25        Q.    And page 462 is what I'm going to forward you
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 347 of 396
The Deposition of BUSTER CAMPBELL, taken on November 08, 2022
PageID #: 1852
346

```
 1    to, sir.
 2         A.   Okay.
 3         Q.   Okay.  This is an envelope from the Kentucky
 4    state laboratory to yourself; is that right?
 5         A.   Correct.
 6         Q.   And on the next page, apparently, as part of
 7    this investigation in 2003 you actually went to
 8    Frankfort, Kentucky to assist a polygraph analyst in --
 9    in examination of a suspect in one of your arson
10    investigations, correct?
11         A.   Correct.
12         Q.   So you were familiar with the Kentucky State
13    Police laboratory by 2003, correct?
14              MR. COLE:  Object to the form.
15         A.   Yes.
16         Q.   And you were not only in contact with people
17    who were analyzing evidence and potential arson cases
18    but you also were coordinating investigations with
19    polygraph examiners, as well, correct?
20         A.   Correct.
21         Q.   And -- and the polygraph examiner, as the
22    envelope demonstrates, even shows that they mailed the
23    results of the examination to you at the Scott County
24    Sheriff's Department, correct?
25         A.   Correct.
```



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    Q.   Now, if you go two pages later to 465, sir,

2    there's a transcript of an interview between yourself,

3    KSP fire investigator Kevin Dunn and the polygraph

4    examiner on July 9, 2003; do you see that?

5    A.   Yes.

6    Q.   This is an example of you participating in a

7    questioning of a suspect in an arson investigation at

8    the Kentucky State Police laboratory, correct?

9    A.   Not at the laboratory.

10   Q.   I'm sorry.  In the polygraph examination

11   facility, correct?

12   A.   Correct.

13   Q.   This would have happened in or around the time

14   of the -- let me -- you know, what let me strike that --

15   that last question.

16   A.   This -- this interview wasn't even done at

17   KSP.

18   Q.   Yeah.  Yeah.  I apologize.  The -- the

19   polygraph examination, according to the report, you were

20   present for that at the KSP laboratory in Frankfort,

21   Kentucky, correct?

22   A.   Well, there are two different locations, but

23   yes.

24   Q.   Okay.  I apologize about the Jones' interview.

25   All right.  Let's go to 534, sir.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 349 of 396
PageID #: 1854
The Deposition of BUSTER CARNES taken on November 08, 2022
348

```
 1              MR. SLOSAR:  I should have five minutes, right?
 2       I set -- I set an alarm, so...
 3              MR. STILZ:  Five minutes and 20 seconds.
 4              MR. SLOSAR:  Thanks, Barry.
 5              MR. STILZ:  Yes, sir.
 6   BY MR. SLOSAR:
 7       Q.    And you're at 534, you see that form, sir?
 8       A.    I do.
 9       Q.    This form is a request for examination of
10   evidence of the Kentucky State Police laboratory,
11   correct?
12       A.    Correct.
13       Q.    The offense was an arson third, correct?
14       A.    Correct.
15       Q.    You were the submitting officer, correct?
16       A.    Correct.
17       Q.    You submitted this February 27, 2003, correct?
18       A.    Correct.
19       Q.    You filled out the case history on this form,
20   correct?
21       A.    Correct.
22       Q.    You requested examination, including checking
23   for accelerants of physical evidence recovered from the
24   scene, correct?
25       A.    Correct.
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 350 of 396
The Deposition of BUSTER CANNON taken on November 08, 2022
                                                          349

```
 1        Q.    You submitted the canine samples, correct?

 2        A.    Correct.

 3        Q.    And if you go to Cannon 536, sir, on -- is

 4   this a report that you would have received and returned

 5   to your request --

 6        A.    Yeah.

 7        Q.    -- that documents the laboratory findings

 8   relating to the evidence you submitted?

 9        A.    Yes.

10        Q.    And Kenneth Rider at the bottom right-hand

11   corner would have been the person that you would have

12   received this report from, correct?

13        A.    Correct.

14        Q.    And I showed you a report, the laboratory

15   report earlier today, relating to the September 2004

16   investigation.  In this case -- and Mr. Rider was also

17   the examiner there; do you recall that?

18        A.    Yeah.

19        Q.    So you would have had contact, some form of

20   contact with Mr. Rider prior to September of 2004

21   through your other investigations, correct?

22            MR. COLE:  Object to the form.

23        A.    Correct.

24            (EXHIBIT 31 MARKED FOR IDENTIFICATION)

25        Q.    All right.  I'm going to refer you to Exhibit
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 351 of 396
PageID #: 1856
The Deposition of BUSTER CARROLL taken on November 08, 2022
350

 1    No. 31, sir.

 2         A.    What number?

 3         Q.    31.

 4         A.    31?

 5         Q.    Yeah.  Sorry.

 6         A.    31.  Right there.

 7         Q.    Yep.  We're going to go here.  Oh, sorry about

 8    that.

 9               Now, this is -- that's your handwriting on the

10    first page of this document, correct?

11         A.    Yes.

12         Q.    And if you go to page 390, sir.

13         A.    Okay.

14         Q.    390 is another lab request for evidence

15    examination to the Kentucky state Police laboratory,

16    correct?

17         A.    Correct.

18         Q.    And you were the one that filled this out,

19    correct?

20         A.    Correct.

21         Q.    And you would have submitted physical evidence

22    and requested for the accelerants -- for them to check

23    for accelerants in both containers, correct?

24         A.    Correct.

25         Q.    And, again, this would have occurred December

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 352 of 396
The Deposition of BUSTER CANNON, taken on November 08, 2022
PageID #: 1857
351

```
1    2nd, 2004, so approximately three to four months after
2    your participation in the underlying fire investigation
3    here, correct?
4         A.   No.  I was still employed through the
5    Georgetown Fire Department part time.
6         Q.   Sure.  But what I'm saying is, you would have
7    submitted this request about three months after you ran
8    PJ through this fire, correct?
9         A.   Correct.
10        Q.   So you were in contact with the Kentucky State
11   Police laboratory both before and after this fire
12   investigation relating to laboratory examination and
13   testing results, correct?
14        A.   Yes.
15             (EXHIBIT 32 MARKED FOR IDENTIFICATION)
16        Q.   Now, if you go to the next exhibit, sir,
17   Exhibit 32.  I'm going to ask for you to turn to page
18   926 at the bottom.  And according to this report, did
19   you receive a forensic laboratory examination report
20   from Kenneth Rider in or around July of 1994?
21        A.   Correct.
22        Q.   At that time, you would have been working at
23   the Scott County Sheriff's Department, correct?
24        A.   Yes.
25        Q.   And according to the report, you submitted the
```


Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

The Deposition of BUSTER CARROLL, taken on November 08, 2022

352

```
1   materials and asked for an identification of
2   accelerants, correct?
3        A.   Correct.
4        Q.   So ten years prior to your involvement in the
5   September 2004 investigation, you had been working with
6   Mr. Rider on the testing and analysis of samples from
7   fire investigations, correct?
8             MR. COLE:  Object to the form.
9        A.   Correct.
10       Q.   And so, by September of 2004 you would have
11  been well accustomed to contacting the Kentucky State
12  Police laboratory to get updates on results from
13  laboratory testing, correct?
14            MR. COLE:  Object to the form.
15            MR. SLOSAR:  Sir, thank you so much for your
16       time.  I don't have any further questions.
17            Do you guys have anything, Charlie?
18            MR. STILZ:  I don't.  Do you?
19            MR. COLE:  No.  We need to ask our other
20       counsel, and I guess we're at a seven-hour period of
21       time.
22            MR. STILZ:  Yeah.  Folks, he's run out of time.
23            MR. SOWELL:  This is J.A.  I don't have any
24       questions for the witness.
25            MS. LANGEN:  Jennifer Langen.  I have no
```



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1   questions for the witness.
 2         MR. STILZ:  Amber?
 3         MS. ARNETT:  Amber Arnett, I have no questions
 4   for the witness.
 5         MR. STILZ:  Chris?
 6         MR. GADANSKY:  No questions.
 7         MR. STILZ:  Fair enough.
 8         MR. SLOSAR:  Mr. Cannon, you have the ability
 9   to review this transcript and make sure it's all
10   accurate so you can reserve your signature or you
11   can ask for them to give your counsel a copy so that
12   you can review it and make sure everything is
13   accurate.  And, actually, I think I just botched
14   that, but do you want to read this and hold off on
15   your signature or are you going to -- do you want to
16   waive it and just trust that they did their job?
17         MR. COLE:  So you're going to send an errata
18   sheet; is that correct?
19         COURT REPORTER:  (Nods head.)
20         MR. SLOSAR:  Okay.
21         MR. COLE:  We'll take a look at the sheet and -
22   -
23         MR. STILZ:  You have a right to --
24         MR. COLE:  -- then we'll talk about it.
25         MR. SLOSAR:  Okay.
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 355 of 396
The Deposition of BUSTER CARABELLO, taken November 08, 2022
                                                          354

1          MR. STILZ:  -- read this deposition.

2          MR. COLE:  He's making a decision here .

3          MR. SLOSAR:  Sorry.  I just know that we have

4    to do that.  I always do that on the record, so

5    sorry about that.  All right.  I think we're done.

6    You're good.

7          THE WITNESS:  Okay.

8          MR. SLOSAR:  Thank you, sir.

9          VIDEOGRAPHER:  Okay.  This concludes the

10   deposition.  The time is 7:48.

11          (DEPOSITION CONCLUDED AT 7:49 P.M. (ET))

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 1:20-cv-00047-GNS-HBB     Document 160-6     Filed 10/03/25     Page 356 of 396
The Deposition of BUSTER CANNON, taken on November 08, 2022
PageID #: 1861
355

CERTIFICATE OF REPORTER

COMMONWEALTH OF KENTUCKY AT LARGE


I do hereby certify that the witness in the foregoing

transcript was taken on the date, and at the time and

place set out on the Title page hereof by me after first

being duly sworn to testify the truth, the whole truth,

and nothing but the truth; and that the said matter was

recorded stenographically and mechanically by me and

then reduced to typewritten form under my direction, and

constitutes a true record of the transcript as taken,

all to the best of my skill and ability.  I certify that

I am not a relative or employee of either counsel, and

that I am in no way interested financially, directly or

indirectly, in this action.

*Sandra Ventura*

SANDRA VENTURA

COURT REPORTER/NOTARY

MY COMMISSION EXPIRES ON: 08/15/2025

SUBMITTED ON: 12/14/2022

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

## Exhibits

**Exhibit 1_
CANNON**
69:19,20 84:17
181:10,20
182:2,21 190:6
203:13 234:25
235:8,9 241:9,
10,11,12
253:12,13
302:3 307:10,
25

**Exhibit 3_
CANNON**
244:1,2,3,12

**Exhibit 5_
CANNON**
85:10,11

**Exhibit 6_
CANNON**
88:11,12,16

**Exhibit 7_
CANNON**
90:10,12

**Exhibit 8_
CANNON** 91:4,
5

**Exhibit 9_
CANNON**
91:19,21,22

**Exhibit 10_
CANNON**
111:17

**Exhibit 11_
CANNON**
92:22 111:20,
21

**Exhibit 13_
CANNON**
165:5,7 177:21,
22 190:21
191:11 292:8

**Exhibit 14_
CANNON**
213:1,2,3
215:1,2

**Exhibit 16_
CANNON**
300:12,14

**Exhibit 18_
CANNON**
163:18,25

**Exhibit 19_
CANNON**
163:23 164:11,
25

**Exhibit 20_
CANNON**
213:7,12 214:7
215:14 222:10

**Exhibit 21_
CANNON**
144:24,25

**Exhibit 22_
CANNON**
179:19 180:6,8
182:13 183:12
313:19

**Exhibit 23_
CANNON**
202:11,12
203:6

**Exhibit 24_
CANNON**
37:14,16,20,23
79:21 81:4
84:16 96:19
279:7 311:13
316:4 327:7,8
329:18

**Exhibit 25_
Cannon**
324:16,18

**Exhibit 26_
CANNON**
334:10,13

**Exhibit 27_
CANNON**
106:3,4,20

**Exhibit 28_
CANNON**
335:9,10

**Exhibit 30_
CANNON**

345:18,19

**Exhibit 31_
CANNON**
349:24,25
350:1

**Exhibit 32_
CANNON**
351:15,17

───────

**(**

**(502)** 118:22

───────

**0**

**0035** 289:18
290:14

**0036** 289:18
290:15

**04** 291:9 292:1

**05** 315:19

**06** 242:7

───────

**1**

───────

**1** 69:19,20
84:17 181:10,
20 182:2,21
190:6 202:18
203:13 215:13
234:25 235:8,9
241:10,12
252:15 253:13
302:3 307:10,
25

**10** 92:18 111:17
149:20,21
182:21 220:14
310:17

**100** 274:9
328:14

**103** 215:20,24
216:2,11

**10:35** 9:6

**10:37** 11:16

**10:39** 11:20

**10:57** 25:7

**10th** 285:12
286:1

**11** 92:17,18,22,
24 93:1 111:17,
21 167:4,8
181:16

**11-28** 315:19

**1167** 38:10
96:20

**1184** 38:16,17

**1185** 44:23
45:12

**1186** 311:25
316:20

**1192** 317:3,5

**1195** 320:11

**1197** 321:24

**11:05** 25:11

**11:51** 63:22

**11th** 240:19
280:18 285:7,
25 317:19

**12** 40:4,21
63:11 67:7
70:25 109:12
111:21 167:21
220:14 237:9
270:19 285:11
296:9 298:4,18

**120-CV-0047-
GNS** 9:11

**1203** 81:5

**1204** 38:14

**1205** 323:22

**1210** 38:14

**1223** 116:16
118:12

**1224** 116:16,
21,23 117:11

**1232** 112:17,
19,20

**1233** 279:22,23
280:9

**1234** 279:20

**124** 244:12
249:16

**1244** 111:22

**1247** 285:10

**1252** 112:18

**1282** 327:8,11,
12

**12:05** 64:1

**12th** 17:7,10
19:7,16 21:20
23:24 32:22
33:10 52:3,4
58:11 60:22
66:21 67:2
159:16 166:20
240:20 269:11,
22 286:10
296:12

**13** 165:5,6,7
177:22 190:21,
23,24 191:11,
21 292:8

**130** 130:8
134:1 158:23
161:11 247:6

**135** 252:5

**137** 219:22

**13th** 322:3

**14** 70:16 213:1,
2,3,10 215:2
235:8,9 249:16
296:13

**15** 70:16 99:8,9
129:11,14
130:10 141:8
159:9 307:24,
25 308:5

**15,000** 341:2

**15-minute**
136:2

**16** 253:15,19
300:12,14
309:14 310:17

**17** 296:10 341:1



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 358 of 396
The Deposition of BUSTER CANNON, taken on November 08, 2022
357

**18** 18:14 35:13
163:18,21,22,
25 181:22
182:2 220:6
235:10 262:22
308:1,5

**18th** 167:22
280:19 281:16
285:7,25

**19** 163:18,21,23
164:11,25

**193** 222:11

**1980** 141:21
142:16

**1987** 93:5
127:25

**1989** 93:5

**1990** 42:22
128:6,10,18,22
149:19

**1990s** 164:8

**1992** 163:22

**1993** 203:24
313:23

**1994** 93:9,15
351:20

**1996** 88:17,25
196:11

**1:16** 119:24

**1st** 39:13 42:22
112:21 113:3
335:12 337:21
344:2

---
**2**
---

**20** 131:25
139:25 182:21
213:7,12,16
214:7 215:14
222:10 267:8
275:23 282:21
306:18 334:2
348:3

**200** 190:7
238:7,13

**2000** 52:3
90:13,15 91:11
93:23 145:13
146:4 215:6
220:6 282:1
301:12

**2001** 163:23
164:12,15
215:20 216:15

**2002** 23:6
31:14,17,21,24
32:5,8,14 65:22
132:1 135:18
165:1 167:17,
22 175:21
176:25 190:11
204:24 205:7,
19 206:3,13
207:2,12,25
208:18 210:11
238:8 280:18,
19 281:16
285:7,12 315:2
326:21 327:15
328:5

**2003** 110:23
143:22 146:14
147:8 165:10
326:1 346:7,13
347:4 348:17

**2004** 15:23
16:7,12,17
17:7,10,18,21
18:7 19:7,16
20:5,8,10,14
21:20 23:24
30:5 32:8,14,22
33:10 39:10,13
40:4,21,23 44:3
47:24 48:10,13
49:2,6,12 52:4
58:11 59:2
60:12,22 63:5,
11 64:15,24
65:1,6,11 66:4,
8,10,21 67:2,7
68:25 69:16
93:24 94:2,9,
13,17 95:17
96:8 98:18 99:9
101:8 103:2
109:12 110:23
112:8 116:19
117:3 119:1,12

**2005** 42:19

**122**:22 125:12
133:10,13
134:4 141:3,5
143:7 148:9
149:4,13,22
150:11,14
151:17,21,23
153:11,15
154:8,12,25
155:7,9,19
156:1,5,11,14
157:3,5,10,17,
22 158:1 159:4,
16 161:6,19
162:7 163:11,
16 165:19,24
166:3,9,16,21
172:20 181:3
184:10,12,19
185:7 187:8,11
191:23 192:4,9,
16,21 193:1
194:5,9 195:1,8
196:10,16,23
197:6 198:24
199:2 205:10,
22 206:6,17
207:6,16 208:4,
21 210:14,16,
18,20 211:5
214:16,19
215:6 220:15
225:8 226:11
227:7 229:8,25
231:6 232:4,20
233:21 234:1,
10 237:6,9
238:15,17
240:19 256:3,
20,24 269:22
270:19 271:21,
23,24 272:22
274:8 286:10
291:7,19 296:9,
12 298:4,18
299:24 300:7
301:12 305:11
319:6 326:13,
14,23 329:7
335:12 337:21,
24 341:23
342:14,21
349:15,20
351:1 352:5,10

**81**:22 97:12
112:12,21
113:3 128:11,
14,22,23 129:7,
10,16,23 130:4,
11,15,24
131:14 132:21
177:6 214:16
218:13 224:9,
15 312:4
317:19 318:17
320:16 322:3,
22,24 324:2
334:21 335:1
344:2

**2006** 42:20
50:9,23 52:23
53:3 54:16
55:16,22 56:5,
10 57:4 64:3,14
65:22 71:14
72:1 73:11 74:8
75:14 78:7
79:25 104:13
106:18 111:23
120:23 143:23
181:8 183:10
190:5,12
194:20 197:5,7
218:9 219:5
224:20 235:2
238:8 245:1
252:12 254:8
261:5 292:4
301:24 307:21
308:22 331:15
333:13

**2008** 85:7

**2009** 91:20,25

**2010** 28:3,8
29:11 132:16

**2012** 269:11

**2015** 93:19
113:10 128:1,6,
10,16,18 129:1,
24

**2022** 9:5 11:20
25:11 64:1
120:3 163:8
203:3 222:7
259:24 296:6
334:9

**20s** 338:9

**21** 144:24,25
145:1

**22** 179:19,22,23
180:6,8 182:13
183:12 191:22
202:14,16
313:19

**225** 217:7

**22nd** 322:22,24

**23** 202:11,12
203:6 249:16
253:20 313:20

**23rd** 326:1

**24** 37:14,16,20,
23 70:5 79:21
81:4 84:16,18,
19,20 88:13
94:22 95:5
96:7,19 97:23
98:2 99:16
134:18 181:16
279:7,11,19
311:13,18
316:4 327:8,11
329:18

**24-hour** 94:19

**244** 215:13

**25** 128:8,12
241:10,11
253:15,19
262:23 324:16,
18,24 327:12

**26** 261:6 262:22
334:10,13

**27** 106:3,4,20
320:16 348:17

**28** 93:22 130:16
312:4 335:9,10

**283** 325:19,21,
22

**29** 70:12,13,15
344:1

**2:02** 120:3

**2:56** 163:5

**2nd** 351:1


Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 359 of 396
The Deposition of BUSTER CANNON, taken on November 08, 2022
358

**3**

**3** 181:22 182:2
244:1,3,12

**30** 70:10 93:20
98:18 112:22
113:5 128:6
130:16,17
146:16,18
267:8 275:23
345:18,19

**30th** 42:19
113:10

**31** 349:24
350:1,3,4,6

**3169** 107:18
108:24

**3170** 110:16

**3171** 110:22

**3172** 110:7,14

**31st** 93:5

**32** 351:15,17

**321** 312:22

**33** 181:21 182:2
280:10,12

**34** 84:19

**3494** 289:17
290:9

**3495** 289:17
290:10

**37** 70:24 290:6

**38** 70:23 290:7,
10,11,12

**39** 290:12

**390** 350:12,14

**3:00** 171:13

**3:06** 163:9

**4**

**4** 110:23
183:13,23,24
190:8 252:16

341:23 342:14

**4,000** 217:10

**40** 73:25 120:21
139:18

**40-hour** 120:13
121:3,6 177:23,
24

**400** 332:24
333:8

**45** 255:6 292:10

**462** 345:25

**465** 347:1

**47** 131:25

**48** 74:2 94:20
96:7 134:12,13

**4:02** 202:24

**4:03** 203:3

**4:29** 222:3

**4:43** 222:7

**5**

**5** 85:10,11

**50** 44:9,14,15
53:25 125:11
133:9 138:23
139:8,15,23
189:9 274:11

**534** 347:25
348:7

**535-5950**
118:23

**536** 349:3

**58** 134:20

**587** 344:4

**5:00** 95:20
97:20 98:7

**5:29** 259:20

**5:30** 95:20
97:20 98:8

**5:32** 259:24

**6**

**6** 88:11,12,16

**60** 125:11
139:18

**678** 344:8

**682** 344:18

**684** 335:15

**689** 336:3,9
338:2

**69** 97:5

**690** 336:6

**692** 339:17

**694** 341:5

**696** 341:23

**697** 342:1

**6:14** 296:2

**6:29** 296:6

**7**

**7** 90:10,12
252:5 309:13

**705** 337:11

**72** 110:17
134:20

**7:00** 95:19
97:20 98:7

**7:18** 334:5

**7:25** 334:9

**7:30** 95:20
97:20 98:8
171:21

**7:48** 354:10

**7:49** 354:11

**7th** 318:17
324:2

**8**

**8** 91:4,5 203:3

261:7

**84** 142:16

**85** 141:21
142:13

**87** 142:13

**88** 145:11,14

**8th** 9:5 11:20
25:11 64:1
120:3 163:8
222:7 259:24
296:6 334:9

**9**

**9** 91:19,21,22
182:11 347:4

**90** 134:1 140:4
158:23 161:11
208:14 247:6

**90s** 64:12
120:25

**91** 93:10,13

**91s** 155:7

**92** 93:13

**921** 156:17,19
157:6,18,23
158:5 161:19
162:20 164:7
166:20 196:11
199:11 200:4

**921s** 64:4,7,11,
18 65:2,7
156:23 157:2,
11 158:1,10,11,
16,24 159:12
160:2,11,16,19,
23 162:10
163:13,22,24
164:3,12
165:22 166:1,5,
10 185:6 199:8,
14 205:10,22
206:6,17 207:5,
16 208:3,21
210:14 217:24

**926** 351:18

**96** 88:24 130:7

**9th** 117:2

**A**

**a.m.** 9:6

**abbreviate**
60:14

**ability** 36:3
147:20 148:1
186:5 308:7
332:24 353:8

**Absolutely**
224:16 239:4
261:24 264:19
271:19 284:19
328:25

**academies**
185:14,21
296:21

**academy**
22:20,22 23:1,
6,7,19 31:9,17
105:18 107:2
108:14 120:7,9,
11 150:3 170:9
175:22 200:11,
21 204:24
205:7,19 206:3,
14 207:2,13,25
208:18 210:11
270:1 279:2
280:1 285:20
286:5 296:16,
18,22 315:2,4
326:21 327:14

