# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## BOWLING GREEN DIVISION

**ROBERT YELL**                                                                 **PLAINTIFF**

v.                                                        CIVIL ACTION NO. 1:20-cv-000047-GNS

**CITY OF RUSSELLVILLE, et al.**                                      **DEFENDANTS**

## MOTION FOR SUMMARY JUDGMENT & SUPPORTING MEMORANDUM

Come the Defendants, Kentucky State Police retired Trooper Jaman Childers, retired Sergeant William T. Smith, and retired arson investigator, Detective David West, in their individual capacities (hereinafter collectively referred to as "KSP Defendants"), by counsel, pursuant to FRCP 56, and hereby move for judgment as a matter of law in their favor because there are no genuine issues of material fact.

In this case, Mr. Yell cannot produce any evidence that would warrant a judgment in his favor against these KSP Defendants. Two of the KSP Defendants had such limited roles in the investigation and prosecution that there is no basis for liability. There is no evidence of fabrication. There was probable cause for the arrest, the termination of prosecution did not indicate innocence, there is no evidence of malice, and Mr. Yell was not denied a fair trial. With respect to the negligence claim, Kentucky law bars negligence and gross negligence claims that arise from the same conduct as a malicious prosecution claim. Without an underlying violation, there is no evidence to support a conspiracy or failure-to-intervene claim. Also, emotional distress claims are only gap-filler torts when a more specific tort is unavailable.

As far as supervisory liability, even these claims, if they are even asserted against Sgt. Smith (only Pendergraf and Flowers are specifically named), federal and state law do not impose respondeat superior liability on government officials simply for the acts of their subordinates. Also, federal and state law extends qualified immunity to the government officials here. Thus, the KSP Defendants seek judgment as a matter of law in their favor and dismissal from this lawsuit.

In support of this motion, the KSP Defendants state as follows:

## A. <u>BACKGROUND</u>

This is a claim of civil rights violations under 42 U.S.C. §1983 and state-law tort claims against the law enforcement officers, state fire marshals, arson investigator, and accelerant detection dog handler who responded to and investigated a deadly trailer fire that occurred in Logan County on September 11, 2004 at approximately 7/7:30 p.m. (DN 1 at ¶1, 34; KSP Investigative file, Exhibit 1 at KSP000002). April Carpenter, the Plaintiff, Robert Yell's, girlfriend, was able to retrieve their eleven-month-old daughter Saralynn from a baby bed near the front door and save her from the fire, but their two-year-old son Cameron was in a bedroom further in the trailer and could not be rescued and died from smoke inhalation/asphyxiation. (DN 1 at ¶1, 2, 34, 35; KSP Inv., Exh. 1 at KSP000017). Saralynn ended up with third-degree burns on over fifty percent of her body. (DN 1 at ¶2; KSP Inv., Exh. 1 at KSP000017). It was a tragic end to what had been a dramatic day.

Ms. Carpenter and Mr. Yell had taken their children, including Ms. Carpenter's two older children Zachary and Nicolas, to their friend's Lyndsey Braun's and Donald Powell's house. April and Robert started drinking there, were intoxicated, had been

arguing and continued to argue with each other, then Robert started arguing with Donald, and then the couple had to leave. (KSP Inv., Exh. 1 at KSP000099; Smith deposition Exhibit 2 at 44–58, 69). They returned home to their trailer at Bonnie Drive in Russellville, Kentucky.

April and Robert continued drinking and April's recent infidelity led to a verbal altercation that became physical. Robert had April on the bed in Zachary's bedroom and choked her. April escaped and fled back to Ms. Braun's house, and her two older children, Zachary and Nicolas, followed her. (KSP Inv., Exh. 1 at KSP000019, KSP000099, KSP000087; Smith depo., Exh. 2 at 44 - 58).  That night, at approximately 7:30 p.m. on September 11, 2004, another neighbor, Charlotte Bellar, called 911 to report a domestic dispute, and then also the fire. (KSP Inv., Exh. 1 at KSP000092).

At some point Robert also left the trailer and was banging on the door at Charlotte Bellar's house. (KSP Inv., Exh. 1 at KSP000085). He then went to Tina Maskin's house. Ms. Maskin and her daughter reported that Robert was intoxicated and was flicking a cigarette lighter on and off while he sat on their couch. When Ms. Maskin reported that she saw the police arrive, Robert tried to hide under one of her beds. Ms. Maskin then saw that Robert's trailer was on fire and told Robert. Robert then left Ms. Maskin's house saying that "April better have gotten Cameron and Saralynn out." He fell on his way out and dropped something in Ms. Maskin's yard, which turned out to be his cigarette lighter. (KSP Inv., Exh. 1 KSP000084-85). Robert has no memory of what happened that night starting around the time of the fire, or slightly before. (KSP Inv., Exh. 1 at KSP000099).

First on the scene was Russellville Police Department Officer Ron Mills. Officers Mills at first was dispatched for a domestic dispute, but the call changed to a fire before he arrived. Next was Russellville Police Department Officer Ed Higgins. The officers stood down once the fire department arrived. The Russellville Police Department dealt with Robert Yell's behavior at the scene, arrested him for it, and transported him to the Logan County Jail.

Jack Flowers and Alan Gregory from the Fire Marshal's Office arrived the evening of September 11, 2004. They overhauled the fire scene and made the requests and contacts for Buster Cannon to bring an accelerant detection dog to the scene, and for the Kentucky State Police to provide an arson investigator because the fire appeared to be deliberately set. (KSP Inv., Exh. 1 at KSP000099 - KSP000103).

Buster Cannon arrived the next morning after the fire and did a walk through with his accelerant detection dog. Kentucky State Police arson investigator Detective David West arrived later on the scene. David West got a preliminary report from the Gregory and Flowers, then he examined the fire scene himself. Det. West was only called in if arson was suspected, but he was free to do his own investigation and make his own conclusions and disagree with the Fire Marshals. (West depo., DN 159-12 at 30–31).

The overhaul and reconstruction of the scene had already been completed before Det. West's arrival. (West depo., DN 159-12 at 19:13). As a former electrical inspector for the State, Det. West examined the electrical service at the trailer and determined that no breakers had been tripped and there was no other evidence of an electrical fire. (KSP Inv., Exh. 1 at KSP000100; West depo., DN 159-12 at 19, 20, 23, 27, 45, 48, 49, 58).

Detective West saw that the living room appeared to have a suspicious area near one of the couches in the living room. In the hallway he saw that the fire had moved down the hallway and towards the back door. Det. West examined the floor between the kitchen and the living room and noticed that the fire had burned through the carpet and down into the cracks. He identified that as a potential source. In the kitchen there was a frying pan that had melted into the burner on the stove, but the electrical service showed no signs of fire or breaker tripping so the stove could not be the source of the fire. And in Zachary's bedroom, the air conditioning unit was not plugged in and there were no signs of an electrical fire; the fire was on the opposite wall. (KSP Inv., Exh. 1 at KSP000100; West depo., DN 159-12 at 141, 142, 148, 149).

In Zachary's bedroom, Det. West observed two potential locations of ignitable liquids. In the bedroom where Cameron was found there was less damage than the other bedroom or the living room. (West depo., DN 159-12 at 172-173). Det. West found that Cameron's leg appeared to have been burned. The coroner reported that the child had skin slippage caused by heat, not flames, and the damage in that bedroom was not indicative of flame, but smoke and heat. (KSP Inv., Exh.1 at KSP000016; West depo., DN 159-12 at 166-167). Under Cameron's leg, the Mickey Mouse sheet on the bed was white and untouched by the fire.