**accelerant**
26:24 30:7 49:9
62:3 65:13
66:14 68:19
69:10 74:14,25
82:8 111:5
165:1 167:25
180:19 182:4,7,
14 184:22
197:2 200:1
205:13,25
206:1,10,21
207:18 208:12
215:5 235:24
258:17 301:8
309:16

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

accelerant-
187:24

accelerant-
detecting
191:25 192:5

accelerants
26:5 29:12
43:19,22 48:4
50:1,25 51:7
82:15 174:20
183:15 184:17
209:2 210:3
234:15,22
236:8,12 239:8
259:6 260:14,
19 280:25
281:4 288:2
293:10 300:5
308:8 311:11
313:4,12
316:25 318:2
322:14 323:8
324:9 327:4
344:23 345:7,
10 348:23
350:22,23
352:2

acceptable
270:2

accepted
208:16

access 39:9
50:8 100:24
102:24 156:21
232:15

accident 35:19
332:1

accidental
44:11 248:22

accompanied
261:8

accompanies
182:6

accuracy
47:21 48:7
52:20 55:5,15
56:3,18 57:9,16
84:6 148:14
315:11,13
320:6 321:14

accurate 32:18
49:21 54:10
72:18 190:8
233:12 311:5
353:10,13

accurately
80:9

accused
85:22,25 86:21

accusing
85:21

accustomed
352:11

acknowledge
255:18

act 269:18

acting 269:6,
15 276:11

action 34:6,10
68:4 148:23

actions 67:8
68:1 232:13
237:10 238:12
298:18

actively 102:9,
25

activities 20:4
117:18

activity 39:7,
18 40:22 44:3,
17 45:2 46:18
79:14 321:25
325:13

actual 209:12
210:9,22 211:2
314:7

addition
127:19 163:24
164:12 172:23
242:7

additional
32:7 145:18

Additionally
207:8

address
312:20

adjacent
150:25

admissible
232:17

admit 341:15

adult 130:18
268:3

advantage
231:13

advice 211:21
311:10

advise 125:25

advised 147:9
166:4

aerosol 168:8,
11,15,20,24
169:8,11,23,25
340:15,21
342:7,17

affect 257:12

affirm 12:16

afraid 232:1

AFT 22:21

agencies
139:20

agency 46:22,
24 47:6 55:10
115:14 117:12,
23 142:20
189:17 239:10
312:11 318:23
320:19 322:5

agree 14:25
15:4,22 16:6,
11,17 44:16
45:25 47:20
48:6 50:22
61:20 62:8
83:11,19 84:5
103:2 117:17
118:8 119:10,
16 136:20
139:2 154:24
155:9 157:9,25
159:24 160:12,
15 162:7,17,19
168:7 169:7,22
172:17,20

182:12 192:2,3,
9,19,20,24
198:1,7,13,16,
20 208:10
223:18,20,22
224:7 225:5
226:1,23 227:7,
9,15,16,20
228:5,9,15,22
229:7,11,24
230:3,10 231:5,
17 232:2,18
233:6,16
248:24 255:22
256:13,20,24
257:3 266:6
269:17 276:14
278:24 283:9,
12 284:18,19,
20 285:9 286:3,
8 299:24
314:25 318:10
320:4 321:12,
22 322:16
323:17 324:12
326:13 329:11
333:16

agreeable
114:20 194:19

agreeing
122:1 127:16
149:1 299:17
333:2,3,7

agreement
41:6 114:8
139:8 178:13
190:2

ahead 15:10
95:13 161:5
246:7 282:8

aid 218:6

aids 36:2

air 131:19
154:4,5

Air-pak 131:18

Alan 10:9
52:16

alarm 348:2

alert 19:7 22:6
24:19 26:17

30:18,23 32:2
50:1 62:15
63:10,14 65:2
66:5 69:14
73:15,18 74:4,
13 78:18 110:2,
5 111:9 126:5
168:16,23
169:2,15,21
170:2,8,13
172:14,25
174:3,9 182:24,
25 185:15
187:3,13
192:11,18,22
193:4 194:11,
13 195:15
196:6,7,12,17,
18 198:3,9,13,
17,20 199:3,8
200:25 207:8,
10 212:5,6
236:25 237:15,
20,24 258:17
265:3 266:12,
14 267:3 268:9
270:16 274:15
282:11 286:6
288:8 292:14
293:11 294:6
295:6 299:25
300:1,6 301:1
308:20,23
309:8,17,25
310:19,22
311:3 319:11,
16 321:3,14
337:2,7 344:22
345:7

alerted 26:9
50:25 51:8
78:13 185:24
186:6 189:2
195:12 201:19,
25 257:17
276:24,25
278:1 283:13
292:20 299:21
300:20 301:9
302:5 303:24
319:18 321:4

alerting 78:15,
22 173:8 206:9

alertness

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

148:10

**alerts** 19:17
26:4,17 29:15,
20 47:22 48:8
49:21 51:16
52:20 54:10
55:6,15 56:4,18
57:9,17 62:9
64:19 72:18
73:10,22 74:25
75:12 77:23
78:19 80:2 81:7
82:4 83:21 84:3
101:23 103:4,5
104:3 111:8
148:6,14 171:3
175:2 186:10,
14 194:22
200:12,14,15
201:4,7,10,17,
20 208:10
211:1,11,22
221:22 257:12
268:17 269:7
270:9,21 272:8,
12 273:2,6
274:23 276:5
282:15 288:6
292:5 293:3
294:19,20
295:10,16
297:8 299:4
302:4,9 304:6
305:1 306:5
307:20 309:23
311:4,10 315:7,
11 318:12
320:6 322:18
323:2,18
324:14 326:15
327:4 328:7,15
329:4,9 330:3
333:21 338:17,
23 339:3,7
343:1

**alive** 108:18
177:4

**allegation**
61:22

**allegations**
61:14 85:18
86:4 91:24

**allegedly**

268:21 288:5

**allowed** 96:2
100:16,17,19,
24 127:5
266:10

**alter** 233:3

**altercation**
246:17

**Amanda** 9:3

**Amber** 10:10
73:6 252:6
353:2,3

**amendment**
196:11

**amount** 65:21
131:6

**amounts** 168:1

**Amy** 12:8 37:5

**analysis** 43:18
48:21 49:3 62:3
65:3 149:10,13
150:1 153:15,
19 158:25
162:4,9 166:6
175:17 183:1
184:16 185:24
187:12 196:13,
18 197:23
198:17 199:3
207:9,21
299:22,25
300:7 352:6

**analyst** 79:7
309:2 346:8

**analysts**
211:10

**Analyze**
229:16

**analyzed**
175:15

**analyzing**
346:17

**annual** 46:12
148:2 158:14
177:22,24
178:25

**annually**
138:24,25

**answers** 25:24
183:10 242:4

**Anticipate**
229:14

**antifreeze**
336:25

**anxiety** 283:17

**anymore**
24:10 152:10

**anytime**
221:17 273:14

**apartment**
344:23

**apologize**
22:14 113:16
216:1 219:23
307:4 347:18,
24

**apparently**
263:10 346:6

**appeared**
267:10 283:16

**appearing**
9:25 10:4,8,10
11:22 12:6,8

**appears** 39:6
46:7 127:23
165:16 167:17,
21 177:21
203:23 221:2
222:21 226:20
335:11 344:10

**appliances**
228:1

**application**
143:3 176:8
177:16

**applied** 166:13
228:6 229:8,25
231:6,18
232:10,19
233:8,17

**applies** 200:5

**apply** 142:19

**appointed**
111:23

**appointee's**
117:9,13

**appointment**
116:21

**appraisal**
145:12 146:13,
14

**appraisals**
145:7

**apprised**
200:4

**approach**
24:15 26:16
29:5 186:18

**approached**
87:14

**approximately**
17:19,22 18:8,
15 27:12 97:13
125:11 128:8
138:23 188:16
189:5,7,9 190:7
274:9 351:1

**April** 42:20
220:6

**area** 27:3 28:4,
20,23 29:8,11
30:6 82:6 84:25
86:9 87:14
136:19 151:11
165:14 170:16,
17,18 174:4
200:19 236:2
277:16,17
293:3 308:12
309:16 310:22
319:18 321:3

**areas** 26:23,25
28:16 57:21
59:21 96:24
174:19 227:25
249:6,21
250:10 276:21,
25 277:3 278:5,
6,10 292:20
303:23

**argue** 169:10

**Arnett** 10:10
61:23 62:7,13
73:1,4 152:20
166:25 204:17
251:12,15,25
252:3,8 304:9
307:11 314:17
353:3

**arranged**
303:16

**arrangement**
189:22

**arrest** 86:2

**arrived** 140:11

**arriving** 258:9

**arson** 42:10
43:10 60:25
61:22 74:5,14,
20 84:15
121:23 125:14
144:18 146:23,
24,25 147:11,
15,20 148:1
168:11 192:23
215:21 217:5
228:19 232:16
245:18 246:10
248:16 272:2
301:17 316:9
331:21 337:16
338:25 339:8
340:18 342:7,
17 343:4 345:6,
23 346:9,17
347:7 348:13

**arsons** 41:25

**article** 339:18,
20,23,24 340:1

**ascertain** 48:7

**ash** 223:12

**aspect** 145:24
310:18

**assert** 206:20

**assessing**
315:6 330:2

**asset** 146:25
147:10



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 362 of 396
The Deposition of BUSTER CANNON, taken on November 08, 2022
Page 1867
361

assist 28:22
60:20 127:6
136:11 184:15
192:1,6 207:19
238:17 287:5,
16 315:6 346:8

assistance
35:25 36:1
46:25 268:11
270:9

assistant
147:7,8 204:12

assisted 62:4
260:18

assisting
227:13

association
197:3 214:13,
19

assume 182:6
200:7

assumed
176:19

assumption
112:17

assuredly
48:13

ATF 20:10,14,
21 21:1,10,19,
25 23:12 30:13
31:9,13 33:13,
16 36:11,23
37:10,24 39:5
40:24 41:3,6
44:2,17 45:8
46:11 47:8,12,
14 69:4,6,8,13,
15 72:5,11
78:14 79:10
80:1,9,18 82:23
83:23 84:5
95:9,14 104:4
110:18 116:8
117:19,23,24
118:1 124:2,19
125:10 137:11
139:11,22
140:1 148:16
167:15 170:12
174:10,18,22

175:2 176:2,7,
9,11 177:17,18
178:11,21
179:3 180:13
181:3 182:7,18
184:14,20
185:5,14,20
188:8,9 189:16
191:14 195:9
196:16 200:10,
20 202:7
203:13,21
204:12,24
205:7,19 206:3,
13 207:2,13,25
208:18 209:9
210:6,11
219:17,20
221:8,11
222:23 237:8
239:19 258:24
265:1 270:1
275:5 279:2
280:5 281:8,17
285:19 286:5
294:23 295:9
296:18,22
297:1,2,17
298:6,9,13
313:16,21,25
314:3 315:2,4,
22 316:4 322:5
326:3

ATF's 184:9
313:19

attend 120:6,
11

attended 120:9

attention 46:1
181:21 250:11
278:18

attire 107:7,8

attorney 14:15
54:13,19,20
55:22 190:16
204:13 219:1
224:19 266:23,
24 298:20
299:15 305:20
306:9 343:13,
21 345:15

attorneys

57:25 214:23
215:8,15
222:15 228:2

audio 10:23,24
11:23 13:14

August 317:19
318:17

authority
118:17

authorization
116:17 119:11

authorized
100:4

automatically
49:10,16 51:22
52:19 56:15

avenues 231:9

Avoid 226:20

aware 55:7,17
57:11 62:1
65:15 194:20
196:11,16
236:2 266:20
298:15 300:18
326:14 329:7
345:9

awhile 61:13
159:10

———————

B

baby 138:3
175:9 283:18

back 11:18
16:17 19:1
24:6,11,12,13,
16 25:2,9 26:12
31:14 47:24
49:20 53:8,15
57:1 58:4 59:2,
13 63:24 64:12
71:9,14 75:8,23
81:4 82:20
83:12,13 84:15
87:19,24 92:8
93:15 94:21,23
95:3 96:19
102:5,19
104:10 107:5

109:15 111:13,
16 118:12
120:1 124:25
126:3 129:13,
14,15,21
135:23 138:14,
21 141:24
153:11 162:20
163:7 174:10
175:6 181:8
183:10 190:25
197:5,7 203:1,
18 208:23
215:25 217:4
222:5 226:21
229:18 237:2,
17 239:18
244:22 246:13
252:11,20
254:8 258:16
259:22 261:5
262:10 265:7
267:11,12,13,
18 268:13
271:5,6,10,11,
12,14 272:14,
17 273:3,12,15
274:19,21,24,
25 275:8,24
276:1,7,18
277:8,20 278:9
279:9 282:22
286:17 289:2
290:14 296:4
304:24 307:20
308:13,21
310:19 311:9,
17 312:19
316:1,5 321:17
325:15 326:9
330:7,9,15
332:8,18 334:7
337:1,5,9,10
338:17

background
256:10 333:17

backup 107:22

bad 81:11
104:6 112:17
200:20 221:16

bag 336:24

banking
151:10

barely 77:14

Barry 9:22 13:9
36:20 88:3
336:17 348:4

based 29:10
69:1 71:1
152:24 153:10
154:24 155:10
156:10 165:21
170:8,10
191:23 192:3,
15,20,25 198:2,
9 205:2 217:23
221:20 245:12
263:11 269:13
309:6 323:19

basic 180:18,
23 182:13
199:14

basically
86:20 87:16
88:14 90:9
95:6,7 134:20
152:13 176:18
212:21 215:8
243:16 249:25
261:12 265:17
344:7

basics 121:14

basis 32:13
46:12 65:12
68:21 101:13
131:7 183:17
188:13,24
198:21 205:14
206:23 332:23
333:12,13,20

Bates 36:21
38:12,13 81:6
190:25 215:13
292:10 311:22
344:3

bathroom
100:2 103:17

battalion
140:11,13
143:13 144:4

bear 150:13
308:4



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 363 of 396
The Deposition of BUSTER CAMPBELL, taken on November 08, 2022
PageID 1868
362

Beaver 308:11 310:18

bed 24:8 25:1 28:6 265:6 267:9 283:19

bedroom 283:16

began 116:19 167:21 221:8 335:11 337:20 341:7

begin 336:10

beginning 223:10 235:10 261:7 307:25 308:5 309:13 310:17

begins 151:5 217:4

behalf 9:22 10:6,11,24 11:22 81:21 117:18,19 124:2,5 161:7

behavior 158:3 257:24

behold 86:12

belief 66:16 68:17 254:15 255:24 256:1 344:20 345:6

believed 26:23 75:23 162:2 230:18 264:4 293:9 338:25

benchmark 274:11

benchmarks 46:14

bend 104:7 277:10

benefit 178:19

benefits 114:3

bent 277:2 278:5

Berkley 46:2

bet 233:4

bias 257:21

bible 166:7

bid 178:1

big 91:19 149:14 170:18 174:4,6

biggest 78:12

Bill 10:7

binder 180:4 244:14

bit 13:1 26:1 137:22 149:14 153:6 167:3 175:20 191:1 202:18 211:16 241:23,24,25 251:20 328:13 329:11 330:7

bite 277:18

black 290:12, 13

blank 82:12 318:3,11 321:18 322:14, 17 323:11 324:10

blind 208:16

blow 151:13

blue 338:9

boards 193:12, 13,20,21

Bob 175:25 176:6

Bobby 93:9,14 123:1

bodies 283:7

body 25:1 283:13

bone 101:5,6

bones 100:24

Bonnie 238:18 258:2

Border 62:25

born 220:5

botched 353:13

bottom 38:6 146:2,16 151:5, 8 193:17 204:3 217:7 222:11 225:1 226:2 253:18 279:21 281:7 291:6,8, 12 307:25 311:21 325:19 328:8 336:10 338:2 349:10 351:18

bounds 232:12,17

Bowling 9:11 10:5 308:12

box 316:24,25 318:10 319:22 321:9 322:12

boy 249:22

branch 46:8,10

break 13:23 14:3,8 24:12 25:5,25 63:19, 20 106:10 119:20 163:1 193:2 295:24, 25 334:1

breakfast 58:13,23 61:2 136:24 137:19 138:9,18 230:15 241:4, 23 242:12,14 243:4,19 247:4 248:9 249:7 250:7,17,24 252:21 253:7 254:11,23 255:2,4,23 256:14 258:1 274:13 286:23 288:17

breaking 10:20,21 13:15 106:19

breathing 131:12 132:4

briefing 137:4 195:18,23 236:10

bring 96:2 172:4 190:4 235:20,23 268:20 270:8, 11 271:9,12 273:3,14 337:1

bringing 271:5

broke 87:19

broken 137:8 235:19 236:21

Brooks 91:10

brother's 344:25

brought 24:12 101:19 147:19, 22 159:22 234:12 236:13, 25 239:2,5,7 249:8 255:13, 14 260:18,21 262:17 270:5 271:9 273:11 274:19,21 275:24

Bryan 147:7

buddy 176:1

build 232:23

building 151:1, 2,3 263:3 338:8

built 208:15

bullet 87:24

bumpy 106:6

bunked 105:22

Burchfield 91:10

buried 223:11

burn 154:5,6,7 155:19 156:2 225:2 226:2 250:22 252:4 253:25 263:15,

25 278:18 341:2

burned 249:6 263:20 336:21

burnt 111:5 249:22

Buster 9:7,15, 22 11:19 15:10 25:10 27:21 35:1 54:12 56:2 63:25 70:1 120:2 145:20, 22 146:22,25 163:8 203:2 222:6 259:23 296:5 334:8

busy 126:6

butt 201:21

buyer 149:25

buying 90:2 344:25

bystanders 232:15

─────────

C

CADA 197:3,5, 10,16

CADA's 197:20

calibrate 268:15 270:3,8, 11 271:17 273:3,13

calibrated 258:10,13 265:24 268:12 269:18,19 271:15,21 318:7 319:14 321:2 337:2 338:14

calibrating 269:23

calibration 258:18 267:17 337:10

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 364 of 396
The Deposition of BUSTER CANNON, taken on November 08, 2022
PageID #: 1869
363

**call** 11:13
38:13 47:9,11,
15 58:5,16,22
70:1 75:19,25
76:14,16 79:18
127:9 136:7
147:12 158:9
171:5,13,15
211:14,15
212:10,12,17,
24 227:22
238:23 239:10,
12,20,23 240:5,
6,15,24 268:8
305:6 308:16,
17 309:4

**called** 58:18,19
75:10 95:9
112:23 116:9,
10 124:1,18
125:13,17
137:4 178:16
179:6 182:7
193:20 201:6
238:17 240:15
301:1 344:13

**calling** 88:3
305:15

**calls** 75:8

**camera** 9:17,
20

**Campbell** 12:6
82:16 83:4
320:20

**camper** 87:14

**canine** 16:11
23:16 31:21,25
41:22 47:17
48:3 64:8,21
65:2,7,12 66:5,
12 68:18 69:9
74:21 103:5
135:14 159:21
165:2 167:15,
25 168:16
169:2,13,14,21
170:7,12 176:2
177:11 178:12
180:19 182:4,
14,24,25
184:21 187:12,
25 192:11,22

193:3 194:6,10
195:15 196:12
197:2 198:3,8,
9,13,16 199:3,
25 205:25
207:19,23
208:10,13
209:1,6,7,9
210:2,3,4,6,17
215:5 227:13
233:22 234:2,
18 280:13
296:19 299:21
312:24 313:2,
11 314:1,2,4,7
317:23 318:1
319:10,23
320:1 321:3,4,
6,10 322:8,13
323:7 324:4,8
328:22 329:3
338:11 344:22
345:7 349:1

**canine's**
122:15 183:14
184:14 192:17
206:20 208:14
333:8

**canine-
selected**
209:12 210:9

**canines** 46:7,
12 182:8 187:9,
17 191:25
192:5 194:17
200:5

**canister**
293:23 294:9

**canisters**
175:14 294:1,6,
15 295:12

**Cannon** 9:7,
15,17,23 10:14
11:19 12:23
13:21 14:25
19:3 23:5
25:10,13 35:1,
24 37:11,22
38:18 39:2,16
57:23 63:25
64:3 69:23
70:10 106:5

107:18 117:12
118:20 120:2,5
145:10 146:16,
18 161:6 163:8,
11,22 164:1
165:9 167:5
203:2,5 213:14
214:22 215:13
216:7 217:17
222:6,9 230:9
243:3 252:20
259:23 278:24
289:16,17
290:9 292:9
296:5,8 311:14,
20 325:19,21
334:8,12
335:15 339:17
341:4,22 344:9
349:3 353:8

**cans** 111:4
278:2 293:24
294:12

**cap** 221:11

**capacities**
10:3

**capacity** 48:13
50:5 140:16
187:19,21
189:20

**captain** 140:9
143:7

**car** 87:23 106:6
172:8 255:9
258:11 265:20
337:1,10
338:14,17

**care** 99:25
108:9

**career** 133:12
161:23 164:4
217:25 222:22
270:19

**careers** 135:5

**Carmel** 118:20

**carpet** 154:1
194:2 336:20
337:6

**cars** 329:14

**case** 9:11
12:17 13:7,8
15:15 17:10
18:5,9 19:25
20:4,22,25
21:10 36:11
51:11 53:12
58:14,24 60:9
61:3,12,22
62:10 71:2
85:13 87:10
88:4,8 91:24
117:6 133:18
141:3,5 154:22
160:11 206:10
229:21 230:25
232:23 239:20
241:24 242:3,
15 243:5,15,21
253:23 272:2
273:17 297:10,
22 298:20,24
300:17 308:11
320:22,24
332:8 343:13,
21 345:15
348:19 349:16

**cases** 84:7
143:14,16
144:6 146:25
147:11,15,20
148:2 301:17
346:17

**cast** 72:18

**catch** 13:12
216:10

**caught** 23:25
169:19 341:17

**caused** 44:12
141:22

**cautious**
231:16

**ceilings**
152:14

**Center** 10:7

**certificate**
165:10 167:5,
11,14,16

**certificates**
222:17

**certification**
209:8 210:5
214:14 314:3

**certified** 46:12

**chain** 86:18

**chair** 342:8,9

**challenge**
223:14

**chance** 217:19
340:5,10

**change** 17:1,2,
5 33:2,19 76:3,
22 171:25
175:12 212:18

**changed** 18:21
22:2 32:22
265:7 275:20

**changing** 77:5

**charcoal**
195:5,20
205:15

**charge** 146:23
227:19 230:11
231:18 232:3,
19 233:7,17

**charged** 67:9
299:2 331:9,20

**charges** 16:23
66:23 67:5,21
68:2,8 238:1
330:20 331:7

**Charles** 9:14
305:21

**Charlie** 36:20
163:21 180:1
181:14 217:8
226:8 289:12
290:4 311:15
325:2 336:16
342:3 352:17

**charred**
223:12

**chart** 295:2

**cheat** 217:20
218:3

**check** 37:5

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 365 of 396
The Deposition of BUSTER CARROLL, taken on November 08, 2022