Det. West identified six areas where there were indications of the presence of an ignitable liquid. These areas coincided with those where the accelerant detection dog had made hits. Det. West, along with Alan Gregory's help, cut out the samples from the fire scene. Det. West secured the samples in the appropriate cans and included a sample of

material where the fire had not reached as a control sample. (KSP Inv., Exh. 1 at KSP000021, KSP000096, KSP000100- KSP000103). He then had Buster Cannon do a pass of the cans with his dog and the dog hit on all of the samples except the control sample. (KSP Inv., Exh. 1 at KSP000100 – KSP000103; Grand Jury testimony, Exhibit 3 at YELL 009503 – YELL 009516). Although the laboratory testing could not detect an ignitable liquid, Det. West found that there were multiple locations indicative of the origin of a fire and in those areas, there was nothing that could spontaneously combust or a mechanical system to fail to cause the fire, and there was burn down consistent with an ignitable liquid in the seams of the floor. (West depo., DN 159-12 at 83, 84, 141; KSP Inv., Exh. 1 at KSP000101).

Det. West learned that Saralyn's injuries were due to burns from flames and not from heat. (KSP Inv., Exh. 1 at KSP000009, KSP000018). This was significant to him because "in a flashover[,] radiant heat is a dominant heat…. not flames." (West depo., DN 159-12 at 169). April had been able to enter and retrieve Saralynn from her crib. Had flashover occurred, no one could have entered the trailer to save the infant. (West depo., DN 159-12 at 170).

Det. West's supervisor, William T. Smith, was a general detective sergeant and had no fire investigation experience or expertise, but he came to the scene along with Trooper Jaman Childers to assist Det. West with his investigation in the afternoon of September 12, 2004. (Smith depo., Exh. 2 at 21, 25, 26, 29, 33, 37, 40, 77). Tpr. Childers, who also had no fire investigation knowledge or background but a general detective background,

interviewed Tina Maskin and her daughter. (Childers deposition, Exhibit 4 at pg. 19, 27, 28, 30 -33).

Sgt. Smith interviewed Lyndsay Braun and Donald Powell. Sgt. Smith also helped search Tina Maskin's back yard where the lighter that Robert Yell had dropped was found. Trooper Childers and Sgt. Smith both recorded their interviews and wrote a report summarizing the statements given to them. (Childers depo., Exh. 4 at 45, 46–48). Other than Sgt. Smith doing administrative reviews of Det. West's reports (for grammar and policy compliance), neither Trooper Childers nor Sgt. Smith had anything else to do with the case. They did not testify before the grand jury, Tpr. Childers did not testify at the trial, Sgt. Smith only testified briefly, and they otherwise had nothing to do with the investigation or prosecution of Robert Yell.

Det. West interviewed Robert Yell at the jail, and he told Det. West that he blacked out and could not remember what happened that evening. (KSP Inv., Exh. 1 at KSP000099; West depo., DN 159-12 at 158). Robert denied setting the fire. Det. West interviewed April Carpenter and took statements from officers who had arrived on the scene before him. Det. West also later took a statement from April Carpenter's older sons that Robert had put the smoke alarm outside. (KSP Inv., Exh. 1 at KSP000027). With the sons' information, Det. West went and searched for the smoke alarm. He found it near the back door, and it had sustained fire damage. When he consulted the fire marshal, Alan Gregory, Gregory told him that he had found the smoke detector base in the residence on the wall and found the smoke detector in the rubble outside the home, near the back door. (KSP Inv., Exh. 1 at KSP000030, KSP000033, KSP000038).

Based on all the information and evidence, Det. West obtained an arrest warrant for Robert Yell for arson and served it on him at the jail. (KSP Inv., Exh. 1 at KSP000054, KSP000056). Det. West later testified before the grand jury, including informing them that the laboratory results of the samples he collected and that the dog had alerted on had tested negative for ignitable liquid, but that the test did not "exclude the possibility of an ignitable liquid being consumed by the fire or evaporating." (KSP000058, KSP000059; Grand Jury testimony, Exh. 3 at YELL 009503 – TELL 009516). Det. West also testified at the trial, where Robert Yell was convicted.

Mr. Yell appealed his conviction, and was granted a new trial, but the prosecutor moved to dismiss without prejudice in 2019. (DN 1 at ¶86). Mr. Yell filed his Complaint on March 13, 2020, alleging that the officers and investigators violated his civil rights. (DN 1 at PageID #: 1). As far as the Kentucky State Police Defendants, Trooper Jaman Childers, Sgt. William "Tommy" Smith, and Det. David West, under the Fourth Amendment to the U.S. Constitution, Mr. Yell claims violations of his rights via malicious prosecution, fabrication of evidence, supervisory liability, failure to intervene, and conspiracy. (DN 1 at PageID #: 21, 25, 28, 29). Under the Fourteenth Amendment to the U.S. Constitution, he claims due process/fair trial violations and fabrication. (DN 1 at PageID #: 23, 25). He also asserts state-law claims of malicious prosecution, negligent supervision, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, and respondeat superior. (DN 1 at PageID #: 32, 34, 35, 36).

### B. <u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment is proper if "there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). Three 1986 Supreme Court decisions—*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)—ushered in a "new era" in the standard of review for a summary judgment motion making the "'mere existence of a scintilla of evidence in support of the plaintiff's position'" insufficient to overcome summary judgment. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477, 1476-81 (6th Cir. 1990).

In order to prevent summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The non-moving party must produce probative evidence of "specific facts showing that there is a genuine issue for a trial." *Celotex*, 477 U.S. at 324; FRCP 56(e). Not just any alleged factual dispute between the parties will defeat an otherwise properly supported motion for summary judgment; the dispute must present a genuine issue of material fact. *Henderson v. Walled Lake Consol. Schools*, 469 F.3d 479, 487 (6th Cir. 2006). "A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party." *Id.* "A factual dispute concerns a 'material' fact only if its resolution might affect the outcome of the suit under the governing substantive law." *Id.*

As shown below, because of Trp. Childers' and Sgt. Smith's limited to non-existent role in the investigation and prosecution, there are no genuine issues of material fact here as there is no evidence upon which a reasonable jury could find these KSP Defendants

liable for any of Mr. Yell's claims. With regard to Det. West, there was probable cause for Mr. Yell's arrest and there is no evidence upon which a reasonable jury could find that Det. West fabricated evidence, failed to intervene, conspired to frame Mr. Yell, denied him a fair trial, or inflicted emotional distress. There are also no due process violations.

## C. <u>ARGUMENT</u>

In this case, Mr. Yell cannot produce any evidence that would warrant a judgment in his favor against these KSP Defendants. Two of the KSP Defendants had such limited roles in the investigation and prosecution that there is no basis for liability. While Mr. Yell's other claims are otherwise deficient in most elements, which is fatal to the claims. There was probable cause for the arrest, the termination of prosecution did not indicate innocence, there is no evidence of malice, and Mr. Yell was not denied a fair trial. With respect to the negligence claim, Kentucky law bars negligence and gross negligence claims that arise from the same conduct as a malicious prosecution claim. Without an underlying violation, there is no evidence to support a conspiracy or failure-to-intervene claim. Also, emotional distress claims are only gap-filler torts when a more specific tort is unavailable.

As far as supervisory liability, even these claims, if they are even asserted against Sgt. Smith (only Pendergraf and Flowers are specifically named), federal and state law do not impose respondeat superior liability on government officials simply for the acts of their subordinates. Also, federal and state law extends qualified immunity to government officials and no reasonable officer would think that their actions here

violated any clearly-established rights. Thus, the KSP Defendants seek judgment as a matter of law in their favor and dismissal from this lawsuit.