364

229:1,20
257:18 337:6
350:22

**checked** 87:20
336:21

**checking**
348:22

**chemical**
168:19 169:7
193:3,21
340:24

**chemicals**
259:6

**chemist**
168:19 193:23
308:13,17
310:20

**chemistry**
334:24

**chewing** 133:1

**chief** 89:13
90:2,13 123:3,
12 140:11,13
143:13 144:5,
11 147:7,8
175:24 177:10,
14

**child** 103:9,15
130:3,14
268:25 275:19

**Childers** 10:12

**children**
130:11 286:24

**choice** 82:18

**choppy** 11:8

**chose** 177:18

**Chris** 10:8
245:22 251:10
259:19 353:5

**Christmas**
134:9

**cigarette**
339:15

**Cincinnati**
10:1 165:14

**circle** 82:21

**circles** 292:23

**Circuit** 167:4,
21 191:11
289:18 290:14

**circumstance**
268:6,14

**circumstance
s** 282:22

**cities** 178:1

**citizens** 115:7

**city** 9:8,15 10:1
41:15 88:23
91:20 93:8
98:20 108:5
187:22

**claim** 298:5

**Clarence**
341:24

**clarify** 54:25

**class** 44:9
107:11 110:21,
24 177:24
219:17 334:22

**classes** 154:17

**cleaned**
235:19

**cleaning**
226:10

**clear** 53:24
186:7 250:9
289:13

**Clearville**
312:22

**climb** 231:14

**climbed** 24:8

**clip** 90:18

**clips** 244:14

**clock** 179:17

**close** 28:6 77:8
99:1,2,5 106:13
128:7 133:15
149:20 181:15
190:1 193:14

211:13,15
212:10,16,17
326:17

**closed** 229:13

**clothes** 171:25

**clothing** 96:24

**clue** 197:8

**Cole** 9:14,21
10:20,22 11:3
12:2 18:25
21:6,12 33:4
35:4 36:25
37:12 44:20
51:18,24 61:24
62:11 72:25
78:2 80:4 84:19
114:11,16,21,
24 115:1
119:22 179:20,
22 181:12
183:21,25
184:3,25
185:22 186:16
196:22,25
204:14 209:14,
17,20 213:9
215:10 216:2,6,
10 217:12,14
219:8 225:10,
14,20 238:24
242:18,21
257:13 272:3
278:11 279:10
284:24 289:11,
13,15 290:9,13
291:6,10,18
295:24 296:24
300:3 301:5
309:11 314:10,
15 315:8,16
316:13 325:4
328:20 330:23,
25 335:25
343:23 345:8
346:14 349:22
352:8,14,19
353:17,21,24
354:2

**collect** 297:7

**collected**
175:4 293:5,14
295:12 303:5

**collection**
207:20

**College** 178:4

**Collie** 63:1

**color** 289:20
290:9

**colored** 290:11

**column** 289:23
291:2

**comfortable**
124:21

**commence**
229:18

**comment**
312:15 318:5
321:1

**comments**
146:22 281:7,
10

**commitment**
177:23

**committed**
74:15 248:16
339:1 345:6

**common** 223:4
224:2,3,23
225:12,15,16,
19,20 227:16

**Commonwealt
h** 50:18 54:13,
19 55:22 57:10,
17 190:15
218:25 219:6
224:19 266:23
298:19 299:14
302:24 305:19,
20 306:9 343:8,
12,20 345:15

**Commonwealt
h's** 59:23

**communicate**
124:13 199:6

**communicatio
n** 58:24 126:15
211:9

**communities**
178:17

**community**
115:7 141:18
177:13 179:7

**company**
140:9 176:15

**comparison**
277:22,24
278:1

**compensation**
178:7

**complained**
86:16

**complaint**
61:8,11

**complaints**
115:6 141:13

**complete**
24:21 44:3
229:2 233:12

**completed**
40:19 45:16,22,
24 167:15,17
220:22 277:20
317:10 321:25
322:21 338:13

**completely**
251:17 313:8

**completing**
45:5 46:17

**complied**
166:15

**compounds**
193:3

**computer**
14:12

**conceals**
223:12

**conceivably**
43:11

**concentrating**
263:17,19

**concept**
150:14

**concern** 77:21
211:20 287:10

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 366 of 396
The Deposition of BUSTER CANNON, taken on November 08, 2022
365

concerned
75:20 78:13
265:9 266:4

concerns
77:22 131:6
257:11,23
285:20 286:4,6
328:17

concert 345:1

conclude
206:1

CONCLUDED
354:11

concludes
354:9

conclusion
157:21 199:9
205:14 245:25
264:14 287:9

conclusions
205:2 227:24
229:13 230:4
233:4,13
250:25 252:23
253:8,25 254:1,
16

conditions
36:3

conduct 32:17
35:6 121:17,23
125:13 189:24
344:14

conducted
209:8 210:5
258:25 259:8
260:1 314:3
319:6

conducting
16:8 30:2 34:4
35:2 64:16
162:4,9 226:19
281:22 282:10

confessed
342:16

confession
74:24 309:15,
25 310:9,21
341:20 342:13,
20 343:4

confirm 49:25
50:24 51:7
194:22 212:5
309:10 311:3,9,
11

confirmation
66:6 182:24
195:14 197:22
198:12

confirmed
48:3 49:8 51:17
62:3 65:2 73:22
80:2 81:7,14
82:7,15 183:1
196:12,17
198:17 207:9
294:15 299:21,
25 300:6 301:1,
8 309:24 311:4
313:3,11
316:25 318:2
320:2 321:10
322:13 323:8
324:9

confirming
73:15,18 310:1

confuse 194:6

confused
273:21

confusing
215:25 226:21

confusion
129:6

conject 229:14

conjecture
229:21

Connecticut
209:16,17
210:8 314:11,
14,20

consciously
225:3

considered
34:9 60:11 65:3
183:1 196:13,
18 198:18
199:4 207:9
300:1,8 331:17

consistent
22:19,21
116:18 151:21
165:25 167:22
181:2 184:8
185:5 204:23
205:6,9,18,21
206:2,5,12,16
207:1,4,11,15,
24 208:2,17,20
209:13 210:10,
13 225:7 315:1

constantly
128:20

constitute
340:18

construction
193:13

constructors
209:15

contact 80:7
82:22 83:3,4
125:25 239:19
247:14 301:9
337:8 339:13
344:22 346:16
349:19,20
351:10

contacted
75:20

contacting
352:11

contained
294:9 323:19

container
175:11 336:24

containers
350:23

contaminate
196:4,5

contents 57:24

continuation
139:16

continue
129:23 229:6
330:20 331:6

continued
113:21 120:21

contract 20:8,
10,14,17 44:2
45:8 72:4,9
95:14 139:12,
16,22 140:1
191:14

contractual
40:24 41:2

contradict
208:25 210:1

contrary 68:24

control 71:3
103:10 140:10
228:10 293:5,7,
11 294:10,11

controlled
329:8,12,15

conversation
75:19 77:22
126:7,9 137:19
177:9,20
211:19 212:22,
23 240:23
241:1 243:20
248:14 249:7
250:7 257:10
264:12 274:13
286:24 303:1
306:8

conversations
57:24 58:14
59:8 73:13
75:18

convey 264:3

conveyed
67:3,12 68:5
264:13 286:23

conveying
68:12

convict
331:17,18

conviction
15:1 33:1
337:25

cool 95:12

cooling 228:1

Cooper 261:12

coordinating
346:18

COPD 131:11

copy 37:17
216:24 219:19
284:5 290:18
298:4,5,9
321:21 353:11

corner 38:7
311:22 325:19
349:11

correct 15:7,
13,17,18,20
17:3,4,7,10,14,
16,22,23,25
18:15,18,19,23,
24 19:7,17,18
20:1,2,6,15,19
21:2 22:10,12,
18 24:1 26:3,5,
7,10,24 28:12,
17 29:12,13,15,
16 30:7,18
31:1,14,22
32:8,9,12,14,18
33:15,21 34:21,
22 35:19,20,22,
23 39:10,11
43:19 45:6,10,
23 46:15,16,19,
20 47:7,25
48:1,8,11,12,
16,21 49:4,9,
17,18 50:2,6,
10,15,16,19,20
51:23 52:5,6,8,
9,12,13,20,23
53:14 62:5,6
64:5,6,24 66:6,
7,17,18 67:9,
17,21 68:2,22,
23,25 69:4,6,
10,17 71:23
72:12 73:11
74:6,7,15,21
75:1,12,13,15
80:3,5,19 81:8
82:4,5 83:6
94:11,14
101:23,24
102:11,12
111:25 114:15
116:14 117:7,
21 122:17



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 367 of 396
The Deposition of BUSTER CANNON, taken on November 08, 2022
PageID #: 1872
366

127:21,22
133:23 136:11
141:3,25 148:2,
3 149:16,17
154:10 159:1
160:25 161:8,9,
11,12,20,25
162:1,5,6,22
163:16,17
166:22,23
169:9 172:5,15,
16,19,22
184:23 185:7,
16,17,23
186:11 187:9,
10,14 188:14,
21,22,24,25
189:2,3 192:7,8
193:4 194:23,
24 195:4,17
196:13,21,23
198:18,19,22,
23,25 199:4,5,
15 210:18,19
211:3,4,6,11
221:9,10,12
224:20,21
226:14 230:18
233:24 234:4,5,
12,16,22 236:9,
23 237:3,11,16,
21,22 238:8,10,
13,19,20
240:20,21
241:4,5 242:8,
9,15 243:5,6,9,
10,12,13,15,21,
24 245:5,6,8,18
246:10,11,17,
18,20 247:12,
13,14,15,18,19,
22,24 248:7,11,
12,16 249:7
250:7,8,12,19,
20,22,23 251:1
254:10,12
255:25 258:3
259:2,3,4,9,10,
12 260:3,5,14,
19 261:3
262:13,20
263:16 264:21
266:5,12,13,15
267:3,4 268:7
269:24,25
270:10,16,21

271:6,22
273:13 274:9
276:19,20,22
279:5,6 280:19,
20,22 281:18,
19,22,23 282:5,
6,24 283:4,5
284:2 286:25
287:23,24
288:6,7,9,10,
13,15,16,21,22,
25 290:22,24
292:2,3 293:3,
4,6 294:9,16,
17,25 295:1,2,
3,4,5,7 296:14,
16,18,23,25
297:3,4,8,9,13
298:20,21,24,
25 299:4,15,22,
23 300:2,20,21
301:13 302:18,
19,21 303:2,5,
14 304:10
305:21,22,24
306:9 308:25
311:5,6 312:5,
7,21 315:7,9,15
316:5,6,19,22,
23 317:1,2,17,
18,21,25 318:3,
4,12,13,15,19,
21,22,25 319:2,
3,7,8 320:14,
15,17,18,21
321:15,16
322:1,2,4,10,
11,14,15,18,19,
22,25 323:2,3,
9,10,12,15,16,
21,25 324:3,10,
11,15 326:2,3,
4,7,10,16
329:5,10 331:7,
10,13,18,21
332:25 333:22,
23 335:2,7
337:17,18,21,
22 338:23,24
339:1,2,5,8,9,
23 340:2,3,19,
20,22 341:9,10,
24,25 342:14,
15,18,19,21,22,
24,25 343:1,2,
5,6,9,22 344:12

345:7,9,16,17
346:5,10,11,13,
19,20,24,25
347:8,11,12,21
348:11,12,13,
14,15,16,17,18,
20,21,24,25
349:1,2,12,13,
21,23 350:10,
16,17,19,20,23,
24 351:3,8,9,
13,21,23 352:2,
3,7,9,13 353:18

**corroborate**
233:13

**corroboration**
208:13 209:12
210:9 211:2
314:7

**couch** 154:3

**counsel** 9:12
57:10,17 219:1
224:19 310:6
343:9 345:16
352:20 353:11

**count** 135:12
174:3 228:23

**country** 125:13

**county** 9:23,24
10:6,7 13:8
15:16 41:13,16,
18,19,20,21
42:2,9,12,25
43:16 48:14,18
55:18 56:9,16,
22 57:14 74:18
82:16 83:5
92:15,23,24
93:3,17,25
94:3,7,10 98:14
99:2 111:20,24
112:13,25
114:2 115:5,12,
16 117:10,14,
20 118:10
119:7,12 120:6
122:21 123:23
127:1,7,19,24
178:8,20 179:8
268:3 320:20
346:23 351:23

**County's**
189:23

**couple** 59:20
84:24 150:7
161:14 162:25
209:4 217:3
327:18 341:4

**court** 9:4,6,10
10:17 11:1,25
12:13,15,20
159:6 167:4
232:17 289:15
304:16 309:1,7,
22 310:6 311:2
332:11 333:20
353:19

**cover** 190:4
201:20

**covered**
116:10

**cow** 102:17

**cracks** 96:24

**create** 20:3
21:4 299:2
335:7

**created** 19:25
20:25 21:10
67:23 218:9
220:25 299:9,
10 323:24
324:1

**creating** 38:23
327:4

**credibility**
176:12 208:15
257:12

**credit** 218:4

**crime** 15:25
67:9 232:16
305:17 331:10

**criminal** 16:23
41:22,23 48:20
50:9 56:21 57:5
66:23 67:21
68:8 78:7 80:1
122:8 218:10
219:1 224:12
237:21 245:2
304:21 329:22

**critical** 15:24
16:7,12 62:10
83:10,20
159:25 162:3
187:12 230:5

**critiques**
282:3

**cue** 101:6

**cueing** 282:10

**cues** 31:11,22,
25 278:25
279:4 281:12,
18 283:25
284:17 285:21
286:6

**cup** 102:4,5,8

**cups** 221:3,4,
12,15

**curious** 73:19,
20,21 75:9
125:6 126:5
211:14

**current** 166:1

**curtain** 154:3

**curtains**
153:25

**cuts** 10:23,24
13:14

————————

**D**

**daggone** 91:12

**daily** 32:13
101:7,13
188:12,24
210:21 221:22
315:12

**daisy** 86:17
97:4 111:1

**Dam** 308:11
310:18

**damage**
263:16,24
278:19

**damages**
114:9,14 250:1

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 368 of 396
The Deposition of BUSTER CANNON, taken on November 08, 2022
Page ID #: 1873
367

danger 131:20

dangerous
256:12

dark 110:9

data 44:18
47:21 81:6
83:19 84:3
148:5 297:7
315:6

date 84:11 86:7
93:4 117:8
150:5 158:25
203:23 285:11
290:1 315:19
337:20

dates 307:8

dating 64:12
307:20

Daubert 71:13
203:13 252:12
253:3 301:25
329:24

daughter
103:23

David 10:12
52:16 107:21,
24,25 186:22
260:10 338:12

day 9:5 13:22
19:24 40:16
58:15 59:12
94:21 95:6,19
97:2,14,20
98:11,12 99:15,
19 102:2,4,10,
20 125:21
134:8 138:19
144:21 161:13
171:1 188:17,
21 221:12,15
240:16 265:13
270:10 281:1
285:23,24
288:20,24,25
289:2 291:24
292:2 305:17
314:19 319:2

days 36:1 57:1
94:20,22 95:1,
16 98:4,5

101:19,25
105:19,23
112:22 113:5
117:5 134:15
315:22

dead 229:4
283:18

deadly 151:14

deal 175:17
267:8

dealing 267:8

death 286:19

deaths 286:12,
18

debris 223:12
292:19 293:2

decade
113:17,22
128:13 149:16

deceased 24:8

December
28:3 42:19 93:5
203:24 350:25

decided 22:8

decision
302:23 305:3
354:2

dedicated
135:6

dedication
147:2

deep 231:24

defendant
13:10,17,18
89:13

defendants
10:2,12

defense 50:14
54:20 55:22
57:10,17 219:1
224:19 266:23
298:19 299:15
343:9,13,21
345:15

defensive
121:7

demanded
226:17

Dement 9:3

demonstrates
346:22

denied 49:8
299:5,8

denying 52:7

department
9:23 15:16
37:3,4 41:4,10,
13,21 42:3,5,9,
12,13,16,18,25
43:2,14,16 44:2
45:6 47:5
48:15,19 50:5
54:8,11 55:12,
19 56:1,10,16,
19 57:7,15
72:5,9 74:18,19
81:22 91:13
92:21 93:3,18,
25 94:3,11,14,
19,22,23 95:4,
9,12,17,23
96:7,9,12
97:22,25 98:4,
7,14 99:3,15
107:3,10 108:1,
21 112:10,14
113:1 114:3,4
115:5,10,13,21
117:11,15,20,
21,24 118:9,10
119:8,13,18
120:6 123:23
124:6,19 127:1,
7,20,21,25
128:4,19,25
129:7,9,15,16
130:25 131:11
134:16,18
140:8,14,19,24
141:9,16,17,23
142:4,12,15
143:8,22 145:4
146:7 147:1,10,
20 148:5,9,13,
19,23 149:4,9,
22,25 150:19
154:12,17
156:14,20,24
158:20 167:4

171:10,17,20,
23 172:1,3
176:22 178:9,
20,21,22
179:12 180:24
182:16 187:23
189:21,23
222:16,22
239:15,17
296:13 298:8
312:14 320:20
321:20 334:21,
23 346:24
351:5,23

depended
102:3,14
135:23 171:4

depends 60:13
168:18,20
175:10 256:6
340:23

depicts 110:8

depositing
169:8

deposition 9:7
10:19 11:19
13:3,5 17:25
18:18 21:18
25:4,10 27:17
31:4 36:16 38:3
40:18 58:3
63:25 88:8
120:2 203:2
222:6 259:23
296:5 297:19
332:5 334:8
354:1,10,11

deputation
116:21 118:13
119:11,16

deputies 86:19

deputize
118:17

deputized
119:11 161:7

deputy 56:22
85:25 86:13,17,
23 94:5,7 95:25
96:2 112:5,9
115:15,18

116:5 117:2
118:1,18
122:21 123:3,
12

derive 168:23

describe 38:17
96:20

description
86:10

descriptions
193:10

designed
47:21 48:7

destroyed
284:22

detail 244:20
246:22

detailed 77:15
201:15 267:15

details 137:23
230:17 243:17
246:19 253:24
256:4,15

detain 86:13,
24

detaining
86:15

detect 66:14
68:19 69:10
168:1,16

detected
293:10

detecting
187:25

detection
167:25 182:4,
14 197:2
205:25

detective
302:17 305:7,
15 306:2

detector
180:19,23
209:1 210:3

detention 10:6
165:2 182:8



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 369 of 396
The Deposition of BUSTER CANNON, taken on November 08, 2022
PageID #: 1874
368

200:1 207:18
215:5

**determination**
157:12 158:2,8
183:4,17,18
196:20 198:22
206:23 207:11
300:2

**determine**
14:14 187:12
192:11,18,22
195:10 204:20
239:3,5 272:2
294:6 318:11
320:5 321:14
322:17 323:18
324:14

**determined**
210:21 211:1
329:9 343:3

**determining**
159:25 160:12,
17,21,24
228:19 232:25

**develop**
232:25 287:22

**developing**
77:22

**deviated**
34:13,16,18
166:19

**device** 202:2

**diagnosed**
131:15,16

**diagram**
201:16,18
292:17 295:2

**died** 268:4
286:25

**diet** 101:9

**difference**
271:4

**differently**
16:18,22 21:3
171:16 226:7
231:1

**difficulty** 132:4

**dig** 225:1 226:1

**dinner** 99:17

**dipping** 112:23

**direct** 12:21
24:15 26:15,17
29:4 123:14
126:25 140:11
143:23 144:9
148:12 186:21
219:22 278:18
307:23 337:8
339:13 344:22

**directed**
276:21 278:9

**direction**
229:5

**directive**
223:15

**directly** 124:21

**disagree** 233:4

**disagreeing**
333:4,5

**disciplined**
115:9 141:9

**disclose** 54:18
55:5,14,21 56:3
57:9,16 122:7
219:5

**disclosing**
122:15 218:25

**discover**
229:15

**discovered**
336:19

**discovery**
114:9,14
297:22

**discuss** 75:11
123:17,25
124:4,9,24
143:14 251:24
252:4 303:7,9

**discussed**
114:7 138:5
143:16 145:20
230:9 255:2

**discussing**
229:9 230:1
231:7

**discussion**
146:5 236:7
254:4

**discussions**
73:8 241:18
262:19 263:2

**disease**
131:13,15

**dispositive**
114:10 339:4

**disputed**
185:10

**distorts** 11:23

**distraction**
220:21

**distracts**
328:1

**distress** 276:8

**distressed**
275:22

**District** 9:10

**doctor** 85:19
132:9,14

**document**
20:18 36:15,18
37:3,4 38:18
39:3 44:24 45:1
47:4 79:7 80:9,
17 156:13
163:25 180:10,
13,17 182:12
191:10 200:21,
25 201:17,19
202:3 203:9,14,
16 213:14
214:2,10 217:5
218:25 219:24
220:5,20 223:4
224:10,18
258:20 266:16
291:14,15
292:11 295:16
296:23 300:15
317:22 323:20
325:9 326:11
334:13 335:13

340:9 345:21
350:10

**documentatio
n** 200:12 208:16
209:10 210:7,
22 233:14
258:23 294:18,
19 295:10
297:7 299:3
302:8 314:5

**documented**
19:19 67:14,20
80:20

**documenting**
201:4,10
295:21 301:20

**documents**
37:25 38:2
57:20 58:2
79:12,18 83:15
200:17 214:22
215:2,4,12,14
233:15 289:17
294:24 298:2,
12 306:4
343:20 349:7

**dog** 17:15,18,
22 23:14,17,20
26:23 27:3
28:5,20 29:2
30:6 32:11
44:10 45:3
63:2,4 69:2
70:20 71:4,7
75:21 77:8,13
78:14,21 80:12
102:16 103:6,7
105:14,19,20,
21,24 106:15
108:9 111:7
125:11 137:6
146:24 159:22
172:18 173:7
175:2 176:8,24
178:14 180:23
182:6 187:2,3
190:2 193:25
194:13 195:11
204:5 206:8
208:11 211:17
220:3,20,21
235:18,23
236:2 242:1

243:12 249:10
256:13 257:16
258:13,16
263:7 265:1,17
270:3,8,15
271:9 277:5
281:11 282:5,
10 283:10,24
285:16 287:18
293:10 303:24
308:8,19,20
309:17 310:19,
20,21 315:13
326:23 333:19

**dog's** 204:7
257:24 315:7
332:23

**dogs** 30:13,17,
21 62:21,22
103:7 104:18
176:20 194:3
285:21 286:6
328:1

**Dolin** 46:2

**doll** 175:9

**domestic**
121:8,12 138:2
244:24 245:16
246:17

**domesticate**
121:8

**door** 231:12
312:19 318:9
337:3 340:14

**double** 38:16
112:23

**doubt** 59:19
72:18 229:18
308:14 309:2

**dozen** 300:9

**draft** 292:17

**draw** 129:20

**dress** 107:7,11

**dressing**
107:15

**drinking**
244:21 245:5,
14



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

**drive** 133:19
238:18 258:2,4

**driving** 121:7

**droopy** 276:11

**drop** 111:4,5
154:3

**dropped**
172:10

**drove** 135:1
307:2

**drunk** 345:1

**due** 155:14

**Duncan**
143:12,15

**Dunn** 347:3

**duties** 126:22

**dying** 285:4

———————

E

**e.g.** 205:15
206:11

**earlier** 36:9
39:22 79:22
106:6 133:25
138:22 167:3
172:2 184:13
188:12,15
189:9,25
195:17 203:11
211:20 241:21
243:16 256:9
272:21 281:23,
24 294:22
297:5,14
300:24 304:15
305:10 309:5
311:7 313:15
314:9,10,23
315:23 325:14
332:7 340:23
349:15

**early** 138:15
229:13 230:4
241:23 338:9
344:14

**ears** 251:22

**easier** 37:19
68:10 231:1

**East** 337:11

**Eastern** 150:9

**easy** 80:6 83:3

**eat** 13:23
78:18,19 99:17
105:2 171:12
193:17 221:17
289:3

**eaten** 188:23

**eater** 102:21

**eating** 100:9
102:11

**edition** 164:15

**effect** 22:4
28:7 51:19
71:13 164:9,16
257:7 264:18

**effort** 232:16

**elaborate** 24:3
76:4

**election** 93:15

**electric** 227:25

**electrical**
231:25

**Eliminate**
227:22

**Elliot** 10:15,20
11:3,7,21 12:2,
23 38:19 55:1
251:5

**eloquently**
330:10

**Emmitsburg**
150:2 154:15

**emphasize**
204:4

**employed**
41:9,12 42:8,
15,17 43:1 70:1
91:25 93:3
127:20 128:20
141:8 351:4

**employee**
140:8 145:17
156:20

**employer** 41:2
117:10,14
118:9

**employment**
117:12 119:17
128:4 145:3

**encounter**
240:3

**encourage**
103:4 197:21
306:1

**encouraged**
212:12

**end** 28:7 32:5
86:25 87:1
134:11 226:21
246:25 275:11,
13

**ended** 88:4
90:24 268:10
289:1

**ends** 229:4

**enforcement**
15:5,15,19,22
16:6 42:8 43:10
48:14 67:4,12
68:6 115:14
119:5 135:5
237:25 296:10

**engine** 140:9

**English** 10:5

**engulfs** 151:12

**enter** 184:3
209:14 225:10
340:14

**entire** 151:1
268:18 287:11

**entry** 318:8
319:16 321:2

**envelope**
346:3,22

**equally** 245:20

**equipment**
333:17

**errata** 353:17

**establish**
209:6,7 210:4,
17 314:1,2

**establishing**
180:19 182:14

**estimate**
188:16 189:8
190:6

**estimated**
133:25

**et al** 9:9

**ethic** 134:22

**ethical** 136:15

**ethically**
232:14

**evaluate**
229:22

**evaluated**
209:13 210:10
314:8

**evaluation**
209:9 210:6
314:4

**Eve** 344:25

**evening**
171:11,12
221:4

**eventually**
260:21 303:10,
13

**evidence**
43:18 61:21
71:2 122:8,15
196:8 205:4
206:1 226:19
229:22 233:14
284:17 293:23
301:17 346:17
348:10,23
349:8 350:14,
21