### I. Fabrication/Failure-to-Intervene/Conspiracy: There is No Evidence to Support Recovery Against Trooper Childers and Sergeant Smith for Their Limited to Non-Existent Involvement.

A basic premise of liability is that the defendant must have performed some action for which liability can be imposed. "To start, '[e]ach defendant's liability must be assessed individually based on his own actions.'" *Pollard v. City of Columbus, Ohio*, 780 F.3d 395, 402 (6th Cir. 2015). But in this case, there is no evidence in the record or developed through discovery that would support recovery against Trooper Jaman Childers or Sgt. William "Tommy" Smith, individually, because they had limited to no involvement with the conduct of which Mr. Yell complains.

The specific allegations of fabrication are that the Defendants:

(1) fabricated a false narrative naming Mr. Yell as the suspect (DN 1 at ¶6);

(2) fabricated incriminating statements allegedly made at scene and in police cruiser and on the way to and at the jail (DN 1 at ¶7, 64, 65, 67); and

(3) ignored scientific methodologies to falsely attribute arson as the cause of the fire. (DN 1 at ¶10, 11, 45, 46, 47, 49, 50 - 54).

The Plaintiff's theories of liability are fabrication of evidence, failure to intervene and conspiracy, which are addressed in this section. (The Plaintiff's additional claims regarding supervisory liability and malicious prosecution are addressed in separate sections below).

"The basis of a fabrication-of-evidence claim under § 1983 is an allegation that a defendant 'knowingly fabricated evidence against [a plaintiff], and [that] there is a reasonable likelihood that the false evidence could have affected the judgment of the jury.'" *Jenkins v. Louisville-Jefferson Cty. Metro Gov't*, No. 3:17-CV-00151-RGJ, 2019 WL 1048850 at *2 (W.D. Ky.); *Manuel v. City of Joliet, Ill.*, ___ U.S. ___, 137 S. Ct. 911, 920 (2017).

As far as the failure-to-intervene claim, the elements of a failure-to-intervene claim are observing harm and having an opportunity to prevent the harm. To state a failure to intervene claim, a plaintiff must allege that the defendant "(1) observed or had reason to know that [constitutional harm] would be or was [taking place], and (2) had both the opportunity and the means to prevent the harm from occurring." *Sheffey v. City of Covington*, 564 F. App'x 783, 793 (6th Cir. 2014) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)). Defendants are not liable for a failure to intervene unless there was some "realistic opportunity to intervene and prevent harm." *Well v. City of Dearborn Heights*, 538 F. App'x 631, 640 (6th Cir. 2013) (citing *Ontha v. Rutherford City, Tenn.*, 222 F. App'x 498, 507 (6th Cir. 2007)).

As far as the elements of conspiracy, the legal requirements of a conspiracy claim involve a plan, a conspiratorial objective, and an overt act. While a plaintiff does not need to show an express agreement among the conspirators, some degree of specificity is required. *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985). To prevail on such a claim, Mr. Yell must prove "'that (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiff of constitutional rights, and (3) an overt act was committed' in furtherance of the

conspiracy that caused the injury." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (quoting *Revis*, 489 F.3d at 290).

As far as Tpr. Childers and Sgt. Smith are concerned, they had no involvement with the alleged fabrication. Tpr. Childers took the witness statement of Tina Maskin describing Mr. Yell's bizarre behavior at her house. Sgt. Smith took the witness statements of Lyndsay Braun and Donald Powell, with whom Mr. Yell had spent the day with before the fire that night. Sgt. Smith also helped search for the lighter that Ms. Maskin said Mr. Yell had dropped after leaving her house. These interviews took place that day after the fire and without Det. West or any Russellville officers. There is no evidence that these statements are false and there is no allegation that these statements are false.

Tpr. Childers and Sgt. Smith had no further investigatory duties. Sgt. Smith did administrative review of Det. West's reports for grammar and policy compliance, but he had no fire science or fire investigation knowledge or background with which to assess the reports. There is no evidence that Tpr. Childers and Sgt. Smith did anything else. They were not present the night of the fire or at the scene when Mr. Yell was there. They were not at that scene or at the Logan County Jail when Mr. Yell was transported there. They were not present for any of the alleged violations of his rights. Neither of them violated, observed, or failed to stop a violation of Mr. Yell's constitutional rights. They did not charge or arrest Mr. Yell; they did not testify at the grand jury. Sgt. Smith had limited trial testimony and Tpr. Childers did not testify at all. They had no opportunity to observe

any alleged violations and no realistic opportunity to intervene to stop any alleged violations.

There is also no evidence that Tpr. Childers and Sgt. Smith were part of any plan with the other Defendants. They were not at the scene the night of the fire, or when Russellville Officers interacted with Mr. Yell. Their interviews were limited and only with other Kentucky State Police officers. There is no evidence of sharing a conspiratorial objective to deprive Mr. Yell of rights and there is no evidence of them committing an over act in furtherance of a conspiracy.

The evidence here shows that neither Tpr. Childers nor Sgt. Smith was the case officer in charge of the investigation, and they had limited to no role in Mr. Yell's prosecution and such limited roles taking witness statements the day after the fire that there is no evidence upon which a jury could legally base a verdict against them in Mr. Yell's favor.

II. **Fabrication/Failure-to-Intervene/Conspiracy: There is No Evidence to Support Recovery Against Det. West**

The allegations of fabrication against Det. West are that he:

(a) ignored fire methodologies and applied junk science to attribute the fire to arson;  specifically that he relied on false hits by the accelerant detection dog, ignored all the evidence, which was consistent with accidental fire; ignored burn patterns that were consistent of fire without accelerant because testing said no accelerant; failed to document possible accidental sources; used pre-flashover methods to investigate post flashover fire;

falsely stated burns patterns and floor burn-through indicated the presence of an ignitable liquid poured onto floor; falsely stated that there were multiple points of origin (DN 1 at ¶10, 11, 45, 46, 47, 48, 50, 51, 52, 54, 55); and that

(b) that he provided false evidence to the grand jury.

First, Det. West has immunity for his testimony before the Grand Jury. He did not introduce any exhibits or evidence and did inform the Grand Jury that the laboratory tests of the samples that he selected as the location of accelerants and that the accelerant detection dog also hit on came back negative with the caveat that the test could not detect accelerant if it had evaporated or been consumed by the fire. To the extent that Mr. Yell is asserting any claims for Det. West's grand jury testimony, he asserts absolute immunity. *Rehberg v. Paulk*, 566 U.S. 356, 132 S. Ct. 1497, 1506, 182 L.Ed.2d 593 (2012) ("[A] grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony."); *Anderson v. Knox County*, 2023 WL 4536078 at *7 (6th Cir.) (law enforcement officers receive absolute immunity for their testimony in judicial proceedings.) (citing *Rehberg v. Paulk*, 566 U.S. 356, 369 (2012)). And officers have no obligation to disclose exculpatory evidence to Grand Jury. *Id.* at *8.

Second, fabrication means more than just wrong information. It means evidence offered knowingly or in bad faith. It is not enough if an officer is negligent or mistaken. *Anderson v. Knox County*, 2023 WL 4536078 at *5 (6th Cir.).

At all times, Det. West always stated the reports of the lab testing – that the test did not detect an ignitable liquid on the sample, but that it could not account for an ignitable liquid that had evaporated or been consumed in the fire. Testing did not prove

15

that there was no accelerant because the sensitivity of the test notes that it does not account for accelerant that evaporated or that was consumed by the fire. The fact that the test was negative does not rule out arson or Mr. Yell's involvement in the fire as the accelerant could have burned up or evaporated.