**exact** 19:2
112:8 273:17
337:23

**examination**
12:21 204:7
207:22 231:12
316:22 346:9,
23 347:10,19
348:9,22
350:15 351:12,
19

**examine** 225:3
249:20

**examined**
315:25

**examiner**
301:9,13,15
346:21 347:4
349:17

**examiners**
346:19

**examining**
140:17 263:15
301:17

**exception**
226:18

**exceptional**
268:6

**excess** 169:8
208:14

**Excessive**
149:14

**excited** 104:24
105:2

**excluded**
228:16

**excluding**
101:12,14
227:23 228:11

**exculpatory**
122:8

**excuse** 145:10
235:13

**exercise**
265:21 266:2

**exercised**
258:12

**exhibit** 37:14,
16,20,23 69:19,
20 79:21 81:4



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 371 of 396
The Deposition of BUSTER CANNON, taken on November 08, 2022
Page ID #: 4876
370

84:16,17 85:10,
11 88:11,12,16
90:10,12 91:4,
5,19,21,22
92:22 96:19
106:3,4,20
111:14,17,20
144:24,25
145:11 146:14,
15 163:18,23,
25 164:11,25
165:5,7 177:21
179:19 180:6,8
181:10,20
182:2,13,21
183:12 190:6,
21 191:11
202:11,12
203:6,13 213:1,
2,3,7,12 214:7
215:1,14,20
222:10 234:25
235:8,9 241:9,
11 244:1,2,12
253:12 279:7
290:10 292:8,9
300:12,14
302:3 307:10,
11,25 311:13
313:19 316:4
324:16,18,20
327:7 329:18
334:10,13
335:9,10 344:1
345:18,19
349:24,25
351:15,16,17

**exhibits** 37:18
84:23 92:17,18
163:20 252:15
290:6

**exist** 169:19
316:16

**existed** 197:18
224:15

**existence**
49:25 50:25
51:7

**exists** 61:21
208:10 224:14
297:11

**exited** 288:19

**exiting** 275:17

**expect** 234:16
235:25

**expected**
157:10,16
199:13 200:3
236:3

**expense** 229:1

**expenses**
72:11

**experience**
34:10 65:19
69:1 71:1
153:11,24
154:9 155:2,11
156:11 191:24
192:4 269:14

**explain** 53:6
142:10 152:11
264:23 277:4
278:2

**explained**
190:1 244:18

**Explosion**
215:21

**exposed**
345:10

**expressed**
285:20

**extended**
189:24

**extensive** 72:1
149:12

**exterior**
258:25

**exteriors**
155:1,15 156:6

**externally**
150:19

**extinguished**
140:21

**extra** 104:9

**extremely**
124:15

---

## F

**faces** 224:1

**facility** 23:13
110:18 347:11

**fact** 19:24 20:3
28:10,22 30:2,
16 32:10 45:18
49:14 63:8 72:8
74:17 105:20
160:4 161:22
193:2 195:1
208:25 210:2
227:7 234:9
243:23 246:12
249:5 250:9,21
262:14 282:18
286:24 297:1
299:3 300:18
304:15 309:13
310:22 326:18,
24 328:18
329:12 330:1
331:17 333:21
341:11

**factors** 183:16
206:22

**facts** 229:22
233:11

**factually**
233:11

**failed** 84:11
268:16 270:16

**failures** 223:4
224:2,23
225:16 227:17

**fair** 14:3 18:9
21:15,16 33:8
39:18 41:20
48:24,25 49:12,
13,21,22 50:21
51:1 53:23
54:7,10 57:4,
12,21,22 63:5
64:9,14,15,21
65:1,22 71:22
72:17 73:13,17,
20 74:3 80:9,24
83:1,2 85:2
98:17,18

103:20 112:8
121:13,16,22
122:6,14
125:14,21,23
126:25 128:1,2
130:4,24 131:5
133:10 135:4,
10,11,12
137:21,22
139:2,14,22
141:2 143:21
144:17,21
145:5 146:4,10,
11 147:11,16,
17,18 148:17
149:12 152:18
153:12,14,18
155:5,16,17,18
156:11,18,22
157:2,5,9
158:17 159:4,
14,15 163:13
164:5,9,16,18
165:14,19,24
166:16 168:2,
12,17,24 170:6
171:6 172:23
174:3 185:21
191:15 192:1
194:17 195:8,
16 196:15
200:10,22
202:5,6 203:19
215:17 217:25
218:6,22,24
219:15,21
220:6,7,15
224:10,15
226:3 227:14
233:12 234:7
236:19 237:7
238:22 239:7
240:8 249:1,3
253:2 254:9,14
256:2,18 257:9
261:20 263:12
265:8,11,14
268:11 269:9,
12,13 272:14
282:11,12
285:4,19 286:9,
10 287:3,6,7,9,
17,21 288:1
295:22 303:25
304:3,4 307:15,
21,22 309:4,6,

10,12,21 310:2,
5,9,10,13,14
315:14 316:2,
11 326:11,21,
22,23 327:2,5,6
328:7 330:3,17
331:2,24
344:15 353:7

**faith** 208:16

**false** 27:23
30:18,23 63:10
184:21 187:9,
13 193:3 194:3,
11 196:18,19
207:10 300:1
326:15 328:3,
15,18 329:4

**familiar** 37:25
46:9 48:15
49:12 64:4
88:20 90:14
164:4 180:12
182:3,8,23
183:5 193:1
199:14 214:9
217:1 223:6
248:8 301:13
346:12

**familiarity**
64:7,11

**familiarized**
335:1

**family** 134:10
161:10

**Farm** 176:8,14
177:17

**fashion** 266:22

**fast** 25:19 73:4
222:9

**fault** 18:12
217:9

**favorite** 138:19

**February**
167:22 326:1
348:17

**fed** 101:17,22
109:25 111:10,
12 171:7,21
188:20 221:3,8,

---



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 372 of 396
The Deposition of BUSTER CARROLL, taken on November 08, 2022
PageID 1877
371

19,21 255:12,
17

federal 116:25

feed 100:5,6,7,
21,22 108:9
170:22,23
171:10,11,16
172:9

feedback 78:3
79:6

feeding 100:11
104:2 220:25

feel 104:6
124:21 174:5
227:1 268:14
273:21

feeling 145:24

feet 186:23
187:1

felt 139:2
176:11

fie 164:20

field 84:6

Fifteen 128:9

fighter 160:1

figure 311:16

figured 122:4

file 92:21,23
219:15 222:15,
25 224:11,15
316:9 321:21
334:15,19,22
335:21 343:8,
10,11 345:14

filed 61:12
88:18 90:13
91:10,20 115:6

files 57:2 89:6
92:14 111:18

filing 197:23

fill 20:20 45:9
82:6,20 143:3
221:18 297:15
325:15

filled 21:24

36:11 39:4,13
45:3 83:7
142:23 155:1
176:8 177:16
280:4 284:12
294:23 298:2,6
312:3 313:8,12
318:17 320:14,
16 321:13
325:12,25
348:19 350:18

filmed 284:12,
14

filming 284:8

finally 12:12
113:24 132:13

find 15:6,20
84:17 87:6,8
108:12 158:24
195:19 212:12,
13 229:16
234:16 235:25
236:3 274:23
275:6 288:2
298:11 300:5,
22 301:2

finding 161:14
198:1,7 205:15

findings 66:22
67:2 229:14
230:5 248:10,
15 250:18
253:24 305:24
349:7

finds 26:18

fine 92:11,13
127:11 139:18
293:21 304:20

finish 171:14
274:22 289:3,4

finished 44:8
101:4,5 203:7
340:8

finishing 258:1

fire 16:14,19,
22,25 17:3,7,9
18:23 20:18
21:19 22:3
23:20,25 27:13

30:4,14 31:22
32:1,17,23
33:5,9 34:5,11,
19 35:2,6,18
37:2 40:2,19
41:4,8,10 42:4,
10,13,16,17,24
43:2,13,16
44:2,4,11,18
45:5,9,23 47:2,
5 49:3,14 50:5
52:4,18 53:9,
17,25 54:8,11
55:12,25 57:7
58:23 59:4,13
60:16,20 62:4
64:17,22 66:19,
21 67:3,13,24
68:6 72:5,9,19
73:21 74:5,13,
19,25 75:21
80:23 81:21,22,
24 82:16,17
84:15 89:13,21
90:2 92:21
94:6,14,19,22
95:3 96:6,9,11,
13,22 97:22
98:4 101:19
102:1 103:4
104:3,14 105:6,
11 107:3,10,13,
19 108:1,10,11,
21 114:4
115:21 116:14
117:6,20 118:9
119:17 122:16
123:18,21
124:1,5,6,9,14,
19,20 125:4,5,
9,17 126:3,16,
22 127:2,6,20
128:4,19,24
129:7,16
130:25 131:11
133:22 134:18,
23 135:6,19,20
136:19,23
137:4,20,24
138:23 139:3,
15 140:8,14,18,
19,21,24,25
141:9,15,17
142:4,15 143:8,
22,24 144:5,9,
11,15 145:4

146:7 147:19
148:4,6,8,13,
18,19,23,24
149:4,5,9,13,
22,25 150:3
152:13 153:15,
16,19,21,24
154:2,6,7,12,
13,17 156:14,
16,20,24
157:10,12,16,
18,20,22 158:2,
20,25 159:4,14
160:1,12,17,20,
22,24 162:3,4,
8,9,22 163:12
164:5,20
165:17,20
166:5,11,21
168:22 169:19
171:1,4,5,9,12,
14,16,23 172:1,
3 175:5,24
176:22,25
177:10 178:9,
20,22,23
179:11,13
183:16 184:15
187:23 188:5
189:9,19,21,24
190:7 192:1,23
194:21 195:2
198:2,8 199:10,
19 200:3,22
201:1,11,14
204:5,8,21
205:1,3,14,16
206:11,22
207:19,23
209:10,13
210:7,10,22
211:3 214:13
215:5,21 217:5
218:6,21
222:16,22
223:4,11,12,14
224:1,4 226:13,
18,24 227:2,7,
10,17,23 228:6,
9,10,12,18
229:25 230:6,
10,18 232:4
233:7,14,22,23
234:2,3 235:12,
15 237:7,16,21
238:2,6,18

239:3,16 240:2,
19 243:24
244:19 245:8
247:11 248:11,
22 249:1
250:19 251:1
252:24 253:9
254:2,17
255:25 256:4,6,
20,24 260:14
264:4,10,14
268:4 269:22
270:3 271:22
272:6,9 274:9
279:5 280:5
281:22 282:10
285:4 286:13,
20 287:9,13,17,
23 289:2,6,24
290:19,21
295:18 296:13
297:2,12,16,23
298:8,23 303:7,
9 310:18
312:14 314:5,8
315:13 318:23
319:7 326:15
329:1,5,10
334:23,24
336:19 337:15,
20,24 338:4
339:4 340:14,
15 341:16,17
342:5,6 344:2,
3,14,21,24
345:2,11 347:3
351:2,5,8,11
352:7

fired 93:7

firefighter 43:1
89:19 115:24
142:19 175:21,
25 335:3

firefighters
89:14 90:3,25
140:12

fires 44:9 74:1
139:8,23,25
140:3 155:2,3,
11,19,22 156:2,
5,7 204:20
228:25 238:7

fit 231:1 233:2



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 373 of 396
The Deposition of BUSTER CAMPBELL, taken on November 08, 2022
Page 372
372

five-minute 25:5 334:1

fix 11:14

flame 337:8 339:13 344:22 345:10

flames 151:12

flash 153:5 155:12

flashover 150:15,22 151:4,16,18 152:4,7,19,25 153:8,20,23 155:12,25

flip 261:7

floor 28:6 137:8 151:11 173:12,14,21, 23,25 174:2,8 175:7 225:2 236:22 263:18, 20,21,23,24 318:8 319:18, 19,20 336:20

flooring 194:2

floors 155:20 156:3

Florida 216:15, 22

flounder 231:25

Flowers 60:8, 10 61:3 136:7 199:7 230:16 241:6,14,15 242:8,11 243:5 247:16 254:12 258:7 260:10 261:3,11 264:4 274:13

fluid 195:7,21

fluids 168:5

focus 9:20

folder 335:21 336:1

folks 241:12 352:22

follow 69:4 181:23 197:2 230:24 290:1 308:4

food 23:17 101:11,12 102:19,24 103:3,5,10,12 104:21,22 105:10 171:2 172:15,17,20 173:19,23 188:20 189:2 221:4,12 288:9, 14,20,24 292:2

foot 132:20 235:21 255:19

forensic 207:20,21 208:12 351:19

forest 329:14

forgot 222:11 229:20

form 15:8 18:25 20:20,25 21:4,6,10,12, 18,21,23,24 33:4 35:4,5 36:11,24 37:10 39:4,12 40:1,8, 10,16,19 44:20 45:2 46:1 47:8, 16 48:7 51:18, 24 54:23 55:8 61:23 62:7,11, 13 73:1 74:13 78:2 80:4 81:17,20 83:24 117:22 118:6 119:14 126:24 127:3,8,15 152:20 160:18 162:13,15,21, 24 166:25 185:22 186:16, 17 201:5 204:14 219:8 220:22,24 238:24 242:21 245:9,19,23

246:3 247:23 248:13,17 249:2 250:13 251:3 257:13 272:3 278:11 280:4 284:24 295:8 296:24 297:15,17,18 298:1,5,14,17 299:13,14 300:3,16 301:5 304:9 309:11 312:3,6 315:16 316:13 317:7, 10,19,22 318:14,17 319:9 320:4,14, 16 321:12 325:12,25 326:3 328:20, 21 330:23,24 343:23 345:6,8 346:14 348:7,9, 19 349:19,22 352:8,14

formal 107:8 156:23 187:24 188:1

formed 82:4 257:21

forming 230:5

forms 36:23 39:6,10,23 45:4,9 79:17, 18,21 294:23 297:1,22 321:16,19 325:16

forward 77:25 81:4 214:21 222:9 336:3 345:25

found 24:8 27:1 29:12 60:25 65:7 74:5,14 84:10 88:13 176:6,7 218:2 240:12 244:21 245:14 246:13 250:10 254:20 257:5, 22 298:12 308:19 310:21

328:15 336:19, 22,23 337:5 338:16

foundation 66:16 204:17 220:3,20

four-year-old 265:17

fourth 145:11

frame 128:3

Frankfort 10:11 271:25 272:1 346:8 347:20

Franklin 268:2

frankly 214:18

fraud 232:16

free 72:8 88:1 102:21

freezing 11:7

frequently 208:9,13

fresh 254:9

friend 58:8 60:12,14

friendship 60:17

front 23:13 29:25 46:2,5 162:20 170:12 215:25 250:1 252:15 267:14 277:23 294:4 298:10 302:8 318:8 337:3 340:14

froze 20:9

frustrated 73:17,19

full 93:15 94:10,13 151:24 152:1,2, 3,19,25 153:8 155:12 156:1 201:15

full-time 94:17 113:8 130:5 161:6

fun 99:1

functions 48:16

furniture 153:25

_____

G

Gadansky 10:8 160:18 162:13,15,24 245:9,19,24 247:23 248:13, 17 249:2,4 250:13 251:3,8, 14,17 353:6

gallon 111:4

game 269:10

garage 205:16 319:20

garbage 221:17

Garcia 341:12, 14

gas 132:21 227:25

gasoline 168:5 310:22

gather 315:6

gave 13:5 29:14,20 30:25 102:3,4 145:24 156:15 164:11, 19 188:16 189:8 190:6 211:13 243:23 246:8 267:7 270:14 279:8 288:8 302:12, 17 306:21 332:23

general 177:19 204:13

generally 94:17 99:21

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

127:23 128:15
151:9 157:15
185:12 220:10,
12 221:15
223:18

**generated**
52:19

**Georgetown**
9:15 41:4,10
42:4,13,16,17
43:2 44:2 45:5
47:5 50:5 54:8,
11 55:12,25
57:7 72:5,9
74:19 81:22
88:23 90:14
91:20 92:21,24
94:14 108:1,20
114:4 115:21
117:20 118:9
119:17 124:6,
19 127:20
128:4,19 129:7
130:25 140:8,
14,24 141:9,16
142:20,23
143:1,8,22
144:14 145:3
146:6 147:19
148:4,8,13,19,
23 149:4,8,18,
22,25 150:18
154:12,17
156:14,20,24
158:20 178:9,
20 179:11
187:22,23
218:13 222:16
296:13 298:8
351:5

**girl** 170:20
173:4 277:14

**give** 12:16
22:22 30:22
37:14,15,16
56:17 69:20,23
70:4 84:16
85:12 88:7
90:11 101:6
103:11 104:8
150:5 163:20,
23 173:2,17,19
178:14 183:10
188:16 194:3,

11 202:10
203:6 212:12
213:3,6 214:6,7
223:11 235:11
236:4 245:1
254:6 263:8
266:23 270:2
275:23 277:15,
17 278:25
279:4 281:17
289:11 306:4
333:24 353:11

**giving** 31:11,
21,25 101:11
103:3 218:4
243:7 247:17
262:25 281:12
283:25 285:21
286:6 299:8
306:25

**glass** 137:8
235:19 236:21
263:23

**gloves** 175:12

**glue** 194:1

**glues** 194:1

**goal** 78:3

**goatee** 338:10

**God** 12:18

**gold** 166:5

**good** 10:14
11:9,11 25:13
38:22 63:20
124:15 133:14
135:3 153:25
170:20 173:4
202:13 277:14
296:1 304:25
308:20 309:8,
25 328:3 354:6

**goofing** 268:23
269:2,3

**Gosh** 59:16
91:6 94:4
259:15

**gotcha** 25:24

**government**
116:25

**gracious**
124:17

**grand** 68:7,11

**granddaughter** 130:21

**grandfathered**
120:13,18,20

**grandkids**
130:20

**gray** 136:19

**grazes** 102:16

**great** 66:12
130:21 146:25
147:10,16
279:17 290:16
327:13

**greater** 65:8,13
68:18 69:9
155:2 165:14
332:24

**green** 9:11
10:6 193:12,13,
20 308:12

**Gregory** 10:9
52:16 58:7,14,
24 136:8 199:6
230:16 239:22
240:4,22 241:3
242:7,10 243:5,
23 245:4
246:12 247:17,
21 248:5,9,14
249:5,12 250:6,
9,18,21,24
251:4,6 252:23
253:8 254:12,
16,20 255:23
257:5,10 258:4
261:3,15 264:3
274:13 286:22
319:5

**grill** 195:6

**ground** 98:21,
23,24 99:2
141:17,22
142:1,9,12,15,
20 193:14

**grounds**
245:21

**group** 11:4

**grow** 130:3

**growing** 133:6

**guess** 58:10
88:2 97:2 153:6
178:17,18
193:23 200:9
212:7 327:24
328:15,18,24
352:20

**guessing**
92:12

**guidance**
54:18 55:4,14,
20 56:2,8 57:15
122:15 137:11
156:16 163:12
164:19 166:1
173:7 270:14

**guide** 29:3
30:6,8,21
174:16,19
220:3,20

**guided** 295:21

**guideline**
166:8 184:14,
20

**guidelines**
69:4 166:10,15,
20 180:13,18
181:3 182:13
204:12 313:16

**guiding** 30:13,
17

**gum** 133:2

**gun** 87:15

**guts** 221:17

**guy** 93:6,7

**guys** 36:21
73:4 87:6 90:6
114:20 159:8
252:10 289:20
352:17

---

**H**

---

**habit** 221:16

**half** 102:13
183:23 221:7
228:25

**halfway**
183:14 342:3

**hallway** 152:15

**halt** 227:22

**halted** 228:11

**Hammons**
93:14 122:24
123:1 124:8,13
126:4,11,15

**hand** 12:13,14
29:3,6,7 88:10,
16 91:3,18
92:16 109:21
135:13 170:15

**handcuffed**
86:1,18

**handcuffs**
86:15

**handing**
289:17 334:12

**handle** 23:14,
16 80:17
187:16 230:25

**handler** 16:11
31:11,21,25
32:11 107:22
135:14 139:1
146:24 165:2
176:2 178:12
180:22 189:5
197:1,20 198:1,
8 208:14 209:4,
6 210:3,17
227:13 233:22
234:2 281:10,
12 314:1
326:25 328:22,
23 329:3

**handler's**
209:9 210:6
314:4

**handlers**
125:11 285:21
315:5

**handling**



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

177:11

**handwriting**
39:15 45:13
81:18 84:21
312:6,16
317:13,14
327:13 335:21
345:20 350:9

**happen** 92:6
95:8 126:2
158:19 194:12
228:3 257:18
321:22

**happened**
28:25 54:14,15
73:11 75:14
89:15 120:22
125:1 128:23
129:6 186:13
196:11 202:3
227:18 230:12,
17,18 232:25
233:1,20
240:19 267:25
268:3 282:24
292:14 293:3
304:6 347:13

**happening**
75:2

**happy** 105:5
146:9 289:11
328:16

**hard** 147:1
265:9 266:4

**hats** 55:9

**haul** 133:21

**head** 100:10
101:18 134:14
137:2 169:6
174:16 229:16
231:22 236:14
337:10 353:19

**headed** 87:17

**health** 36:3
131:24

**hear** 11:1,24,25
12:2,25 14:10,
16,20 25:15
106:8

**heard** 16:3
72:24 88:2
197:3

**hearing** 30:19,
24 35:25 36:2
70:7 71:14
183:10 190:6
230:19 252:12,
13 301:25
302:3 307:20,
24 329:24

**heartbreaking**
287:2

**heat** 152:5

**heater** 195:6
206:12

**heating** 228:1

**heavier** 154:7

**held** 93:24 94:3
109:11

**helmet** 89:16,
18,21

**helmets** 89:14,
23,24

**helped** 260:17

**helpful** 202:2
287:16

**helping** 135:6

**Hendricks**
175:25 176:6
177:14

**hey** 35:1 54:12
305:6

**hide** 87:17

**Higgins** 61:5

**high** 172:17,21
308:15

**higher** 145:22,
23,25

**highlight**
342:2

**highlighted**
183:13

**highly** 194:18

**Hill** 312:22

**hip** 109:15

**hired** 42:21
93:4,10 120:5
142:1 143:1
175:24

**history** 348:19

**hit** 44:14,15
46:15 71:6
268:24 277:25

**hits** 79:11
81:14 304:17,
18

**hitting** 71:4
77:14

**hold** 109:7
190:11 353:14

**holding** 109:1,
6,10 186:23
275:10,11

**holes** 87:24
111:2 137:8
155:20 156:2
263:20

**home** 19:15,17
23:24 24:1 26:9
28:11,16 57:20
59:14 96:4 98:8
99:9,10,14,22,
25 100:23
102:16 106:1
130:2 135:23
171:11,17,19,
24 172:4,6,10
239:16 250:10
254:21 264:15,
20 274:18
288:22,24
289:2,5 295:11
344:13