Even without the dog's hits, the evidence described in the Background section above led Det. West to his conclusion that arson occurred. Even Mr. Yell's own experts did not say that it was an accidental fire. Their only conclusion was that the cause was unknown. Henry Ott, a respected fire investigator, agreed to review Det. West's investigation and he found that Det. West followed scientific guidelines and had an evidentiary basis for his conclusions. (Ott reports, DN 159-13 and Exhibit 6).

Det. West documented that he checked the electrical panel and saw no evidence of failure or fire. He noted the condition of the stove and the pan that had melted into the burner. He considered the possible accidental sources and found reason to reject them. He noted this in his report. Once probable cause was established, officers are under no duty to investigate further or look for additional evidence which may exculpate the accused. *Franklin v. Miami University*, 214 F.App'x. 509, 512 (6th Cir. 2007).

Mr. Yell relies solely on Officer Mills testimony to say that flashover occurred. But this ignores all of the evidence that flashover did not occur: the burn pattern down the hallway, the lesser damage in the bedroom where Cameron was found, the fact that Saralynn could be rescued, the fact that there was nothing to spontaneously combust or a mechanism to fail in the points of origin, etc., as described in the Background section above and in Mr. Ott's report (Ott reports, DN 159-13 and Exh. 6). Mr. Yell's experts

simply disagree with Det. West's analysis and do not provide a sufficient basis for a fabrication claim. *Stinson v. Gauger*, 868 F.3d 516, 533-34 (7th Cir. 2017) (a fabrication of evidence claim "requires evidence that the expert was not just badly mistaken but that he lied.").

Mr. Yell also provides in his Complaint that his allegations of incriminating fabricated statements apply to statements reported by Russellville Police Department Officers. (DN 1 at 49, 64, 65, 66, 67). But the evidence developed through discovery shows that Det. West was not present during that time and also had no control over the jail's video of the sallyport. (DN 1 at ¶71; KSP Inv., Exh. 1 at KSP000102). So there is no evidence to support that allegation against Det. West.

There is no evidence that Det. West fabricated anything. There is also no evidence that Det. West failed to intervene or conspired against Mr. Yell. All of the statements at the scene, in the Russellville cruiser, and at the jail that night happened before Det. West was on scene. Det. West did not come on the scene until the next day. Det. West testified that he is not called to the scene unless arson is suspected, so the fact that Fire Marshals Gregory and Flowers gave Det. West some basic information upon arrival is not evidence of a conspiracy against Mr. Yell.  Det. West conducted the interrogation of Mr. Yell with Russellville Officer Edmonds at the jail and Mr. Yell makes no complaint about his interrogation or treatment by Det. West.

Although the evidence is viewed in a light favorable to Mr. Yell at the summary judgment stage, there still must be evidence, not simply allegations. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (stating that "there can be

'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial"). Mr. Yell's allegations that evidence and reports were fabricated is not evidence of fabrication. Det. West did not fabricate any evidence. Det. West did not observe constitutional harm to Mr. Yell or have a reasonable opportunity to prevent it. And Det. West did not conspire to frame Mr. Yell.

Similarly, Mr. Yell's due process claims also fail. "[T]here is no constitutionally protected right to the manner in which a criminal investigation is conducted." *Garner v. Harrod*, 656 Fed.Appx. 755, 760-61 (6th Cir. 2016). Det. West considered reasonable alternative sources or theories of the fire and noted that in his investigation. Mr. Yell alleges no separate injury; thus, his due process claims also fail. *Anderson v. Knox Cty.*, No. 6:17-cv-133-KKC, 2018 WL 7500205, at *6–7 (E.D. Ky. Oct. 3, 2018).

### III. Mr. Yell's infliction of emotional distress claims are derivative of his §1983 claims, subsumed by them, and unavailable under Kentucky law.

Mr. Yell fails to state a claim of intentional infliction of emotional distress under Kentucky law. A plaintiff cannot pursue an emotional distress claim when it is based on the same conduct addressed by traditional tort claims, including claims such as malicious prosecution or other §1983 claims. In Kentucky, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." See Restatement (Second) of Torts § 46. Outrageous conduct "'is a

deviation from all reasonable bounds of decency and is utterly intolerable in a civilized community.'" *Craft v. Rice*, 671 S.W.2d 247, 250-51 (Ky. 1984).

Kentucky law has established a very high threshold for intentional infliction of emotional distress claims. *Stringer v. Wal-mart Stores Inc.*, 151 S.W.3d 781, 789 (Ky. 2004)); *Young v. City of Radcliff*, 561 F. Supp. 2d 767, 794 (W.D. Ky. 2008) (where a Radcliff man incorrectly targeted/investigated as a shoplifter and shot in course of arrest did not state sufficient claim of intentional infliction of emotional distress under Kentucky law). A claim for intentional infliction of emotional distress is "a 'gap-filler' tort intended to provide a remedy when no other tort is adequate[.]" *Brewer v. Hillard*, 15 S.W.3d 1, 8 (Ky. App. 1999). Kentucky generally treats claims of intentional infliction of emotional distress as unavailable if "an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed." *Rigazzio v. Archdiocese of Louisville*, 853 S.W.2d 295, 298–99 (Ky. App. 1993). Thus, Kentucky law does not permit an intentional infliction of emotional distress theory to proceed when another tort theory may provide a ground for relief. *See Childers v. Geile*, 367 S.W.3d 576, 582 (Ky. 2012).

Nonetheless, "[t]he tort of outrage is still a permissible cause of action, despite the availability of more traditional torts, as long as the defendants solely intended to cause extreme emotional distress." *Green v. Floyd Co., Ky.*, 803 F. Supp. 2d 652, 655 (E.D. Ky. 2011). But "[w]hen the claim of emotional distress is a supplement to another tort claim, such as false imprisonment, the burden of showing sole intent cannot be met." *Lovins v. Hurt*, 2011 WL 5592771 at *3 (E.D. Ky.). This unavailability of an intentional infliction of

emotional distress claim under Kentucky law to plaintiffs who have asserted §1983 claims has been consistently applied and should be applied here to dismiss this claim.

In *Estep v. Combs*, 366 F.Supp.3d 863 (E.D. Ky. 2018), Jack Estep, a Harlan County man, was arrested by Fish and Wildlife Conservation Officer Steve Combs when Mr. Estep interfered in the officer's investigation. The arrestee's claims against the officer included false arrest, excessive force, and intentional infliction of emotional distress. The case was removed to federal court where the U.S. District Court for the Eastern District of Kentucky dismissed the intentional infliction of emotional distress claim because it derived from the false arrest claim:

> While Estep also claims that Combs "intentionally and deliberately inflicted upon Plaintiff emotional distress by" committing the various other alleged torts, [ ] the emotional distress alleged is derivative of "the other actions brought against [Combs]." *Lovins*, 2011 WL 5592771, at *3.
> …
> Here, the Complaint makes clear that emotional distress is not the crux of the torts alleged, but rather deprivation of liberty and the injuries to Plaintiff's wrists are. *Childers*, 367 S.W.3d at 582 ("If the emotional distress were the gravamen of the tort, then damages for the distress could be recovered, but only through a claim for intentional infliction of emotional distress, and only if the conduct were outrageous and the emotional distress severe."). Estep alleges "extreme emotional distress" as a "direct and proximate result of the [other] wrongful actions of Defendant Combs[.]" DE 1-1, at 10. The Court, even granting Plaintiff the favorable reading required at this stage, can only read the emotional distress claim "as an element of damages" arising out of the other torts. *Childers*, 367 S.W.3d at 582. <u>When an Outrage claim is based on "the *same* emotional distress" resulting from other alleged torts, Kentucky law prohibits recovery for the stand-alone emotional distress tort</u>.