**homes** 154:14
155:1,11,16,19,
23 156:6

**homicide**
121:18,19

**honest** 240:7
259:16 270:6
276:12

**honestly**
168:18

**hooked** 86:18

**hope** 168:22

**horizontal**
167:6

**host** 178:2

**hot** 137:9
151:10

**hotel** 105:22

**hour** 95:16
102:13

**hourly** 179:7,9,
12

**hours** 90:22
94:21 95:18
96:7 97:8,11,
14,24 98:2,8
99:16 102:10,
13 120:21
130:8 131:3,6,9
133:16 134:1,
13,20 135:2
158:23 161:11,
14 188:16
238:22 247:6
344:14

**house** 19:6
22:7,12,16
24:6,15 26:1,6,
11,20 28:18
63:2,4 137:10
174:19 205:16
234:15 235:24
236:9,18
244:22 245:15
246:14 250:1
260:21,24
261:9,10,19
262:1 271:8
277:11,20
278:7,19
282:19 319:12,
17 341:17

**household**
195:20

**Huh-uh** 216:19

**human** 332:25
333:9

**humans** 96:25

**hundred**
328:11,16

**hungry** 103:11
104:14 105:1,2
138:15 276:15,
16

**hurt** 235:17
236:19 256:13

**hurting** 85:25
86:16,21

**hydrocarbons**
71:5

———

**I**

**i.e.** 231:25

**idea** 59:15,18
61:7 138:10
239:14 298:8
304:8,25
306:19

**identification**
37:20 69:19
85:10 88:12
90:10 91:5,22
92:19 106:4
144:25 163:18
165:7 180:6
202:12 213:2,
12 244:1
300:14 324:16
334:10 335:9
345:18 349:24
351:15 352:1

**identified**
229:19

**identify** 9:12
225:23 228:3
229:17 232:24
287:12

**identifying**
287:16

**identity** 87:8

**ignitable** 137:9
168:1,14,23
169:14,20
170:1,13
175:18 183:2



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

192:7,12,18
194:6,14 195:1,
11 197:21
254:20 287:14,
15,21 300:19
340:21

ignite 152:6

ignited 260:14
340:15

ignites 154:1

ignition 151:1,
11 153:4

imagine 31:4
66:1 99:14,17
106:1 130:22

impact 36:3,7
139:16 153:20
283:10

impacted
139:21,25

impacts
153:23

impinging
143:17

implied 232:3

importance
228:2

important
153:18 195:10
222:24 227:18
296:22 315:5
330:1

impossible
318:11 322:17
323:18 324:13

imprinted
23:15

improve 77:25
78:10 211:21

improvement
327:4

inaccurate
27:21 49:21
54:10 79:11

inadmissible
69:14 185:15

inadvertent
209:23

incarcerated
331:12

incendiary
198:2,8 255:25

incident 268:2

include 168:4
201:15 253:23

included
120:14 253:23
256:15

including
205:3 348:22

inconsistent
281:17

incorporate
39:19

incredible
65:21

independent
89:8

indicating
70:17 174:5,6
183:22 216:5
217:12 303:5
335:16,23
336:13 343:15

indication
183:2,15
206:20 207:23

indications
184:21

indicators
205:3

individual 10:2
145:25 223:14

individuals
118:17 228:10
230:11 234:11

infallible
194:18

infant 265:4

influence
257:23

inform 51:6,15
158:20 252:14
309:7 310:11
333:20

information
39:20 55:21
67:12,19,25
68:5,12 76:17
80:8,11,16,18
83:24 86:14
148:9 243:8
245:12 246:8
247:16,17
248:19,20,22
249:12 250:6
255:19 256:10,
14 257:11
262:25 295:21
296:23 297:2
301:2 316:5,18
323:19 326:6
338:6

informed
50:24 51:9
66:5,11 221:11
246:16 248:15
250:21 253:8
309:1 316:10

informing
309:22

initial 114:20
295:7

initiate 238:1
305:16

initiated 306:9

injured 85:20

innocent 15:1

insects 193:16

inside 111:5
137:10 256:12
258:13 266:5
275:3 338:13,
15

insisting
159:20

inspecting
263:14

inspection
258:25 259:8,

14 260:1,13

instance
124:18 136:22
149:8 179:10
195:5 200:24
206:9 273:10,
24 309:1

instances
194:21 308:22
309:23

instruct 114:14

instructed
33:16 65:18

instruction
31:10 270:2,7

instructions
314:25

instructors
209:11,18
210:8 314:6

instructs
14:15

instruments
71:11 212:11

insufficient
206:1

insurance
176:15

integrity
263:22

intensity 155:2

intent 239:5

intention
332:2

intentional
33:15 34:17
44:11 245:8

intentionally
33:11 34:15,20
35:8,21 243:24
249:1 264:5,14
331:24 332:12,
16

interact 100:19

interest 260:15
277:3 278:5,6

interested
265:13

interesting
177:13 218:2

interior 59:14
156:7 259:8,14
260:1,13
263:14 337:4
338:12

interiors
155:1,15

internal 187:24
188:2

interpret
232:23

interpretation
257:24

interrogating
43:11

interrogation
74:20

interrogations
226:18

Interstate
86:11,20

interview
142:24 347:2,
16,24

introduce 12:5
196:8 290:6,7

intuitive 96:18

investigate
15:5,13 16:25
53:9 125:9
140:22,24

investigated
41:24 337:24

investigating
15:25 43:9
44:19 46:22
47:6 62:4
143:15,19
147:15 238:8
318:23 320:19
322:5 337:16

investigation
16:9,19,22 17:3



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 377 of 396
The Deposition of BUSTER CAMPBELL taken on November 08, 2022
Page ID #: 1882
376

18:23 20:18
21:19 22:3
23:21 27:13
30:3,5,14 31:22
32:1,24 33:5,9
34:6,11 35:2,6,
8,15,18 40:3,20
41:9 42:10,11,
24 43:16 44:4
45:17 47:2 49:4
52:2,5,8,12
56:11 64:17,22
66:20,21 67:13,
25 68:7 74:13
80:24 81:21,24
83:5,9 84:15
94:6 95:10
104:3,14
105:11 107:20
108:10,11
117:6 121:18,
24 122:8,16
124:20,25
125:4,5,14
133:22 134:24
135:19,20,21
136:11,23
148:24 153:21
158:25 159:16
160:24 162:4,9
163:12 164:5
165:17,20
166:6,21
168:22 171:1,4
175:6 178:24
179:3,11,13
199:19 200:3
201:1,15 215:6
217:6 223:5
224:1 226:13,
19,25 227:2,5,
7,17,19 228:7,
10 229:2,8
230:1,6,11
231:6,19 232:4,
20 233:7,18
234:11 237:7,
16,21 238:6,18
241:19 245:11
247:12 255:20
256:5,6,25
262:19 263:2
268:11 269:16,
23 281:22
282:10,14
285:3,22 287:6

291:24 295:22
297:12 298:6,
14,23 303:8,9
312:8 316:9
317:16 318:20
319:1,5,6
323:1,19 329:1,
5,10 335:11
337:15,20,24
338:22 339:5
341:4,9 344:3
345:23 346:7
347:7 349:16
351:2,12 352:5

**investigations**
16:14 32:18
34:19 41:22,23
44:19 45:10
48:20 49:14
51:25 52:17
53:17,20 54:1
56:22 60:20
72:19 74:20
83:1 101:20
105:7 107:13
116:14 123:18,
22 124:1,5,10,
14 125:18,24
126:4,12,16
127:2,6 136:19
137:21,24
138:23 139:3,
15 143:24
144:9,15 148:6,
18 149:6
154:13 156:16
159:14 164:20
166:11,16
168:11 176:15,
25 188:5
189:10,12,19
194:21 200:22
201:12 218:6,
22 223:22
238:13 279:5
297:3,23
316:11 326:15
344:14 346:10,
18 349:21
352:7

**investigative**
67:14,20
266:16 295:17
298:22 312:11
345:14

**investigator**
52:11,13,18
67:3,13 68:6
73:21 82:17
126:22 135:6
152:21 157:10,
16,21,25 158:4
159:4,18,25
160:10,21
162:8,19
184:15 204:21
205:15 207:19
214:13 224:4
227:10,12
233:22 234:2
239:3 241:25
287:3 347:3

**investigator's**
183:16 198:21
205:2,14
206:22

**investigators**
66:23 136:25
137:20 157:13
192:1,6 200:6
231:18 232:3
233:6,17
234:21 237:11,
15,20 260:5
261:19 264:13
287:6,22
295:13

**investigatory**
63:3

**involved** 42:10
43:11,15 44:19
45:10 48:20
49:15 56:23
60:2 74:21
81:20 83:1 85:8
87:1 88:18
117:6 126:16
138:2 194:1
232:16 234:11
285:4 297:23
343:5

**involvement**
64:8 124:9
151:24 152:2,3,
19,25 153:8
155:12 156:1
226:10 352:4

**involving** 91:9
154:14 323:1

**ironically**
253:16

**irrelevant**
207:24

**irresponsible**
160:13

**Isaacs** 341:24
342:7,14,16

**issue** 18:13
62:10 95:15
114:17,18
115:1 252:10
316:7

**issues** 89:3
92:9 93:6
131:24 151:14
328:6

**items** 145:18
225:4

———————

**J**

**J.A.** 10:4
352:23

**Jack** 241:6,15
260:10 261:11

**jailer** 10:7
115:15,18,24

**Jaman** 10:12

**James** 85:8

**January**
327:14 328:5
335:12 337:21
341:23 342:14,
21 344:2

**jeans** 338:9

**Jeff** 91:9

**Jenga** 38:23

**Jenkins** 10:7

**Jennifer** 9:25
352:25

**jigsaw** 233:2

**job** 15:5 54:6

**131:8 133:14**
145:21,24
146:5,23 160:9
228:25 252:13
269:20 274:22,
23 281:21
283:23 353:16

**job's** 270:12

**jobs** 94:18
129:23 130:5
133:23 161:6

**John** 46:2

**join** 60:3,6

**joined** 33:9
259:14

**joining** 242:11

**Jones'** 347:24

**judge** 14:13
27:22

**judging** 84:5

**judgment**
229:21

**July** 81:22
320:16 322:3
347:4 351:20

**jump** 229:13
230:25

**jumped** 283:19

**jumping** 230:4

**June** 93:19
113:10 127:25
322:22,24
324:2

**jurisdiction**
116:8

**jury** 27:22
34:25 35:3
68:7,11 332:11

**justice** 15:2

**justify** 229:1
233:12

———————

**K**

**K-I-M-B-L-E**



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

123:5

**keeping** 90:3
174:23 230:3
232:14

**Kenneth**
123:3,11 301:9
349:10 351:20

**Kenny** 123:8

**Kentucky** 9:6,
10,24 10:6,11
17:12 21:20
41:16 43:17
48:16 49:7,15,
19 50:13,22
51:5,23 52:5
73:9 75:10 80:7
82:17 117:14
150:9 189:13
209:11,15,20
211:9 238:19
301:16 314:6,
12,13,15,17
316:8 346:3,8,
12 347:8,21
348:10 350:15
351:10 352:11

**kerosene**
168:5 195:6
206:12 337:3

**Kevin** 347:3

**Kibbles** 277:18

**kick** 78:20

**kid** 103:22
265:13

**killed** 87:12
178:6 265:5

**Kimble** 123:3,
7,8,11,21,25
124:4

**kind** 11:8 24:9
27:8 70:3 97:12
99:25 102:16
105:14 120:12,
19 127:5 131:9
132:20 138:13
190:15 211:14
215:25 217:6,
19 218:3
222:11 225:23

252:16 276:12,
13 283:20
342:9

**knew** 60:10,18
63:5 82:23
95:13 103:1
105:21 131:17
133:15 138:1,2
176:12 286:11
294:8,10,11
299:24 329:25
330:19

**knocked** 111:2

**knowing** 33:1
82:22 103:7
112:15

**knowledge**
32:17 34:9 60:4
145:21 146:5
153:11,24
154:9,21 155:6,
10 156:11
166:17 185:20
191:24 192:4,
15,21 193:1
205:10,21
206:5,16 207:4
208:2 225:8
238:4 255:22
263:12 269:14
308:7 332:23

**KSP** 43:22 49:3
347:3,17,20

---

**L**

**lab** 71:10,12
73:8,9,14,18
75:8 78:23 79:1
82:18 196:12
198:11,12
231:25 309:2,
24 315:24
316:1 350:14

**laboratories**
208:12

**laboratory**
43:18,21,22
47:18 48:3,16,
21 49:3,8,16,
20,25 50:13,14,

18,23 51:5,15,
23 53:13 62:9
65:3,8,13 66:5,
12 68:18 69:10
75:11 78:4,9
79:7 80:8 82:1
175:15 183:1
184:16,22
187:11 194:22
195:10,15
196:17 197:22
198:17 199:3
202:8 207:9,21
208:7,9,11
209:9,11 210:6,
8 211:2,10
212:5 299:22,
25 300:6,18
301:2,16,21
303:4 305:24
308:9 310:7,9
311:3,9,10
312:25 313:3
314:4,6 316:8,
21 317:24
318:2 319:23
320:2 321:7,10
322:9,12,13
323:5,8 324:6,9
333:15 346:4,
13 347:8,9,20
348:10 349:7,
14 350:15
351:11,12,19
352:12,13

**Labrador**
105:15

**Labradors**
220:10,12
221:16

**Labs** 276:16

**lack** 339:3,7

**lamp** 168:5
195:21 318:7
319:15 321:3
338:14

**Langen** 9:25
352:25

**language**
203:14

**larger** 53:25

**Las** 178:5

**lasted** 306:11

**lasting** 255:5

**late** 172:11
344:9

**law** 15:4,15,19,
22 16:6 42:8
43:10 48:14
67:3,12 68:6
115:13 119:5
135:5 237:25
296:9

**lawsuit** 13:11
61:9,11 85:1,2,
5,8 88:18,21
89:2,5,9,12
90:12,24 91:9,
11,20 92:2
197:12,13,15,
16,24

**lawsuits** 108:3

**lawyers** 13:24
14:11 334:14

**lay** 175:5,6

**layer** 225:3
226:3

**laying** 259:7
265:6

**lead** 29:7,8,9
32:1 52:11,18
65:12 159:17
227:10 245:17
246:9 248:25
343:19

**learn** 76:16,19
194:21 236:12

**learned** 121:13
185:20 197:20
299:1 300:25
301:7 316:18
326:20

**learning**
103:16 120:17,
19 121:2,5
197:9 326:25

**leash** 19:12,14
22:12,17 23:21
24:2,5,13,14,

20,22 26:2,13,
20 28:14 29:2,
21,22 108:23
109:1,3,4,5,7,9,
11 186:23
258:13 264:21,
22,23,25 265:2,
9 266:6,7,9,11
267:12 270:23
271:9 272:15,
16,17,25 273:4,
11,12 274:24,
25 275:3,4,5,7,
10,11,12,13,15,
16,25 276:19
277:6,9 282:15
283:23 288:5

**leather** 109:14

**leave** 93:17
128:19 141:22
189:24 226:17,
24 228:24
231:2,9 237:1
276:6 338:7

**leaving** 229:19
318:10 322:16
334:21

**led** 16:22 29:11
57:8 227:1
248:15 337:25

**left** 102:15
109:15 171:21
172:6 216:20
224:15 227:8
280:5 298:7
316:25 318:2
320:7 322:14
323:11 324:9
334:2 335:1
338:18 341:18
342:12

**left-hand**
289:23

**legal** 136:16
232:15,17

**legally** 232:12,
14

**legitimate**
195:3 206:11
284:21



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

**let alone** 131:20

**lets** 272:18

**letter** 67:14,20
187:15 203:20,
23 266:17
295:17 298:22
313:21,25

**letting** 135:22

**Lexington**
142:21,25
176:1,2,22

**lie** 43:20

**lieutenants**
145:23

**life** 130:5
220:17 221:3
305:8 315:23

**lifespans**
220:9

**light** 73:22

**lighter** 168:4
195:7,20,21
337:9 339:15
340:16 341:15
342:8,17

**lights** 151:2,3

**likelihood** 71:4

**limb** 212:7
308:18

**limited** 88:17

**lined** 293:25
294:3

**lines** 39:19
70:25 181:22
182:21 244:15
249:16 253:19
262:22

**liquid** 78:14,17
169:14,18,20
170:1,13
175:18 183:3
192:12,18
194:14 195:11
197:21 340:21

**liquids** 137:9

168:1,4,7,14,23
192:7 194:7
195:2 254:21
287:14,15,21
300:19

**listed** 224:23
280:22 340:4

**literally** 153:3

**litigation**
197:14 214:24
215:15

**live** 98:19
141:18,19
220:13

**lived** 99:10,12

**living** 98:14
264:2 321:3

**load** 154:7

**local** 154:14

**locate** 168:1
239:8 260:13

**located** 41:15,
18

**locating** 192:6

**location** 292:5

**locations**
302:9 308:9
347:22

**lodge** 251:25

**log** 188:15
191:12 285:14
295:4

**Logan** 10:6,7
167:4,20
190:24 191:11
289:18 290:14

**logged** 289:9

**logic** 232:23

**logical** 231:16

**logs** 96:17
191:15 209:10
210:7,22,23
289:10 314:5
327:9,14

**long** 15:16
16:16 19:12
22:17 23:21
24:2,5,20,21
26:2,12 42:15
43:3 58:21 91:8
97:7 109:4
116:12 132:12,
13 133:21
139:23 162:11
175:21 179:17
220:9,12 255:4
258:13 261:25
264:22,23,25
265:1 266:6,9,
11 270:23
271:8 272:15,
16,24 273:11
275:4,5,10,15
277:9 282:14
303:7 306:11,
12,20,23
314:19

**longer** 13:22
131:5 252:12

**looked** 40:12
59:14 94:17
108:4 318:14
323:12 336:25
344:11

**loose** 264:21
265:8 266:6
270:23

**lose** 88:14

**lost** 130:22
259:19 338:11

**lot** 36:23 37:18
38:12 40:12
72:14 133:6
137:23 138:1,4
151:13 177:6
191:20 246:8,
22 279:16

**lots** 96:25
329:13

**louder** 10:24
12:4

**love** 62:19
65:24 71:24
106:14

**loved** 17:16
287:18

**Low** 86:11

**Loyal** 46:2

**Lucas** 10:5

**lucky** 177:18

**lumber** 319:18

**lung** 131:13,15

**lying** 21:11

———

**M**

**machine** 75:25

**mad** 159:8

**made** 48:21
50:1 60:19
63:10,13
101:22 113:15
135:18 140:4
170:3 172:24
177:10 179:6
186:13 187:13
194:23 199:23
201:1,10,20
221:22 236:25
250:9 253:24
270:9,21 276:5
281:7 282:15
294:20,22
295:11 302:24
308:20,23
309:5 314:10
329:10 338:23
343:1

**magic** 88:15

**mailed** 346:22

**main** 9:20
131:10 337:11
342:6

**Maine** 176:20

**maintain** 44:10
104:8 298:9

**maintained**
222:25 224:11
285:1 321:21
334:15,19

**maintaining**
202:7 298:5

**make** 14:13
19:7,17 22:6
33:22 36:10
37:19 40:11
42:6 66:22
74:25 75:25
77:2 80:11
82:21 86:4
103:5 122:5
129:21 134:10
157:17 158:9
169:17,21
179:4,5 181:15
186:7 199:11,
22 211:13,14,
17 226:18
228:23 235:17,
22 236:18
244:4 265:15
268:17 269:7
272:8,12,20
281:11 282:11
294:18,20
295:10,13
299:3 308:15,
16 309:3,8
310:19 335:19
353:9,12

**makeup**
168:19,20
169:11 340:24

**making** 90:5
103:3 104:2,19
110:2 130:22
158:6 178:8
179:8 212:24
226:6 282:5
354:2

**male** 268:3
338:7

**man** 314:18

**maneuver**
277:10

**manner** 32:18

**manual** 159:13
161:20,23,24
162:20 164:8,
16,19 182:4,5,
6,8,23 313:18

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 380 of 396
The Deposition of BUSTER CANNON, taken on November 08, 2022
Page ID #: 1885
379

March 167:17
280:18,19
281:16 282:1
285:7,12 286:9

Mario 341:12

mark 44:15
88:11 90:11
92:16 106:3
144:23 165:4
170:20 202:10
213:1 277:19
290:9 300:11
324:17

marked 37:20
69:19 85:10
88:12 90:10
91:4,5,22 92:18
106:4 144:25
163:18,20
165:7 179:19
180:6 202:12
213:2,10,12
244:1 289:16,
17 300:14
324:16 334:10
335:9 345:18
349:24 351:15

marker 175:5,6
237:1

marking 213:9

Marshal 116:5
117:2 118:18

Marshal's
318:24 319:7

Marshall's
117:19 118:2

Marshals
161:7

Maryland
150:2 154:16
178:4

match 184:25
337:9 339:15

matched 86:10
87:23

material
193:14 205:13
206:9

materials
30:25 31:3,7
40:1 50:4,9
216:18 222:14,
19,24 352:1

matter 9:8
33:15 169:24

mayor 144:14

meal 126:8
138:19

meaningful
127:6

means 25:23
264:24 315:21

meant 290:4
314:19

medication
36:6

meet 139:3
144:14 302:20
304:12

meeting 60:2
144:8 306:6

meetings
126:11 144:2

Mellow 282:20,
21

member 42:2,
4,12,13,24
43:15 48:18
74:17,18
119:12 123:22
140:14 214:15
296:12

membership
214:14,18

memory 36:7
56:25 57:2,20
63:18 75:7 89:8
91:15 122:11
167:23 219:3
291:23 301:22
304:5 305:1,4

mentioned
59:24 315:23

mess 180:4,5
181:11

message
75:23

messed 35:14
181:16

messing
209:24 279:14
314:20

met 59:3,10
137:3 144:4
188:20 239:24
241:3 301:19
302:16 305:7,
10,20

metal 155:1,14
156:6

meters 308:15

method 342:5

methodical
231:16

methods
237:13,18,23

microliter
169:3,9

microphone
38:20 159:6

miles 99:4

military 122:19
180:25

milk 101:5,6

Milwaukee
298:10

mind 38:19
76:23 77:5
103:24 174:23
179:17 229:12
230:3 232:14
330:7

mine 316:12,14
335:18

Mine's 335:19

minimal
191:20

minute 71:11
162:25

minutes 14:21

99:8,9 159:9
221:24 222:1
255:6 267:8
275:24 282:21
334:2 348:1,3

miscellaneous
97:1

mischaracteri
zed 251:18

misrepresent
245:25

misrepresenti
ng 251:13

missed 268:25

missing 77:7,
13 233:3

mistake 34:23
35:19 194:16
226:20 332:15

mistaken
264:18

mistakenly
194:13

mistakes
33:22,23 224:3
225:12,15,19,
21,23

misunderstoo
d 27:8

mixed 277:23
325:1

mobile 23:24
24:1 154:25
155:11,16,19,
23 156:6
295:11

model 154:25

Molly 12:5,6
37:5

mom 249:23

moment 88:13
150:13 187:8
202:13,22
308:5

momentarily
12:24

moments 22:1
33:18 273:16
282:17

monetary
178:19

money 89:15,
16 90:4,6,18
92:8 129:21
179:4,5,6

month 144:13
290:23 291:3

monthly 84:8
144:4,8 191:12

months 84:9
113:13 315:24
351:1,7

mood 24:10,
22,24,25 265:7
275:19

mopey 276:11

Morehead
312:12,14

morning 10:14
102:16 138:13
171:10 221:4
240:20 241:3
288:18 302:17
344:14

motions
114:10

motive 344:23

mouth 23:3
229:13

move 31:11
156:8 170:20
175:13 277:19
281:11 324:25
329:18,20

moved 211:16
277:24

moving 23:3
88:14 187:2
277:12 281:21
282:4 283:24
285:15 307:8

multiple
133:23 193:2


Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 381 of 396
The Deposition of BUSTER CANNON, taken on November 08, 2022   PageID #: 1886
380