*Estep v. Combs*, 366 F.Supp.3d at 887; *Anderson v. Knox Cty.*, No. 6:17-cv-133-KKC, 2018 WL 7500205, at *15 (E.D. Ky. Oct. 3, 2018) (where intentional infliction of emotional distress was not available to plaintiff because derivative of negligence claim in §1983 case also asserting evidence fabrication, failure to intervene, conspiracy, and malicious prosecution claims).

In *Woosley v. City of Paris*, 591 F. Supp. 2d 913 (E.D. Ky. 2008), Paris Police Officers broke up an altercation on the plaintiff's lawn, which resulted in the plaintiff, Mr. Woosley, being tased and arrested. Mr. Woosley sued the officers, but the federal trial court dismissed the emotional distress claim because it was derivative of his other claims, which included assault and battery and false imprisonment: "[a]s Plaintiff's theory involves 'one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed, 'the tort of outrage will not lie.'" *Id.* at 923; *see also Vidal v. Lexington Fayette Urban County Government*, 2014 WL 4418113 (E.D. Ky.) (where intentional infliction of emotional distress claim was dismissed because of more traditional torts such as false arrest provided an emotional remedy); *Carter v. Porter*, 617 F.Supp.2d 514, 519-520 (E.D. Ky. 2008) (where arrested motorist's intentional infliction of emotional distress claim was dismissed because it was subsumed by false imprisonment and malicious prosecution claims).

In the case before this Court, Mr. Yell's intentional infliction of emotional distress claim is derivative of his §1983 claims of evidence fabrication, lack of intervention, conspiracy, and malicious prosecution. Therefore, the intentional infliction of emotional distress claim is unavailable as a separate claim under Kentucky law.

In describing this claim, Mr. Yell has stated:

> 161. As described more fully in the preceding paragraphs, by framing Mr. Yell for an arson and murder he did not commit, the Defendants intended to cause emotional distress, or knew or should have known that their actions would result in serious emotional distress.

(DN 1 at ¶161). According to Mr. Yell, his distress is a direct and proximate result of the alleged actions taken to "frame" him for arson and murder. These are the same actions underlying the §1983 claims: evidence fabrication, lack of intervention, conspiracy, and malicious prosecution. (DN 1). Therefore, the distress claim is derivative of these claims and should be dismissed as a matter of law for failure to state a claim. Likewise, this argument equally applies to the negligent infliction of emotional distress claim. *Profitt v. Highlands Hosp. Corp.*, No. CV 7:19-15-KKC, 2022 WL 1275632, at *9 (E.D. Ky. Apr. 28, 2022).

## IV. The Malicious Prosecution Claims are Deficient in Multiple Elements, Which is Fatal to these Claims.

Mr. Yell's federal and state claims of malicious prosecution claims are deficient as a matter of law because there is no evidence upon which a jury could find that he meets the necessary elements of the claims, and failure to meet any of the elements is lethal to the claim. In particular, (1) Sgt. Smith and Tpr. Childers did not seek or procure the prosecution of Mr. Yell; (2) the dismissal of the arson charge was not indicative of innocence; (3) the evidence shows that there was probable cause for the arrest; and (4) there is no evidence of malice by the KSP Defendants.

Although claims of malicious prosecution under federal and state law differ, they do share several elements that Mr. Yell cannot prove, and thus, they should be dismissed by summary judgment.

> To succeed on a malicious-prosecution claim under § 1983 when the claim is premised on a violation of the Fourth Amendment, a plaintiff must prove four elements.
>
> First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant "made, influenced, or participated in the decision to prosecute."
>
> Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution.
>
> Third, the plaintiff must show that as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure.
>
> [And] [f]ourth, the criminal proceeding must have been resolved in the plaintiff's favor.

*Sykes v. Anderson*, 625 F.3d 294, 308-309 (6th Cir. 2010)).

In Kentucky, malicious prosecution claims are disfavored and subject to strict compliance with the elements necessary to prove such a claim. *Garcia v. Whitaker*, 400 S.W.3d 270 (Ky. 2013). Under Kentucky law, a malicious prosecution claim has all the same elements as its federal counterpart, but it adds the element of malice. *Martin v. O'Daniel*, 507 S.W.3d 1, 11-12 (Ky. 2016).

For both claims, the KSP Defendants do not dispute the deprivation of liberty element. But there is no evidence that Sgt. Smith or Tpr. Childers "made, influenced, or participated in the decision to prosecute." As a matter of law, the criminal court's

dismissal without prejudice due to exclusion of the evidence was not a dismissal indicative of innocence. There is evidence of probable cause. And there is no evidence of malice by the KSP Defendants.

**(a) <u>Trooper Childers and Sgt. Smith did not make, influence, or participate in the decision to prosecute.</u>**

To be liable for malicious prosecution, "the officer must participate in a way that aids in the decision [to prosecute], as opposed to passively or neutrally participating." *Sykes*, 325 F.3d at 308 n.5. Put another way, the officer's "participation must be marked by some kind of blameworthiness, something beyond mere negligence or innocent mistake," to satisfy the first element of a malicious prosecution claim. *Johnson v. Moseley*, 790 F.3d 649, 655 (6th Cir. 2015).

To be liable for malicious prosecution, officers must have taken some action or participated in some way in the arrest and prosecution:

> The test for determining that the proceedings against plaintiff were "by, or at the instance, of the officer", is <u>whether the defendant "sets the machinery of the law in motion</u>." *McMaster v. Cabinet for Human Res.*, 824 F.2d 518, 521 (6th Cir.1987)(quoting *First Nat'l Bank of Mayfield v. Gardner*, 376 S.W.2d 311, 316 (Ky. 1964)). "A wide variety of conduct may constitute the 'institution,' 'initiation,' or 'instigation' of proceedings, both under Kentucky law and the common law generally." *Id*. "<u>The initiation of a criminal proceeding generally occurs upon either the actual arrest of a person, the return of an indictment, the issuance of an arrest warrant, or a summons to appear and answer criminal charges</u>." *Johnson v. St. Claire Med. Ctr., Inc.*, 2003 WL 22149386, at *2 (Ky. Ct. App. Sept. 19, 2003).

*Phat's Bar & Grill v. Louisville Jefferson Cty. Metro Gov't*, 918 F. Supp. 2d 654, 664–65 (W.D. Ky. 2013)(emphasis added).

Having conducted a search or reporting observations in the underlying criminal investigation is not sufficient participation in the prosecution in order to impose malicious prosecution liability on a defendant. *Id.* at 665 ("On the other hand, the Sixth Circuit, again construing Kentucky law, found that the officers did not participate in the initiation of the proceedings against the plaintiff where the officers merely conducted searches of the residence, and did not testify before the grand jury."); *Hyche v. Molett*, 2018 WL 2187006, at *5 (Ky. App.), unpublished opinion (where citizen who made report to officer that led to prosecution was held to have taken no part in initiating, continuing, or procuring the criminal charges against the accused and was entitled to summary judgment on malicious prosecution claim). Similarly, here, the evidence, stated in the Background section and the first section on fabrication claims, shows that Sgt. Smith and Tpr. Childers did not influence or initiate the prosecution.

They each only interviewed two witnesses, recorded their interview and provided summaries to the case. Neither testified before the grand jury and Sgt. Smith had limited testimony at trial. Neither obtained an arrest warrant or arrested Mr. Yell. There is no evidence that they "made, influenced, or participated in the decision to prosecute." Thus, as a matter of law, the malicious prosecution claims against them fail.