267:21

**murder** 299:2
331:21

**Murfreesboro**
178:2

**mystery**
223:13

—————————

**N**

**named** 17:15
85:1,5 176:1
341:12

**names** 327:18

**National** 47:12
150:2 178:15
214:13 215:20

**nationwide**
116:9

**nature** 40:2
44:12 85:17
109:10 152:16
173:5 198:2,8
236:1 244:25
256:22 296:21

**necessarily**
80:25 136:15
153:1 169:24,
25 211:12
219:19 245:10
263:17 264:1
315:12 326:19

**needed** 31:10
54:8 55:4 80:17
96:4 124:16
131:20 134:8
174:5 219:5
229:4 281:20
343:20

**negative** 71:8
82:24 96:22
201:7 207:22
308:8 310:19

**negligent** 35:1
245:20

**negligently**
245:21

**neighbor's**

244:22 245:15
246:13

**newspaper**
339:17,20,23,
24 340:13

**NFPA** 64:4
65:1,7 155:7
156:17,19,23
157:2,6,11,18,
23 158:1,10,16
159:12 160:2,
11,16,19,23
161:19 162:10,
20 163:13,22,
24 164:3,7,12
165:21 166:1,5,
10,19 185:6
196:11 199:7,
14 200:4
205:10,22
206:6,17 207:5,
16 208:3,21
210:14 217:24

**nice** 105:25
180:2 328:9

**Nicorette**
133:4

**night** 244:24
245:16 246:17,
20,25

**nods** 100:10
101:18 134:14
169:6 236:14
353:19

**noises** 104:19

**non-causes**
227:22

**non-
confirmation**
211:10,12

**normal** 121:9
274:4,7

**north** 87:17

**nose** 28:5,23
170:18 173:11
174:8,16 175:2
277:16 333:8,
14,21

**note** 37:12
90:25 220:20

**notes** 19:22
57:19 231:3
240:8,12
258:22 266:19
294:25 295:16
298:17 316:9,
15

**notice** 104:20
154:11 264:1
336:24

**noticed** 31:13

**noting** 295:6

**November** 9:5
11:19 25:10
64:1 93:4
111:23 120:3
127:25 163:8
203:3 222:7
259:23 296:6
312:4 334:8

**NRT** 47:9,11,15
178:14

**number** 9:11
14:10,11 36:21
37:23 38:9,15
44:18 46:22
48:2 70:4 81:6
84:3 118:22,25
119:3,5,6
145:20 167:4
180:21 190:23
191:21 202:20
215:3,10,11,12
225:1,5 226:5,
9,10,16 227:21
229:12 230:23
231:21 232:12
233:10 235:5
279:10 280:8
297:21 301:18
302:4,9 307:11
311:18 312:23,
24 313:2,11
316:24 317:22
318:1,10
319:10,22,23
320:1,22,24
321:9 322:8,12,
13 323:7 324:8
344:3 350:2

**numbers** 38:6,
13 70:24
311:22

**nutshell** 90:9

—————————

**O**

**oath** 12:12 21:4
27:2 116:16
186:3

**object** 15:8
18:25 21:6,12
33:4 35:4,5
44:20 51:18,24
54:23 55:8
61:23 62:7,11,
13 73:1 78:2
80:4 114:23
117:22 118:6
119:14 126:24
127:3,8,15
152:20 160:18
162:13,15,24
166:25 185:22
186:16,17
204:14,17
219:8 220:21
238:24 242:18,
21 245:9,19
247:23 248:13,
17 249:2 251:3,
12 257:13
272:3 278:11
284:24 296:24
300:3 301:5
304:9 309:11
315:16 316:13
328:20,21
330:23,24
343:23 345:8
346:14 349:22
352:8,14

**objected**
114:11,21

**objection**
14:16 61:24
184:3,25
196:22,25
209:14 215:7
225:10 245:23
246:2 250:13
251:25 315:8

**objections**
14:13,14
203:12 314:10

**objective**
61:21 230:5

**objectives**
280:22

**objects** 225:3

**obligated**
139:2

**obligation**
57:8 251:11

**observation**
294:14

**observations**
205:4

**observe** 276:8

**observed**
250:22 253:25
278:19

**obstacle**
231:14

**obtain** 47:21
49:7 74:24 80:8

**occasion** 22:7
28:12 50:12,17,
23 51:4,15 63:6
71:19 74:23
115:23 125:16
271:16,20
272:22 273:2,
18 310:7,12,16
345:5

**occasions**
18:8,15 27:13
51:12 60:24
74:4,12 172:13
272:22 308:10
311:1,2,4

**occur** 182:25
195:15 228:4

**occurred**
61:22 246:20
350:25

**occurs** 152:7

**October** 39:13
42:22 112:21

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 382 of 396
The Deposition of BUSTER CANNON, taken on November 08, 2022    PageID #: 1887

381

113:3 128:6,22

**odor** 169:14, 15,20 170:1

**odors** 66:14 68:19 69:10

**offense** 348:13

**office** 13:9 92:16 94:21 111:23 116:17 117:19 118:2 129:4 142:3 171:23 318:24 319:7

**officer** 15:5,15, 19,23 16:6 42:8 43:10 48:14 67:4,13 68:6 115:24 121:9, 14 135:5 142:1 264:17 296:10 348:15

**officers** 238:1 249:24 262:2, 12,18

**offices** 9:6

**official** 107:16

**officially** 310:7

**Ohio** 10:1

**oil** 195:21 318:7 319:16 321:3 338:14

**oils** 168:5

**older** 154:25 155:11,16,19, 22 156:6 164:3

**one-gallon** 336:24

**one-hour** 136:2

**oop** 292:8

**open** 87:10 96:24 174:23 229:12 230:3 251:23 317:1

**opens** 231:12

**operating** 163:12

**operational** 39:7 44:3 325:13

**operations** 46:8

**opinion** 68:20, 22,24 157:17 162:22 229:21 243:24 245:4 248:6 257:21 266:3 287:22

**opinions** 67:2 230:6 256:21, 25

**opposed** 11:4

**opposite** 273:17

**options** 232:25

**Orange** 182:5 305:21 306:1,4

**order** 37:15 44:10 46:15 216:11 217:9 270:20

**organization** 214:16

**organizations** 188:9

**origin** 140:18, 22,24 157:12, 17,22 158:2 160:1,12,17,22, 24 162:22 183:3,16 196:19 198:21 199:9 204:20 206:22 207:10 223:13 227:25 228:2 239:3 250:19 251:1 252:24 253:9 254:2,17 287:9, 10,17,20 300:1, 4,5 309:17 337:6 338:16

**original** 305:13

**originals** 83:16

**origins** 250:19 254:2 264:10 287:13

**outlier** 20:5

**outline** 253:15

**outstanding** 146:23

**overly** 30:6,8, 13,17,21

**oversaw** 126:20

**overtime** 90:22

**owner** 189:5

**Owsley** 10:5

---

**P**

**P.M.** 354:11

**pace** 130:4

**pad** 336:20 337:7

**padding** 235:21

**pages** 40:13 146:13 217:3 285:11 311:20 323:12 341:4, 22 344:7 347:1

**paid** 178:22 179:7,12

**paint** 175:11

**paneling** 155:2,15 156:7

**paper** 180:3 217:10 279:17 289:9

**paragraph** 183:13,23,24 184:7,8 204:2,3 208:23 223:25 225:18 336:16 344:19

**parents** 103:11,15

**Park** 178:4

**parking** 96:25 329:13

**part** 15:5 18:18 20:17 22:3 23:18 29:4 42:19 43:13 44:17 46:17 52:2 66:11 70:11 72:8,14 80:18,24 81:24 86:2,3 90:15 91:11,13 92:1 93:14 108:3 122:7 139:5,7, 12 147:23,24, 25 155:6,14 168:21 174:9 183:6 184:7 191:14 211:1,8 216:18 219:15 222:13,25 224:11 227:2 234:17 236:11 237:15,20 241:1 250:1 257:14 260:7 261:15 297:3,6 298:2 313:10, 13 340:4 346:6 351:5

**partial** 236:5

**participant** 52:8

**participate** 42:24 124:19 125:17 138:23 176:25 238:25 239:1 247:11 256:4

**participated** 21:19 35:7 40:3,20 41:8 42:11 44:4 52:4 53:18 66:19 72:20 74:19 124:5 133:22 166:21 168:10 238:7 297:13 298:24 307:21

**participating** 14:12 16:9,14 30:4 34:5 64:16 116:14 143:24 347:6

**participation** 67:24 175:22 351:2

**partner** 247:21

**parts** 268:21

**party** 85:1,5

**pass** 276:25

**passed** 52:25

**past** 18:14 58:1 244:6 294:5

**patrol** 93:8 180:23

**pattern** 149:10, 13,25 223:14 231:3

**patterns** 154:2 250:22 252:4 253:25 263:25

**pause** 25:3

**pay** 92:8 178:11 179:1,2, 9 250:11

**paying** 90:19, 20

**PD** 95:1 338:10

**Pearson** 46:2

**pending** 9:9 14:2,6

**pension** 112:25 113:8, 21

**pensions** 114:2

**people** 135:10 138:11,12 148:15 177:6 243:7 285:4 328:3 346:16

**percent** 208:14



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 383 of 396
The Deposition of BUSTER CANNON, taken on November 08, 2022
Page 1888
382

perfectly
14:19 30:9

perimeter
259:1

period 42:25
72:1 101:12
227:12 247:7
352:20

periods 189:24

permanent
113:11

permissible
30:9

perpetrator
87:16 309:15
310:1

perpetrator's
340:14

person 12:24
13:14 14:20
15:1 25:13
87:1,6,8 88:18
137:3 147:14
162:21 192:10,
17,21 204:20
341:12,16
349:11

person's
228:6

personal
80:11 119:3,4,6
145:23 264:13

personally
278:19 293:25
294:8

personnel
89:6 92:14,20,
22 111:18

perspective
159:21

persuaded
256:17

pertaining
298:6

pets 187:20

phone 58:5,16,
22 70:7 71:17

75:8,23 118:22,
25 181:8 235:3,
6 240:24

photo 111:11
338:12

photograph
107:19 110:8

photographed
338:11

photographs
303:2

photos 59:13
233:15

phrase 16:3

physical 205:4
226:19 348:23
350:21

pick 71:12 97:2
105:17 193:25
231:3

Pickard 344:21

picked 72:11
81:10 176:9,10
177:18 278:7

picture 9:18
105:25 335:19

pictures
303:11,24
304:1 306:21,
25

piece 175:9
284:16 337:3

pieces 217:10
233:2,3

pile 319:18

pinpoint 96:23
170:17

pint 111:2,3,5

pitfalls 224:3

PJ 16:14 17:6,
16,18,21 19:6,
7,16 20:18
22:6,11,16
23:24 26:2
28:11,22 29:14
31:11 32:11

41:22 44:5,19
45:10 46:15
50:1,25 51:8,16
52:25 54:9
56:20,23 62:19
63:9 64:8
65:22,24 66:22
67:8 71:20,24
72:2,6,8,12,17
74:4,13,21,25
75:12 78:21
79:10 80:13,17,
24 81:21 82:3
84:6 96:2,8
97:21 98:9
99:19,25
100:13,23
101:8,17,19,22,
25 102:10,22
103:3 104:2,13
105:12,14,17
106:14,25
107:19 108:6,
23 109:12,25
110:10,25
116:13 126:5
127:5 135:16,
17 138:23
139:1,15,21
146:24 147:14
148:18,23
161:14 168:22
169:13 171:2
172:2,14,21,24
173:3,15 174:7,
19 185:19
187:17 188:3,
12,19 189:1,5,
9,15,20 190:7,
16 194:18,22
195:12 200:2,
22,25 212:4
215:16 219:9,
15 220:2,5,15,
20 221:8,21
234:12,20
236:9,12,18,25
237:10,14,19,
24 238:6,7,12
239:8 241:20
249:20 250:12
255:8,10,12
257:22 258:10,
17 259:3,11
260:2,13,18,21
261:8 262:1,3,

4,6,10,17 263:4
264:15,20
265:8 266:10
267:2,5,17,21
268:7,9 269:10,
14,23 270:20
271:21 272:5,7,
8,12,24 273:11
274:2,5,14,18
276:4,8,14,18
280:18 281:18,
22 282:14,18
283:13 284:9,
13,18 286:11
287:12 288:4,
18 290:21
292:1,20 294:5,
14,20 295:6,11
296:23 297:3,
12 298:24
299:3 300:20
301:9 302:4
307:4 308:23
309:8 312:9
317:17 318:7,
21 319:13
321:2,25
326:13,14,20
327:3,17,20
328:5,23 329:4
337:1,9,16
338:14,17,22
342:23 351:8

PJ's 46:25
49:21 51:16
52:20 55:5,15
56:4,18 57:9,17
62:9 63:6
73:18,21 77:23
78:10 80:2
83:21 148:6,10,
14 174:16
200:12,13
211:1,10,22
221:3,12
257:12 278:18
297:8 298:18
306:5 307:14,
19 310:13
311:9 318:11
320:5 321:14
322:18 323:1,
18 327:14
330:2 333:14,
21 339:3

place 34:19
55:13 56:8
57:7,14 137:1
145:4 156:24
160:23 162:10
163:13 165:22
171:2 181:3
184:9 185:6
192:16 206:6,
17 207:5,16
208:3,21
210:14 233:2
263:3 277:19
305:2

places 82:3
261:10 277:25
292:14 301:8
302:4 321:4

plaintiff 10:15
11:22 12:7,9
13:10,13,16
88:21,22 89:1

plaintiffs 10:25

plastic 336:24

plates 193:17

play 100:14
265:21

played 148:19

playing 110:10
265:14

playtime
110:13

plotting 231:16

plumbing
232:1

pocketed
89:16

pocketing
89:14

point 13:22
53:24 83:4
113:7 116:4
133:11 151:5
153:4 160:19
164:8 173:9
182:23 213:21
221:3 225:5
226:5 228:22


Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 384 of 396
The Deposition of BUSTER CANNON, taken on November 08, 2022
Page 1889
383

229:18 231:4
234:21 240:13
247:14 267:1,2
288:21 296:15
304:6 317:3,5
327:12 337:10
343:19

**pointing** 70:16

**points** 69:22
260:13,19
277:16

**police** 10:12
43:17 48:16
49:8,15,20
50:13,22 51:5,
23 73:10 75:10
80:8 95:8,12,
17,22 97:25
98:7 99:15
115:24 120:7,9,
11 121:9,14
142:1,12 146:6
150:18 171:20
180:24 209:11,
15,18 210:8
211:9 249:24
296:15 301:16
314:6,12 316:8
320:20 321:20
346:13 347:8
348:10 350:15
351:11 352:12

**policies** 54:17,
25 55:3,13,19
57:6,13 156:15,
23 158:21
163:15 295:20

**policy** 64:18
89:3 204:4
232:17

**political** 93:5

**polygraph**
346:8,19,21
347:3,10,19

**pool** 114:5

**porch** 277:23
294:4

**portion** 330:15
340:7

**portions** 26:9

**Posing** 223:14

**position** 93:24
94:2,4 95:22
110:4,5 131:8
170:14 196:17
197:20 204:19
256:16 269:15

**positive** 48:3
73:25 74:1 76:1
82:24 103:16
184:21 194:3,
11 196:19
198:3,9 201:7
205:24 207:10,
22 237:17
240:1 313:3,12
316:25 318:2
319:11,16
320:10 322:14
323:8 324:9

**positives**
184:23 187:9

**possess** 284:5

**possessed**
50:4

**possession**
49:23 218:16

**possibly** 257:2
261:17 338:10

**post-
conviction**
197:14 329:25

**post-flashover**
153:16,19

**potential** 15:25
41:24 42:10
43:9 152:5
227:23 228:12,
18 245:8 246:9
250:19 287:12
301:17 337:16
346:17

**potentially**
170:2

**potty** 103:17,
23

**pouch** 104:21

105:8 109:15,
16,17,18,20

**poured** 319:17

**pouring**
241:22

**Powerpoint**
334:16

**practice** 20:5
45:4 105:7
137:2 233:22
234:2,6,9,13,20
247:12 256:3
270:24 273:12

**practices**
34:18

**praise** 172:24
173:15

**praised** 173:23

**praises** 173:2

**pre** 56:12

**precautions**
137:6

**precise** 150:5
333:14

**predated**
214:19

**predating** 64:8

**predominantly**
189:12

**prelim** 56:12

**preliminary**
250:18,25
252:22 253:8
254:1,16

**premise**
199:14 249:19

**preparation**
18:18 21:17
31:4 36:16 58:3

**prepared**
36:25

**preparing**
17:25 38:3
40:15,18
297:18

**presence**
175:18 183:2,
15 184:16,22
192:11,18
194:15 195:11
205:12 206:21

**present** 14:11
28:4,20 31:11
43:19,23 60:25
195:2 197:22
206:2,11
234:22 277:10
281:11 287:16
334:16 347:20

**presentation**
334:16 335:7

**presented**
26:22,25 27:3
28:16,18 62:14
68:7

**presenting**
281:21 282:4

**presume** 76:9

**pretrial** 58:5

**pretty** 25:19
44:12 47:14
83:10 97:17,18
133:11 144:1
152:4 190:1
238:9 242:2
263:6 265:2
287:18 328:9

**prevent** 84:5

**previous** 73:1
167:1

**previously**
21:9 27:2 51:8,
14 170:25
278:4,8

**price** 90:3

**pride** 147:16

**Priest** 10:5

**primary** 15:20
140:7 337:4
338:15

**principles**
228:5 229:7,24
231:5,17 232:2,

10,18 233:8,16
237:14,19,24

**print** 217:9

**prior** 17:24
18:4,20 24:23
32:21 40:5,16
50:12,14,18,23
52:23 54:13,16
55:15,22 56:5,9
63:9 66:4 68:25
73:11 78:6
112:4 137:14,
17 157:3,5
180:17 188:23
194:5 224:11,
20 236:9
241:19 247:12
267:16 269:21
294:19 300:17
332:18 334:20
343:7 345:16
349:20 352:4

**priority**
172:18,21

**privileged**
58:1

**problem** 25:20
31:14 208:10
281:11 282:9,
13

**problematic**
30:6

**procedure**
89:3 230:25
231:1

**procedures**
54:17 55:1,3,
13,20 57:6,13
156:15,24
295:20

**proceeded**
258:1

**proceeding**
70:19 329:22

**proceedings**
9:1 63:9 71:17
329:25 331:4

**process** 18:18
46:17 64:9 69:3



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 385 of 396
The Deposition of BUSTER CANNON, taken on November 08, 2022
384

80:18 86:14
139:6,7 142:25
145:4 161:17
174:9 177:22
186:13 193:6
221:9,11 237:5
258:18 286:7

**produce** 54:9
184:21 187:9
193:3 194:2
343:20

**produced**
182:7 214:22
215:9,12,14
297:22 298:3,
14 321:19
334:13 345:13

**producing**
215:2

**product** 77:14
232:13

**production**
213:5,18

**products**
193:2 194:4,6,
10 195:20
263:23

**professional**
71:1 187:19,21
233:5

**program** 29:24
66:11 122:7
167:15,17,21
176:7,8 180:19
182:14 215:21
216:13 221:13

**programs**
208:13

**progress**
231:13 279:24
280:13

**progressed**
281:12

**projected**
220:9

**prompted**
175:22

**properly** 209:1

210:2

**property**
249:19 255:19

**prosecution**
219:2

**prosecutor**
300:23 301:6

**protect** 89:22

**protocol** 104:4
174:10 237:8
265:1 275:5

**proud** 144:17,
20

**provide** 50:12,
17 84:4 149:9
154:13 173:6
174:22 187:23
201:9 254:16
288:6 297:21

**provided**
89:23 149:5,23
150:13,18
182:5 190:14
191:8 243:14,
19,20 246:19
247:20 250:25
252:22 255:23
256:4,14
257:11 308:21

**providing**
172:23 247:18

**pull** 36:25
175:7 190:22
217:10

**pulled** 87:13
92:3 320:8
341:15,16

**pulling** 25:4
134:12 242:24

**punitive** 114:9,
13

**pup** 265:17

**puppy** 62:19
220:16

**pure** 69:1

**purpose** 24:20
76:14,16 77:18

90:23 229:6
259:5 260:12
265:15 287:11

**purposes**
183:3 195:3
196:19 199:9
207:10 260:16
300:1

**pursuant**
40:23 45:8

**pursue** 66:23
67:4,21 68:2

**put** 19:22 26:18
29:3,6,7 38:19
86:15,17 99:16
104:9,22
111:14,16
131:19 170:15
175:11 178:1,
14 181:17,18
193:16,24
221:13 242:1
243:12 253:13
264:21 266:22
271:13 275:2,5,
7 279:9 283:23
292:22 311:16,
17 324:23
337:10

**putting** 110:11

**puzzle** 233:2

**pyrolysis**
193:6,7,8,24
194:10,14

**Q**

**Qualitative**
224:1

**quality** 208:12

**question** 14:2,
6,7,16,21 17:8
19:9,13 20:13
22:15 27:8 41:7
47:20 48:6 51:2
70:11,25 73:2
74:10 77:18
108:25 153:6
162:16 167:1
182:3,22 183:6

191:17,21
200:19,20
213:4 230:7
235:11,25
236:4 241:17
243:2 244:15,
17 245:1 246:5,
17 252:3,5,21
253:16,22
254:5 262:24
263:8 275:9
308:1,6 311:8
331:2 342:9,11
347:15

**questioned**
180:16 307:19

**questioning**
213:7 251:6
341:7 347:7

**questions**
14:19 25:23
62:14 84:15,24
88:17 181:24
182:21 183:9
186:1 201:6
203:8,17 209:6
214:7 224:24
226:17,24
227:8 233:3
242:4 249:17
307:14,18
308:2 311:21
332:17 335:5
336:10 352:16,
24 353:1,3,6

**quick** 11:6
38:20 96:16
202:17 259:18
334:1 335:17
338:15

**quickly** 66:1
99:18 155:11,
25 156:8

**quit** 283:20

**quota** 139:3,5
188:20

**quote** 28:4,7
184:1 226:20,
21 246:24,25

**quotes** 340:1

**R**

**radio** 109:16,
17

**rain** 138:14

**raining** 138:13
241:22

**raise** 12:13

**raises** 12:14

**Raisor** 107:21,
24,25 108:6
186:22 338:12

**ran** 218:1
338:16,22
342:23 351:7

**random** 81:10

**randomly**
293:11

**range** 134:4
215:13

**rapidity** 155:3

**rarely** 205:13

**rates** 208:13

**rating** 145:22

**ration** 102:3
171:14 221:22
288:12 289:3
292:2

**re-cert** 110:20,
23

**re-certification**
177:22

**reach** 83:4,8
114:8 152:5
153:3

**reached**
256:21,25
257:1

**reaches** 151:1,
11

**reaching**
109:20

**read** 61:12,14

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 386 of 396
The Deposition of BUSTER CANNON, taken on November 08, 2022
385

145:17 157:6,
11,18,22 158:1,
4,10 160:16,19
161:19,22
162:14,17,20
181:22 184:8
199:11,12
203:7 208:24
209:4,21,23
212:11 226:7
244:14 249:15
252:11 285:6
290:14 308:1
310:15 330:6,9,
15 332:4
336:14 340:5,7,
10 353:14
354:1