**(b) <u>The underlying criminal case was not terminated in Mr. Yell's favor</u>.**

The dismissal was not on the merits and not indicative of Mr. Yell's innocence, which as a matter of law is fatal to this claim.

"The determination of whether a termination is sufficiently favorable ultimately rests with the trial court as a matter of law, absent a factual dispute relative to the

circumstances of the dismissal." *Ohnemus v. Thompson*, 594 F. App'x 864, 866 (6th Cir. 2014) (citing *Davidson v. Castner-Knott Dry Goods Co., Inc.*, 202 S.W.3d 597, 606 (Ky. Ct. App. 2006)). "[P]roceedings are 'terminated in favor of the accused' … only when their final disposition is such as to indicate the innocence of the accused." Restatement (Second) of Torts § 660. Put another way, the termination of the proceedings "must go to the merits of the accused's professed innocence for the dismissal to be 'favorable' to him." *Ohnemus v. Thompson*, 594 F. App'x 864, 867 (6th Cir. 2014). From the example of state and federal cases indicating when termination is deemed not favorable, the law indicates that dismissal of criminal charges because evidence has become unavailable or because witnesses have recanted their statements, without more, does not indicate the innocence of the accused.

In *Russell v. Smith*, 68 F.3d 33 (2d Cir. 1995), a prosecutor's dismissal without prejudice of quadruple homicide charges after a witness recanted his grand jury statement was not termination in accused's favor sufficient to maintain a federal malicious prosecution claim. Although the U.S. Court of Appeals for the Second Circuit noted that the dismissal was without prejudice, the Court also noted in its analysis that the circumstances indicated that the prosecutor did not consider the accused to be wrongfully charged and the recantation was suspect because the original statement was corroborated by other evidence.

In *Davidson v. Castner-Knott Dry Goods Co., Inc.*, 202 S.W.3d 597, 605 (Ky. App. 2006), the Court of Appeals of Kentucky indicated that dismissal of theft charges for bad checks because "attainment of evidence necessary to fully prosecute [the accused] was

not readily available[,]" without more, may not be sufficient to find termination in the plaintiff's favor. *Id.* The Court revisited its earlier precedent and noted that "'dismissal of a suit for technical or procedural reasons that do not reflect on the merits of the case is not a favorable termination of the action.'" *Id.* But as there was an issue of whether the prosecutor moved to dismiss for those reasons alone or because the accused previously reported stolen checks (indicative of innocence), the Court remanded the issue for further proceedings.

Recently, the Court of Appeals of Kentucky reversed a jury verdict for a plaintiff on a state malicious prosecution claim and held that dismissal of the plaintiff's criminal charges with prejudice did not satisfy the element of a favorable termination required to maintain such a claim. In *Palmer v. Carter*, 2018 WL 6721270 (Ky. App), unpublished opinion, the Court noted that malicious prosecution claims are not favored under Kentucky law and require strict compliance with all of the elements. *Id.* at *7. As far as the favorable termination element, the Court provided direct guidance on what is indicative of innocence in order to satisfy this element:

> Only where the dismissal indicates that the accused may be innocent of the charges have Kentucky courts found that the termination of the proceedings were favorable to the party bringing a malicious prosecution claim.
> …
> [T]he court must not consider whether the plaintiff is actually innocent of the charges—but rather whether the dismissal of the proceedings established his innocence as a matter of legal consequence.
> …
> The dismissal of the criminal complaint here did not exonerate [the plaintiff]; it merely released him from subsequent liability. Thus, as a matter of law, the dismissal of

27

> the criminal complaint does not qualify as a termination in his favor.

*Palmer*, 2018 WL 6721270 at *7. In the case before this Court, the prosecutor's motions to dismiss and the order dismissing the arson charge was without prejudice and did not indicate that Mr. Yell was innocent, did not exonerate Mr. Yell, and did not release him from subsequent liability. As prosecutor Neil Kerr stated, it was that some evidence was now excluded, and he wanted the option to prosecute Mr. Yell if additional evidence came to light. (Kerr deposition, Exhibit 5 at 44:9 -16; 80:2-6).

Thus, the dismissal of Mr. Yell's criminal charges was the result of a compromise, a procedural technicality, the exercise of prosecutorial discretion, or some other method of dismissal that is not indicative of innocence and is fatal to his claim.

**(c) There was probable cause for Mr. Yell's arrest.**

The burden in a malicious prosecution claim is on the plaintiff to prove no probable cause and the probable cause issue is a question of fact for the court to decide. *Anderson v. Knox County*, 2023 WL 4536078 at *9 (6th Cir.) (citing *Collins v. Williams*, 10 S.W.3d 493, 496 (Ky. App. 1999)). In order to determine whether an officer had probable cause for an arrest, the United States Supreme Court "examine[s] the events leading up to the arrest, and then decide[s] 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Maryland v. Pringle,* 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003). Because probable cause "deals with probabilities and depends on the totality of the circumstances," it is "a fluid concept" that is "not readily, or even usefully, reduced

28

to a neat set of legal rules[.]" *Maryland*, 540 U.S. at 371; *Illinois v. Gates,* 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).  Further, the "totality of the circumstances" requires courts to consider "the whole picture." *U.S. v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

Probable cause "is not a high bar[.]" *Kaley v. United States,* 571 U.S. 320, 338, 134 S.Ct. 1090, 1103, 188 L.Ed.2d 46 (2014). Probable cause only requires grounds such that "a reasonable officer could conclude—considering all of the surrounding circumstances, including the plausibility of the explanation itself—that there was a "substantial chance of criminal activity." *Illinois v. Gates*, 462 U.S. at 244. "'Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'" *Sykes v. Anderson*, 625 F.3d 294, 306 (6th Cir. 2010) (quoting *United States v. McClain*, 444 F.3d 556, 562 (6th Cir. 2005)). Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. *District of Columbia v. Wesby*, ___ U.S. ___, 138 S.Ct. 577, 586, 199 L.Ed.2d 453 (2018).

Police decisions are to be judged at the time they are made, based upon the facts, information, and evidence available at that time, not with the 20/20 vision of hindsight. *Darrah v. City of Oak Park*, 255 F.3d 301 (6th Cir. 2001). Also, probable cause for arrest may be found if there is probable cause to believe that <u>any</u> crime was committed, not just what the officer charged. *Devenpeck v. Alford*, 543 U.S. 146, 152, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004). This should also extend to the analysis of the probable cause element of a malicious prosecution claim because it would be illogical to hold an arrest was supported

by probable cause but apply a different standard to the charge as it progresses through prosecution.

In Kentucky, the Court of Appeals of Kentucky has adopted the federal probable cause standard for its analysis of the probable cause element of a state malicious prosecution claim. *Palmer v. Carter*, 2014 WL 4377874 at *2 (Ky. App.), unpublished opinion ("Moreover, Kentucky's standard for determining probable cause is the same as the federal standard."). Also, the U.S. District Court for the Eastern District of Kentucky, Judge Reeves presiding, has predicted that Kentucky courts will also adopt the *Devenpeck* probable cause analysis:

> The Supreme Court of Kentucky consistently holds that the "Kentucky Constitution provides no greater protection that does the Federal Fourth Amendment." *Cobb v. Commonwealth*, 509 S.W.3d 705, 712 (Ky. 2017). Although it has not specifically cited the *Devenpeck* decision, the Supreme Court of Kentucky consistently relies on decisions from the Supreme Court of the United States when evaluating issues under the Kentucky Constitution's equivalent of the Fourth Amendment. See, e.g., *Chavies v. Commonwealth*, 354 S.W.3d 103, 109 (Ky. 2011) (citing *Horton v. California*, 496 U.S. 128 (1990) and reiterating that the Kentucky Constitution does not provide any greater protection that the Fourth Amendment). It is therefore reasonable to predict that the Supreme Court of Kentucky would also conclude that an officer has probable cause to arrest as long as he has probable cause arrest for any offense, consistent with *Devenpeck*.