**readily** 223:11

**reading** 158:11
182:20 225:11
251:15 253:1
308:15 314:9,
22

**reads** 183:25
209:17 291:18

**ready** 249:20
265:25 267:10
337:1

**real** 11:6 38:20
96:16 105:25
127:12 202:17
233:1 251:22,
23 252:11
259:18 282:9
335:17

**realize** 113:16
290:3

**rear** 24:6

**reason** 44:17
87:23 129:15,
18 131:10
166:18 194:10
201:22 211:8
216:25 221:18
269:19 272:13
284:21 338:3

**reasoning**
195:18 297:6

**reasons**

195:16,22
206:11

**recalibrate**
267:21 268:7
271:10,13
272:13 273:3,6,
15 275:7
282:21

**recalibrated**
24:12 267:10
271:5 272:18
274:14,17,18,
25 275:24

**recalibrates**
272:17

**recall** 17:9 19:5
22:3 23:5,7
30:19,24 31:15
43:3,4,20,21
46:4 51:10,19
54:16,22 55:24,
25 56:6,7,24
57:6,13,18
58:2,4,13 59:5,
8 61:4 63:11,13
68:15 69:11
70:6 71:16
75:2,17,19 76:4
78:9,25 79:5
85:17 89:2,5
91:11,13 92:1,
4,7 93:24 94:4
95:17,21 96:15,
16 115:6,8
121:2,5 122:9
141:11,12
143:4 149:24
150:21 152:9
154:18 156:25
165:18 166:3
172:13 174:24
181:7 190:16
202:9 220:12
223:3 234:24
235:2 239:2,25
240:4,6,22
241:7,8 242:11
243:25 248:18
250:14,15
253:10 257:6
260:7 261:4,22,
25 263:1
264:11 266:25
269:23 270:5

273:19 278:4,8
292:4,7 293:15,
19 295:23
298:3 301:2,24
302:2,4,11
303:17 307:1
314:9,22
332:15 338:6
349:17

**recalled** 242:7

**receive** 171:2
216:24 240:15
295:15 351:19

**received** 22:20
51:21 52:23
53:4,5 66:4,8
68:25 73:23
121:17,22
122:6,14
180:23 185:4
194:25 200:11,
17,24 202:7
204:24 205:7,
19 206:3,13
207:2,12,25
208:18 210:11
216:14 217:25
225:8 270:14
288:20,23
298:4 316:5
349:4,12

**receiving**
255:18

**recently** 197:4

**recertification**
69:3 120:16
139:5,7 161:17
219:17

**recertify** 46:15

**recite** 228:2

**reckless** 158:3
160:16 162:8,
21

**recliner** 341:17
342:10 344:21

**Recognition**
184:20

**recognize**
44:24 146:1

163:25 167:10
217:3,17
219:24 229:3,4
300:15,16
325:8 334:15

**recognized**
213:14

**recognizes**
169:14

**recollection**
21:14 39:25
91:23 116:18
136:17 218:24
224:17 238:5
306:15,17

**recommended**
180:22

**record** 9:2,13
11:5,15,16,17,
18 25:5,6,8,9
63:22,23,24
119:23,25
120:1 122:5
163:4,6,7 186:7
202:21,23,25
203:1 222:3,4,5
259:18,20,21,
22 289:15,16
296:2,3,4
308:20 334:5,6,
7 354:4

**recorded** 9:19
284:1

**recording**
284:6,22

**records** 37:24
165:5 202:7
219:14 233:15
298:10

**recover** 225:4

**recovered**
348:23

**refer** 38:12
69:22 119:17
215:19 253:12,
14 311:19
349:25

**reference**
16:18 18:8,22

19:13 185:1
201:11 237:6

**referred**
203:16

**referring** 37:13
55:1,10 179:3
203:12 235:7
251:21

**refresh** 56:25
57:2,20 301:22
304:5 305:3

**refreshed**
305:1

**refreshes**
63:18 75:7

**regard** 33:9
148:17 248:11
287:25

**register** 75:25

**regular** 126:15
315:11

**regularly**
126:10 144:2
158:11,13
219:10

**rehired** 93:6
112:22 113:5

**reinforce**
227:24 231:3

**reinstated**
113:6

**reiterate**
128:21

**relate** 56:3
215:16

**related** 32:10
55:5 56:17
57:16 64:18
72:11 122:15
255:24

**relates** 80:23
344:2

**relating** 19:25
40:2 45:9 52:19
55:15 57:9
67:24 72:5 81:7
215:4 296:23



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB   Document 160-6   Filed 10/03/25   Page 387 of 396
The Deposition of BUSTER CANNON, taken on November 08, 2022
386

297:2,11,12,23
298:18,23
326:6 349:8,15
351:12

**relation** 20:4
64:19 124:14
238:12 280:17

**relations**
121:9

**relationship**
40:24 41:2 59:2
60:9 124:15
185:19

**relative** 326:24

**relayed** 75:22

**released** 93:5

**relevant**
248:22,25

**reliability** 62:9
72:19 77:23
78:11 148:5,10,
13 209:8 210:5,
21 211:1,21
283:10 297:7
306:5 307:14,
19 310:13
314:2 315:7
320:5 321:14
322:18 323:18
324:14 328:6
330:2

**reliable** 80:14
83:20 198:3,10
199:8 209:1,7
210:2,4,18
212:5 314:2
318:12 327:4
329:9 333:21

**reliably** 269:16

**relied** 218:21
237:11,15,20,
25

**rely** 192:10,13,
17,22 226:2

**remain** 170:2

**remarked**
148:1

**remember**
13:7 43:25 44:1
58:19,23 59:16,
21 60:24 62:18
75:3 84:12
85:21 89:11
90:15 92:11,12
103:19 112:7
115:19 120:12,
22 138:3
140:20 150:4
157:1 174:25
178:6 180:14,
15 181:6 197:9
201:23 212:22,
24 213:23
220:10 230:19
238:11 239:17
240:25 241:7
244:17 246:6,
22 253:11
254:24,25
255:4 259:15
261:15 262:21
263:1 272:11,
23,24 278:12
283:22 289:8
292:10,23
293:1,17,20
300:24 302:22
303:6,17,20,22
304:17,25
305:9 306:3,11,
14,22,23,24
313:15,18,21,
25 345:2

**remembering**
157:7

**remotely** 10:4,
9,10 12:7,9

**removed**
137:10 227:25

**repeat** 17:20
18:3,10 20:7
21:8 27:9 51:3
61:10 74:9
155:21 220:11
233:25 246:7
252:25

**rephrase** 16:2
20:12 27:11
35:11 161:1,5
198:4 256:23

330:8

**report** 19:19,25
20:4 39:7 40:22
46:5 49:7
53:10,13 67:23
81:3 190:15
229:22 233:11
279:25 280:13
295:6,8 297:11
299:8,11 303:4,
6 315:19,21
316:1 322:21
323:23 324:1,4,
13 325:13
336:4 337:12
344:10 347:19
349:4,12,14,15
351:18,19,25

**reported**
144:10

**reporter** 9:4
10:17 11:1,25
12:13,15,20
159:6 353:19

**Reporters** 9:7

**reporting**
80:18

**reports** 39:19
44:4,17 49:20,
23 50:13,14,18,
21 51:4,22
52:19,22 53:4
54:9,19 55:5,14
56:3,18 57:16
75:5 80:9,22
258:22 299:10
301:20 316:4

**represent**
10:15 224:3
298:1

**represented**
13:9 85:13

**representing**
118:3

**represents**
96:20

**reputation**
233:5

**request** 43:17

49:7 58:17
135:18 148:9
189:16 199:23
213:18 215:3,4,
6 302:20 348:9
349:5 350:14
351:7

**requested**
199:18,21,25
200:2 330:15
348:22 350:22

**requesting**
139:21

**requests**
43:22 46:24
48:21 49:3
60:20 81:6
213:5 301:21

**required**
20:17,20 44:3,
9,17 45:9 46:11
69:3 295:16
297:1

**requirement**
138:22

**requires** 46:1

**reserve** 114:9,
16,18,19
353:10

**resolved**
212:23

**resolves** 60:17

**respond**
254:23

**responded**
21:25

**response**
47:12 178:15
205:25 213:17
215:7,8

**responses**
213:6

**responsibilitie
s** 15:20 140:7

**responsibility**
140:10,23

**responsible**

147:14 159:3,
13 228:6

**rest** 86:9 87:14
152:4 196:5
310:15 336:21

**restaurant**
255:10

**result** 30:18
67:8 74:5 76:12
155:12,25
192:23

**resulted**
237:14,19,24

**resulting** 88:4

**results** 62:9
83:5 84:4 202:8
208:7,9 286:17
308:9 310:19
316:10 321:17
333:22 339:4
346:23 351:13
352:12

**retain** 222:25

**retained** 31:1

**retire** 113:10,
12 129:19

**retired** 42:19
108:22 112:22,
25 113:18,24
114:1 128:15,
24 129:6,9
130:25 131:10
132:18 175:25
177:1,2,7
218:12 224:9

**retirement**
113:11 114:3
129:20 218:18

**retiring** 129:16

**retriever**
105:15

**returned** 349:4

**revealed**
300:18

**revelations**
229:14 230:5



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

reversed 33:2

review 27:25
40:19,22 46:18
145:4 148:2
158:24 159:12
160:7,11
162:11 217:24
285:6 353:9,12

reviewed
17:24 18:4,17,
20 27:16 31:3,6
36:15,17 38:3
40:1 61:8,11
137:12,14
157:3 160:2,4,
7,23 161:24
164:7,16
213:20 224:11
334:20

reviewer's
146:22

reviewing
27:19 39:25
58:2 137:17
162:9 203:6
213:23

REVIEWS
203:9 340:9

revised 158:17

revision
158:19

revisions
158:11,14
161:24

revisit 114:12
115:1

reward 23:17
103:16 105:10
172:15

rewarded
189:2

rewards 104:1

Richard
143:12

ride 86:6

Rider 301:10,
13,15 349:10,
16,20 351:20

352:6

right-hand
38:6,7 291:2
311:22 325:19
349:10

rip 265:20

road 86:11
94:5,7 95:25
96:2 134:11
319:17

roadway
319:11,16

rob 87:15

Robert 9:8
10:15 12:7,9
16:23 88:19
90:14 337:25

Robinson-
staples 12:8

role 43:13
140:17,20
144:18 148:19
159:14,23
184:14 204:7
227:5

roll 151:9
152:17

rolled 133:13

rollover
152:11,13

rolls 152:14

rooftop 225:2

room 23:25
24:7,14 105:22
150:25 151:24
152:2,3,6,15,
19,25 153:2,3,8
154:1 155:12
156:1,8 264:2
265:4 267:12
268:24 275:19,
25 276:2,3,5
277:9 321:3
327:3 336:20
337:5 338:16
342:11,12

roughly 93:20

routine 137:11
230:24 238:9

Royal 23:13
29:25 46:5
170:12 298:10

RPD 38:9
321:20

RPD1145
81:17

RPD1200
322:20

RPDS 311:24

run 63:10 96:13
97:7 159:22
186:18 265:21
277:6 278:20
352:22

rundown
233:23 234:3
235:14 242:2
243:14,20
253:22

running 287:6

runs 97:6

rush 228:24

Russell 41:19,
20

Russellville
9:9 10:1,2
17:12 21:20,25
41:15 52:5
133:19 179:11
238:19 321:20

RV 336:25

———————

S

S-C-H-U-L-T-E
85:8

Sadieville 93:9

safe 235:22

safety 86:19
137:5 234:17
260:16

Sageser 147:7

salary 113:8
178:25

sample 63:14
71:11 175:3,7
195:11 207:22
211:17,25
212:4,19
277:22,24
278:1 293:5,7,
8,11 294:9,10,
11 308:13
312:19,20
316:21

samples 47:17
48:3 49:9 50:25
51:7 53:10
71:3,9 81:12,
16,25 82:7,18
84:3,9 175:15
184:15 192:6
207:20 209:12
210:9 211:2
237:2 277:21
292:19 293:2,
13,22 294:15
295:11 299:20
300:19 303:5
312:24 313:3,
11 314:7 317:7,
23 318:1,8
319:10,23
320:2,8,9,10,12
321:5,6,10
322:8,13 323:4,
7 324:5,8
333:15 349:1
352:6

Sandra 9:4

Sarasota
216:14,22

sat 241:23
242:14 243:4

saved 291:15

scanned
217:11

SCBA 131:18

scenario
201:14 233:1

scene 17:7,9
43:18 45:20,23,

24 47:17 58:12,
23 59:4,13
73:25 74:1
81:12 82:16
102:1,2 103:4
136:25 137:5,
25 138:15
140:10 153:16,
20,21,24 196:7
201:11,14
204:5,8 206:11
207:23 209:10
210:7,22 223:4
226:10,18
227:17 229:19
230:13,18
231:2 233:14,
23 234:3
235:12,15,22
237:11 240:2
241:19 248:3
249:19 256:11,
18 258:9
267:21 268:10
270:4,16,20
271:22 272:6
273:11,14
280:5 287:12
290:19,21
305:17 312:25
314:5 315:14
316:21 317:8,
23 319:10,11
320:7,12 321:5,
7 322:9,18
323:4 324:5
338:23 342:23
348:24

scenes 96:22
190:7 209:13
210:10 211:3
223:11 274:9
289:24 295:18
297:16 314:8

scent 338:11

schedule
239:17

scheduled
126:11 144:2

scheduling
126:16 127:12

Schulte 85:8
86:12



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

**science** 162:4 256:20 309:9

**scientific** 62:2 65:11 66:16 68:21 198:14 333:12,17,20, 22

**scientifically** 51:16 308:24

**scientist** 48:25 309:24

**score** 146:9 328:12

**Scott** 9:23,24 13:8 15:15 41:13,16,21 42:2,9,12,25 43:15 48:14,18 55:18 56:9,16, 22 57:14 74:18 92:15,23,24 93:3,17,25 94:3,7,10 98:13 99:2 111:20,24 112:13,25 114:2 115:5,12, 17 117:10,14, 19 118:10 119:7,12 120:6 122:21 123:23 127:1,7,19,24 178:8,20 189:23 346:23 351:23

**scraps** 255:12, 17

**screen** 20:9

**seal** 175:12

**sealed** 294:12

**search** 77:15 96:23 267:15 277:7 326:6 337:4

**seconds** 348:3

**secrets** 223:11

**section** 220:25 312:15 318:5 321:1

**seek** 29:2 187:1,2 232:22 277:11 278:21

**selected** 180:23 211:2 314:7

**selection** 184:15

**selling** 89:14 90:3

**seminar** 165:13,16 216:23 240:2

**seminars** 150:8 165:20, 21

**send** 37:6 39:4 43:17 46:1 49:2 79:10 81:15 84:11 353:17

**sending** 43:21

**sensitivity** 65:8,13 66:12 68:18 69:9

**sentence** 205:1,24 206:8 208:7

**sentences** 209:5

**separate** 18:8 51:11 264:10

**separately** 258:5,6

**September** 16:17 17:7,10 19:6,16 21:20 23:24 32:21 33:10 40:4,21 52:3,4 58:11 60:12,22 63:11 66:21 67:1,7 93:23 94:2,13 109:12 116:19 117:2 119:1,12 128:6 134:4 159:16 166:20 190:8 229:25 231:6 232:4,20 233:21 234:1,

10 237:6,9 238:15,17 240:19 269:11, 22 270:19 286:10 291:4,6, 13,18 292:1 296:9,12 298:3, 18 301:12 319:5 326:14 337:24 349:15, 20 352:5,10

**service** 120:21 227:25

**serving** 197:1

**session** 284:12,14 315:12

**set** 69:4 75:21 158:21 181:12 229:2 230:25 235:8 243:24 245:21 249:1 264:5,14 338:4 340:14 341:17 342:5 344:21, 23 348:2

**setting** 329:8 341:16 345:2

**settings** 329:12

**settle** 138:14

**settlement** 88:5

**seven-hour** 352:20

**severe** 263:24

**shared** 230:16

**sharing** 230:12

**sharp** 236:22

**she'd** 130:16 170:14 173:13

**she'll** 102:5 111:11 170:18 278:22

**sheet** 45:2 46:21 217:20 218:4 321:25

353:18,21

**sheets** 46:18 79:14

**shelf** 84:9 315:23

**sheriff** 37:4 56:22 111:24 112:2,5 122:21 124:8,13,21,25 125:25 126:4, 11,15 189:25

**sheriff's** 9:23 13:9 15:16 41:13,21 42:2, 9,12,25 43:16 48:14,19 55:18 56:10,16,19 57:14 74:18 92:16 93:3,18, 25 94:3,10,21, 23 95:23 98:14 99:2 112:9,13, 25 114:2 115:5, 12 117:10,14, 20,24 118:10 119:8,13 120:6 123:23 127:1,7, 19,25 129:4,9, 15 134:16 141:23 142:2 171:23 178:9, 20 189:23 239:15 346:24 351:23

**sheriffs** 122:23

**shift** 94:19 95:19 97:20 99:17 108:2 190:4

**shifts** 99:24 134:16

**shocking** 157:20

**shooting** 86:9 87:1,16 121:8

**short** 22:12 24:13,14 26:20 28:14 29:2,21, 22 63:19 109:3, 5,7,9 119:20

199:16 201:5 267:12 270:23 272:17 273:4, 12 274:24,25 275:2,7,25 276:19 277:6 283:23 288:5

**shorten** 275:15

**shoulder** 86:1, 21

**show** 37:11,13 38:16 57:1 70:10,22 75:4 81:1,5 84:23 96:16 111:14 138:7 144:23 146:14 163:19, 20 165:4 170:15,16 173:7,10,13,22 179:18 181:10 187:15 213:1 230:20 241:9 244:2 249:10 251:4,8 277:15 279:7,19 300:11 307:10 311:13 316:20 324:17,20

**showed** 54:9 277:3,4 278:5,6 301:20 303:1,4 349:14

**showing** 173:9 228:2

**shown** 49:24 292:11 303:11

**shows** 71:2 346:22

**shyness** 220:21

**sic** 74:1

**side** 86:11 109:22 181:12 215:24 231:13

**sided** 38:17

**sideways** 251:20



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 390 of 396
The Deposition of BUSTER CANTRELL taken on November 08, 2022
PageID #: 1895
389

sifting 225:4

sign 116:24
265:25

signature
146:1 336:7
344:17 353:10,
15

signed 147:5

significant
32:21 153:20

signs 104:13
276:8

silhouette
265:6 267:9
283:18

similar 40:2
109:10 190:19
344:10

simple 329:12

simply 192:10,
17,21 232:23

simultaneousl
y 154:1

single 16:21
17:2,6 18:22
22:2 32:22
33:19 66:10
136:23 153:2,3
161:13 238:11
266:14 267:21
270:3 271:22
297:11 332:7

single-family
155:3

sir 11:1,25 13:3
16:16 19:5,10,
13 20:24 22:1
23:9 30:12
37:25 44:1,24
45:13 52:14
69:12 70:23
71:14 81:18
84:23 85:11
88:16 91:11
93:3 98:10
106:21 122:19
134:5 164:13
167:11,23
180:8 181:8

182:11 183:10,
19 208:6 214:7,
9 215:7 219:23
223:16 230:15
234:24 236:5
238:14 244:11
249:16 250:3,
16 253:13
255:5 260:1,23
261:16 262:23
277:2 280:3
285:10 289:19
292:11 300:12
301:15 307:13
308:21 309:19
310:24 311:25
312:1,18
313:15 317:3,
14 318:16
320:11 321:1,
24 322:21
323:24 324:18
325:8,19 327:8
329:17 335:13,
18,22,24 336:7
337:13 338:19
339:17 340:11
344:2 345:3,19
346:1 347:1,25
348:5,7 349:3
350:1,12
351:16 352:15
354:8

sit 59:24 84:9
111:11 278:7
316:16

sites 71:2,5,6

sits 277:13
328:3

sitting 57:12
68:17 69:12
78:25 86:10
110:5 150:21
166:18 170:13
224:17 242:10
250:15 261:22
283:3 316:3
326:12

situation 38:23
50:1 231:2
245:8,17

situations
121:12

skeptical
104:2

Slosar 10:14,
15,18,21,23
11:9,12,21,22
12:3,11,22,23
13:20 15:11
25:3,12 36:20
37:5,8,9,17,21
38:21,23 39:1
55:2,11 63:19
64:2 72:23
73:3,6,7 84:20,
22 91:21 114:6,
13,18,23,25
115:3,4 119:20
120:4 145:1,2
159:6,7,11
162:25 163:3,
10 165:6,8
179:21,23
180:1,7 181:13,
19 183:23
184:2,5,6
185:2,3 202:21
203:4 204:18
209:19,21,25
213:10,13,16
215:11 216:4,7,
9,12 217:8,13,
15,16 221:24
222:8 225:13,
15,22,25 226:7
242:16,19,23,
25 243:1
245:22 246:2,4
251:6,10,19
252:2,6,9,19
259:17,25
279:12,16,18
289:12,14,19,
21 290:11,16,
17 291:9,11,13,
20,22 295:25
296:7 307:12
314:13,16,18,
21 325:2,5,7
330:6,9,13,16
331:1,3 333:25
334:4,11
336:15 342:2
348:1,4,6
352:15 353:8,
20,25 354:3,8

slow 13:1
25:22,23
132:22

slowed 337:6

slower 25:20

small 13:8
21:21 169:2
225:4

smart 287:18

smell 308:8

smelt 24:25
170:13 173:10
265:6

Smith 10:13

smoke 152:16
249:25

smoked 133:9

smokers 195:7

smoking
133:5,6

sniff 28:5
276:22 278:10

sniffed 24:9
283:19

sniffer 63:6
80:14 307:14

sniffing 267:9
332:24

sniffs 283:11

soft 137:9

sold 89:15,17

sole 183:17
198:21 206:23

solely 9:17
93:8 198:2,9

solemnly
12:15

solve 147:20
148:1

solved 146:24
147:11

someplace
293:10

sophisticated
309:9

sort 103:15
132:4 169:24
256:10 282:19
293:22 334:14,
17

sound 11:14
190:8

sounds 80:7
99:1 126:14
170:6 248:8
295:25 320:7

Sowell 10:4
35:5 352:23

spaces 323:11

speak 12:4
13:23 25:19
61:18 157:13
229:21,23
233:11 302:20

speaking
157:16 220:8
261:20

speaks 232:24

special 116:4,
21 117:2
118:13,18
119:11 235:21

specialists'
231:25

specific 59:21
86:5 93:8
122:11 123:20
174:8,19
276:21,23
278:10 297:16
302:4 311:20
332:22

specifically
17:5 28:19
56:17 147:15
235:10 246:23
315:11 316:17

spectrum
220:16

speculate
52:15 247:25

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 391 of 396
The Deposition of BUSTER CANNON, taken on November 08, 2022
PageID #: 1896
390

**speculated** 246:20

**speculation** 92:9 244:23 245:15 246:24 247:3,20

**spell** 123:4

**spend** 84:25 94:20 229:3

**spent** 65:21 72:1

**spin** 111:1,7

**spoke** 302:16 305:23

**sponsoring** 117:23 118:1

**spot** 26:17 82:10,12 173:12 174:8, 16 175:13 186:21

**spots** 137:9 224:2 292:23

**spray** 340:15

**sprayed** 169:25

**squander** 229:3

**stack** 253:14

**stamp** 190:25

**Stamping** 98:21,23,24 99:2 141:17,22 142:1,9,12,14, 20

**stand** 331:23 332:14

**standard** 23:12 97:13,18 166:5 256:2

**standardized** 97:17

**standards** 200:4

**STAPLES** 12:8

37:7

**start** 74:25 78:15,16 92:15 104:19 131:24 187:4 229:5 277:7 338:4 342:17

**started** 24:6 26:12 29:16,17 87:16 115:20 149:18 177:20 197:11 203:5 267:13 269:17 287:19 341:16

**starter** 195:5 205:15

**starting** 163:24

**starts** 78:17 97:3 151:10 153:2 217:5 344:8

**starve** 104:10

**state** 10:11 43:17 48:16 49:7,16,20 50:13,22 51:5, 23 65:2 73:9 75:10 80:7 116:10 125:17, 21,24 176:8,14 177:17 189:15 209:11,15,16, 18 210:8 211:9 301:16 314:6, 12 316:8 318:23 319:7 330:4 346:4,12 347:8 348:10 350:15 351:10 352:11

**stated** 69:15 71:11 184:20 189:25 195:17 241:21 275:18 294:22 338:7

**statement** 211:13 246:1 265:15 309:5 341:11,23

**statements**

197:2 208:25 210:1 233:15 342:21

**states** 9:9 125:12 182:24 208:11

**stating** 196:12

**stay** 129:1 231:15 232:12

**stays** 152:13 153:2

**step** 33:10,12 84:15 231:14, 15

**stepping** 255:19

**steps** 96:24

**Steve** 176:1,4, 5,21 177:10

**stick** 43:5 238:9

**Stilz** 9:22 11:7, 11,24 13:9,16 15:8 37:2 54:23,25 55:8 85:13 117:22 118:6 119:14 126:24 127:3,8, 15 179:25 186:17 242:20, 22,24 328:21 330:24 348:3,5 352:18,22 353:2,5,7,23 354:1