*Warren v. Lexington-Fayette Urban Cty. Gov't Police Dep't*, No. 5:16-140-DCR, 2017 WL 2888716 at *6 (E.D. Ky.).

In this case, considering the totality of the circumstances, there was probable cause for Mr. Yell's arrest. Probable cause can even be established with a single witness: "In

assessing probable cause, this Court has held that an eye-witness identification and accusation, by itself, is sufficient to establish probable cause." *Legenzoff v. Steckel*, 564 Fed. Appx. 136, 142 (6th Cir. 2014); *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 743 (7th Cir. 2003).

Even removing the dog's hits, the laboratory testing still does not eliminate the possibility of an accelerant. Mr. Yell's behavior that day was violent and threatening. After he had argued and choked his girlfriend April, he had left and was banging on Ms. Bellar's door so violently that she called 911. He was also intoxicated and acting bizarrely at Ms. Maskin's house, which was right before she noticed the fire. He was flicking a lighter off and on repeatedly, trying to hide under a bed when he knew the police were present, fell on the way out of her house, and dropped his lighter. Mr. Yell maintains throughout the Complaint that the fire was accidental, but his own experts do not conclude that. The scene was checked for electrical causes by a certified electrical expert and none could be found. From the information known to Det. West at the time of arrest, there was probable cause.

**(d) <u>There is no evidence of malice by the KSP Defendants.</u>**

"By requiring a showing of malice, the state-law malicious prosecution claim requires even more than the federal cause of action." *Allen v. Rucker*, 304 F.Supp.3d 638, 647 (E.D. Ky. 2018). Here, the malicious prosecution claim fails yet again because there is no evidence that any of the KSP Defendants' actions with respect to the investigation or prosecution were done with malice.

"As Kentucky's highest court held long ago, malice in the context of a malicious prosecution claim 'is the intentional doing of a wrongful act to the injury of another, with an evil or unlawful motive or purpose.'" *Sawyers v. Drummond*, No. 1:14-CV-00111-GNS_HBB, 2017 WL 217752 at *8 (W.D. Ky.) (quoting *Stearns Coal Co. v. Johnson*, 37 S.W.2d 38, 40-41 (Ky. 1931)). There is no evidence to indicate that the KSP Defendants acted with an ulterior purpose at any point during the investigation.

Thus, both the state and federal malicious prosecution claims fail as a matter of law for any of the following reasons: Sgt. Smith's and Tpr. Childers' non-participation in the prosecution, the dismissal was not indicative of innocence, the existence of probable cause for the arrest, and for the state claim, the absence of malice.

## V. Kentucky Law Does Not Extend Supervisory Liability to Government Officials for Their Subordinates' Acts.

In addition to there being no evidence connecting Sgt. Smith to the alleged events described in the Complaint, there is also no respondeat superior liability imposed on state officials/supervisors under federal law or in Kentucky. Under Kentucky law, claims against public officials cannot be premised upon vicarious liability of a subordinate. *Yanero v. Davis*, 65 S.W.3d 510, 519, 527-528 (Ky. 2001) ("Officials have no vicarious liability for acts of subordinates in which they are not directly involved[.]"). As such, Mr. Yell's claim, if any, that Sgt. Smith is vicariously liable for alleged fabrication of evidence, conspiracy, and malicious prosecution because he was the supervisor of the case officer over the case fails to state a claim as a matter of law. Even viewing the evidence in the light most favorable to Mr. Yell, there is no genuine issue of material fact that requires

trial because there is no legal mechanism upon which a jury could find in Mr. Yell's favor to extend liability for the case officer's alleged actions to Sgt. Smith simply by virtue of him being the supervisor.

The analysis for examining supervisory liability claims under 42 U.S.C. §1983 is similar, and even using that analysis there is no evidence that would allow a jury to find against Sgt. Smith on these claims. For federal constitutional claims under §1983, the evidence needed to hold a supervisor liable for an employee's conduct would need to show that the supervisor "either encouraged the specific incident of [alleged] misconduct or in some other way directly participated in it." *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016). In order to succeed on such claim under § 1983, a plaintiff must show direct involvement in constitutional deprivations, as a defendant cannot be held liable on a respondeat superior theory under § 1983. *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

Mr. Yell has failed to show that Sgt. Smith was directly involved in any or approved of any of the alleged actions set forth in the Complaint. There is no evidence in this case that Sgt. Smith implicitly authorized, approved of, or knowingly acquiesced in any alleged unconstitutional actions by any of her subordinates. Also, negligence and gross negligence claims based on the same conduct as the malicious prosecution claims are barred.

Since the investigation, arrest, and subsequent prosecution are the basis for all of these claims, Mr. Yell is barred from asserting claims of negligence and gross negligence in addition to malicious prosecution claims based on the same conduct.

Under Kentucky law, when negligence claims are based on the same conduct as the malicious prosecution claim, the negligence claims must be dismissed:

> Additionally, the plaintiff cannot proceed with a claim for negligence where the claim is really a malicious prosecution claim. *Hill v. Wilmott*, 561 S.W.2d 331, 334 (Ky.Ct.App.1978). The policy considerations addressed by the elements of a malicious prosecution action would be thwarted if the plaintiff were allowed to proceed on a theory of negligence. *Id.*[ ] The plaintiff may not avoid the higher standards of malicious-prosecution claims by bringing negligence claims against the defendants under the same facts that constitute his other claims. Thus, the defendants are entitled to summary judgment on the plaintiff's negligence claims.

*Bertram v. Fed. Exp. Corp.*, No. 05-28-C, 2008 WL 170063 at *7 (W.D. Ky.); *Tunne v. Paducah Police Dep't*, No. 5:08-CV-188-R, 2010 WL 323547 *11 n.4 (W.D. Ky.) (citing *Hill v. Willmott*, 561 S.W.2d 331, 334 (Ky. App. 1978)("'[A] plaintiff cannot proceed with a claim for negligence where the claim is really a malicious prosecution claim.'" Otherwise a plaintiff would "'avoid the higher standards of malicious-prosecution claims[.]'")); *Lewis v. Laurel Cnty. Sheriff's Dep't*, No. 09-280-GFVT, 2011 WL 3475370 *6 (E.D. Ky.).

## VI. There is No Evidence of Bad Faith in Sgt. Smith's Supervision and He is Entitled to Qualified Immunity for the State-Law Claim of Negligent/Grossly Negligent Supervision.

As qualified immunity is not available in malicious prosecution claims after *Martin v. O'Daniel*, 507 S.W.3d 1 (Ky. 2016), this qualified immunity argument will only address the negligent/grossly negligent claim.

Kentucky law provides for qualified immunity, which protects all public officials and employees from suit except those who are "plainly incompetent" and/or those "who knowingly violate the law." *Rowan Cnty. v. Sloas*, 201 S.W.3d 469, 475 (Ky. 2006) (quoting

*Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). The doctrine specifically extends to individual capacity claims for: (1) discretionary acts; (2) performed in good faith; and (3) within the employee's scope of authority. *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). Kentucky courts define discretionary acts as those that involve "the exercise of discretion and judgment, or personal deliberation, decision, and judgment." *Rowan County*, 201 S.W.3d at 477. If these enumerated factors are satisfied, courts have no discretion and must grant a public official or employee immunity from individual capacity claims. *Id.*

In applying Kentucky's qualified immunity doctrine, when the first element (discretionary act) and third element (within the scope of the employee's authority) have been satisfied, the burden shifts to the plaintiff to show that the "discretionary act was not performed in good faith." *Yanero v. Davis*, 65 S.W.3d 510, 523 (Ky. 2001). The good faith/bad faith analysis has two components. Bad faith exists if the public employee either: (1) violated a constitutional, statutory, or other clearly established right of which a reasonable person would have known; or (2) "willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive." *Id.* In this case, there is no question of bad faith because there is no evidence that Sgt. Smith knew or had reason to know of the allegedly unconstitutional actions in this case.