**stood** 27:23 86:23

**stop** 74:9 182:11 187:4,5 229:4 249:9 277:13,18 283:24 309:18 315:17

**stopped** 113:25 139:20

**stopping** 231:4

**stops** 187:2 277:13 283:25

**straight** 134:12 171:22 172:6,7

**straw** 242:24

**street** 337:11 338:8 342:6

**stretched** 258:12

**strict** 101:9

**strictly** 257:20

**strike** 22:14 30:3 39:24 40:17 52:2,3 64:15 66:3,9 68:15 76:15 137:12 149:24 151:16 166:13 200:1 238:15 239:11 247:10 257:3 265:11 278:25 283:14 286:4,10 296:21 301:7 302:1 326:13 347:14

**strongly** 180:22

**structure** 152:5 155:3 244:19 267:13 278:9 293:9 294:1 336:22 338:12 344:3

**stuff** 31:8 40:13 54:12 63:3 69:25 79:19 104:9 126:6 202:14 217:11 219:5 244:5,10 293:19 324:24 335:4

**styrene** 78:13, 14,17,19,22 79:2

**subject's** 118:13

**subjective** 256:22 257:1

**submit** 297:2

**submitted** 47:17 53:10 81:25 84:4,8 301:21 312:25 315:22 316:21 317:23 319:23 321:7 322:9 323:5 324:5 348:17 349:1,8 350:21 351:7, 25

**submitting** 348:15

**subpoena** 298:13 316:8

**subsequent** 184:16

**substantive** 137:18 215:8

**successful** 223:23

**sued** 13:13 90:14

**sufficient** 228:23

**sufficiently** 133:14

**suggestive** 186:12

**suing** 91:1

**suitable** 207:20

**summary** 190:15 191:6 310:2

**super** 180:2

**supervision** 127:1,7,13 144:9 148:12

**supervisor** 86:7 123:2,15 143:11,15,23 145:17 146:5 147:5 148:1,4 285:15



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 392 of 396
The Deposition of BUSTER CANNON, taken on November 08, 2022
PageID #: 1897
391

supervisors
122:22 144:3

supervisory
148:19

supplied 84:2

supplies 78:14

supply 178:16,
17

supporting
233:14

supports
61:21

supposed
90:19 192:17
200:25 226:24
240:9,10
265:25 295:19

supposedly
292:14

surprising
61:15,19

surrounding
178:17

survey 338:15

suspect 66:24
67:5,21 68:2
232:15 245:14
269:19 346:9
347:7

suspects
43:11 74:20
244:21 245:5
246:13,15
341:7

sustainable
130:6

swear 12:15
59:25

sweatshirt
338:9

sweep 170:16

swing 275:20

switch 134:9

sworn 117:1
186:2

system 23:17
132:5 265:23

systematic
24:14 26:15
29:4 186:15,18
230:24 267:14
277:7

systems 132:7

_____

T

tab 85:12 88:13
111:16

table 96:20,21

tabs 69:24

tactical 224:3

tad 85:16

tail 87:17 105:4

takes 99:7
277:16

taking 10:18
34:10 36:6
52:18 135:21
171:2 277:1
304:1

talk 16:19
75:11 123:21
145:12 229:20
247:3 353:24

talked 194:5
241:24 242:15
243:4 340:23

talking 23:4
25:25 29:21
37:10 53:16,25
54:4 66:20
94:25 155:22
159:17 238:21
260:24 261:23
336:1 344:20

talks 215:2

targets 307:8

teach 23:14,19

team 47:12
144:18 146:23
178:15 224:1
281:12

teams 285:15

tech 73:9

technician
71:10 73:14,18
75:22 76:9,15,
20 78:4,10

technician's
76:22

technicians
73:9 75:9,11

techniques
165:17

telephonic
302:3 307:20

telling 27:22
78:10 79:1
212:8 240:4
245:13 249:13
310:6 315:4

tells 45:3

temperature
151:1,12 152:7

ten 13:6 14:21
48:2 92:17,20,
23 94:20 95:16
99:4,8,9 113:17
223:4 224:1,22
225:16 227:16
233:10 235:10
244:15 316:24
318:11 321:9
322:12 352:4

ten-hour 95:1
97:19 98:5
99:16,24
134:16

ten-month-old
62:25

tend 14:19
117:17

tendering
252:18

Tennessee
178:3

tens 94:23,25

Tera 62:25 63:2

terms 201:16

terrible 84:20

test 65:9,14
66:12 68:18
69:10 192:7
286:16 308:9

tested 51:8
320:10

testified 18:7,
14 21:3,9 22:1
27:2,12 28:1,3,
7,19 33:18
36:9,13 39:22
51:15 53:1 57:5
59:20 63:8
79:25 120:23
138:22 169:1
170:25 172:2
184:13 185:25
188:11 190:5
211:20 218:9
235:5 236:24
246:23 247:1
248:5,20 250:3
254:15 257:4
261:5 264:17
265:12 267:16
272:21 273:16
278:14,17
282:17 292:13
296:8 297:5
299:20 300:25
302:7 303:8
304:16 305:10,
17 308:23
309:14 310:16
311:7 325:14
331:15,23
332:21 333:10,
13

testify 36:4
54:21 70:19
71:13 160:9
197:21 227:5
294:2 302:9
332:1,23
333:14

testifying 18:5
21:5 22:4 27:6
35:13,17 51:11,
19 63:13 68:11,
15 70:6 71:16
137:15 181:7

235:2 248:21
257:7 278:4,8
292:5 301:24
302:2 304:20
305:21 329:21
330:21 331:5
332:10

testimonies
180:17

testimony
12:16 16:24
17:24 18:4,17,
20,21 20:24
27:16,19 29:11
32:20 42:23
52:10 55:16,23
58:1,4 69:12,21
70:11 71:22
75:15 136:18
137:14,18
138:7 184:1
185:1,12
197:21 203:13,
19 230:20
242:6 244:3,7,
11 251:4,9,15,
21 252:14
253:3,5 254:8
256:8 266:22
302:12,18
308:21 309:7,
19 310:3 330:1,
20,25 331:6,16
332:19

testing 62:2
195:10,15
202:8 208:15
209:8 210:5
300:18 311:10
314:3 333:15
351:13 352:6,
13

tests 311:9

text 37:6
233:12

that'll 57:2
341:2

theories
230:12

thereabouts
128:7 132:2
255:6 296:11


Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 393 of 396
The Deposition of BUSTER CAMPO, taken November 08, 2022
NMJDH898
392

thin 338:10

thing 14:1
16:21 17:2,6
18:22 22:2
32:23 33:2,19
40:15 47:14
78:12 84:17
88:2 97:9,10
101:7 103:24
135:22 147:21
157:8 159:3
160:13 187:2
212:8,9 215:24
235:13,15
238:11 268:3,5
271:3 274:5
284:1 287:2
330:1 332:8
335:20 336:20
344:8

things 16:18
19:1 30:20
37:14 76:4 77:2
80:12 104:20
120:14 121:9
147:19 152:16
154:11 173:5
193:17,25
195:22 201:20
244:25 260:15
286:22 289:14
324:25 325:15
329:15 334:24
341:2

thinking
271:11

thought 29:12
30:7,9 34:7
72:23 76:20
91:6 132:20
145:21 177:12,
13 222:24
269:9,10
273:16,23
275:22 339:10

thousand
40:13

three-hour
133:19 136:4
265:16

throw 97:1

tickets 344:25

time 9:5 11:16,
20 13:5 15:16
16:16 17:15,22
19:6,15 21:15
22:8,11,16
24:16,17 25:11
26:19 41:10,13
42:20 43:1,3
50:9 58:21 59:3
64:1 65:22
66:19 71:22
72:2 74:8 78:19
79:25 84:25
85:1,4 91:8
93:14,16 94:5,
6,10,14 97:16
98:15 101:12
113:13 114:1
115:2,25
117:25 120:3,
17,19 128:3
130:22 132:11
133:13,21,23
134:6,7,8
142:10,23
147:16 153:4
154:9 157:19
158:23 160:23
162:10 163:9,
13 165:22
171:18 175:21
178:15 186:8
189:24 197:19
199:16 203:3
218:18 220:21,
24 221:19
222:7 228:23
229:2,3,16
231:14 234:7
239:10,12,20
247:7 249:24,
25 259:24
263:12 267:23
268:15,16,19,
22,24 269:24
270:15,18,20
271:9,24,25
272:14 274:20
276:2,5,10
277:25 288:5,
11,19 292:1
294:12 296:6
298:7 305:7,11,
14 307:18

329:21 330:11
331:10 332:21
333:12 334:9
335:1 338:21
347:13 351:5,
22 352:16,21,
22 354:10

timely 233:12

times 104:12
135:13 189:15,
18 235:5
267:21 269:19
271:16,21
273:18 274:6
275:18 290:20
300:9 326:15
328:3,19
332:24 333:8
342:23

timing 307:4

tired 129:25
132:8 133:11
293:19 330:12

title 112:8

today 9:4,5
11:19 13:21
14:14 18:5,7,21
21:15 25:10
31:8 32:20
38:3,13 40:1,5
57:12 58:3
63:25 66:20
68:17 69:13,22
78:25 85:17
87:11 88:15
106:10,20
120:2 137:15
141:18 150:21
163:8 166:18
203:2 222:6
224:14,17
229:9 230:1
231:7 238:22
242:10 250:15
254:9 259:23
261:22 267:16
283:4 296:5
298:4 307:14
316:3,17
326:12 334:8
349:15

toddler 24:7

265:5 283:19

told 30:16,21
31:16,19 54:8
62:6 78:24
86:23 106:6
132:13 147:9
174:20 199:17
219:4 240:22
242:2 243:16
244:17 246:12
248:10 249:5,
21,22 250:6,18
283:22 297:14
300:23 306:17,
24 309:2,24
311:1 332:2,7
340:13

Tommy 10:13

tool 64:22
192:1,6 207:19

top 111:3
118:14 137:2
151:9 152:14
161:13 175:12
180:18 203:21
204:2 217:6
225:17 226:3
311:17

total 97:5 291:1

totally 53:23
195:25

touch 170:19
173:11

touched 174:7

touches
277:17

tough 132:13
244:13

town 93:9

trace 168:1
192:7

track 44:18
82:25

tracking
338:10

trade 327:1

trailer 24:7

238:18 240:16
247:9 249:6
255:20 259:1,9
260:25 262:20
263:15,16
266:5,11 267:2,
6,18 268:16,18,
21 269:5 275:3,
15,16 276:9,24
284:9 286:12
288:4,15,19
303:14,18,22,
23 304:2,24
305:8 306:2,20
319:12,17

trailers 154:14

train 23:16
69:13 80:17
100:4,5,6,20
108:9 161:14
174:15,18
188:12

trained 30:12
33:12 64:4 69:6
70:20 97:21,23
98:1 102:2,10
167:25 169:15
170:8 174:1,11,
13 176:20,24
194:5,18 195:9,
14 196:15
200:21 209:1
210:2 278:25
279:4 296:15,
18,20,22 341:1

trainer 281:8

trainers
285:21 286:5

training 22:19,
20,21,25 23:6,
8,13,16,18,19
29:24 30:25
31:6,17 32:4,5,
7,10,13,16,21
34:9,13 44:8
56:1,5,8,17
57:6,14 63:3
65:16 66:4,8,10
68:24 69:8
72:2,6,12,15
73:22 78:17
80:20 81:2
96:21 97:13

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

98:9 100:7,8
101:3,5,12,14,
17 102:6,14,25
103:3,18,24
108:14 110:11,
18 121:17,23
122:7 135:17
149:5,9,13,16,
23,24 150:9,14,
17 151:17,24
152:24 153:11,
15,19 154:9,13,
15,22,24 155:6,
10 156:11
165:5,25 166:4
167:14 170:10
173:6 174:23
175:1,22 183:7
184:9 185:4,13,
20,21 187:24
188:2,19,23
189:1 190:15
191:6,12,24
192:4,15,21
193:1 194:25
199:7 200:11,
20,24 201:9
202:7 204:23,
24 205:6,7,18
206:2,13,14
207:1,12,13,24,
25 208:17
209:10 210:7,
11,22 212:25
215:5,16,21
216:18 217:24
221:8,11,21
222:14,19
225:8 240:2
270:1,13 279:2,
25 280:21,22
281:17 285:20
286:5 288:25
289:4 295:15
308:6 313:16
314:5 315:1,10,
12 326:21
327:13,14
328:6 329:8
332:22 333:12
343:18

**trainings**
222:23

**transcribed**
252:17

**transcript**
347:2 353:9

**transcripts**
252:11 332:4

**trauma** 283:10

**travel** 18:13
72:14 189:19

**travesty** 15:1

**treasury** 167:5
182:16

**treat** 101:4
109:18,20
170:14,19,21
172:24 173:17
174:9 277:15,
17

**treated** 193:14,
21

**treats** 101:1
104:8

**trial** 50:9,15,19,
23 51:6 52:23
53:3 54:13,20
55:16 56:5,10,
12 57:5 59:12
71:14 74:8
75:15 78:7 80:1
104:13 120:23
183:25 185:1
218:10 224:12,
20 244:3,11
245:2 248:5
250:3 252:13,
17 253:5 257:4
265:12 292:4,
11,13,22
294:19 300:17
302:15,16,17
304:21 305:11,
21 329:24
330:21,25
331:5,16
332:22 333:10
343:7 345:16

**trick** 88:15

**tricks** 326:25

**trier** 330:1
331:17 333:20

**trip** 26:10,22
136:1,2,4
265:16

**Trooper**
261:13,14
305:16 306:2

**trouble** 18:1
92:8 224:2

**truck** 96:14

**true** 24:18 28:1,
8 30:12,15,20,
22 31:9,12,23
32:3,6,25 44:1
46:11 50:3
51:14 54:15
65:23 80:10
85:6 126:19
127:4 134:3
148:21 168:3
174:21 193:5
224:13 239:9
252:22 253:7
254:10,19
274:12,16,18
277:2 284:11
300:10 301:15
302:7 304:19
305:12 310:24,
25 311:8
317:15 319:25
320:3 332:9
343:25 344:16

**trust** 70:20
71:7,20 185:18
285:16 353:16

**trusted** 185:19
333:19

**truth** 12:17,18
15:6,20 232:22,
24 332:2

**truthful** 27:4
156:25 250:5
254:15 263:11
278:15 302:12

**truthfully** 21:5
27:7 92:10
169:12 294:2
304:16

**tunnel** 15:24
16:4,8,13

**turmoil** 112:13

**turn** 54:12
56:12 87:19
111:21 181:21
201:13 235:1
241:10 279:20
325:18 327:8
339:17 343:8
344:6 351:17

**turned** 87:3
88:1 219:16,20
222:14 289:1
298:19 309:14

**turning** 224:18

**TV** 228:1

**two-cup** 292:2

**two-day**
165:16

**two-foot** 277:8

**two-hour**
136:1

**two-thirds**
336:16

**type** 19:25
44:24 55:21
80:10 83:19,23
84:2,15 89:24
112:9 134:22
135:1 137:9
156:7 193:24
217:19 237:1
256:3 283:9

**typed** 217:6,23
336:4

**types** 156:2
173:2 191:15
341:2

**typical** 256:9
267:20

_____

**U**

**U.S.** 116:5
117:2,18 118:2,
18 161:7
180:24

**uh-huh** 26:8,14
29:10 45:25

49:11 59:11
73:16 76:2
82:19 98:3 99:6
104:23 106:7
117:1 125:15
145:15 155:24
170:11 172:9
186:24 190:13
193:22 217:18
225:13 236:10
257:19 267:24
273:1,5,25
313:17,24
315:20

**ultimately**
175:14

**unable** 50:24
311:3 320:5
321:13

**unanswered**
226:17,24
227:8 233:3

**unconfirmed**
64:19 69:14
73:10 75:12
80:3 183:2
185:15 199:3,8

**Uncover** 225:2

**underlying**
45:16 140:17
319:4 351:2

**undersell**
128:12

**understand**
14:4,22 16:1
17:8 19:14
25:16 35:10
42:7 48:24
53:11 77:19
83:20 96:18
210:20 227:4,6
256:8 262:24
284:3,17

**understanding**
18:2 20:13
101:8 151:4,15
152:2,3 162:3
169:17 181:2
184:9 185:6
199:7 205:10
207:5,12,15

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 395 of 396
The Deposition of BUSTER CANNON, taken on November 08, 2022
Page 394
394

208:3,20
210:13 284:3

**understood**
47:24 48:10
53:21,23 64:17
65:5,6 66:21
67:1,7,11,19,25
68:4,10 79:25
86:25 166:10
184:13,19
187:8,11
191:25 192:5,
10,16 210:25
237:10,13,18,
23 287:11
330:19 331:6,9,
12,15,20

**undertaking**
241:19

**undone** 228:25

**uniform**
107:11

**unique** 223:13

**United** 9:9
125:12

**University**
150:10

**unknown** 93:4
319:24 320:2
323:9,14

**unlined** 175:11

**unofficially**
310:8

**unreliable**
32:2 66:6 69:14
83:21 185:15
198:14 318:12

**untraveled**
231:10

**updates**
352:12

**upset** 276:13
344:24

---
**V**
---

**vacation**
108:7,8 134:7

**vaguely**
212:24 213:15
244:18 302:6

**valid** 229:6

**validated** 65:3
196:13 198:18
199:4

**validity** 14:14

**valuable**
147:18

**variety** 205:2

**Vegas** 178:5

**vehicle** 86:10,
13

**vehicles** 96:25

**Ventura** 9:4

**verbally**
229:22

**verification**
198:14

**verified** 308:24
310:8

**verify** 227:24
248:10 310:8,
20

**version** 164:3

**versus** 9:8
78:22 80:2

**veteran** 224:4

**veterinarian**
219:11

**victim** 87:15
232:14

**video** 284:1,6,
16,22

**view** 185:18

**vinyl** 194:2

**Virginia** 23:13
29:25 46:3,5
107:5 108:13
110:19,20
175:23,24
177:25 298:10

**virtual** 14:12

**vision** 15:24
16:4,8,13

**voice** 23:3

**voiced** 286:5

**void** 83:7,10

**volatile** 245:20

**vote** 93:6

**vouching**
118:5

---
**W**
---

**W-I-T-T-E-N-B-**
**A-R-G-E-R**
88:19

**wade** 231:24

**wage** 179:7,9,
12

**wagging** 105:4

**wait** 280:6

**waited** 113:5

**waiting** 138:13

**waive** 353:16

**walk** 23:20
24:18 26:8
45:19 109:11
111:7 234:10,
19 235:16
236:19 262:1,5,
8,9 266:10
271:18 272:7
288:15,18,19
294:20 295:7
299:4 338:8

**walked** 19:16
23:23,25 26:11
28:11 29:17
45:22 268:10
286:11 294:5
303:18 336:21,
22

**walking**
105:11 261:18,
20 262:20
264:15 284:13

288:4 303:22
304:2

**walks** 100:18

**walkthrough**
305:8,16

**wall** 28:6 175:8
277:7

**walls** 96:24
155:20 156:2

**wanted** 40:11
44:14 76:21
80:1,16 83:23
135:9 201:6
204:4 217:11
234:14 243:8,
11 248:6,10
249:10 250:11
256:16 257:6
276:22 278:7,
10 287:5,8,25

**wanting** 24:10
58:16 89:24
170:16

**washroom**
13:23

**waste** 228:24

**watch** 293:13

**water** 231:24

**wear** 107:13
131:18 235:20

**wearing** 107:7
133:16 330:13
338:8

**Weddington**
176:1,4,5,13,21
177:10

**week** 108:15
130:8 134:1
158:24 161:11
247:6 280:18
285:7

**weekly** 131:7

**weeks** 59:20
105:23 150:7
302:15 304:15

**weight** 104:8,9
221:13,14,16

**West** 10:12
52:16 59:1,2,3
60:1,5 241:14
260:10 261:3,
12,13,14 264:4
302:17,21,23
303:1,4,7,11,
14,18,25 304:5,
12 305:7,11,16
306:2,20

**West's** 304:10

**Western** 9:10

**whack** 202:19

**whatsoever**
119:18

**wheel** 97:3,4
111:7

**wheels** 96:22
111:1,2

**When's** 13:5

**whine** 104:16

**whined** 104:17

**white** 290:12,
13 338:7

**Whitlock** 85:25
86:13,17

**wife** 36:1 99:13
100:11,16

**William** 344:21

**window** 154:3,
4 264:2

**windows**
151:13

**winning** 90:24

**withdraw**
331:2

**witnesses**
247:4 344:20

**witnesses'**
205:3

**Wittenbarger**
88:19 90:14

**won** 93:14

**wondering**



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00047-GNS-HBB    Document 160-6    Filed 10/03/25    Page 396 of 396
The Deposition of BUSTER CANNON, taken on November 08, 2022
395

9:16 178:18

**wood** 155:1,15
156:7 175:9
337:3

**word** 143:18
149:14 194:16
217:4 293:17
323:9

**words** 194:13
308:17

**wore** 55:9
130:2

**work** 23:17
24:10 28:7 46:7
56:11,21 93:15
97:21,23 98:1,2
99:14 107:25
116:4 124:16
129:21 134:20,
22 135:1
141:20 142:12,
14 147:1
172:12 176:12
178:7 191:20
221:19 227:23
228:11 232:13
266:1 267:11
271:12,14
275:21 276:12
281:11 282:5
328:9 338:13

**worked** 60:16
98:17 99:16,20,
21 115:13
127:24 136:23
141:15 142:4
189:9 267:14
318:20

**working** 54:3
90:22 94:10,13
97:19 98:5,13
99:24 113:13,
21 115:21
123:18,22
129:23 130:5
131:7 133:23
144:7 158:23
161:10 247:6
265:9 266:4
285:15 351:22
352:5

**works** 48:22
94:19

**workweek**
94:16

**world** 53:25

**worn** 131:1

**worse** 180:5

**worth** 149:16

**wow** 89:17
290:3

**wrenching**
86:21

**write** 201:13
233:10 266:19
312:18 313:2
318:6 319:9,13,
22 320:1 321:9,
11 326:9

**writing** 83:13

**written** 54:17
55:3,19 65:20
156:15,22,23
266:22 291:19
324:13

**wrong** 75:22
117:16 225:11
339:10

**wrongful**
14:25

**wrote** 285:15
297:11 298:23
323:8,14 326:6
337:12

———————

———————

**Y**

**yawns** 145:10

**year** 44:10 54:3
57:4 93:7 98:16
138:25 139:8,
15,18,23,25
140:3,4,20
163:14 189:10
274:11 291:5
308:12 337:23
338:1

**Year's** 344:25

**yearly** 209:8
210:5 314:3

**years** 13:6
17:19,22 18:14
35:13 52:10
93:2,20 98:18
113:17 115:18
128:8,9,12
130:9 131:25
132:15 133:9
141:8 142:2
149:20 158:17
189:5 190:9,11
213:21,24
220:14 254:11
281:23,24,25
282:2 296:10,
13 301:18
306:18 352:4

**Yell** 9:8 10:16
12:7,9 16:23
50:14 299:1
330:21 331:5,7,
9,18

**Yell's** 33:1
50:9,19,23 51:6
52:23 53:1
55:16 56:5,10
57:5 71:14 74:8
75:15 78:6 80:1
120:23 218:9
219:1 224:12,
19 245:1 292:4
302:15,16
304:21 329:21
337:25 343:7,
13,21 345:15

**yellow** 105:15

**you-all** 37:17
99:17 252:18
263:1

**young** 113:14
129:19 326:23,
25

**younger** 85:16

———————

**Z**

———————

**zoom** 9:17,25
241:12



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com