Supervision is a discretionary function. (DN 119 at 43); *Haney v. Monsky*, 311 S.W.3d 235, 244 (Ky. 2010). At the summary judgment stage, the evidence is viewed in a light favorable to the Plaintiff, but there still must be evidence, not simply allegations. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (stating that "there can be 'no genuine issue as to any material fact,' since a complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial"). As discussed above, there is no evidence that Sgt. Smith knew of any alleged unconstitutional behavior in this case or should have known during the course of his supervision. Limited to the materials available for case review and given his lack of a fire science background or training, Sgt. Smith did not know and could not have known of any of the alleged unconstitutional conduct, did not approve it, and did not participate in it. Therefore, the Court must grant qualified immunity to Sgt. Smith because he was performing a discretionary act in good faith that was within the scope of his authority.

**VII.** **The KSP Defendants are Entitled to Qualified Immunity on the Federal Claims Because Their Actions Did Not Violate Any Clearly-Established Rights and No Existing Law Would Cause a Reasonable Officer to Believe that It was Unlawful.**

Under the doctrine of qualified immunity, "governmental officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). As the KSP Defendants' actions were consistent with the law, they are entitled to qualified immunity against all of Plaintiff's claims.

The doctrine of qualified immunity shields public officials from damage claims unless their conduct was unreasonable in the light of clearly established law. *Elder v. Holloway*, 510 U.S. 510, 114 S. Ct. 1019, 127 L. Ed. 2d 344 (1994). "Clearly established" means that, at the time of the officer's conduct, the law was "'sufficiently clear' that every

'reasonable official would understand that what he is doing'" is unlawful. *Ashcroft v. al–Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). In other words, existing law must have placed the constitutionality of the officer's conduct "beyond debate." *Id.* This demanding standard protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct.808, 172 L.Ed.2d 565 (2009).

Qualified immunity should be granted to Sgt. Smith and Tpr. Childers because the existing law would cause a reasonable officer to believe that their limited participation was lawful, and their actions did not violate any clearly-established rights.

As Mr. Ott concluded, Det. West followed appropriate scientific principles and there is no evidence of fabrication. Det. West did not violate any of the Plaintiff's clearly-established rights and there is no existing law that would have informed him that investigation was unlawful.

Thus, the KSP Defendants are reasonable in their belief that under existing law they had not violated any of Mr. Yell's clearly-established rights and that their actions were lawful. There exists no law that clearly establishes their actions as unlawful. After all, to determine whether a right was 'clearly established,' the court must assess 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted.'" *Jones v. Lafferty*, 173 F.Supp.3d 493, 504 (E.D. Ky. 2016); *Hunter v. Bryant,* 502

U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). All of the law existing at the time informed reasonable officers that their actions under these circumstances were legal, and they are entitled to qualified immunity.

## D. <u>CONCLUSION</u>

Thus, there are no specific facts that demonstrate that there is a genuine issue for trial. There is no evidence upon which a reasonable jury could find the KSP Defendants liable for Plaintiff's claims. Two of the KSP Defendants had limited roles in the investigation and no role in the prosecution. There is no respondeat superior liability for subordinates' acts. Negligence and gross negligence claims are precluded by the malicious prosecution claims. The malicious prosecution claims fail because there was no participation in the prosecution, no favorable termination, and no malice, but there was probable cause. Kentucky law extends qualified immunity to Sgt. Smith for his discretionary act of supervision. And federal law extends qualified immunity to the KSP Defendants because their conduct did not violate any clearly-established rights and no existing law would notify a reasonable officer that their actions were not lawful. Accordingly, the KSP Defendants are entitled to summary judgment.

Respectfully submitted,


/s/ Amber Arnett
Alea Amber Arnett
Department of Kentucky State Police
Legal Office
919 Versailles Road
Frankfort, KY 40601
(502) 782-2163
Alea.Arnett@ky.gov
*Counsel for Defendants David West,*
*Jaman Childers, and William T. Smith,*
*in their individual capacities*

CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2025, I electronically filed this document with the clerk of the court by using the CM/ECF System, which will provide service to the following CM/ECF participants:

Arthur Loevy
Elliot Slosar
Jon Loevy
Michael I. Kanovitz
Amy Robinson Staples
Loevy & Loevy
311 N. Aberdeen
3rd Floor
Chicago, IL 60607
(312) 243-5900
(312)243-5902 facsimile
loevylaw@loevy.com
elliot@loevy.com
jon@loevy.com
mike@loevy.com
Amy@loevy.com
*Counsel for Plaintiff*

Jeffrey C. Mando
Jennifer Langen
Adams Law, PLLC
40 West Pike Street
Covington, KY 41011
(859) 394-6200
(859) 392-7263 facsimile
jmando@adamsattorneys.com
jlangen@adamsattorneys.com
*Counsel for Defendants City of Russellville, and Officer Kenneth Edmonds, Officer Chad Eggleston, and Officer John Higgins, in their individual capacities*

D. Barry Stilz
Lynn Sowards Zellen
Kinkead & Stilz, PLLC
301 East Main Street, Suite 800
Lexington, KY 40507
(859) 296-2300
(859) 296-2566 facsimile

bstilz@ksattorneys.com
lzellen@ksattorneys.com
*Counsel for Defendants Scott County, and Georgetown Fire Department Captain Buster Cannon, in his individual capacity*

Charles D. Cole
M. Todd Osterloh
Derrick T. Wright
Janet S. Luo
Sturgill, Turner, Barker & Moloney, PLLC
333 W. Vine Street, Suite 1500
Lexington, KY 40507
(859) 255-8581
ccole@sturgillturner.com
tosterloh@sturgillturner.com
dwright@sturgillturner.com
jluo@sturgillturner.com
*Counsel for Defendants City of Georgetown, Kentucky; and Carmel ("Buster") Cannon, in his individual capacity*

Chris J. Gadansky
Daniel L. Morgan
McBrayer PLLC
500 W Jefferson Street, Ste. 2400
Louisville, KY 40202
cgadansky@mcbrayerfirm.com
lmorgan@mcbrayerfirm.com
*Counsel for Defendant Deputy Fire Marshall Alan Gregory*
/s/ Jennifer Wolsing (with permission)
Jennifer Wolsing
Senior Litigation Counsel
Office of Legal Services
Public Protection Cabinet
500 Mero St.
Frankfort, KY 40601
(502) 782-2736
jennifer.wolsing@ky.gov
*Counsel for Defendant Deputy Fire Marshall Alan Gregory*

Aaron Smith
Charles E. English, Jr.
John A. Sowell
English, Lucas, Priest & Owsley, LLP

1101 College Street
Bowling Green, KY 42102-0070
(270) 781-6500
asmith@elpolaw.com
cenglish@elpolaw.com
jsowell@elpolaw.com
*Counsel for Defendants Logan County, and Logan County Detention Center Jailer Bill Jenkins,
in his individual capacity*

/s/ Amber Arnett
Alea Amber Arnett